COPY

BY FAX

1  Scott A. Kamber (not admitted)
   skamber@kamberlaw.com
2  David A. Stampley (not admitted)
   dstampley@kamberlaw.com
3  KAMBERLAW, LLC
4  100 Wall Street, 23rd Floor
   New York, New York 10005
5  Telephone:  (212) 920-3072
   Facsimile:   (212) 920-3081
6
   David C. Parisi (SBN 162248)
7  dcparisi@parisihavens.com
   PARISI & HAVENS LLP
8  15233 Valleyheart Drive
   Sherman Oaks, California 91403
9  Telephone:  (818) 990-1299
   Facsimile:   (818) 501-7852
10
   Counsel for Plaintiffs
11
12            THE UNITED STATES DISTRICT COURT

13         FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

JOSEPH GARVEY, and STACEY TSAN,          CASE NO.   CV 11  3764
15 Individually, on Behalf of Themselves and All
   Others Similarly Situated,              JURY DEMAND
16
                                           CLASS ACTION COMPLAINT
17            Plaintiff,                    FOR VIOLATIONS OF:

18 v.                                       1.  Video Privacy Protection Act,
                                               18 U.S.C. § 2710;
19 KISSMETRICS and HULU, LLC,
                                           2.  Computer Crime Law,
20            Defendants.                      Cal. Penal Code § 502;

21                                         3.  Trespass to Personal Property/Chattel; and

22                                         4.  Unfair Competition Law,
                                               Cal. Bus. and Prof. Code § 17200.
23

24        Plaintiffs, on behalf of themselves and all others similarly situated (each, a "Class

25 Member" and, collectively, the "Classes") allege as follows based on personal knowledge and on

26 information and belief based on investigations of counsel.

27                              PARTIES

28
                               Complaint

ORIGINAL FILED

JUL 29 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

LB

1.      Plaintiffs are individuals residing in the United States and each of whom, during the Class Period (as defined herein), used his or her Internet-connected computer and Web-browsing software ("browser") installed on that computer to visit Defendant the website, http://www.hulu.com.

2.      Plaintiff Joseph Garvey is a resident of Kings County, New York.

3.      Defendant Hulu, LLC ("Hulu") is a Delaware corporation with headquarters at 12312 West Olympic Boulevard, Los Angeles, California 90064 and doing business throughout the United States and, in particular, in the State of California and County of San Mateo.  Hulu's registered agent for service of process is Corporation Service Company, in Los Angeles, California.

4.      Defendant KISSmetrics ("Kissmetrics") is a business organization, form unknown, with principal executive offices and headquarters located at 407 Morning Lane, Redwood Shores, California  94065. (Hulu and Kissmetrics are collectively referred to as "DEFENDANTS.")

**INTRADISTRICT ASSIGNMENT**

5.      Kissmetrics's principal executive offices and headquarters are in this District at 407 Morning Lane, Redwood Shores, California, so intra-district assignment to the San Francisco Division is proper.

**JURISDICTION AND VENUE**

6.      This Court has diversity jurisdiction in this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). This complaint states claims on behalf of a national classes of consumers who are minimally diverse from Defendants. The amount in controversy exceeds $5 million, exclusive of interest and costs. The Classes (as defined herein) consist of more than one hundred members.

7.     This Court also has federal question jurisdiction under 28 U.S.C. § 1331 as this action arises in part under a federal statute, including the Computer Fraud and Abuse Act, the Electronic Communications Privacy Act, and the Video Privacy Protection Act.

8.     This Court has supplemental jurisdiction with respect to the pendent state law claims under 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Defendants because some of the acts alleged herein were committed in the state of California and because Defendant Hulu is registered to do business in this state and both Defendants systematically and continuously conducts business in this state.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Kissmetrics operates primarily in Redwood Shores, California.

## GENERAL ALLEGATIONS

**A.      Plaintiffs and Class Members' used their browser privacy controls to prevent tracking.**

11.    Plaintiffs and Class Members value their privacy while Web-browsing.

12.    Plaintiffs and Class Members have a reasonable expectation of privacy while Web-browsing.

13.    Plaintiffs and Class Members do not want to be tracked online.

14.    Plaintiffs and Class Members believe their Web-browsing is private and not the business of anyone except the Website with which they choose to communicate.

15.    Plaintiffs and Class Members consider many of their online communications to involve their personal information—information of a private, confidential, sensitive, and intimate nature involving personal and professional matters such as finance, health, politics, religion, family and relationship matters and events, and other matters regarding which they protect their communications from disclosure to others.

16.     Plaintiffs' online communications included such information, both their own and of persons with whom they corresponded.

17.     Plaintiffs and Class Members believe their decisions to disclose or not disclose information when they view a particular Web page, select content or options on the page, or enter information on the page, is their decision to make.

18.     Plaintiffs and Class Members believe the information they disclose online is an asset they possess and to which online third parties have no presumptive right of access.

19.     Plaintiffs and Class Members believe their computers, Internet connectivity through their ISPs, and software installed on their computers ("Computer Assets")—are theirs to use and control, to preserve their privacy and for other reasons, such as preventing unwanted communications from diminishing the speed of their Internet connections.

20.     Plaintiffs and Class Members believe their Computers Assets are assets they pay for, possess, and/or to which they enjoy a right of possession and use.

21.     Plaintiffs and Class Members believe online parties with whom they have not chosen to communicate have no presumptive right to access or use Plaintiffs and Class Members' Computer Assets.

22.     Plaintiffs and Class Members' ability to block and delete browser cookies is material to them in protecting their privacy interests and keeping their Computers Assets from being used in ways Plaintiffs and Class Members' do not want their Computers Assets used, including to diminish and invade their privacy interests.

23.     To avoid being tracked online, Plaintiffs and Class Members used and relied on their browser controls to block and/or delete browser cookies from cracking companies, including Defendants.

24.     Plaintiffs did so to protect their privacy interests and to improve the performance of their computers while they browsed the Web.

25.     Plaintiffs and Class Members reasonably expected their browser controls to block or delete cookies, preventing them from being tracked online, profiled, and served behaviorally targeted advertisements.

26.     Plaintiffs subsequently discovered that, despite their use of browser controls, Defendants had been tracking their online activities and had stored a number of files on their computers.

27.     The files Defendants stored on their computers were not browser cookies. They were Adobe Flash Local Stored Objects (LSOs).

**B.     Hulu's Unauthorized Sharing of Users' Video Viewing Details**

28.     As Plaintiffs and Class Members viewed video content on Hulu's website, Hulu transmitted their viewing choices to a number of third parties, including Scorecard Research, an online market research company; Facebook, an online social network website; DoubleClick, an online ad network; Google Analytics, an online web analytics company (performing analysis of web traffic); and Quantserve, an online ad network and web analytics company.

29.     Hulu's transmissions of viewing information to the third parties included the specific names of video content viewed by Plaintiffs and Class Members. For example, in the case of television shows, Hulu transmitted the name of the show and the name of the particular episode.

30.     Hulu's transmissions of video viewing information to Scorecard Research and Facebook included information that personally identified Plaintiffs and Class Members.

31.     In the case of Scorecard Research, Hulu also provided Scorecard Research with Plaintiffs and Class Members' Hulu profile identifiers linked to Plaintiffs and Class Members' individual Hulu profile pages that included name, location, preference information designated by the user as private, and Hulu username (which, in the case of many individuals, is the same screen name used in other online environments).

32.    Scorecard Research stored the Hulu ID information in a cookie named "b.scorecardresearch.com" and stored the video information in a cookie named "beacon.scorecardresearch.com." In addition, Scorecard Research set its own unique identifier tied to the two previously mentioned cookies.

33.    Further, Scorecard Research's cookies were unencrypted, so that any intruder that gained access to the computer of a Plaintiff or Class Member could engage in a trivial exploit to view the profile and perform a "screen scrape" copy of that person's profile page.

34.    Hulu and Scorecard Research's practice of sharing user profile IDs and storing them in cookies constitutes a severe failure to observe basic security standards in the handling of user information.

35.    In the case of Facebook, Hulu included Plaintiffs and Class Members' Facebook IDs, connecting the video content information to Facebook's personally identifiable user registration information.

36.    Plaintiffs and Class Members reasonably expected that Hulu would not disclose their video and/or video services requests and their identities to social networks and online ad/metrics networks.

37.    Plaintiffs and Class Members did not authorize or otherwise consent to Hulu's disclosure of their video and/or video services requests and their identities to social networks and online ad/metrics networks.

C.    **Hulu's and Kissmetrics Rogue Tracking Exploits**

38.    Plaintiffs and Class Members share reasonable expectations about tracking of their online activities and limits of that tracking, relating to who will be tracking, what will be tracked, and how tracking will be done.

39.    Plaintiffs and Class Members reasonably expect that websites performing tracking do so by storing information in cookies on the computers of visitors to their websites.

40.     While it is generally reasonable to expect a website to use cookies for tracking, Hulu and Kissmetrics created numerous, alternative, "shadow" mechanisms for tracking; Defendants Hulu and Kissmetrics engaged in tracking by exploiting Plaintiff and Class Members' browsers and other software in ways that consumers did not reasonably expect.

41.     Hulu and Kissmetrics engage in these tracking activities regardless of any visitor's browser privacy controls over accepting, blocking, or deleting cookies.

42.     Besides Hulu's exploit of Adobe Flash LSOs, described below, the other exploits described below are so outside the boundaries of reasonable expectations that even industry experts had not observed these exploits "in the wild," that is, in actual use on websites available to the public.

**D.      Hulu and Kissmetrics' exploits of browser cache and HTML5 storage**

43.     The purpose of a browser cache is to store, on a user's computer, copies of web pages viewed by the user. The next time the user visits the web page, if it has not changed, the page can simply be loaded from the browser cache instead of being downloaded from the Internet, which would take more time.

44.     Hulu and Kissmetrics, however, repurposed the browser cache of Plaintiffs and Class Members' browser software. They coordinated together so that Kissmetrics stored coded information, specific to each individual Plaintiff and Class Member, in the code used to display Hulu web pages. The code had nothing to do with what the user viewed. Like cookies, the code contained tracking information.

45.     When a Plaintiff or Class Member returned to a Hulu web page, the browser automatically retrieved its cached copy. While the page was being displayed, the Kissmetrics scripts embedded in the web page inspected the cached copy to search for the previously set tracking codes.

46.     Using the tracking codes stored in the cached page, Kissmetrics recreated its own and Hulu's tracking cookies that had been deleted by the user and to bypass the use of cookies entirely.

47.     This practices constitutes a "hack," in the sense that word is used as a term of art by information technology and security professionals.

48.     In addition, Hulu stored tracking information in DOM local storage, for those Plaintiffs and Class Members using recent browser versions enabled with HTML5.

49.     It is contrary to standard practices to use DOM local storage in place of cookies.

50.     Hulu used DOM local storage to store unique identifiers, identified by the keyvalue "ai," assigned to Plaintiffs and Class Members. Hulu shared these unique identifiers with Kissmetrics, such that the identical value was stored in Kissmetrics' "km_cid" cookie.

51.     The coordinating and respawning of cookies using Hulu's DOM local storage values was performed by Kissmetrics' code embedded in Hulu's web pages.

52.     It is contrary to Internet standards, for privacy reasons, for two websites to share common identifiers.

53.     It is contrary to Internet standards to use alternative mechanisms to cookies, respawn cookies, and bypass cookies using DOM local storage, in which the information never expires, without first obtaining user consent.

E.      **Defendants' exploit of Adobe Flash LSOs**

54.     Adobe Flash Player software is installed on the majority of U.S. consumers' computers, including those of Plaintiffs and Class Members.

55.     Hulu repurposed the Adobe Flash software installed on Plaintiffs and Class Members' computers; Hulu used Adobe Flash local shared objects (LSOs) on Plaintiffs and Class Members' computers as an alternative mechanism in which to store the same information it was storing in cookies.

56.     Similarly, Kissmetrics stored tracking information in Adobe Flash LSOs that it later accessed.

57.     In fact, the Kiss Kissmetrics code embedded in Hulu's web pages operated so that it cycled through tracking data stored in cookies, browser cache files and DOM local storage (both described above), and Adobe Flash LSOs, so that it could retain Plaintiffs and Class Members' tracking data by one means or another, and thereby respawn cookies and track Plaintiffs and Class Members over long periods of time and multiple websites, regardless of whether they were registered or logged in.

58.     The Adobe Flash LSOs were not used by either Defendant for purposes of retaining user preferences for the display of Flash-based video content.

59.     LSOs were designed to stored information such as users' volume control settings for videos, game score for multi-session video games, and other user preferences for playing content using their Flash players—not as an alterantive to browser cookies to track users.

60.     Plaintiff and Class Members did not expect that, if they deleted Hulu's guid cookie stored by their browser, or any other Hulu or Kissmetrics cookies, or that if they switched browsers, Hulu and Kissmetrics would use the information it stored in Adobe LSOs to respawn its guid cookie, so that Hulu could maintain a persistent, unique code to identify the particular individual.

61.     These tracking activities were designed to be surreptitious.

62.     Plaintiff and Class Members had no reasonable means to detect or control these tracking activities.

Figure 1. *Comparison of cookies and LSOs*

| Cookies | Adobe Flash LSOs |
|---|---|
| **Characteristics and Operation** | |
| [a] subject to global standards | subject to Adobe specifications |
| [b] set/used only by originating Website | set/used by multiple Websites* |
| [c] encrypted if Web page is encrypted | unencrypted; warning messages from user's browser can be suppressed |
| [d] 4 kilobytes | up to 100 KB by default; may be larger |
| [e] expires when user exits browser by default | persistent by default |
| **User Controls** | |
| [f] can control through browser | cannot control through browser** |
| [g] can identify originating Website | cannot reasonably identify originating Website* |
| [h] can view cookie contents | cannot reasonably view LSO contents |
| [i] relatively apparent and usable (compared to other options) | not reasonably apparent and usable; constitutes added burden |

\*   Adobe Flash permits cross-domain LSO creation and use, *i.e.*, a Website can set an LSO for another Website, or read another Website's LSO; Adobe Flash also permits cross-site scripting, allowing for privacy-invasive and security threatening exploits.

\*\*  User must be aware of and use proprietary Adobe tools available on Adobe Website.

63.    Adobe Systems Incorporated has stated[1]:

Adobe does not support the use of our products in ways that intentionally ignore the user's expressed intentions.
. . .
In every case where rich Internet applications are possible, Local Storage is available (and necessary). The Local Storage capability in Adobe Flash Player is equivalent in concept to the emerging Local Storage capabilities in i.e. HTML5 and Silverlight. The fact that Local Storage in these technologies is distinct from the existing browser cookie system and treated as such by the browsers today underscores the need for responsible use of Local Storage in

---

[1]    Responses to Adobe's small step forward on Flash-cookie control, posted by Wiebke Lips, Adobe Systems Inc., Jan. 29, 2010, available at http://blog.privacychoice.org/2010/01/29/adobes-small-step-forward-on-flash-cookie-control; see also Letter to FTC, Adobe Systems Inc., Jan. 27, 2010, p. 9, available at http://www.ftc.gov/os/¬comments/¬privacy¬round¬table/¬544506-00085.pdf.

modern Web applications.

64.     On Plaintiffs and Class Members' computers, Defendants' LSOs remain stored and available to Defendants for their use.

65.     Unlike cookies, for which commercial browsers provide consumers some measure of control, consumers have no reasonable means to block, detect, or delete LSOs and are burdened by other, material differences between cookies and LSO. See Figure 1 on page 10, above.

### Hulu's Misleading Privacy Statements

#### *Online Privacy Policy*

66.     Hulu's online privacy policy is misleading in that it does not disclose its use of aggressive, rogue exploits of Plaintiffs and Class Members' computer software to engage in widespread tracking and information sharing.

67.     In addition, Hulu's online privacy policy is misleading in that it represents that Hulu uses DOM storage to hold "complex data," when, in fact, it only uses DOM storage to store that same data that it stores in cookies; Hulu uses DOM storage solely as a surreptitious backup for cookies, should users delete them. Both purposes constitute circumventions of user privacy controls and basic Internet standards.

#### *P3P Compact Policy*

68.     For Plaintiffs and Class Members using the Microsoft Internet Explorer ("IE") browser, the privacy controls rely in part on the browser's examination of coded privacy policies on websites, referred to as P3P (Platform for Privacy Preferences) Compact Policies.

69.     The purpose of the Compact Policy is to permit Plaintiffs and Class Members using IE to rely on their browsers to automatically read privacy policies before actually having to visit a site and be served its cookies.

70.     Hulu's P3P Compact Policy is misleading in that it states that Hulu does not share personally identifiable information with third parties.

*Harm*

71.     Defendants acquired personal information to which they were not entitled and which Plaintiffs and Class Members had affirmatively sought and reasonably expected to prevent Defendants from acquiring.

72.     Defendants' conduct in acquiring such information without authorization or consent has caused and causes economic loss to Plaintiffs and Class Members in that the personal information acquired by Defendants has economic value to Plaintiffs and Class Members.

73.     In addition, Defendants' conduct in acquiring such information without authorization or consent has caused economic loss to Plaintiffs and Class Members in that such information has economic value to Plaintiffs and Class Members as an asset they exchange for valuable content and services provided by websites; Plaintiffs and Class Members would have blocked Defendants' LSOs and other exploits described herein, would not have patronized Defendants' websites, and would have avoided websites utilizing Defendants' repurposed LSOs and other exploits described herein; Defendants' conduct has thus imposed opportunity costs on Plaintiffs and Class Members, depriving them of the opportunity to exchange their valuable information for the content and services of websites engaging in practices that comported with Plaintiffs and Class Members' reasonable privacy expectations.

74.     Defendants' conduct in using Plaintiffs and Class Members' Computer Assets to set and use LSOs and other exploits described herein for tracking Plaintiffs and Class Members constituted the unconsented use of Plaintiffs and Class Members' Computer Assets, including Internet connectivity, for which Plaintiffs and Class Members paid, and so Defendants acquired the use of such assets without payment and thus subjected Plaintiffs and Class Members to economic loss.

75.     Defendants' unconsented use of Plaintiffs and Class Members' Computer Assets, for which Plaintiffs and Class Members paid, diminished the performance of Plaintiffs and Class

Members' computers and Internet connectivity, in that LSO-based methods of information collection require the transfer of larger files using more resource-intensive computer processes that must be completed in sequence during the download of Web pages, causing Web pages to load more slowly than Web pages involving the transfer of cookie values; such diminution in performance of Computer Assets constituted an economic loss to Plaintiffs and Class Members.

76.     The consequences of the aforementioned conduct also constitute an interruption in service in that they were recurrent, through the Class Period, affecting Plaintiffs and Class Members' experiences on numerous websites.

77.     Defendants' conduct has caused economic loss to Plaintiffs and Class Members who were Hulu subscribers during the Class Period in that they have paid subscription fees to Hulu for services that they did not expect would subject them to the practices described herein, thereby diminishing the value of services for which Plaintiffs and Class Members paid Defendants and constituting loss to them.

78.     Defendants' use of Plaintiffs and Class Members' Computer Assets and collection and use of their personal information in a nontransparent manner, which cannot reasonably be detected at the time or later discovered, has deprived Plaintiffs and Class Members of the ability to protect their privacy and Computer Assets, assess the effects of Defendants' actions on their privacy and Computer Assets, and reasonably undertake self-help measures.

79.     Defendants' use of LSOs and other exploits described herein subjects and/or has subjected Plaintiffs and Class Members to additional harm in that, in further circumvention of their browser settings, Defendants have re-spawned cookies that Plaintiffs and Class Members deleted, and/or Plaintiffs and Class Members face the imminent harm of such re-spawning through the various exploit methods described herein.

80.     The value of Plaintiffs and Class Members' losses are discernable through the discovery of information from Defendants and expert evaluation.

81.     Plaintiffs and other members of the Class seek to maintain privacy and

confidentiality of their unique, personal, and individual information assets, including PII and details of their browsing and online viewing activities.

82.     The private and confidential character of Plaintiffs and Class Members' personal information is further demonstrated by their utilization of browser privacy controls, including Microsoft's default privacy settings and/or by periodically deleting cookies.

83.     Defendants acquired personal information to which it was not entitled and which Plaintiffs and Class Members had reasonably expected to prevent Defendants from acquiring.

84.     The private and confidential character of Plaintiffs' and Class Members' personal information is further demonstrated by Defendants' use of surreptitious and deceptive methods to deposit unconsented cookies and LSOs and other exploits described herein on Plaintiffs and Class Members' computers.

85.     Defendants' conduct in acquiring such information without authorization or consent has caused and causes economic loss to Plaintiffs and Class Members in that the personal information acquired by Defendants has economic value to Plaintiffs and Class Members.

86.     In addition, Defendants' conduct in acquiring such information without authorization or consent has caused economic loss to Plaintiffs and Class Members in that such information has economic value to Plaintiffs and Class Members as an asset they exchange for valuable content and services provided by websites; Plaintiffs and Class Members would have blocked Defendants' LSOs and other exploits described herein, would not have patronized Defendants' websites, and would have avoided websites utilizing Defendants' repurposed LSOs and other exploits described herein; Defendants' conduct has thus imposed opportunity costs on Plaintiffs and Class Members, depriving them of the opportunity to exchange their valuable information for the content and services of websites engaging in practices that comported with Plaintiffs and Class Members' reasonable privacy expectations.

87.     In addition, Defendants imposes discernable opportunity costs on Plaintiffs and

Complaint

14

Class Members. websites such as Defendants.com can compete and thrive only if they sustain a sufficient traffic volume to attract merchants and advertisers.

88.     Plaintiffs and Class Members, through their patronage, provide that traffic and so barter for their ability to access—and continue to enjoy—the content and services they bought with that patronage.

89.     Defendants, through their conduct, deprived and deprives Plaintiff and Class Members of the opportunity to use their information to purchase from and promote the continued availability of websites that conform to their reasonable expectations, that is, online merchants that deal honestly in the content and services offered to consumers and their related privacy disclosures.

90.     Plaintiffs and Class Members incorporated privacy considerations into their online viewing decisions when they visited Hulu's website. Plaintiffs and Class Members made their viewing selections purchases on Hulu's website, and not another competitor's website, because they trusted that Hulu's privacy practices comported with their privacy preferences, as expressed through their browser's privacy controls.

91.     Had Plaintiffs and Class Members known that Defendants' privacy practices were not as represented, i.e., that Defendants uses unauthorized persistent cookies and LSOs and other exploits described herein to track their web activities, and shares personal information obtained through tracking and otherwise with third parties, Plaintiffs and Class Members would not have engaged in viewing video content or in visiting Hulu's website.

92.     Plaintiffs and Class Members' experiences are consistent with and borne out by research showing that consumers purchase from online retailers who better protect their privacy and who prominently display their privacy practices; and that once privacy information is more salient, consumers are willing to pay a premium to purchase from more privacy protective websites. See J. Tsai, S. Egelman; L. Cranor; A. Acquisiti [Carnegie Mellon Univ.], "The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study" (June 2011),

Information Systems Research, Vol. 22:2 at 254–268.

93. Finally, the personal information Defendants wrongfully obtained from Plaintiffs and Class Members constitutes valuable data in the advertising-related market for consumer information. Plaintiff and Class Members are presently harmed or face imminent harm from Defendants' wrongful acquisition and use of their information, preempting Plaintiffs and Class Members from realizing for themselves the full value of their own information.

94. The costs and harms described above are aggravated by Defendants' continued retention and commercial use of the improperly acquired user data; by reducing the scarcity of Plaintiffs' and Class Members' valuable information, Defendants has further reduced the economic value of such information, causing Plaintiffs and Class Members economic harm.

95. Thus, Defendants' unauthorized taking of Plaintiffs' and other Class Members' personal information therefore imposes financial harm on them and constitutes an unwanted cost incurred by them for accessing Defendants' website.

96. Plaintiffs' and other Class Members' information acquired by Defendants had and has discernable value to them. That value can be established through information that is available in the market, combined with usage information that is available in Defendants' records and through expert valuation.

## CLASS ALLEGATIONS

97. Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs brings this action pursuant to on behalf of themselves and the following Classes:

> All individuals and entities in the United States whose visited Hulu.com and viewed video content during time Kissmetrics was active on Hulu.com.

98. Excluded from the Classes are Defendants, and their assigns, successors, and legal representatives, and any entities in which Defendants have controlling interests.

99.     Also excluded from the Classes are the judge to whom this case is assigned and members of the judge's immediate family.

100.     The "Class Period" for the Classes is December 1, 2011 through the present.

101.     Plaintiffs reserve the right to revise the definitions of the Classes based on facts they learns in the course of litigation.

102.     The Classes consists of millions of individuals, making joinder impractical. During the Class Period, on a monthly basis, as many as 50 million individuals viewed Defendants content and received Defendants LSOs and other exploits described herein; approximately 1.2 million individuals received Defendants LSOs and other exploits described herein; and approximately 2.3 million individuals received Defendants LSOs and other exploits described herein.

103.     Plaintiffs' claims are typical of the claims of all other members of the Classes.

104.     Plaintiffs will fairly and adequately represent the interests of the Classes. Plaintiffs has retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy cases.

105.     Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.

106.     Plaintiffs and their counsel do not have any interests adverse to those of the Classes.

107.     Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and would have no effective remedy.

108.     The class treatment of common questions of law and fact in this matter is superior to multiple individual actions or piecemeal litigation, in that it conserves the resources of the Court and litigants and promotes consistency and efficiency of adjudication.

109.     Defendants have acted and failed to act on grounds generally applicable to

Plaintiffs and the Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes.

110.     The factual and legal bases of Defendants' liability to Plaintiffs and Class Members are the same, resulting in injury to Plaintiffs and all other Class Members. Plaintiffs and Class Members have all suffered harm and damages as a result of Defendants' wrongful conduct.

111.     There are many questions of law and fact common to Plaintiffs and the Classes and which predominate over any questions that may affect only individual Class Members. Common and predominant questions for the Classes include but are not limited to the following:

a.     whether Defendants' circumvented Plaintiffs and Class Members' browser and software control in placing and using LSOs and other exploits described herein on Plaintiffs and Class Members' computers;

b.     whether Defendants' placement and use of LSOs and other exploits described herein was without consent, without authorization, and/or exceeding authorization;

c.     whether Defendants obtained and shared or caused to be obtained and shared Plaintiffs and Class Members' personal information through tracking using LSOs and other exploits described herein Defendants placed on their computers;

d.     what personal information of Plaintiffs and Class Members was obtained and continues to be retained and used by Defendants;

e.     what are the identities of third parties that obtained Plaintiffs and Class Members' personal information as a result of Defendants' conduct;

f.     whether Defendants' conduct described herein violates the Video Privacy Protection Act, 18 U.S.C. § 2710, et seq.;

g.     whether Defendants' acquisition of Plaintiffs and Class Members' personal information and use of Plaintiffs and Class Members' Computer Assets harmed Plaintiffs and

Class Members;

h.      whether Defendants' use of Plaintiffs and Class Members' Computer Assets damaged and/or diminished the utility and/or value of those Computer Assets;

i.      whether, as a result of Defendants' conduct, Plaintiffs and Class Members are entitled to equitable relief and/or other relief, and if so the nature of such relief; and

j.      whether, as a result of Defendants' conduct, Plaintiffs and Class Members are entitled to damages, punitive damages, and/or treble damages.

112.    The questions of law and fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

113.    Plaintiffs' claims for relief include those set forth below.

## CLAIMS FOR RELIEF

**CLAIM ONE:  Violation of the Electronic Communications Privacy Act**
**TITLE 18 UNITED STATES CODE, SECTION 2710, *et seq*. (Video Privacy Protection Act)**
**AS TO DEFENDANT HULU, LLC**

114.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

115.    Defendant Hulu is and was throughout the Class Period engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials in that Hulu offered to online consumers prerecorded video programs, including previously released and posted, and originally developed news, entertainment, educational, and general interest video programs, and so was, throughout the Class Period, a video tape service provider as defined in the Video Privacy Protection Act.

116.    Plaintiffs and Class Members were renters, purchasers, and/or subscribers of goods and/or services from Hulu and so were consumers as defined in the Video Privacy Protection Act.

117.    Hulu knowingly and without Plaintiffs and Class Members' consent disclosed to third parties, including online ad networks, metrics companies, and social networks, Plaintiffs

and Class Members' video viewing selections and personally identifiable information, , knowing that such disclosure included the disclosure of personally identifying information of Plaintiffs and Class Members and their requests for and/or obtaining of specific video materials and/or services from Hulu.

118.    Hulu's actions were therefore in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710(b)(1).

119.    Plaintiffs and Class Members, as to each of them, are entitled to $2,500 in liquidated damages.

120.    Plaintiffs and Class Members are entitled to equitable relief that includes Hulu's cessation of the conduct alleged herein.

121.    Plaintiffs and Class Members are entitled to equitable relief that includes an accounting of what records regarding their video materials requests and services were disclosed and to whom.

122.    Plaintiffs and Class Members are entitled to equitable relief that includes an accounting of Hulu's compliance 18 U.S.C. § 2710(e), regarding its destruction of personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected.

123.    Plaintiffs and Class Members seek punitive damages.

124.    Plaintiffs and Class Members are entitled reasonable attorneys' fees and other litigation costs reasonably incurred.

125.    Plaintiffs and Class Members request such other preliminary and equitable relief as the Court deems appropriate.

**CLAIM TWO:  Violation of the Privacy act**
**California General Laws, Chapter 214, Section 1B**

126.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

127.    Defendants circumvented Plaintiffs and Class Members browser privacy controls, conduct tracking in unreasonable and unexpected way, and used Plaintiffs and Class Members' Computer Assets to store LSOs and engage in other tracking exploits described herein.

Complaint

128.     Through the use of the LSOs and other exploits described herein, Defendants disclosed to the other third parties and/or caused to be disclosed to the other third parties on Plaintiffs and Class Members' Web-browsing information, which included facts of a highly private and sensitive information of a personal or intimate nature.

129.     Defendants did so repeatedly throughout the Class Period.

130.     Defendants did so knowing and intending to engage in conduct that Plaintiffs and Class Members did not reasonably expect.

131.     Defendants did so knowing Plaintiffs and Class Members' reasonably believed their privacy was protected.

132.     Defendants did so intending to circumvent the measures Plaintiffs and Class Members' had taken to protect their privacy.

133.     Defendants did so knowing their actions would seriously diminish, intrude upon, and invade Plaintiffs and Class Members' privacy.

134.     Defendants did so intending to seriously diminish, intrude upon, and invade Plaintiffs and Class Members' privacy.

135.     Defendants did so in a manner designed to evade detection by Plaintiffs and Class Members.

136.     Defendants had no legitimate, countervailing business interest in engaging in such conduct.

137.     Defendants' actions did unreasonably, substantially, and seriously interfered with Plaintiffs and Class Members' privacy.

138.     In addition, Defendants' conduct has caused and causes Plaintiffs and Class Members' irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs and Class Members' remedy at law is not adequate to compensate them for these inflicted, imminent, threatened, and continuing injuries, entitling Plaintiffs and Class Members to remedies including injunctive relief

139.     Plaintiffs and Class Members are entitled to equitable relief that includes Defendants' cessation of the conduct alleged herein.

140.    Plaintiffs and Class Members are entitled to equitable relief that includes an accounting of what personal information of theirs was collected, used, merge, and further disclosed to whom, under what circumstances, and for what purposes.

141.    As a proximate and direct result of Defendants' invasion of privacy, Plaintiffs and Class Members were harmed, including as detailed in the "Harm" section, above.

142.    Plaintiffs and Class Members are therefore entitled to damages in an amount to be determined at trial.

143.    Plaintiffs and Class Members request such other preliminary and equitable relief as the Court deems appropriate.

**CLAIM THREE:  Trespass to Chattel**
**as to all Defendants**

144.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

145.    Plaintiffs and Class Members were, during the Class Period, the owners and/or possessors of computers on which Defendants, surreptitiously and without consent, stored LSOs and other exploits described herein, whose Computer Assets were used by Defendants to do so, and whose personal information was collected by Defendants through its use of the LSOs and other exploits described herein they had stored on Plaintiffs and Class Members' computers.

146.    Defendants dispossessed Plaintiffs and Class Members of the use of their computers, software, and Internet connectivity by commandeering those resources for Defendants' own purposes.

147.    Defendants impaired the condition, quality, and value of Plaintiffs and Class Members' computers by their circumvention of Plaintiffs and Class Members' browser and software control, their storage and use of LSOs and other exploits described herein, and their use of those LSOs and other exploits described herein to collect and/or cause the collection of Plaintiffs and Class Members' personal information.

148.    Defendants' conduct constituted an ongoing and effectively permanent impairment of Plaintiffs and Class Members' computers in that Defendants' conduct affected Plaintiffs and Class Members in a substantial amount of their Web-browsing, throughout the

Class Period, through the use of LSOs and the artifacts of other exploits described herein that continue to reside on Plaintiffs and Class Members' computers, and through which Defendants obtained information the use of which they continue to enjoy.

149.    Plaintiffs and Class Members each had and have legally protected, privacy and economic interests in the their computers Assets and their personal information.

150.    Plaintiffs and Class Members sustained harm as a result of Defendants' actions, in that the expected operation and use of their computers Assets were altered and diminished on an ongoing basis.

151.    As a direct and proximate result of Defendants' trespass to chattels, interference, unauthorized access of and intermeddling with Plaintiffs and Class Members' Computer Assets, Plaintiffs and Class Members have been injured, as described above.

152.    Plaintiffs, individually and on behalf of the Class, seeks injunctive relief restraining Defendants from further such trespass to chattels and requiring Defendants to account for their use of Plaintiffs and Class Members' computer assets, account the personal information they have acquired, purge such data, and pay damages in an amount to be determined.

### CLAIM FOUR:  Violation of the Unfair Competition Law ("UCL")

### California Business and Professions Code § 17200, et seq.

153.    Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

154.    By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of the UCL and, as a result, Plaintiffs and the Class have suffered injury-in-fact and have lost money and/or property—specifically, personal information and the full value of their computers.

155.    Defendant's actions described above, including False Advertising, are in violation of California Business and Professions Code section 17500, et seq. and violations of the right of privacy enshrined in Article I, Section 1 of the Constitution of the State of California.

156.    In addition, Defendant's business acts and practices are unlawful, because they violate California Business and Professions Code section 17500, et seq., which prohibits false

advertising, in that they were untrue and misleading statements relating to Defendant's performance of services and with the intent to induce consumers to enter into obligations relating to such services, and regarding statements Defendant knew were false or by the exercise of reasonable care Defendant should have known to be untrue and misleading.

157.   Defendant's business acts and practices are also unlawful in that they violate the California Consumer Legal Remedies Act, California Civil Code, Sections 1647, et seq., 1750, et seq., and 3344, California Penal Code, section 502, and Title 18, United States Code, Section 1030. Defendant is therefore in violation of the "unlawful" prong of the UCL.

158.   Defendant's business acts and practices are unfair because they cause harm and injury-in-fact to Plaintiffs and Class Members and for which Defendant has no justification other than to increase, beyond what Defendant would have otherwise realized, its profit in fees from advertisers and its information assets through the acquisition of consumers' personal information. Defendant's conduct lacks reasonable and legitimate justification in that Defendant has benefited from such conduct and practices while Plaintiffs and the Class Members have been misled as to the nature and integrity of Defendant's services and have, in fact, suffered material disadvantage regarding their interests in the privacy and confidentiality of their personal information. Defendant's conduct offends public policy in California tethered to the the right of privacy set forth in the Constitution of the State of California, and California statutes recognizing the need for consumers to obtain material information with which they can take steps to safeguard their privacy interests, including California Civil Code, Section 1798.80.

159.   In addition, Defendant's modus operandi constituted a sharp practice in that Defendant knew or should have known that consumers care about the status of personal information and its privacy but were unlikely to be aware of the manner in which Defendant failed to fulfill its obligation to observe consumers' privacy expressed in their browser settings. Defendant is therefore in violation of the "unfair" prong of the UCL.

160.   Defendant's acts and practices were fraudulent within the meaning of the UCL because they are likely to mislead the members of the public to whom they were directed.

161.   As a result, Plaintiffs and the Class have suffered and will continue to suffer damages.

162.   Further, as a direct and proximate result of Defendant's willful and intentional actions, Plaintiffs and the Class have suffered damages in an amount to be determined at trial and, unless Defendant is restrained, Plaintiffs will continue to suffer damages.

## VII. PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

A.   Certify this matter as a class action.

B.   Enter judgment in favor of Plaintiffs and Class Members.

C.   Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class Members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D.   Award statutory damages to Plaintiffs and Class Members.

E.   Award compensatory damages to Plaintiffs and Class Members in amounts to be proved at trial.

F.   Award restitution against Defendants in amounts to be proved at trial.

G.   Award increased and/or treble damages in amounts to be proved at trial.

H.   Award liquidated damages in amounts to be proved at trial.

I.   Award punitive damages in the interest of justice.

J.   Award disgorgement of monies obtained through and as a result of unfair and/or deceptive acts and/or practices and/or unjust enrichment, in amounts to be proved at trial.

K.   Award Plaintiffs and Class Members pre- and post-judgment interest to the extent allowable.

L.   Make such orders or judgments as may be necessary to restore to Plaintiffs and Class Members any money and property acquired by Defendants through wrongful conduct.

1          M.          Award Plaintiffs and Class Members reasonable litigation expenses and attorneys'

2     fees.

3          N.          Award such other and further relief as equity and justice may require or allow.

4

5                                                                Respectfully submitted,

6     Dated this 29th day of July 2011

7

8                                                                By: David C. Parisi

9     Scott A. Kamber (not admitted)
      skamber@kamberlaw.com
10    David A. Stampley (not admitted)
      dstampley@kamberlaw.com
11    **KAMBERLAW, LLC**
      100 Wall Street,  23rd Floor
12    New York, New York 10005
      Telephone:  (212) 920-3072
13    Facsimile:  (212) 920-3081

14    David C. Parisi (SBN 162248)
      dcparisi@parisihavens.com
15    Suzanne Havens Beckman (SBN 188814)
      shavens@parisihavens.com
16    Azita Moradmand (SBN 260271)
      amoradmand@parisihavens.com
17    **PARISI & HAVENS LLP**
      15233 Valleyheart Drive
18    Sherman Oaks, California 91403
      Telephone:  (818) 990-1299
19    Facsimile:  (818) 501-7852

20

21    Counsel for Plaintiffs

22

23

24

25

26

27

28
                                                Complaint