1   RANDALL W. EDWARDS (S.B. #179053)
    redwards@omm.com
2   KATHERINE M. ROBISON (S.B. #221556)
    krobison@omm.com
3   O'MELVENY & MYERS LLP
    Two Embarcadero Center, 28th Floor
4   San Francisco, CA  94111-3823
    Telephone:      (415) 984-8700
5   Facsimile:      (415) 984-8701

6   VICTOR JIH (S.B. #186515)
    vjih@omm.com
7   BRIAN FINKELSTEIN (S.B. #261000)
    brianfinkelstein@omm.com
8   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
9   Los Angeles, CA  90067-6035
    Telephone:      (310) 553-6700
10  Facsimile:      (310) 246-6779

11
    Attorneys for Defendant
12  HULU, LLC

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15                **SAN FRANCISCO DIVISION**

16

17                                    | Case No.  3:11 -CV-03764-LB

18                                    | **NOTICE OF MOTION AND MOTION TO**
                                      | **DISMISS FIRST AMENDED,**
19                                    | **CONSOLIDATED CLASS ACTION**
                                      | **COMPLAINT**
20  IN RE HULU PRIVACY LITIGATION     |
                                      | Hearing Date:      June 7, 2012
21                                    | Time:              11:00 a.m.
                                      | Place:             Courtroom C
22                                    | Judge:             Hon. Laurel Beeler

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 2

I.     INTRODUCTION ................................................................................ 2

II.    BACKGROUND ................................................................................. 3

III.   LEGAL STANDARD ......................................................................... 5

IV.   ARGUMENT ...................................................................................... 5

    A.   Plaintiffs' Lack Standing Because They Have No Actionable Injury ........ 5

    B.   Plaintiffs Cannot Maintain Claims Under the CFAA or CCCL ................. 8

       1.   The Alleged Injuries Do Not Qualify as "Losses" Under the Acts ................................................................................................ 8

       2.   Plaintiffs Have Not Alleged Facts Showing That Hulu Acted "Without Permission," "Without Authorization," or "Exceeded Authorization." ............................................................ 12

    C.   Plaintiffs' Claim Under the VPPA Fails on Several Grounds ................. 14

       1.   Hulu Is Not a "Video Tape Service Provider." ............................ 15

       2.   Any Alleged Disclosures were Made "Incident to the Ordinary Course of [Hulu's] Business" and Are Therefore Excepted from the Reach of the Act ............................................ 16

       3.   Plaintiffs Are Not "Consumers" Under the VPPA ...................... 17

    D.   Plaintiffs' Trespass to Chattel Claim Fails ............................................. 17

       1.   Hulu's Conduct Did Not Result in Damage to Plaintiffs.............. 18

       2.   Plaintiffs Cannot Show that Hulu Acted Without Authorization ................................................................................ 19

    E.   There Can Be No Invasion of Privacy Claim Where Plaintiffs Have No Reasonable Expectation of Privacy .................................................... 20

    F.   Plaintiffs' Negligence Claim Fails Because No Legal Duty or Injury Exists ...................................................................................................... 21

       1.   Hulu Does Not Owe an Independent Legal Duty to Plaintiffs ...................................................................................... 21

       2.   Plaintiffs Have Not Alleged an Appreciable, Non-Speculative Injury ...................................................................... 21

    G.   Plaintiffs' Claim Under the Unfair Competition Law Fails..................... 22

       1.   Plaintiffs Do Not Allege They Suffered a Loss of Money or Property as Required by the Unfair Competition Law................ 22

       2.   Hulu's Alleged Conduct Is Not Unlawful, Fraudulent, or Unfair ........................................................................................... 23

          a.   Hulu's Actions Were Not "Unlawful." ............................. 23

**TABLE OF CONTENTS**
(continued)

**Page**

b.      Hulu's Actions Were Not "Fraudulent." ........................... 23

c.      Hulu's Actions Were Not "Unfair." ................................ 24

V.      CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aas v. Superior Court*,
24 Cal. 4th 627 (2000) ........................................................................................ 22

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) ......................................................................................... 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) ............................................................................................. 5

*AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ........................................................... 23

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010).................................................... 12, 13

*Baxter v. Intelius, Inc.*,
No. SACV 09-1031 AG, 2010 WL 3791487 (C.D. Cal. Sep. 16, 2010) ................................ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 4, 5

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009)............................................................................... 7

*Bose v. Interclick, Inc.*,
No. 10 Civ. 9183 (DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ................. 9, 10, 11

*Buza v. Yahoo!, Inc.*,
No. C 11-4422 RS, 2011 WL 5041174 (N.D. Cal. Oct. 24, 2011)............................ 4

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...................................................................................... 24

*Chance v. Avenue A, Inc.*,
165 F. Supp. 2d 1153 (W.D. Wash 2001)..................................................... 11, 23

*Civic W. Corp. v. Zila Indus., Inc.*,
66 Cal. App. 3d 1 (1977).................................................................................... 19

*Cohen v. Facebook, Inc.*,
No. C 10-5282 RS, 2011 WL 3100565 (N.D. Cal. June 28, 2011) ........................ 20

*Compuserve Inc. v. Cyber Promotions, Inc.*,
962 F. Supp. 1015 (S.D. Ohio 1997) ................................................................. 20

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997)................................................................................ 4

*Creative Computing v. Getloaded.com LLC*,
386 F.3d 930 (9th Cir. 2004)............................................................................. 10

*Czech v. Wall Street on Demand, Inc.*,
674 F. Supp. 2d 1102 (D. Minn. 2009) ........................................................ 10, 11

*Daimler Chrysler Corp. v. Cuno*,
547 U.S. 332 (2006)............................................................................................. 5

**TABLE OF AUTHORITIES**
(continued)

Page

*Deering v. CenturyTel, Inc.*,
No. CV-10-63-BLG-RFC, 2011 WL 1842859 (D. Mont. May 16, 2011)................................ 4

*Del Vecchio v. Amazon.com Inc.*,
No. C11-366-RSL, 2011 WL 6325910 (W.D. Wash. Dec. 1, 2011) ................................. 10, 12

*Dirkes v. Borough of Runnemede*,
936 F. Supp. 235 (D.N.J. 1996) ......................................................................................... 15

*Drum v. San Fernando Valley Bar Ass'n*,
182 Cal. App. 4th 247 (2010) ...................................................................................... 24, 25

*Duarte v. Zachariah*,
22 Cal. App. 4th 1652 (1994) ............................................................................................ 22

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................................. 18

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)................................ 11, 14

*Fink v. Time Warner Cable*,
810 F. Supp. 2d 633 (S.D.N.Y. 2011)................................................................................ 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000).......................................................................................................... 5, 7

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009)............................................................................................ 17

*Hill v. Nat'l Coll. Athletic Ass'n.*,
7 Cal. 4th 1 (1994) ............................................................................................................ 20

*In re Apple & AT&TM Antitrust Litig.*,
596 F. Supp. 2d 1288 (N.D. Cal. 2008) ................................................................. 11, 13, 23

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) ............................................................................. 17

*In re Doubleclick, Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)...................................................................... 6, 10, 11

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ......................................................................... 14, 22

*In re iPhone Application Litig.*,
No. 5:11-md-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .................... *passim*

*In re JetBlue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................................. 6

*In re Zynga Privacy Litig.*,
No. 5:10-cv-04680-JW, 2011 WL 7479170 (N.D. Cal. June 15, 2011) .......................... 10, 13

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ............................................................................................... 18, 19

*Jamgotchian v. Slender*,
170 Cal. App. 4th 1384 (2009) ..................................................................................... 18, 19

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Johnson v. Riverside Healthcare Sys., LP,*
    534 F.3d 1116 (9th Cir. 2008).................................................................................................. 5

4

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009)................................................................................................ 23

5

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ...................................................................................................... 22, 24

6

*LaCourt v. Specific Media, Inc.*,
    No. SACV 10-1256-GW (JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011).............. 6, 23

7

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004)................................................................................................................... 15

8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).............................................................................................................. 6, 8

9

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009).............................................................................. 8, 12, 13, 15

10

*Lyons v. Coxcom, Inc.*,
    No. 08-CV-02047, 2009 WL 347285 (S.D. Cal. Feb. 6, 2009) ............................................ 11

11

*Mortensen v. Bresnan Commc'n, L.L.C.*,
    No. CV 10-13-BLG-RFC, 2010 WL 5140454 (D. Mont. Dec. 13, 2010)............................ 20

12

*Multiven, Inc. v. Cisco Sys., Inc.*,
    725 F. Supp. 2d 887 (N.D. Cal. 2010) ........................................................................ 8, 9, 12

13

*Pantoja v. Countrywide Home Loans, Inc.*,
    640 F. Supp. 2d 1177 (N.D. Cal. 2009) .............................................................................. 23

14

*Quantlab Tech. Ltd (BVI) v. Godlevsky*,
    719 F. Supp. 2d 766 (S.D. Tex. 2010) .................................................................................. 9

15

*Ses Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*,
    690 F. Supp. 2d 1267 (M.D. Ala. 2010) .............................................................................. 13

16

*Shamrock Foods Co. v. Gast*,
    535 F. Supp. 2d 962 (D. Ariz. 2008)................................................................................... 12

17

*Sheehan v. S.F. 49ers, Ltd.*,
    45 Cal. 4th 992 (2009) ..................................................................................................... 20, 21

18

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)................................................................................................... 5

19

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) .............................................................................. 23

20

*TBG Ins. Servs. Corp. v. Superior Court*,
    96 Cal. App. 4th 443 (2002) ................................................................................................ 21

21

*Thompson v. Home Depot, Inc.*,
    No. 07-cv-1058 IEG (WMC), 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) ..................... 22

22

*Ticketmaster Corp. v. Tickets.com, Inc.*,
    No. 99CV7654, 2000 WL 1887522 (C.D. Cal. Aug. 10, 2000) ........................................... 19

23

24

25

26

27

28

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

## TABLE OF AUTHORITIES
(continued)

Page

*Unique Functional Prods. v. JCA Corp.*,
No. 9-cv-265-JM-MDD, 2012 U.S. Dist. LEXIS 13457
(S.D. Cal. Feb. 3, 2012) .............................................................................. 23

*United States v. Nosal*,
642 F.3d 781 (9th Cir. 2011)......................................................................... 13

*Van Slyke v. Capital One Bank*,
No. C 07-00671 WHA, 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ................... 24

*Vega v. JPMorgan Chase Bank, N.A.*,
654 F. Supp. 2d 1104 (E.D. Cal. 2009)........................................................... 23

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)........................................................................ 24

*Wilkinson v. Times Mirror Corp.*,
215 Cal. App. 3d 1034 (1989)........................................................................ 21

*Zaslow v. Kroenert*,
29 Cal. 2d 541 (1946) .................................................................................. 19

*Zepeda v. PayPal, Inc.*,
777 F. Supp. 2d 1215 (N.D. Cal. 2011) ........................................................... 24

### STATUTES

18 U.S.C. § 1030............................................................................... 8, 9, 12, 13

18 U.S.C. § 2710................................................................................ 15, 16, 17

Cal. Bus. & Prof. Code § 17200 ............................................................... 22, 23

Cal. Bus. & Prof. Code § 17204 ..................................................................... 22

Cal. Bus. & Prof. Code § 17535 ..................................................................... 23

Cal. Penal Code § 502................................................................... 8, 11, 12, 14

### OTHER AUTHORITIES

*Black's Law Dictionary* (9th Ed. 2009) ...................................................... 15, 17

*Collins English Dictionary*, available online:
http://www.collinslanguage.com/results.aspx?text=subscribe (last visited
March 12, 2012)........................................................................................ 15, 17

Restatement (Second) of Torts § 218 (1965) ............................................... 18, 19

Restatement (Second) of Torts § 252 (1965) ............................................... 19, 20

Restatement (Second) of Torts § 902A (1965) .............................................. 19, 20

S. Rep. No. 100-599 at 6, (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-7 ............ 15, 16

### RULES

Fed. R. Civ. P. 9 ........................................................................................... 23

Fed. R. Civ. P. 12 ........................................................................................... 1

1           <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2   TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

3         NOTICE IS HEREBY GIVEN that on June 7, 2012 at 11:00 a.m., or as soon thereafter as

4 counsel may be heard on this matter, in Courtroom C, 15th Floor of the above-captioned Court, at

5 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Hulu, LLC ("Hulu") will and

6 hereby does move the Court to dismiss the First Amended, Consolidated Class Action Complaint

7 ("Complaint") in this action. This motion is brought pursuant to Federal Rules of Civil Procedure

8 12(b)(1) & (b)(6)) and is based on this Notice of Motion and Motion, the attached Memorandum

9 of Points and Authorities, the Declaration of Katherine M. Robison ("Robison Decl.") and its

10 exhibits, the arguments of counsel, and any other matters properly considered by the Court at the

11 hearing on this motion.

12         Hulu seeks an order, pursuant to Federal Rules of Civil Procedure 12(b)(1) & (b)(6),

13 dismissing with prejudice Plaintiffs' Complaint and each of the claims alleged therein for lack of

14 subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

15           <u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

16        1. Should Plaintiffs' claims be dismissed for lack of subject matter jurisdiction where

17 they lack cognizable injury sufficient to confer standing under Article III?

18        2. Do Plaintiffs' Computer Fraud and Abuse Act (CFAA) and California Computer

19 Crime Law (CCCL) claims fail where they do not allege a recoverable "loss" or facts establishing

20 that Hulu acted without permission, without authorization, or exceeded authorization?

21        3. Where Hulu is not a "video tape service provider," Hulu's alleged conduct falls

22 within the exception for disclosures made incident to the ordinary course of business, and

23 Plaintiffs are not "consumers," must Plaintiffs' Video Privacy Protection Act (VPPA) claim be

24 dismissed?

25        4. Does Plaintiffs' failure to allege facts establishing damage and lack of

26 authorization doom their trespass to chattel claim?

27        5. Where Plaintiffs admittedly expect websites to track users and Hulu's Privacy

28 Policy specifically informs them of this activity, such that there can be no reasonable expectation

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

1   of privacy under the circumstances, must Plaintiffs' invasion of privacy claim be dismissed?

2           6.   Where Plaintiffs fail to allege a cognizable legal duty or injury, must Plaintiffs'

3   negligence claim be dismissed?

4           7.   Where Plaintiffs fail to allege the required loss of money or property, and fail to

5   allege facts showing that Hulu's conduct was unlawful, fraudulent, or unfair, must Plaintiffs'

6   Unfair Competition Law (UCL) claim be dismissed?

7                   **MEMORANDUM OF POINTS AND AUTHORITIES**

8   **I.     INTRODUCTION**

9           Plaintiffs' Complaint details their personal dislike of certain data collection practices, but

10  fails to plead facts showing that Hulu is legally liable under the myriad causes of action Plaintiffs

11  assert.  The details vary according to the different claims, but the Complaint suffers from two

12  fundamental problems:  Plaintiffs do not allege any actionable economic harm sufficient to confer

13  constitutional standing or the harm required as elements of their claims, and they cannot force-fit

14  their generalized grievance into a framework of inapplicable laws that do not prohibit the

15  challenged conduct.

16          Plaintiffs' lawsuit is similar to several other recent privacy class actions where the

17  plaintiffs failed to allege any cognizable theory of harm.  Plaintiffs' primary complaint is that

18  Hulu deprived them of the value of their personal information.  But courts have again and again

19  rejected that theory of harm.  Plaintiffs also attempt to plead injury by asserting in a conclusory

20  manner that the alleged information collection diminished the performance of their computers by

21  slowing their web-browsing.  That theory fails because Plaintiffs allege no facts quantifying this

22  claimed effect and, even more fundamentally, a close reading of the Complaint reveals that what

23  they have alleged is, at best, the slowing of their access to www.hulu.com ("hulu.com") itself.

24  That does not establish an actionable diminishment of their computer's performance.  In addition,

25  Plaintiffs cannot establish standing by speculating that they lost the value of security features on

26  their computers (measured by some portion of the computer's purchase price); they fail to allege

27  any facts to quantify any such claimed loss.  Plaintiffs' claims should be dismissed because they

28  allege no facts showing that they actually suffered a cognizable injury from Hulu's conduct.

1    In addition to Plaintiffs' lack of harm, a close examination of each of Plaintiffs' claims

2    shows that their contentions also do not satisfy the required elements for liability.  The claims

3    under the CFAA and the CCCL fail because Plaintiffs cannot show that Hulu acted without

4    permission, without authorization, or in excess of authorization, as those terms are defined under

5    the Acts.  Their VPPA claim fails because the Complaint does not allege facts sufficient to find

6    that Plaintiffs are "consumers" or that Hulu is a "video tape service provider."  Moreover, even if

7    the VPPA applies, Hulu's alleged conduct falls within an express exception for disclosures

8    incident to the ordinary course of business.  Plaintiffs' trespass claim fails because they cannot

9    show that Hulu was acting without their consent, given the clear terms of its Privacy Policy.

10   Likewise, the invasion of privacy claim fails because Plaintiffs could not have had a reasonable

11   expectation of privacy given the terms of the Privacy Policy and Plaintiffs' admitted expectations

12   of Hulu's conduct.  Plaintiffs' negligence claim fails because Hulu has not breached a legally

13   recognized duty of care.  And, finally, their UCL claim fails because Hulu's conduct was not

14   unlawful, fraudulent, or unfair.  Given these failures, the entire Complaint should be dismissed.

15   **II.    BACKGROUND**

16   Founded in 2007, Hulu pioneered the first major free service to stream professional video

17   content to users across the Internet: hulu.com.  The launch marked the first time that major video-

18   content creators—then including NBC Universal and News Corporation—agreed to stream free

19   content through a third-party service.  Today Hulu provides a large selection of content from over

20   260 companies.  Hulu users can view current primetime TV hits and classics, and a wide array of

21   movies and documentaries.  Hulu's basic service is free.  Hulu also offers a paid service (Hulu

22   Plus) that provides access to additional, high-definition content on additional devices.[1]  Both

23   Hulu's free and paid services to some degree rely on advertising for funding.  Currently, Hulu

24   partners with hundreds of advertisers.

25   Plaintiffs allege that Hulu allowed a metrics company, KISSmetrics, to place code

26   containing tracking identifiers on their computers—in the browser cache, Adobe Flash Local

27

28   [1]    See Frequently Asked Questions regarding Hulu Plus (available at
http://www.hulu.com/plus (last accessed March 22, 2012)).

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

Stored Objects (LSOs), or HTML5 DOM local storage.[2]  This code, when accessed, allegedly regenerated (or "respawned") previously deleted "cookies," which allowed data to be collected regarding Plaintiffs.  (*See, e.g.*, Compl. ¶¶ 30-32, 34-37, 40, 46, 69.)  Premised on this conduct, Plaintiffs bring seven causes of action, alleging violations of the VPPA, CFAA, CCCL, UCL, California's constitutional right to privacy, and common-law trespass and negligence.  Plaintiffs seek to represent a nationwide class of "All individuals and entities in the United States who visited Hulu.com during the Class Period," March 4, 2011 to July 28, 2011.  (*Id.* ¶¶ 95, 96.)  Plaintiffs also seek to represent a subclass of the class members who "viewed video content" on hulu.com.  (*Id.* ¶ 97.)  All named plaintiffs allegedly visited hulu.com during the class period.  (*Id.* ¶ 1.)  But that is the only specific allegation about the individual Plaintiffs.  None of Plaintiffs allege that he or she paid any money to Hulu or even viewed video content on hulu.com.

As a condition of using hulu.com, all users (including Plaintiffs and Class Members) must consent to the Privacy Policy, which specifically informs users of the tracking practices at issue here.  Hulu revised its Privacy Policy once during the class period;[3] but both versions of the policy specifically inform users that Hulu will use cookies (which are stored on their hard drives) to automatically collect information about them.  (Ex. A to Robison Decl. at pp. 2-3, 5; *Id.* Ex. B at pp. 1-2.)  The Policy also makes clear that Hulu will use the information collected to serve up targeted advertising on hulu.com.  (*Id.* Ex. A at pp. 5; *Id.* Ex. B at pp. 2, 3.)  It even informs users that Hulu may share the information with third-party service providers, such as companies providing business analytics, data processing, and advertising services.  (*Id.* Ex. A at pp. 2-4, 6;

---

[2]     Hulu accepts the allegations in the Complaint for the purposes of this motion only.

[3]     Hulu updated its November 17, 2010 policy on June 30, 2011.  Plaintiffs incorporated the Privacy Policy by reference into their Complaint, *see* Compl. ¶¶ 61-62, 164, 182, 191; therefore, it is appropriate for the Court to consider the Policy on this motion, *Twombly*, 550 U.S. at 568 n.13; *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997); *see also Deering v. CenturyTel, Inc.*, No. CV-10-63-BLG-RFC, 2011 WL 1842859, at *1 n.1 (D. Mont. May 16, 2011) (where complaint alleges that online service's privacy policy provided inadequate or misleading information, "defendant may offer the [privacy policy] and the court may treat the [policy] as part of the complaint for the purposes of a Rule 12(b)(6) motion"); *Buza v. Yahoo!, Inc.*, No. C 11-4422 RS, 2011 WL 5041174, at *2 n.3 (N.D. Cal. Oct. 24, 2011) (since Yahoo!'s terms of use were mentioned in the complaint, permissible to consider them on motion to dismiss); *Baxter v. Intelius, Inc.*, No. SACV 09-1031 AG, 2010 WL 3791487, at *1-3 (C.D. Cal. Sep. 16, 2010) (incorporating by reference portion of defendant's website referred to in complaint).

1   *Id*. Ex. B at pp. 3-4.)  Regarding targeted advertising, for example, the Policy additionally states

2   that Hulu "may enter into agreements with outside companies that possess the technology that

3   allows us to customize the advertising and marketing messages you receive while using"

4   hulu.com.  (*Id*. Ex. A at p. 3; *Id*. Ex. B at p. 3.)  By voluntarily accessing hulu.com, Plaintiffs

5   bound themselves to the Privacy Policy and consented to the practices disclosed in it.

6   ### III.    LEGAL STANDARD

7          "A Rule 12(b)(6) dismissal may be based on either 'lack of a cognizable legal theory' or

8   'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside*

9   *Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008).  The Federal Rules of Civil

10  Procedure "require[] more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

11  544, 555 (2007).  A formulaic recitation of the elements of the claims will not suffice, and the

12  court cannot assume the truth of conclusory allegations unsupported by facts.  *See Ashcroft v.*

13  *Iqbal*, 556 U.S. 662 (2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

14  (court also cannot accept "unwarranted deductions" or "unreasonable inferences").  Nor can the

15  Court assume "the [plaintiff] can prove facts which [he] has not alleged."  *Associated Gen.*

16  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  Thus, if

17  the facts alleged in the complaint, stripped of their rhetoric and conclusory allegations, would not

18  support a verdict for Plaintiffs, the Complaint must be dismissed.

19  ### IV.    ARGUMENT

20         A central flaw that dooms each of Plaintiffs' claims is the failure to allege a cognizable

21  injury.  But each claim also fails for additional, claim-specific reasons, as discussed below.

22  ####    A.    Plaintiffs' Lack Standing Because They Have No Actionable Injury.

23         Under Article III of the U.S. Constitution, Plaintiffs must have suffered a cognizable legal

24  injury to have standing to assert each claim.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

25  *(TOC), Inc*., 528 U.S. 167, 180-81 (2000); *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352

26  (2006) ("plaintiff must demonstrate standing for each claim he seeks to press").  Plaintiffs must

27  show that they have suffered an "injury in fact" that is concrete and particularized, and actual or

28  imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

1  (1992).  Plaintiffs identify no facts showing that Hulu's alleged activities caused them "injury in

2  fact" sufficient to sustain their claims.

3       Plaintiffs allege they were injured because they lost the economic value of their personal

4  information when Hulu allegedly shared this information with others, thereby reducing its

5  scarcity and depriving Plaintiffs the opportunity to engage in a value exchange with others using

6  their information.  (Compl. ¶¶ 73-75.)  But courts repeatedly have held that the collection or

7  sharing of an individual's personal information does not constitute a loss to that individual.  *See,*

8  *e.g.*, *In re iPhone Application Litig.*, No. 5:11-md-02250-LHK, 2011 WL 4403963, at *6 (N.D.

9  Cal. Sept. 20, 2011) (dismissing claims under Article III because no harm resulted from the

10  alleged collection and tracking of plaintiffs' personal information); *LaCourt v. Specific Media,*

11  *Inc.*, No. SACV 10-1256-GW (JCGx), 2011 WL 1661532, at *4-5 (C.D. Cal. Apr. 28, 2011)

12  (dismissing claims under Article III because no injury resulted from the alleged sharing of

13  personally identifiable information obtained using Adobe Flash LSOs); *In re JetBlue Airways*

14  *Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("There is . . . no support for the

15  proposition that an [individual's] personal information has or had any compensable value in the

16  economy at large."); *In re Doubleclick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y.

17  2001) (alleged unauthorized collection of personal information using "cookies" results in no

18  economic loss).

19       Plaintiffs also assert that the storage of code in Adobe Flash LSOs diminished the

20  performance of their computers and Internet connectivity, which constitutes an interruption in

21  service.  (Compl. ¶¶ 76, 77.)  But the factual allegations make clear that Plaintiffs did not

22  experience a slowing of their computer performance or Internet connectivity generally, but at

23  most experienced slower performance on hulu.com.  (*Id.* ¶¶ 35, 40, 46, 69, 76.)  Specifically,

24  Plaintiffs allege that their Web-browsing was slowed by Hulu's storage of data in Adobe Flash

25  LSOs because it required the transfer of larger files during download, causing the webpage to

26  load more slowly than if data stored in "traditional" http cookies were used.  (*Id.* ¶¶ 46, 76.)

27  Plaintiffs allege that the KISSmetrics code—allegedly embedded in Hulu's Web page—accessed

28  the Flash LSOs.  (*Id.* ¶ 69.)  As such, the code stored in the Flash LSOs was only accessed and

1   transferred over the Internet when Plaintiffs visited hulu.com, and so the only webpage that may

2   have been affected was hulu.com.  Plaintiffs have no basis to claim a cognizable injury to their

3   computers where Hulu, at most, caused its own website to load more slowly than it would have if

4   Hulu had used different information collection practices.  Plaintiffs fail to allege any performance

5   problem with their computers sufficient to establish injury in fact.[4]  (Compl. ¶ 76.)

6        Plaintiffs also allege that "Plaintiffs and Class Members" expended time, money, and

7   resources to investigate and repair their computers.  (*Id*. ¶ 90.)  They do not provide any facts

8   about what repairs were necessary, what repairs were made, or how much they actually spent

9   taking remedial action.  Plaintiffs speculate that remediation could cost between $500 to $1,000

10  per computer.  *Id.*  But the need for any potential remediation, let alone in the cited amounts, is

11  unsupported by any factual allegations.  Their hypothetical conclusion is insufficient for standing.

12  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (finding lack of standing because of

13  the "conjectural and hypothetical nature" of the alleged injury).

14       For the same reason, Plaintiffs cannot base standing on their allegation that their losses

15  "potentially include the purchase of new computer hardware and operating systems" because

16  preinstalled security features were rendered useless.  (Compl. ¶¶ 92, 93.)  Plaintiffs simply

17  assume that the preinstalled security features account for some unknown portion of the

18  computer's purchase price and that those features lost value because of Hulu's alleged conduct.

19  (*Id*. ¶ 93.)  But absent an allegation that some quantifiable amount has been lost, this injury is too

20  speculative for Article III purposes.  *Friends of the Earth, Inc*., 528 U.S. at 180-81.  It is unclear

21  whether Plaintiffs attempt to quantify this alleged loss when they make allegations regarding the

22  range of costs for after-market security software, which allegedly might provide "continued

23  security protection."  (Compl. at ¶ 94.)  Regardless, such an allegation could not save them

24  because there is no allegation that any of the Plaintiffs actually purchased such software, or for

25  what amount.  (*Id*.)  Moreover, there is no allegation that either the preinstalled security features

26  ───────────────

   [4]     Plaintiffs also make an unsupported allegation that Hulu acquired the use of the browser

27  cache and HTML5 DOM storage without payment, but they make no allegation that such use
    actually caused them any cognizable injury.  (*See, e.g*., Compl. ¶ 75.)  These unsupported and

28  unquantified allegations are insufficient.  In any event, any claim of diminished performance from
    these tracking codes would fail for the same reason discussed above.

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

1  or after-market security software were intended to protect Plaintiffs' computers from the tracking

2  techniques at issue.  There are, therefore, no facts supporting an inference that the utility or value

3  of any software—which Plaintiffs may or may not have purchased for an unknown amount—was

4  lost.[5]

5          **B.     Plaintiffs Cannot Maintain Claims Under the CFAA or CCCL.**

6          In sharp contrast to the type of claim asserted in this case, the CFAA was enacted to

7  prevent computer hackers from accessing computers to steal information or to disrupt or destroy

8  computer functionality.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130-31 (9th Cir.

9  2009).  The CFAA is primarily a criminal statute, but provides a civil right of action if the

10  plaintiff suffered "loss" from the violation.  *Id.* at 1131; *see also* 18 U.S.C. § 1030(g).  The CCCL

11  "has similar elements to" the CFAA, and thus courts often interpret them together.  *Multiven, Inc.*

12  *v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010).  Like the CFAA, the CCCL is

13  intended to protect against tampering, interference, damage, and unauthorized access to computer

14  data or systems.  Cal. Penal Code § 502(a).

15          Plaintiffs cannot state a claim under these ill-fitting statutes for two central reasons:  they

16  have not alleged facts establishing either (1) the specific type and quantity of economic injury

17  required for a civil claim; or (2) facts showing that Hulu acted without authorization, without

18  permission, or exceeded authorization, as required under the Acts.

19          **1.      The Alleged Injuries Do Not Qualify as "Losses" Under the Acts.**

20          A civil action under the CFAA is limited to specific types of harm and, under the

21  circumstances alleged here, also requires losses to exceed a specific threshold.  18 U.S.C.

22  §§ 1030(c)(4)(A)(i) & 1030(g).  In particular, a plaintiff must have suffered "loss to 1 or more

23  persons during any 1-year period . . . aggregating to at least $5,000 in value."  *Id.*

24

25          [5]     In addition, Plaintiffs' complaint is insufficient to establish standing even as to the
statutory claims because it lacks individualized factual allegations of a violation or a

26  particularized injury of Plaintiffs themselves, as opposed to making generic allegations about the
putative class in general.  *Lujan*, 504 U.S. at 561 n.1 (requiring personal risk of injury from

27  alleged statutory violation).  Moreover, whether a claimed statutory violation as to a plaintiff can,
without more, establish injury under Article III is a matter presently pending before the U.S.

28  Supreme Court.  *See First Am. Fin. Corp. v. Edwards*, SC Case No. 10-708, argued Nov. 28,
2011.

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

§ 1030(c)(4)(A)(i)(I); Compl. ¶ 161.  The CFAA limits "loss" to "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).  Only loss falling within this definition is recoverable.  *See, e.g.*, *Multiven, Inc.*, 725 F. Supp. 2d at 894 (costs associated with investigating intrusions into a computer network and taking subsequent remedial measure are CFAA losses); *Quantlab Tech. Ltd (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D. Tex. 2010) (under the CFAA "the term 'loss' encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption").

Recognizing this, Plaintiffs state the unsupported conclusion that "Plaintiffs and the Class Members" suffered loss "that exceed[s] five thousand dollars ($5,000) in costs to mitigate Defendant's invasive actions by expending time, money, and resources, to investigate and repair their computers."  (Compl. ¶ 90.)  Despite this assertion, Plaintiffs have not alleged facts showing that they actually suffered this loss, nor do they identify or quantify actual expenditures, investigations, or repairs made.  These failures are fatal.  *See In re iPhone*, 2011 WL 4403963, at *4 (CFAA claim failed where there were no allegations as to the amount of economic harm suffered by plaintiffs and insufficient allegations regarding the fact of harm); *Bose v. Interclick, Inc.*, No. 10 Civ. 9183 (DAB), 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011) (failure to include specific allegation as to the cost of repairing or investigating the alleged damage to the computer fatal to CFAA claim).  While Plaintiffs allege a "computer forensics expert" estimated how much it **may** cost to repair each computer, such an estimated, potential expenditure is not actual loss.

Likewise, Plaintiffs' allegations regarding their presumed expenditure for factory-installed security features and the general costs of security software are insufficient under the CFAA.  (Compl. ¶¶ 93-94.)  Even assuming such expenditures were made (which is not clear) and could be quantified (which Plaintiffs have not done), any such expenditure took place **before** Hulu's alleged CFAA violation.  As the case law indicates, the CFAA only reaches expenditures made **as**

1    *a result* of the violation.  *See Creative Computing v. Getloaded.com LLC,* 386 F.3d 930, 935-36

2    (9th Cir. 2004) (CFAA "require[s] that the impairment 'causes' the $5,000 aggregate loss in a

3    year"); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 640 (S.D.N.Y. 2011) (CFAA loss

4    measured by amount expended to "restore[] ... [the] data, program, system, or information to its

5    condition prior to" the violation); *Doubleclick*, 154 F. Supp. 2d at 521 (legislative history makes

6    "clear that Congress intended the term 'loss' to target remedial expenses borne by victims").

7        In addition, the alleged injury stemming from the purported economic value of Plaintiffs'

8    personal information is insufficient under the CFAA.  *See, e.g.*, *Doubleclick*, 154 F. Supp. 2d at

9    525 (plaintiffs failed to allege loss under the CFAA based on the unauthorized placement of

10   cookies on plaintiffs' computers:  "although demographic information is valued highly . . . the

11   value of its collection has never been considered [an] economic loss to the subject"); *In re Zynga*

12   *Privacy Litig*., No. 5:10-cv-04680-JW, 2011 WL 7479170 (N.D. Cal. June 15, 2011) (same);

13   *Interclick*, 2011 WL 4343517, at *5 (same).  This is true even if one presumes—since it has not

14   been clearly alleged, *e.g*., Compl. ¶¶ 29-32, 62-64, 79—that Plaintiffs took steps to prevent the

15   data from being collected.  *Interclick*, 2011 WL 4343517, at *5.

16       Courts have recognized that bare allegations of impairment to a computer system are

17   insufficient under the CFAA.  Compl. ¶¶ 76, 161; *Interclick*, 2011 WL 4343517, at *6

18   (unsupported allegations of interruption to service insufficient to establish loss under CFAA

19   where plaintiff failed to allege facts demonstrating that, even if the Adobe Flash LSOs could

20   reach up to 100 kilobytes in size, the files caused a slowdown or shutdown to the computer); *Del*

21   *Vecchio v. Amazon.com Inc.*, No. C11-366-RSL, 2011 WL 6325910 (W.D. Wash. Dec. 1, 2011)

22   (allegation that tracking cookies consumed computer resources and diminished the computers'

23   performance and value insufficient where plaintiffs failed to allege any discernible performance

24   difference, let alone one sufficient to result in damage).  Plaintiffs' theory of injury here is almost

25   identical to the theory of loss found insufficient in *Czech v. Wall Street on Demand, Inc*., where

26   the plaintiff sought recovery for the alleged slowing of cellphone performance and the use of the

27   phone's limited hard-drive storage from unwanted text messages.  674 F. Supp. 2d 1102, 1117

28   (D. Minn. 2009).  The *Czech* court rejected the plaintiff's CFAA claim because of the failure to

allege or quantify how the cumulative effect of the unwanted text messages caused the plaintiff to exceeded her phone's finite capacity so as to result in a slowdown or "shutdown" of service. *Id*. Similarly here, Plaintiffs do not allege an appreciable slowdown of their computers; the facts alleged at best create an inference that Plaintiffs experienced a slower hulu.com. *See supra* § IV.A. The CFAA cannot be read to impose liability where defendant's actions slow only its own website, without otherwise affecting the computer's performance.

An independent deficiency with Plaintiffs' claim of "loss" is their failure to allege facts that plausibly show that they each suffered at least $5,000 in economic loss. While the statutory language may allow Plaintiffs to aggregate their own individual damages, it does not allow them to combine the alleged economic losses of multiple members of the putative class to meet the $5,000 threshold. *See Lyons v. Coxcom, Inc*., No. 08-CV-02047, 2009 WL 347285, at *8 (S.D. Cal. Feb. 6, 2009) ("Plaintiff attempts to aggregate losses of the entire class in order to meet the $5000 requirement; however, under the language of the statute, only federal prosecutors may aggregate losses across multiple protected computers from a related course of conduct."), *vacated on other grounds by Lyons v. Coxcom, Inc*., 718 F. Supp. 2d 1232 (S.D. Cal. 2009); *DoubleClick*, 154 F. Supp. 2d at 523 (declining to aggregate claims involving placement of tracking cookies on class members' individual computers); *Interclick*, 2011 WL 4343517 (similar); *Chance v. Avenue A, Inc.*, 165 F. Supp. 2d 1153, 1158-59 (W.D. Wash 2001) (similar); *In re iPhone*, 2011 WL 4403963, at *11 (similar).[6] For all these reasons, the CFAA claim fails.

Plaintiffs' CCCL claim similarly fails. Like the CFAA, the CCCL is a criminal statute that allows civil actions only if a plaintiff suffered damage or loss by reason of a violation. Cal. Penal Code § 502(e)(1)). And similar types of losses are required under both statutes. *Facebook, Inc. v. Power Ventures, Inc*., No. C 08-05780 JW, 2010 WL 3291750, at *5 (N.D. Cal. July 20,

---

[6] Plaintiffs may argue that it is appropriate to aggregate the damages among the class members because the same codes were placed on each class member's computer. *In re Apple & AT&TM Antitrust Litig*., 596 F. Supp. 2d 1288, 1308 (N.D. Cal. 2008) (allowing aggregation under CFAA where damage caused by a *single software update*). But this is not appropriate here: Plaintiffs specifically allege that the Hulu's "exploits" "stored coded information, specific to each individual Plaintiff and Class member . . . ." (Compl. ¶ 34; *see also id*. ¶ 38 (storage of "unique identifiers"), ¶ 51 (assignment of "persistent, unique, identifying codes").)

1   2010) (loss borne in attempting to secure system against and remedy alleged violation was loss

2   under CCCL); *see also, e.g., Multiven, Inc.*, 725 F. Supp. 2d at 895. The same deficiencies in the

3   allegations of "loss" that doom Plaintiffs' CFAA claim also sink their CCCL claim.

4              **2.       Plaintiffs Have Not Alleged Facts Showing That Hulu Acted "Without
                          Permission," "Without Authorization," or "Exceeded Authorization."**

5

6          Plaintiffs' CFAA and CCCL claims must be dismissed for the additional reason that

7   Plaintiffs cannot show that, when accessing their computers, Hulu acted without authorization or

8   in excess of authorization, as required under the CFAA, or acted without permission as required

9   under the CCCL. 18 U.S.C. §§ 1030(a)(4), (a)(5)(A)-(C); Cal. Penal Code § 502(c).

10         Plaintiffs do not allege facts showing Hulu acted "without authorization" under the

11  CFAA. The Ninth Circuit narrowly construes this requirement: a defendant acts without

12  authorization only if he has not been authorized ***at all*** to obtain access to a protected computer,

13  but nevertheless obtains access. *LVRC*, 581 F.3d at 1133-35 (access without authorization

14  requires a showing that defendant had "no rights, limited or otherwise" to access the computer);

15  *AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174, 1180 (E.D. Cal. 2010) ("Simply put,

16  a person cannot access a computer 'without authorization' if the gatekeeper has given them

17  permission to use it."); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 964 (D. Ariz. 2008)

18  (access without authorization occurs only where initial access is not permitted). This is because

19  the CFAA is designed to deter computer hacking and is concerned solely with the rights of

20  access, not the misuse of information accessed.

21         The facts alleged show that Hulu was authorized to access Plaintiffs' computers.

22  Plaintiffs voluntarily accessed hulu.com and understood that doing so would allow Hulu to access

23  their computers, including their browser cache. (*See, e.g.,* Compl. ¶ 33.) Plaintiffs also expected

24  that websites, such as hulu.com, would track its visitors by storing information on their

25  computers. (*Id*. ¶ 30 ("Plaintiffs and Class Members reasonably expect that websites performing

26  tracking do so by storing information in cookies on the computers of visitors to their websites.").)

27  And these facts were disclosed in the Privacy Policy to which Plaintiffs agreed. *See supra* § II.

28  Thus, Hulu did not act "without authorization" in accessing Plaintiffs' computers. *Del Vecchio*,

2011 WL 6325910, at *4 (when defendant's privacy policy notified visitors of the very actions about which plaintiffs now complain—the use of cookies and disclosure of information to third parties—defendant cannot be said to have acted "without authorization" or to have "exceeded its authorization"); *In re iPhone*, 2011 WL 4403963, at *11 (voluntary downloading defendant's software defeated "without authorization" or "exceeded authorized access" requirements); *In re Apple & AT&TM Antitrust Litig.*, 2010 WL 3521965, at *7 (similar).

Plaintiffs also fail to allege facts showed that Hulu acted to "exceed authorization." *See* 18 U.S.C. § 1030(e)(6). Exceeding authorized access occurs when "a person . . . has permission to access the computer, but accesses information on the computer that the person is not entitled to access." 18 U.S.C. §1030(e)(6). Therefore, one exceeds authorization only in accessing information or data **beyond** the type for which access was granted. *See Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1272-73 (M.D. Ala. 2010) ("'Exceeds authorized access' should not be confused with exceeds authorized use."); *see also AtPac*, 730 F. Supp. 2d at 1181 ("[T]he plainest and common-sense understanding of the definition of the term 'exceeds authorized access' is one that simply examines whether the accessor was entitled to access the information for any purpose."); *LVRC*, 581 F.3d at 1135 n.7 (employee who accessed his employer's documents for the purpose of stealing those documents, did not "exceed authorized access" because employee permitted access to documents for a different purpose).[7]

Plaintiffs cannot impose liability by attacking the precise mechanism Hulu employed to access the information; it is dispositive that Hulu had authorization to access the information. By using hulu.com and thereby accepting the terms of the Privacy Policy, Plaintiffs granted Hulu permission to access information regarding their use of hulu.com. *See supra* § II. And Plaintiffs admit they expect websites, like hulu.com, to track visitors. (Compl. ¶ 30.) Hulu did not exceed its authorization by allegedly using different techniques to obtain the same information.

---

[7]     In the limited context of a criminal prosecution of an employee for exceeding authorized access to an employer's information, the Ninth Circuit has held that violating an explicit employer access policy the employee knew of, may constitute exceeding authorized access. *United States v. Nosal*, 642 F.3d 781 (9th Cir. 2011). As Chief Judge Ware has recognized, however, this holding is limited to the criminal prosecution of employees relating to access to their employer's computer system. *In re Zynga Privacy Litig.*, 2011 WL 7479170 at *3 n.10.

1    Similarly, Plaintiffs do not show that Hulu acted "without permission," as required for

2    liability under the CCCL.  Cal. Penal Code § 502(c)); *In re iPhone*, 2011 WL 4403963, at *11.

3    Since the statute too is criminal in nature, this requirement must be read narrowly.  *Facebook,*

4    *Inc.*, 2010 WL 3291750, at *5.  Courts therefore limit it to circumstances "in which a user gains

5    access to a computer, computer network, or website to which access was restricted through

6    technological means," because anyone "applying the technical skill necessary to overcome such a

7    barrier will almost always understand that any access gained through such action is

8    unauthorized."  *Id*. at *11; *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 716 (N.D. Cal.

9    2011) (dismissing action where plaintiffs alleged no facts showing defendant circumvented

10   technical barriers to gain access to a computer); *In re iPhone*, 2011 WL 4403963, at *11 (since

11   applications allegedly containing "surreptitious code" were voluntarily installed, defendants did

12   not access devices "without permission").

13   Plaintiffs do not allege that any technological restriction prevented the complained-of

14   conduct or that Hulu overcame those barriers.  (Compl. ¶¶ 32, 45, 79, 158-60.)  As discussed

15   above, Plaintiffs voluntarily accessed Hulu's site and knew that doing so would allow Hulu to

16   access their computers and track them.  Plaintiffs' complaint lacks a clear allegation of that any of

17   Plaintiffs sought to prevent the complained-of conduct, or even that they set their browsers'

18   privacy settings to try to avoid being tracked.  (*Id.* ¶¶ 32, 158-60.)  Even if Plaintiffs had made

19   such allegations, they admit that these browser settings would not have been a barrier to the

20   complained-of conduct.  (*Id.* ¶ 32.)  Since Hulu did not circumvent any technological barriers, it

21   could not have acted "without permission."

22   **C.**     **Plaintiffs' Claim Under the VPPA Fails on Several Grounds.**

23   To state a claim under the VPPA, Plaintiffs must establish that (1) they are "consumers"

24   under the statute; (2) Hulu is a "video tape service provider"; and (3) Hulu knowingly disclosed

25   personally identifiable information to a third party in a manner that does not fit within one of the

26   express statutory exceptions.  *Id.* § 2710(a).  Plaintiffs fail to meet all three of these requirements.

27   The VPPA was adopted in 1988 in response to a newspaper obtaining and publishing a list

28   of the video tapes that Judge Bork (then a nominee to the Supreme Court) rented from a local

video store.  *See Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 238 (D.N.J. 1996).  The VPPA establishes liability for "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider. . . ."  18 U.S.C. § 2710(b)(1).  The Act was designed to regulate brick-and-mortar stores that rent video cassettes.  Here, Plaintiffs seek to impose, for the first time, liability under the VPPA to an Internet company that streams digital video content.  This is an unprecedented expansion of the VPPA that has no support in the case law and is counter to the plain language of the statute.  Moreover, since the VPPA is codified as a criminal statute with civil penalties, it must be strictly construed to prevent its application in situations that were not clearly contemplated by the legislature.  *See Leocal v. Ashcroft*, 543 U.S. 1, 12 n.8 (2004) (where a statute has both criminal and non-criminal applications, the rule of lenity must be applied consistently to both); *LVRC*, 581 F.3d at 1134-35.

### 1.     Hulu Is Not a "Video Tape Service Provider."

An action under the VPPA only lies against a "video tape service provider," which Hulu is not.  A "video tape service provider" is defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  As made clear by this definition, the VPPA was designed to regulate brick-and-mortar video rental.  "Materials" are something composed of physical matter.  *See, e.g., Black's Law Dictionary* (9th Ed. 2009) (defining "material" as "of, relating to matter; physical"); Collins English Dictionary (defining "material" as "of, relating to, or composed of physical substance; corporeal"), available online: http://www.collinsdictionary.com/dictionary/english/material (last visited March 13, 2012).  The focus on physical stores selling goods is confirmed in the legislative history.  *See, e.g.,* S. Rep. No. 100-599 at 6, (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-7 ("[t]he bill prohibits ***video stores*** from disclosing 'personally identifiable information'"); Cong. Rec., Sen. Leahy (same); *Dirkes*, 936 F. Supp. at 238 (VPPA originated out of the disclosure by a "***neighborhood store***.") (all emphases added).  Thus, as drafted, the VPPA only regulates businesses that sell or rent physical objects (*i.e.*, "video cassette tapes or similar audio visual materials") and not businesses that transmit digital content

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

1   over the Internet.  This distinction makes sense because, unlike brick-and-mortar businesses that

2   can provide videos directly to their customers, video-streaming services necessarily rely on third

3   parties to facilitate many aspects of their business, including in-stream advertising, analytics, and

4   transmission to users.  Had Congress intended to regulate businesses that dealt in digital content

5   rather than just those that dealt in physical objects, it would have defined video tape service

6   provider to include businesses that traffic in audio-visual information or data.  Hulu does not, and

7   is not alleged to, rent, sell, or deliver "video cassette tapes" or any "similar" physical audio-visual

8   "materials" to consumers.

9
          **2.      Any Alleged Disclosures were Made "Incident to the Ordinary Course
10                   of [Hulu's] Business" and Are Therefore Excepted from the Reach of
                     the Act.**

11          The VPPA expressly permits disclosures "incident to the ordinary course of business."  18

12   U.S.C. § 2710(b)(2)(E).  The phrase "ordinary course of business" includes "debt collection

13   activities, order fulfillment, request processing, and the transfer of ownership."  *Id*. § 2710(a)(2).

14   As the Senate Report on the VPPA explained:  "[t]his subsection takes into account that video

15   tape service providers may use third parties in their business operation . . . [and] allows disclosure

16   to permit video tape service providers to use mailing houses, warehouses, computer services, and

17   similar companies for marketing to their customers.  These practices are called 'order fulfillment'

18   and 'request processing.'"  S. Rep. No. 100-599 at 14 (1988), *reprinted in* 1988 U.S.C.C.A.N.

19   4342-1, 4342-11-12.

20          If the Court determines that the definition of "video tape service provider" is broad

21   enough to encompass Hulu (which, as explained above, Hulu does not believe it is), then the

22   definition of "order fulfillment [and] request processing" must likewise be construed broadly

23   enough to encompass its routine business operations.  Any disclosures Hulu allegedly made to

24   third-party vendors fall within this statutory exception.  Plaintiffs allege that Hulu shared data

25   with "an online market research company," "an online ad network," an "online web analytics

26   company (performing analysis of web traffic)," and "an online ad network and web analytics

27   company."  (Compl. ¶ 52.)  Each of these vendors performed services that Hulu could perform on

28   its own without violating the VPPA—running internal research, advertising, and analytics

1   programs to analyze and market to its own customers.  The "ordinary course of business"

2   exception permits Hulu to outsource these services to third parties without triggering liability.[8]

3               **3.      Plaintiffs Are Not "Consumers" Under the VPPA.**

4           In addition, Plaintiffs' claim fails because only consumers can maintain an action under

5   the VPPA.  The Act defines "consumer" as "any renter, purchaser, or subscriber of goods or

6   services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  Because the terms

7   "renter," "purchaser," and "subscriber" are not defined in the Act, they must be given their

8   ordinary meaning.  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1062 (9th Cir. 2009).  The

9   ordinary meaning of those terms implies the payment of money or, at the very least, requires

10  something more than simply accessing free content on a generally accessible website.  *See, e.g.,*

11  *Black's Law Dictionary* (9th Ed. 2009) (defining "rent" as "[t]o pay for the use of another's

12  property" and "purchase" as "[t]he act . . . of buying"); *Collins English Dictionary* (defining

13  "subscribe" as "to pay (a sum of money) . . . at regular intervals"), available online:

14  http://www.collinslanguage.com/results.aspx?text=subscribe (last visited March 12, 2012).  In

15  contrast, Plaintiffs allege only that they visited Hulu's website, not that they paid any money to

16  do so.  (Compl. ¶ 1).  Plaintiffs also do not allege that any of them "rente[d]" or "purchase[d]"

17  anything from Hulu, or even that they "subscribe[d]" to Hulu (*e.g.*, by signing up for Hulu Plus).[9]

18  In accord with the ordinary meaning of the statutory language, Hulu is aware of no reported

19  decision holding that users of a free service like hulu.com are "consumers" under the VPPA.

20          **D.     Plaintiffs' Trespass to Chattel Claim Fails.**

21          A claim for trespass to chattel requires that (1) defendant intentionally and without

22

23      [8]    Plaintiffs also allege that Hulu disclosed video viewing information to Facebook, "an
    online social network website" when a user accessed hulu.com using their Facebook log-in
24  information.  (Compl. ¶¶ 52, 58).  But Hulu only provided information to Facebook if a particular
    Facebook user requested that their activity on hulu.com be integrated with their Facebook
25  account—and then only to enable Hulu to fulfill that user's request for integration between the
    two websites.  (Ex. A to Robison Decl. at pp. 7, 14-15)  This disclosure therefore also falls within
26  the exception since disclosure was necessary to process the user's request and fulfill their order.

27      [9]    Plaintiffs have not even established their membership in the putative "Video Subclass"
    because they do not allege they viewed video content.  (Compl. ¶¶ 1, 97, Count One at p. 18.)
28  Plaintiffs therefore have no standing to maintain the VPPA claim on behalf of the subclass.  *See*
    *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

1   authorization interfered with plaintiff's possessory interest in [a] computer system; and

2   (2) defendant's unauthorized use proximately resulted in damage to plaintiff. *See eBay, Inc. v.*

3   *Bidder's Edge, Inc.,* 100 F. Supp. 2d 1058, 1069-70 (N.D. Cal. 2000). As explained in the

4   Restatement, the damages element requires the plaintiff to show that defendant either:

5   dispossessed him of the chattel; deprived him of the use of the chattel for a substantial time and

6   thereby caused measurable loss; or impaired the chattel's condition, quality or value.

7   RESTATEMENT (SECOND) OF TORTS § 218 (1965); *see also Intel Corp. v. Hamidi*, 30 Cal. 4th

8   1342, 1351-52 (2003) (California follows the Restatement test). Plaintiffs do not plead facts

9   showing either the required damages or an intentional, unauthorized interference with a property

10  interest.

11              **1.      Hulu's Conduct Did Not Result in Damage to Plaintiffs.**

12          The tort of trespass to chattel "does not encompass . . . an electronic communication that

13  neither damages the recipient computer system nor impairs its functioning." *Hamidi,* 30 Cal. 4th

14  at 1347; *see also Bidder's Edge, Inc*., 100 F. Supp. 2d at 1070 (similar). Instead, a trespass to

15  chattel is only actionable if it causes actual damages, and "only the actual damages suffered by

16  reason of the impairment of the property or loss of its use" are recoverable. *Jamgotchian v.*

17  *Slender*, 170 Cal. App. 4th 1384, 1401 (2009).[10] Actual damages are required for a trespass to

18  chattel claim, as alleged here, because the law does not protect the inviolability of chattels like it

19  does for land. *See* RESTATEMENT § 218, COMMENT E.

20          Although Plaintiffs assert that the complained-of conduct "impaired the condition, quality

21  and value of" their computers, a conclusory recitation of the elements of the claim is not enough.

22  (Compl. ¶ 128.) Especially where the facts alleged in the Complaint do not support this bare

23  assertion. As discussed above, the only impairment Plaintiffs factually allege is a slower

24  experience on hulu.com (*see supra* § IV.A). This is insufficient to state a claim for trespass.

25  *Hamidi*, 30 Cal. 4th at 1353 (plaintiff did not present any evidence its computer system as a

26  whole was slowed or otherwise impaired by the burden of delivering defendant's emails or that

27  _____

28      [10]   Even if Plaintiffs were to limit this claim to injunctive relief, this would not relieve them
        of the burden of showing injury. *Hamidi*, 30 Cal. 4th at 1352.

1    the transmission imposed any marginal cost on the operation of plaintiff's computers);

2    *Ticketmaster Corp. v. Tickets.com, Inc.*, No. 99CV7654, 2000 WL 1887522, at *4 (C.D. Cal.

3    Aug. 10, 2000) (robotic data collection on plaintiff's website not sufficient where very small

4    amount of website's capacity was used and use did not interfere with plaintiff's regular business).

5    Plaintiffs have not alleged a significant reduction in their computers' general performance, as

6    would be required. *Hamidi*, 30 Cal. 4th at 1356 (defendant's use of plaintiff's computer system

7    only sufficient for trespass when it interferes with the intended functioning of the system, such as

8    by significantly reducing its available memory and processing power).

9        Plaintiffs' failure to allege facts that they could not use their computers, software, or

10   Internet connectivity also means they cannot state a claim premised on either a deprivation of use

11   or dispossession.  (Compl. ¶ 127.)  While Plaintiffs allege that Hulu "repurposed" their browser

12   cache and Adobe Flash software, (*id.* ¶¶ 34, 46, 51), they do not allege that they were therefore

13   prevented from using those items.  Thus, this alleged repurposing cannot amount to a

14   dispossession.  *See* RESTATEMENT § 218, COMMENT D (noting that dispossession requires loss of

15   possession); *see also Hamidi*, 30 Cal. 4th at 1353 (flood of emails to company's computer system

16   did not dispossess company of its computers or email servers or prevent them from using these

17   resources for any measurable length of time); *cf. Jamgotchian*, 170 Cal. App. 4th at 1401

18   (dispossession occurred when race track prevented owner of horse from accessing or removing

19   his horse from the premises for entire day leading up to race).  Moreover, Plaintiffs cannot show

20   that any alleged dispossession lasted sufficiently long to cause an appreciable loss, as required.

21   RESTATEMENT § 218, COMMENT I ("The deprivation of use . . . must be for a time so substantial

22   that it is possible to estimate the loss caused thereby.  A mere momentary or theoretical

23   deprivation of use is not sufficient . . . ."); *Zaslow v. Kroenert*, 29 Cal. 2d 541, 551 (1946) (same).

24              **2.      Plaintiffs Cannot Show that Hulu Acted Without Authorization.**

25       Plaintiffs' trespass claim also fails to make the required showing that Hulu acted without

26   authorization.  *Civic W. Corp. v. Zila Indus., Inc.,* 66 Cal. App. 3d 1, 16-17 (1977) ("Where there

27   is a consensual entry, there is no tort"); *see also* RESTATEMENT §§ 252, 892A.  In using hulu.com

28   Plaintiffs consented to the activities disclosed in the Privacy Policy, including the placement of

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

1    tracking codes on their computers.  *See supra* § II.  Given these disclosures, Plaintiffs cannot

2    establish that Hulu was acting without their actual or apparent consent.  *See* RESTATEMENT § 252

3    (consent excuses liability for tort of trespass to chattel); RESTATEMENT § 892 (action or inaction

4    that a reasonable person would understand as consent creates apparent consent sufficient to

5    excuse tort liability); RESTATEMENT § 892A (consent is effective as to both the particular conduct

6    and substantially the same conduct); *Cohen v. Facebook, Inc.*, No. C 10-5282 RS, 2011 WL

7    3100565, at *3-4 (N.D. Cal. June 28, 2011) (looking to website's posted Terms Documents to

8    determine if users consented to complained of conduct); *Compuserve Inc. v. Cyber Promotions,*

9    *Inc.*, 962 F. Supp. 1015, 1024 (S.D. Ohio 1997) (same).

**E.    There Can Be No Invasion of Privacy Claim Where Plaintiffs Have No Reasonable Expectation of Privacy.**

12            An invasion of privacy claim under the California Constitution requires (1) the existence

13    of a legally protected privacy interest; (2) a reasonable expectation of privacy under the

14    circumstances; and (3) a serious violation of that privacy interest.  *See Sheehan v. S.F. 49ers, Ltd.*,

15    45 Cal. 4th 992, 999 (2009).  A reasonable expectation of privacy is "an objective entitlement

16    founded on broadly based and widely accepted community norms," and "the presence or absence

17    of opportunities to consent voluntarily to activities impacting privacy interests obviously affects

18    the expectations of the participant."  *Hill v. Nat'l Coll. Athletic Ass'n.*, 7 Cal. 4th 1, 37 (1994).  In

19    this case, Plaintiffs' claim fails because their alleged expectation of privacy "from being

20    electronically tracked by Hulu and from the disclosure of their personal information to the third

21    parties" (Compl. ¶ 182) was not reasonable under the circumstances.

22            Not only do Plaintiffs admit that they expected websites to use cookies to track them (*id.*

23    ¶ 30), but in voluntarily using hulu.com in the face of the Privacy Policy notice, they consented to

24    being tracked by Hulu.  (*See supra* § II.)  They could have easily avoided the complained of

25    conduct by declining to use the website.  In these circumstances, Plaintiffs cannot be found to

26    have a reasonable expectation not to be tracked by Hulu or its vendors.  *E.g., Mortensen v.*

27    *Bresnan Commc'n, L.L.C.*, No. CV 10-13-BLG-RFC, 2010 WL 5140454, at *5-6 (D. Mont. Dec.

28    13, 2010) (dismissing common-law invasion of privacy claim similar to California's where

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

1   Internet Service Provider's privacy policy gave notice of monitoring and provision of information

2   to third parties); *see also Sheehan*, 45 Cal. 4th at 999 (plaintiffs do not have reasonable

3   expectation of privacy when they have voluntarily consented to the particular privacy intrusion);

4   *TBG Ins. Servs. Corp. v. Superior Court*, 96 Cal. App. 4th 443, 452-53 (2002) (no reasonable

5   expectation of privacy where employer's policy informed employee of potential monitoring of

6   use of employer-provided home computer; employee could have avoided monitoring by

7   foregoing use of computer); *Wilkinson v. Times Mirror Corp.*, 215 Cal. App. 3d 1034, 1049-50

8   (1989) (no invasion of privacy where job applicants could have avoided intrusion caused by

9   urinalysis by declining the conditional offer of employment).

10       **F.       Plaintiffs' Negligence Claim Fails Because No Legal Duty or Injury Exists.**

11       To maintain a claim for negligence, plaintiffs must allege "(a) a legal duty to use due care;

12   (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the

13   resulting injury." *In re iPhone*, 2011 WL 4403963, at *9.  Plaintiffs have failed to establish a

14   legal duty or any appreciable injury.

15           **1.       Hulu Does Not Owe an Independent Legal Duty to Plaintiffs.**

16       Plaintiffs cannot establish an independent duty to protect Plaintiffs' personal information.

17   The relationship between Plaintiffs and Hulu is defined by Hulu's Terms of Use, which includes a

18   Privacy Policy that notifies users of the tracking activities at issue here.  (*See supra* § II.)  Courts

19   reject negligence claims in such circumstances because "[t]ort law may not be used to supplant

20   private contractual agreements." *In re iPhone*, 2011 WL 4403963, at *9 (dismissing negligence

21   claim, premised on Apple allowing third-party applications to collect and make use of plaintiffs'

22   personal information, where Apple's "click-through agreement" defined scope of the

23   relationship); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514-15 (1994)

24   (failure to perform a contractual duty is not a tort).  Plaintiffs' bald assertion that Hulu's duty

25   "arises as a matter of law" (Compl. ¶ 188) cannot get around the fact that the scope of their

26   relationship is defined by contract.  In addition, by actively interacting with hulu.com, Plaintiffs

27   consented to the practices disclosed in the Privacy Policy.

28

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

**2.      Plaintiffs Have Not Alleged an Appreciable, Non-Speculative Injury.**

An "appreciable, non-speculative, present injury" also is a necessary element of a negligence claim. *Aas v. Superior Court*, 24 Cal. 4th 627, 646 (2000) (superseded by statute on other grounds); *see also Duarte v. Zachariah*, 22  Cal. App. 4th 1652, 1661-62 (1994) (actual damage "is necessary to a cause of action in negligence"). For the reasons discussed above, Plaintiffs cannot establish the required injury element here. (*See supra* § IV.A.)

**G.      Plaintiffs' Claim Under the Unfair Competition Law Fails.**

To state a UCL claim, Plaintiffs must allege facts showing that (1) Hulu engaged in a business act or practice that is "unlawful, fraudulent or unfair"; and (2) they "suffered injury in fact and . . . lost money or property as a result." Cal. Bus. & Prof. Code §§ 17200, 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320-25 (2011). Plaintiffs' UCL claim must be dismissed because they lost no money or property as a result of Hulu's actions, and Hulu's actions were not unlawful, fraudulent, or unfair.

**1.      Plaintiffs Do Not Allege They Suffered a Loss of Money or Property as Required by the Unfair Competition Law.**

Plaintiffs allege no facts showing that they "suffered injury in fact and . . . lost money or property as a result" of the alleged UCL violation. CAL. BUS. & PROF. CODE § 17204. The California Supreme Court recently affirmed the need to plead such "economic injury." *Kwikset*, 51 Cal. 4th at 321-22. As discussed in detail above, Plaintiffs allege two broad categories of harm:  (a) loss of personal information (*see* Compl. ¶¶ 72-74, 78, 81-82, 86-89, 171); and (b) the negative impact on Plaintiffs' computers and Internet connections caused by the placement of tracking codes on their computers (*see id*. ¶¶ 76, 77, 90, 92-94, 171). Neither type of alleged harm constitutes a loss of money or property.

Alleged loss of personal information cannot confer standing under the UCL because such information is not money or property as those terms are understood under the statute. *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 714; *Thompson v. Home Depot, Inc.*, No. 07-cv-1058 IEG (WMC), 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007). Courts also have held that allegedly unauthorized placement and use of tracking codes on Plaintiffs' computers is

1   insufficient to establish the injury required for UCL standing. *LaCourt*, 2011 WL 1661532, at

2   \*4-5 (loss of the ability to delete cookies is insufficient); *Chance*, 165 F. Supp. 2d at 1159 ("the

3   transmission of an internet cookie is virtually without economic harm").

### 2.    Hulu's Alleged Conduct Is Not Unlawful, Fraudulent, or Unfair.

5   Plaintiffs also fail to establish a substantive violation from any "unlawful, fraudulent or

6   unfair" conduct by Hulu. Cal. Bus. & Prof. Code § 17200.

### a.    Hulu's Actions Were Not "Unlawful."

8   To the extent Plaintiffs base their claim of "unlawful" conduct on the underlying claims

9   asserted in the Complaint, the UCL claim fails along with those underlying claims. *See, e.g.*,

10  *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1190-91 (N.D. Cal. 2009).[11]

11  Allegations related to Hulu's actions under its Privacy Policy cannot establish UCL liability

12  because UCL claims cannot be premised on a simple breach of contract. *E.g., Unique Functional*

13  *Prods. v. JCA Corp*., No. 9-cv-265-JM-MDD, 2012 U.S. Dist. LEXIS 13457, at \*15 (S.D. Cal.

14  Feb. 3, 2012). And Plaintiffs cannot base their "unlawful" UCL claim on the false advertising

15  law (FAL). Rule 9(b) applies to the FAL claim because it is grounded in fraud, but Plaintiffs fail

16  to identify what statements were false or misleading and how they were false or misleading. *See*

17  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009); *In re Apple and AT&T iPad*

18  *Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011) (Rule 9(b) applies to

19  FAL claims grounded in fraud); *Vega v. JPMorgan Chase Bank, N.A*., 654 F. Supp. 2d 1104,

20  1116 (E.D. Cal. 2009) (dismissing FAL claim because plaintiffs failed to identify what statements

21  were false or misleading and how they were so). Furthermore, although the FAL requires actual

22  reliance, Cal. Bus. & Prof. Code § 17535, Plaintiffs fail to plead any facts showing that they

23  actually relied on the allegedly false advertising. (*See also infra* § IV.G.2.b.)

### b.    Hulu's Actions Were Not "Fraudulent."

25  Likewise, claims brought under the fraudulent prong of the UCL must be pled with

26  particularity under Federal Rule of Civil Procedure Rule 9(b). *See Vess v. Ciba-Geigy Corp.*

27

28  ---

[11]   In addition, common-law claims—such as Plaintiffs' trespass claim—are not proper UCL predicates. *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010).

MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. CV 11 3764

1    *USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1222-

2    23 (N.D. Cal. 2011).  In addition, Plaintiffs must show that actual reliance on the allegedly

3    deceptive or misleading statements "was an immediate cause" of the harm.  *Kwikset*, 51 Cal. 4th

4    at 326-27.

5           Plaintiffs do not allege they relied on any specific representation Hulu made in deciding to

6    visit hulu.com.  They do not even allege that they read the Privacy Policy before visiting the site.

7    (See Compl. ¶¶ 61-62, 164, 173, 177.)  Instead, they offer an allegation that, for those class

8    members who used Microsoft Internet Explorer, the privacy controls "rely" on Hulu's P3P

9    (Platform for Privacy Preferences) Compact Policy.  (*Id.* ¶¶ 63-65.)  But Plaintiffs do not even

10   make an allegation that they used Explorer and set their browser privacy controls so as to cause

11   Internet Explorer to rely on any P3P Compact Policy on hulu.com—let alone an allegation that

12   they adversely relied in any way on Explorer's review of Hulu's P3P Compact Policy. Thus, the

13   conclusory assertion regarding Hulu's P3P Compact Policy cannot establish any reliance to state

14   a UCL claim.

15                        **c.      Hulu's Actions Were Not "Unfair."**

16          The California Supreme Court has cautioned that, in construing a claim under the "unfair"

17   prong of the UCL, "[c]ourts may not simply impose their own notions of the day as to what is fair

18   or unfair."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999); *Van*

19   *Slyke v. Capital One Bank,* No. C 07-00671 WHA, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7,

20   2007) (the "unfairness" prong cannot be an invitation for courts to "roam across the landscape of

21   consumer transactions picking and choosing which they like and which they dislike").  In

22   determining whether conduct is "unfair" under the UCL, courts have applied several different

23   tests.  Several recent decisions have applied a "tethering" test, requiring that the underlying

24   offense violates a public policy "tethered to specific constitutional, statutory, or regulatory

25   provisions."  *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256-57 (2010).

26   Some other courts have continued to look to the older, more amorphous "balancing" test, which

27   "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged

28   victim," even though that test has been heavily criticized.  *Id.*  And although the Ninth Circuit has

1   not employed it, some California state courts have recently applied a three-part test from Section

2   5 of the Federal Trade Commission Act:  (1) whether the alleged consumer injury is substantial,

3   (2) not outweighed by any countervailing benefit to consumers or competition, and (3) one that

4   consumers could not reasonably have avoided.  *Id.*  In this case, Plaintiffs' allegations cannot

5   satisfy any of these tests.  They fail to plead that any substantial injury outweighs the benefits

6   provided by Hulu's services, that any injury was not reasonably avoidable, or that there is any

7   violation of a specifically enunciated public policy "tethered" to a specific constitutional,

8   statutory, or regulatory provision.  *Id.* at 256.  Thus, Hulu's conduct is not "unfair" under the

9   UCL.

10  **V.      CONCLUSION**

11          Plaintiffs' Complaint fails to allege facts sufficient to state a claim under any of the

12  alleged causes of action.  Hulu requests an order dismissing Plaintiffs' Complaint in its entirety.

13

14          Dated: March 30, 2012                    O'MELVENY & MYERS LLP

15

16                                                   By:  */s/ Randall W. Edwards*

17                                                       Randall W. Edwards
                                                         Attorneys for Defendant
18                                                       HULU, LLC

19

20

21

22

23

24

25

26

27

28