Scott A. Kamber (*pro hac vice*)
skamber@kamberlaw.com
David A. Stampley (*pro hac vice*)
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street,  23rd Floor
New York, New York 10005
Telephone:  (212) 920-3072
Facsimile:  (212) 202-6364

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:  (818) 990-1299
Facsimile:  (818) 501-7852

(Additional counsel listed on signature page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In Re: Hulu Privacy Litigation | ) Case No. 3:11-CV-03764-LB |
| | ) |
| | ) **PLAINTIFFS' RESPONSE IN OPPOSITION TO** |
| | ) **DEFENDANT'S MOTION TO DISMISS** |
| | ) |
| | ) |
| | ) Hearing Date:    June 7, 2012 |
| | ) Time:              11:00 a.m. |
| | ) Courtroom:       C |
| | ) Judge:            Hon. Laurel Beeler |
| | ) |
| | ) |
| | ) |

## **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES TO BE DECIDED........................................................1

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF THE FACTS ...............................................................................2

ARGUMENT ..........................................................................................................2

I.  MOTION TO DISMISS STANDARD .........................................................2

II.  PLAINTIFFS HAVE ARTICLE III STANDING .........................................3

III.  PLAINTIFFS STATE A CLAIM UNDER THE VIDEO PRIVACY
PROTECTION ACT ....................................................................................4

     A.  Hulu Violated VPPA By Disclosing Plaintiffs' Specific Video Selections to
Numerous Third Parties .......................................................................4

     B.  Hulu Is a "Video Tape Service Provider" ...........................................6

     C.  Plaintiffs Are "Consumers" Under the VPPA .....................................8

     D.  Hulu's Disclosure Was Not Incident To The Ordinary Course of Hulu's
Business .............................................................................................9

     F.  The VPPA Was Enacted To Prevent Wrongful Disclosure of a Subscribers'
Video Viewing Preferences.................................................................12

IV.  CONCLUSION...........................................................................................13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Amazon.com LLC v. Lay*
   758 F.Supp.2d 1154 (W.D. Wash. 2010) ............................................................7

*Ashcroft v. Iqbal*
   550 U.S. 662 (U.S. 2009) ...............................................................................2

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 ..............................................................................................2, 3

*Campanelli v. Bockrath*
   100 F.3d 1476 (9th Cir.1996) ........................................................................2

*Clark v. Capital Credit & Collection Services, Inc.*
   460 F.3d 1162 (9th Cir. 2006) .......................................................................10

*Dirkes v. Borough of Nunnemede*
   936 F. Supp. 235 (D.N.J. 1996) .......................................................1, 10, 12, 13

*Duncan v. Walker*
   533 U.S. 167 (2001) ......................................................................................9

*Edwards v. First Am. Corp.*
   610 F.3d 514 (9th Cir. 2010) *cert. granted in part by First Am. Corp. v. Edwards*, 131
   S.Ct. 3022 (2011) .......................................................................................3, 4

*Equity Lifestyle Props., Inc. v. County of San Luis Obispo*
   548 F.3d 1184 (9th Cir. 2008) ........................................................................3

*Fulfillment Servs. Inc. v. UPS, Inc.*
   528 F.3d 614 (9th Cir. 2008) ..........................................................................3

*Graczyk v. West Pub. Co.*
   660 F.3d 275 (7th Cir. 2011) ..........................................................................4

*In re Facebook Privacy Litig.*
   791 F. Supp. 2d 705 (N.D. Cal. 2011) ..............................................................4

*In re Syntex Corp. Sec. Litig.*
   95 F.3d 922 (9th Cir.1996) .............................................................................2

*Jewel v. National Security Agency*
   2011 U.S. App. LEXIS 25951 (2011) ...............................................................3

*Klimas v. Comcast Cable Comms., Inc.*
   465 F.3d 271 (6th Cir. 2006) ..........................................................................4

*LSO, Ltd. v. Stroh*
    205 F.3d 1146 (9th Cir.2000) ..................................................................3

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ..............................................................................3

*Mass. v. E.P.A.*
    549 U.S. 497 (2007) ..............................................................................3

*Mazza v. American Honda Co., Inc.*
    666 F.3d 581 (9th Cir. 2012) ..................................................................1

*Moskal v. United States*
    498 U.S. 103 (1990) ............................................................................11

*Preminger v. Peake*
    552 F.3d 757 (9th Cir. 2008) ..................................................................3

*Reno v. Koray*
    515 U.S. 50 (1995) ..............................................................................11

*Sterk v. Redbox Automated Retail*
    LLC, 806 F.Supp.2d 1059 (N.D. Ill. Aug 19, 2011) *rev'd on other grounds by Sterk v. Redbox Automated Retail*, LLC, 672 F.3d 535 (7th Cir. 2012)................................11

*United States v. Cabaccang*
    332 F.3d 622 (9th Cir. 2003) ..................................................................9

*United States v. Wenner*
    351 F.3d 969 (9th Cir. 2003) ..................................................................9

*Warth v. Seldin*
    422 U.S. 490 (1975) ..............................................................................3

*Zimmerman v. Puccio*
    613 F.3d 60 (1st Cir. 2010) ....................................................................10

**FEDERAL STATUTES**

18 U.S.C. § 2710 ......................................................................................1

18 U.S.C. § 2710(a)(3) ..............................................................................5

18 U.S.C. § 2710(b) ................................................................................12

18 U.S.C. § 2710(b)(1) ..............................................................................4

18 U.S.C. § 2710(b)(2)(B) ......................................................................4, 12

18 U.S.C.§ 2710(b)(2)(E) ..........................................................................9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18 U.S.C. § 2710(c) ...................................................................................................3

18 USC § 2710 (a)(1) ...............................................................................................8

18 USC § 2710(a)(2) .................................................................................................9

18 USC § 2710 (a)(4) ................................................................................................6

ECPA .........................................................................................................................4

FDCPA .....................................................................................................................10

**OTHER AUTHORITIES**

1988, U.S.C.C.A.N. 4342-1-4342-9 ........................................................................12

1988, U.S.C.C.A.N. 4342-10 .....................................................................................6

1988, U.S.C.C.A.N. 4342-7-4342-8 ..........................................................................1

1988, U.S.C.C.A.N. 4342-8 ......................................................................................13

1988, U.S.C.C.A.N. 4342-9 ........................................................................................5

Black's Law Dictionary (9th ed. 2009) ......................................................................8

California Constitution .................................................................................................1

Collins English Dictionary .....................................................................................7, 8

Fed. R. Civ. Proc. 8(a)(2) ...........................................................................................2

Free Dictionary, available at http://www.thefreedictionary.com/subscriber (last visited
    May 2, 2012) ..........................................................................................................8

Merriam-Webster Dictionary, available at http://www.merriam-
    webster.com/dictionary/subscribe (last visited May 2, 2012) ...............................8

S. Rep. No. 100-599, 100th.................................................................................. passim

S.Rep. No. 100-599 (1988), reprinted in 1988 U.S.C.C.A.N. 4342 .........................10

S.Rep. No. 100-599 (1988), reprinted in 1988 U.S.C.C.A.N. 4342 ...........................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF THE ISSUES TO BE DECIDED

Whether an online video provider violates the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, when, without a subscriber's prior written consent, it discloses to a third party, for the third party's independent use, the particular video delivered to a particular subscriber.

## PRELIMINARY STATEMENT

Plaintiffs, in their First Amended Consolidated Complaint (the "FACC") (Dkt. 37), seek relief under the VPPA arising from Hulu's disclosure, without Plaintiffs' consent, of Plaintiffs' video viewing selections to a number of third parties. ¶¶ 52, 60. Hulu coded its web pages so that, when Plaintiffs requested video content to downloaded from Hulu, Hulu notified several third parties that Plaintiffs had done so, including specifics of the video content Plaintiffs had requested. ¶¶52-54, 58, 116.

VPPA is one of a number of federal privacy statutes designed to "keep an individual's right to privacy apace with advances in technology that increase exponentially the chances that an individual's privacy can be breached." *Dirkes v. Borough of Nunnemede*, 936 F. Supp. 235, 238 (D.N.J. 1996) (citing S. Rep. No. 100-599, 100th Cong., 2nd Sess. 1988, U.S.C.C.A.N. 4342-7-4342-8, 1988 WL 243503).[1]

Hulu's contention that it is not a "video tape service provider," or that Plaintiffs are not "consumers" within the definition of the VPPA are disingenuous at best. Def. Br. at 3. Plaintiffs have sufficiently pled, as set forth in detail below, that the VPPA clearly applies to Hulu. Further, Hulu cannot escape liability by claiming its actions fall within any exception for disclosure of this intimate, private information.

---

[1] Due to uncertainties in the state of the law regarding certification of a nationwide class under the California Consumer Legal Remedies Act and the California Unfair Competition Law, including the application of *Mazza v. American Honda Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) and the resulting complications of a nationwide statutory class and potential state consumer sub-classes, Plaintiffs elect, at this time, not to pursue these claims. Further, in light of Plaintiffs' continuing investigation, through counsel, of certain underlying, common issues of fact regarding Plaintiffs' claims for trespass to chattels, violations of the California Computer Crime Law, the Computer Fraud and Abuse Act, the California Constitution, and negligence claims, Plaintiffs elect not to pursue those claims at this time.

1

**STATEMENT OF THE FACTS**

2   Hulu provides online video services to subscribers. As Hulu has explained, it provides a

3   large selection of pre-recorded video content from over 260 companies, including movies,

4   documentaries, primetime TV hits and classics. Def. Mot. 19-20; *see also*, ¶ 114. These pre-

5   recorded videos are available to subscribers "on demand," to download from Hulu's website.

6   Plaintiffs and Class Members are Hulu subscribers. ¶115. They are registered users of

7   hulu.com, and they viewed videos offered by Hulu on its website, www.hulu.com.[2] ¶1. As

8   Plaintiffs and Class Members viewed video content on Hulu's website, Hulu transmitted their

9   video viewing choices to a number of third parties, without obtaining their written consent prior

10  to such disclosure. ¶¶ 52, 59. These third parties include ScoreCard Research, an online market

11  research company; Facebook, an online social network website; DoubleClick, an online network;

12  Google Analytics, an online web analytics company that performs analysis of web traffic; and

13  Quantcast, an online ad network and web analytics company.

14  **ARGUMENT**

15  **I.    MOTION TO DISMISS STANDARD**

16  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and

17  plain statement of the claim showing that the pleader is entitled to relief.' As the [Supreme] Court

18  held in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, the pleading standard Rule 8 announces

19  does not require 'detailed factual allegations,' but it demands more than an unadorned, the-

20  defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 550 U.S. 662, 677-678 (U.S.

21  2009) (citing *Twombly*, 550 U.S. at 555).

22  In the context of a motion to dismiss, the Court's review is generally limited to the

23  contents of the complaint. *Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir.1996). When

24  determining whether a complaint states a claim upon which relief can be granted, the allegations

25  contained therein are accepted as true and construed in the light most favorable to plaintiff. *In re*

26

27  [2] Although not expressly alleged in the FACC, the Court can infer that Plaintiffs and Class
    Members are registered users of hulu.com because the FACC alleges facts establishing that
28  Plaintiffs had Hulu profiles and used Hulu's video services. *See e.g.* ¶ 54.

1  *Syntex Corp. Sec. Litig.,* 95 F.3d 922, 925-26 (9th Cir.1996); *LSO, Ltd. v. Stroh,* 205 F.3d 1146,

2  1150 n. 2 (9th Cir.2000). Plaintiff must allege facts in support of its legal conclusions that give

3  rise to a reasonable inference that defendant is liable for the misconduct alleged. *Id.*; *Bell Atlantic*

4  *Corp. v. Twombly,* 550 U.S. 544, 556 (2007). As long as the complaint, *taken as a whole*, gives

5  rise to a plausible inference of actionable conduct, the claim will not be dismissed. *Twombly,* 550

6  at 555-56 (emphasis added).

7      The instant Complaint, taken as a whole, gives rise to a plausible inference of actionable

8  conduct: Hulu violated the VPPA by disclosing Plaintiffs and Class Members video selections to

9  third parties without prior written consent.[3]

10 **II.    PLAINTIFFS HAVE ARTICLE III STANDING**

11     To establish standing, the party invoking the Court's jurisdiction must "demonstrate that

12 it has suffered a concrete and particularized injury that is either actual or imminent, that the

13 injury is fairly traceable to the defendant, and that it is likely that a favorable decision will

14 redress that injury." *Mass. v. E.P.A.*, 549 U.S. 497, 517 (2007). "The injury may be minimal."

15 *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008) (collecting authorities). Furthermore,

16 standing "in no way depends on the merits of the plaintiff's contention that particular conduct is

17 illegal," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), and "does not require … an analysis of the

18 merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th

19 Cir. 2008).

20     The VPPA provides that an individual harmed by a violation of the Act may seek

21 compensation in the form of statutory, actual and punitive damages, equitable and declaratory

22 relief and attorneys' fees and costs. 18 U.S.C. § 2710(c). Under clear Ninth Circuit authority, this

23 alone is sufficient to confer injury in fact. *Jewel v. National Security Agency*, 2011 U.S. App.

24 LEXIS 25951, *11 (2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992));

25 *Fulfillment Servs. Inc. v. UPS, Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008); *Edwards v. First Am.*

26

27 [3] Hulu's assertions that its disclosure of Plaintiffs and Class Members personally identifiable
28 information was incident to the ordinary course of its business (Def. Mot., 16-17), is a fact-
intensive argument and is not proper basis of dismissal at this juncture.

*Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) ("The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'") *cert. granted in part by First Am. Corp. v. Edwards*, 131 S.Ct. 3022 (2011). In such cases, the "'standing question . . . is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'" *Edwards*, 610 F.3d at 517 (citation omitted).

Other courts throughout the country have routinely found injury-in-fact where a plaintiff alleges violation of a consumer privacy statute with a private right of action. *See, e.g.*, *Graczyk v. West Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011) (finding no monetary harm necessary to state a claim under the Driver's Privacy Protection Act, as "Congress has defined the relevant injury under the DPPA as the 'obtain[ment], disclos[ure], or [use]'") (citation omitted); *Klimas v. Comcast Cable Comms., Inc.*, 465 F.3d 271, 275–76 (6th Cir. 2006) (standing exists where plaintiff alleges violations of the Cable Act's privacy provisions, even absent economic harm); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 (N.D. Cal. 2011) (finding standing under the ECPA based solely on allegations of statutory violation). By alleging violations of their federal statutory rights under the VPPA, Plaintiffs have properly alleged injury-in-fact. Therefore, Plaintiffs have a right to seek the relief created by statute.

## III. PLAINTIFFS STATE A CLAIM UNDER THE VIDEO PRIVACY PROTECTION ACT

### A. Hulu Violated VPPA By Disclosing Plaintiffs' Specific Video Selections to Numerous Third Parties

The VPPA provides that a video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person. 18 U.S.C. § 2710(b)(1). A video tape service provider may disclose personally identifiable information concerning any consumer to any person only with the informed, written consent of the consumer given at the time the disclosure is sought. 18 U.S.C. § 2710(b)(2)(B) (emphasis added).[4] "Personally identifiable information," is defined to

---

[4] Hulu's Privacy Policy cannot not qualify as informed, written consent.

include "information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). The Senate Report states that "[u]nlike the other definitions in this subsection, paragraph (a)(3) uses the word 'includes' to establish a minimum, but not exclusive, definition of personally identifiable information." S. Rep. No. 100-599, 100th Cong., 2nd Sess. 1988, U.S.C.C.A.N. 4342-9, 1988 WL 243503.

Hulu violated VPPA by transmitting Plaintiffs and Class Members' video viewing choices to a number of third parties, including online ad networks, metrics companies, and social networks, without obtaining their informed, written consent at the time of such disclosure. ¶¶ 52, 59, 116. For example, Hulu provided Scorecard Research with Plaintiffs' and Class Members' Hulu profile identifiers linked to Plaintiffs' and Class Members' individual Hulu profile pages that included name, location, preference information designated by the user as private, and Hulu username (which, in the case of many individuals, is the same screen name used in other online environments). ¶ 54. Scorecard Research stored the Hulu ID information in a cookie named "b.scorecardresearch.com" and stored the video information in a cookie named "beacon.scorecardresearch.com." ¶ 55. In addition, Scorecard Research set its own unique identifier tied to the two previously mentioned cookies. ¶ 55. In the case of Facebook, Hulu included Plaintiffs' and Class Members' Facebook IDs, connecting the video content information to Facebook's personally identifiable user registration information. ¶ 58.[5] Hulu did not obtain written consent of Plaintiffs and Class Members prior to disclosing their video and/or video services requests and their identities to third party social networks and online ad/metrics networks. ¶¶ 59-60.

---

[5] Hulu's contention that its disclosure to Facebook of Plaintiffs' and Class Members' video content information was done in the ordinary course of business (Def. Mot. 17, n. 8) is a factual dispute not appropriate for resolution on a motion to dismiss. However, even if one were to credit Hulu's factual assertion that it received a second-hand request, ostensibly from Plaintiffs and Class Members, to integrate their activities with Facebook, (i) the request is just that, second-hand, not remotely approaching the explicit consent that Hulu would have been obligated to obtain from subscribers and, (b) such a request would not satisfy any "ordinary course of business" as defined in the statute, which allows only for Hulu to fulfill requests for its services—that of delivering video content, not to fulfilling other requests by other parties for other purposes.

**B.      Hulu Is a "Video Tape Service Provider"**

The VPPA defines a "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials or any person…." 18 USC § 2710 (a)(4). Plaintiffs alleged that Hulu is a video tape service provider because it is engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials in that it offers and delivers to online consumers prerecorded video programs, including previously released and posted, and originally developed news, entertainment, educational, and general interest video programs. ¶ 113.  These digital video programs delivered to Plaintiffs by Hulu through online streaming services are unequivocally "similar audio visual materials" within the meaning of the statute.

Hulu argues that the VPPA "only regulates business that sell or rent physical objects." Def. Mot. 15. Hulu misconstrues the VPPA. The plain language of the VPPA covers companies that rent, sell or deliver "prerecorded video cassette tapes or similar *audio visual materials.*" 18 USC § 2710 (a)(4) (emphasis added). The method of sale, rental or delivery of similar audiovisual materials is not specified in the definition of a video tape service provider. The phrase "similar audio visual materials" is a broad, "catch all" phrase designed to include new technologies for pre-recorded video content. For example, in the Senate Report, the Congress stated that the term "video tape service provider" means "any person engaged in the business...of delivery of pre-recorded video cassette tapes or similar audio visual materials, such as laser discs, open-reel movies, and CDI technologies." S. Rep. No. 100-599, 100th Cong., 2nd Sess. 1988, U.S.C.C.A.N. 4342-10, 1988 WL 243503.  Today, pre-recorded video-cassette tapes are obsolete; modern day pre-recorded video exists in a digital form, such as on a DVD or in a digital file.

Hulu argues that the term "materials" in the phrase "similar audio visual materials" is limited to physical matter, and therefore, excludes online streaming of pre-recorded digital videos. Def. Mot. 15. Although Hulu correctly points out that "materials" is an undefined term in the VPPA, it misleadingly provides definitions for the singular, adjective, form of the word

"material" as support for its position. Def. Mot. 15. For example, Hulu selectively quotes the definition of "material" as "of, relating to matter; physical." Def. Mot. 15 (citing Collins English Dictionary). But the VPPA uses the plural, noun form of the word "material," which is defined as "the equipment necessary for a particular activity." www.collinsdictionary/English/materials (last visited May 4, 2012). The Collins English Dictionary defines the singular, noun form of the word "material" as "the substance of which a thing is made or composed; component or constituent matter" and "the facts, notes, etc., that a finished work may be based on or derived from." *Id*.

Today, the equipment necessary for hearing and seeing pre-recorded videos and the substance of which such videos are made or composed of is digital content. This is true regardless of whether a customer rents a DVD in a brick-and-mortar store or downloads a video "on demand" from an online store like Hulu. In fact, Hulu's failure to recognize this reality is akin to the argument that an email is not a document because it exists exclusively in cyberspace.

Tellingly, Hulu's construction of the term "materials" is contradicted by its own use of the term is the Terms of Use for hulu.com. Dkt. 50-3, Robison Decl., Exh. C. For example, the Terms of Use state that "[t]he [c]ontent covered by these restrictions includes without limitation any text, graphics, layout, interface, logos, photographs, audio and video materials, and stills." *Id.* at 3. This is just one of many examples in the Terms of Use where Hulu uses the term "materials" to mean both physical and non-physical content.

Finally, Hulu invokes the legislative history of the VPPA to argue that the Act was intended to regulate "video stores" as the "VPPA originated out of the disclosure by a neighborhood store." Def. Mot. 15. However, Hulu is a "video store." That Hulu operates exclusively online does not insulate it from liability under VPPA. *See Amazon.com LLC v. Lay*, 758 F.Supp.2d 1154 (W.D. Wash. 2010) (applying VPPA to Amazon's an online video business). Contrary to Hulu's assertions, there is simply no requirement that a "video tape service provider" be a traditional "brick-and-mortar video rental" store. Def. Mot. 15.

### C.      Plaintiffs Are "Consumers" Under the VPPA

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 USC § 2710 (a)(1). Plaintiffs, who all established Hulu profiles and used Hulu's video streaming services, are subscribers of goods and/or services from Hulu" and are therefore consumers as defined in the VPPA. ¶ 115. Because Plaintiffs have signed up for a Hulu account and received a Hulu ID, they are subscribers. In the digital age, consumers subscribe to online services by becoming registered users of a website offering the services.

Hulu asserts that Plaintiffs are not consumers because they did not pay money for the videos they watched on Hulu's website.[6] Def. Mot. 17. Again, Hulu quotes the definition of "subscribe" in the Collins English Dictionary as "to pay (a sum of money)…at regular intervals." Def. Mot. 17. Hulu omits other pertinent definitions of "subscribe" such as: "to inscribe or sign (one's name, etc.) at the end of a contract, will or other document" and "to give support or approval." www.collinsdictionary.com/English/subscriber.com (last visited May 4, 2012).[7] Hulu also omits the "usage examples" provided by Collins English Dictionary, which reveal that the term includes signing up for a free service: "To subscribe to their free monthly newsletter, visit their website at www." Id. These omitted definitions of "subscribe" are consistent with Plaintiffs' acts of signing up to use Hulu's free services by providing their name and other profile information as requested. *See also*, Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/subscribe (last visited May 2, 2012) (defines "subscribe" as "to enter one's name for a publication or service"); The Free Dictionary, available at http://www.thefreedictionary.com/subscriber (last visited May 2, 2012) (defining "subscribe" as "to authorize (someone) to receive or access electronic texts or services, especially over the Internet.").

---

[6] While not required for protection under the VPPA, Plaintiff Concepcion Jauregui is a Hulu Plus subscriber who paid a monthly fee for premium video services.  Plaintiffs are prepared to amend the complaint to add this factual allegation.

[7] Likewise, Black's Law Dictionary (9th ed. 2009) defines a "subscription" as "the act of signing one's name on a document."

The plain language of the statute does not require payment of any kind, and the intent of the statute was meant to protect consumers' privacy in their video selections, not to regulate payments made to video tape service providers. Congress could have used the phrase "paying subscriber," but it did not. If the Court were to adopt Hulu's construction of the VPPA's definition of "consumer," it would render the word "subscriber" insignificant, if not wholly superfluous.  A cardinal principle of statutory construction is that a statute should not be interpreted so as to render language within it mere surplusage. *Duncan v. Walker*, 533 U.S. 167, 174 (2001). "Th[e] Court's duty to give effect, where possible, to every word of a statute, makes the Court reluctant to treat statutory terms as surplusage." *Id.* (internal citations and quotations omitted); see also, *United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003); *United States v. Cabaccang,* 332 F.3d 622, 628 (9th Cir. 2003).

Hulu's assertion that Plaintiffs have no standing to bring their VPPA claim because they have not alleged that they viewed any video content grossly misreads the Complaint. Def. Mot. 17, n. 9. Plaintiffs have in fact alleged that they and Class Members have viewed video content on Hulu's website. ¶¶ 52-53, 83-84, 191(a). Plaintiffs further alleged their claims were typical of the claims of other members of the Class (¶ 102); asserted their membership in the Class, defined as Hulu visitors at-large; (¶ 96) and the Video SubClass is specifically defined as "[a]ll individuals and entities in the Unites States who visited Hulu.com during the Class Period and viewed video content." ¶ 97 (emphasis added). Based upon the foregoing, the Court can reasonably infer that Plaintiffs and Class Members were subscribers.

**D.     Hulu's Disclosure Was Not Incident To The Ordinary Course of Hulu's Business**

The VPPA permits disclosures that are "incident to the ordinary course of business of the video tape service provider." 18 U.S.C.§ 2710(b)(2)(E). The term "ordinary course of business" is "narrowly defined" in the statute to mean "only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 USC § 2710(a)(2) (emphasis added); see also, S.Rep. No. 100-599 at 14 (1988), reprinted in 1988 U.S.C.C.A.N. 4342 (noting that the "activities that constitute 'ordinary course of business' are narrowly defined so as to avoid the

possibility that a subsequent interpretation would undercut the purpose of [VPPA], as occurred with the phrase 'routine use' in the 1974 Privacy Act"). "Order fulfillment" and "request processing" are defined in the legislative history as the use, by a video tape service provider, of "mailing houses, warehouses, computer services, and similar companies for marketing to their customers." S.Rep. No. 100-599 at 14 (1988), reprinted in 1988 U.S.C.C.A.N. 4342.

None the of the third parties— ScoreCard, Google Analytics, Doubleclick and Facebook—perform order fulfillment or request processing services to Hulu. The services that that they do perform, such as market research and web analytics, are not in the ordinary course of Hulu's business of delivering video content to subscribers. These third parties receive Plaintiffs and Class Members' video viewing details for their own commercial purposes, independent of delivering videos to consumers. To the extent that Hulu challenges the factual allegations about the role of the third parties when it shared Plaintiffs' information with them, Hulu merely raises a factual question, not appropriate for resolution on a motion to dismiss.[8]

### E.      The VPPA Should Be Construed Liberally to Effect Its Purpose

The VPPA is a remedial statute, and as such, should be liberally construed in favor of consumers to effect its purpose. *See Dirkes*, 936 F. Supp. at 238 (court exercised broad powers to give effect to the intent of Videotape Privacy Protection Act's U.S. Senate sponsors); see also, *Zimmerman v. Puccio*, 613 F.3d 60, 71 (1st Cir. 2010) ("consumer protection statutes are to be construed "liberally in favor of consumers""). *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) ("We are convinced that this reading of the FDCPA is more in harmony with the remedial nature of the statute, which requires us to interpret it liberally") (collecting cases).

---

[8] Hulu argues that it "could," hypothetically speaking, have performed the market research and web analytics activities in-house without violating VPPA.  Def. Mot. 16-17.  But such hypotheticals do not establish that these activities are indeed in the ordinary course of its business of delivery videos, given VPPA's intentionally narrow definition of "ordinary course of business."

1    To rebut this well-settled rule of statutory construction, Hulu argues that VPPA is a

2 criminal statute and therefore must be "strictly construed to prevent its application to situations

3 that were not clearly contemplated by the legislature." Def. Mot. 15. Hulu ignores that fact that

4 VPPA has no criminal application whatsoever, and does not impose any criminal penalties on

5 Hulu or any other potential defendant. *See Sterk v. Redbox Automated Retail*, LLC, 806

6 F.Supp.2d 1059, 1068-69 (N.D. Ill. Aug 19, 2011) *rev'd on other grounds by Sterk v. Redbox*

7 *Automated Retail*, LLC, 672 F.3d 535 (7th Cir. 2012). In the absence of any possible criminal

8 jeopardy, the rule of lenity is inapplicable.

9    But, even assuming the rule of lenity applies, the Supreme Court has cautioned that it

10 provides a governing rule of statutory construction only if, "after seizing everything from which

11 aid can be derived ... [the court] can make no more than a guess as to what Congress intended."

12 *Reno v. Koray*, 515 U.S. 50, 65 (1995) (internal quotation marks and citations omitted). A statute

13 is not considered ambiguous for purposes of application of the rule of lenity simply because it is

14 possible to articulate a narrower construction. *Moskal v. United States*, 498 U.S. 103, 108 (1990).

15 In the present case, there is no basis to say that the court can make "no more than a guess" about

16 what Congress intended. For this reason, there is no basis to apply the rule of lenity as Hulu

17 directs.

18    The Court should reject Hulu's narrow reading of the VPPA. Again, the plain language of

19 the VPPA does not regulate a particular technology or a particular method or form of delivering

20 pre-recorded videos to subscribers; rather, it was drafted broadly with the intent to encompass

21 new technologies. Taking Hulu's argument to its logical conclusion, the VPPA would apply to

22 companies such as Netflix, Blockbuster, and Amazon, which utilize dual distribution platforms,

23 *i.e.*, companies that deliver the same pre-recorded videos by mail order of DVDs and by online

24 video streaming, but would not apply to Hulu or any other company that provides pre-recorded

25 video streaming services only. Such an absurd and inconsistent result must be rejected.

26

27

28

---

**F.     The VPPA Was Enacted To Prevent Wrongful Disclosure of a Subscribers' Video Viewing Preferences.**

The VPPA prohibits video service providers from disclosing personally identifiable information except in certain, limited circumstances. 18 U.S.C. § 2710(b). As a general rule, personally identifiable information may only be disclosed with "the informed, written consent" of the individual at the time the disclosure is sought. 18 U.S.C. § 2710 (b)(2)(B).

The intent of the VPPA is clear from its plain language and from its legislative history: the VPPA was designed to deter companies from sharing with third parties their subscribers' highly sensitive information contained in their video viewing habits and preferences, without the subscribers' prior consent, on a case-by-case basis. This purpose is even more immediate in the online digital video streaming context where the sheer volume of videos viewed and personally identifiable information collected about viewers has increased exponentially due to the availability of video content on the Internet.

"Congress enacted the Videotape Privacy Protection Act to protect [certain personal information of an individual who rents video materials from disclosure." *Dirkes*, 936 F. Supp. at 238 (internal quotations omitted). "The impetus for enacting the measure arose as a result of Judge Robert Bork's 1987 Supreme Court nomination battle, during which a Washington, D.C. newspaper obtained a list of 146 video tapes the Bork family had previously rented from their neighborhood store." *Id.* "Members of the Senate Judiciary Committee were outraged by the invasion into the Bork family's privacy." *Id.* "Both houses of Congress acted quickly to outlaw certain disclosures of such clearly private information, resulting in the Videotape Privacy Protection Act." *Id.*

As its legislative history makes clear, the Act was intended to prohibit, except in limited circumstances, the disclosure to public or private entities of *records* (or information derived from those records) kept by video tape service providers and linking the names of users with the subject matter of the videotaped materials they have requested or obtained. S. Rep. No. 100-599, 100th Cong., 2nd Sess. 1988, U.S.C.C.A.N. 4342-1-4342-9, 1988 WL 243503.

1    The clear intent of the VPPA is to prevent the disclosure of private information. *Dirkes*,

2    936 F. Supp. 235 at 240. As established by its legislative history, the VPPA enables consumers

3    "to maintain control over personal information divulged and generated in exchange for receiving

4    services from video tape service providers." *Id*. (citing S. Rep. No. 100-599, 100th Cong., 2nd

5    Sess. 1988, U.S.C.C.A.N. 4342-8, 1988 WL 243503.

6    This purpose is furthered by allowing Plaintiffs to bring suit against online companies

7    that provide video streaming services and then share personal video viewing information in

8    flagrant violation of the VPPA. *See Dirkes*, 936 F. Supp. 235 at 240 (citing S. Rep. No. 100-599,

9    100th Cong., 2nd Sess. 1988, U.S.C.C.A.N. 4342-8, 1988 WL 243503 ("information collected

10   for one purpose may not be used for a different purpose without the individual's consent")). The

11   issue in the VPPA is not the form or method of video delivery. Rather, the statute concerns the

12   protection of records about the subscriber and what the subscriber viewed. Given its purpose,

13   there is no basis to argue that the online transfer of video content falls outside the purview of the

14   Act.

15   **IV.   CONCLUSION**

16   For the foregoing reasons, Hulu's Motion to Dismiss should be denied. However, if the

17   Court is inclined to grant Hulu's Motion to Dismiss, Plaintiffs respectfully request an opportunity

18   to replead.

19   Date:   May 10, 2012                    Respectfully submitted,

20

21                                           s/ Scott A. Kamber
                                             _____
22                                           By: Scott A. Kamber (*pro hac vice*)

23   Scott A. Kamber (*pro hac vice*)
     skamber@kamberlaw.com
24   David A. Stampley (*pro hac vice*)
     dstampley@kamberlaw.com
25   **KAMBERLAW, LLC**
     100 Wall Street,  23rd Floor
26   New York, New York 10005
     Telephone:   (212) 920-3072
27   Facsimile:   (212) 202-6364

28

Deborah Kravitz (SBN 275661)
dkravitz@kamberlaw.com
**KAMBERLAW, LLP**
141 North St.
Healdsburg, California 95448
Telephone: (707) 820-4247
Facsimile: (212) 202-6364

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
Azita Moradmand (SBN 260271)
amoradmand@parisihavens.com
**PARISI & HAVENS LLP**
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:   (818) 990-1299
Facsimile:    (818) 501-7852

Brian R. Strange (SBN 103252)
LACounsel@earthlink.net
**STRANGE & CARPENTER**
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile:  (310) 826-3210

Counsel for Plaintiffs