David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:       (818) 990-1299
Facsimile:       (818) 501-7852

Scott A. Kamber (pro hac vice)                    Brian R. Strange (SBN 103252)
skamber@kamberlaw.com                             lacounsel@earthlink.net
David A. Stampley(pro hac vice)                   STRANGE & CARPENTER
dstampley@kamberlaw.com                           1200 Wilshire Blvd., Ste. 1900
Grace E. Tersigni (pro hac vice)                  Los Angeles, CA  90025
gtersigni@kamberlaw.com                           Telephone: (310) 207-5055
KAMBERLAW, LLC                                    Facsimile:  (310) 826-3210
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:       (212) 920-3072
Facsimile:       (212) 202-6364

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re: Hulu Privacy Litigation | ) Case No. 3:11-CV-03764-LB |
| | ) |
| | ) **PLAINTIFFS' MEMORANDUM OF POINTS** |
| | ) **AND AUTHORITIES IN SUPPORT OF** |
| | ) **MOTION FOR CLASS CERTIFICATION** |
| | ) |
| | ) Hearing Date:   December 19, 2013 |
| | ) Time:           10:00 a.m. |
| | ) Courtroom:      C |
| | ) Judge:          Hon. Laurel Beeler |
| | ) |
| | ) |

**TABLE OF CONTENTS**

I.     Introduction And Summary Of Argument ......................................................................1

II.    The Video Privacy Protection Act ...............................................................................2

III.   Facts Underlying Liability .........................................................................................3

       A.     The Hulu Website; Raw Ingredients of a VPPA Violation ................................3

              1.     How Hulu Built Profiles and Assigned Identifiers to Its Users .................3

              2.     How Hulu Coded Its Web Site.........................................................4

       B.     Hulu Identified Registered Users and Their Video Selections to Third
              Parties ...........................................................................................5

              1.     Hulu's Disclosures to comScore, Inc...............................................6

              2.     Hulu's Disclosures to Facebook via Code Placed on Each Watch
                     Page ...........................................................................................7

IV.    Facts Which Support Class Certification .....................................................................8

       A.     The Representative Plaintiffs .......................................................................8

       B.     The Proposed Class Definitions.....................................................................9

V.     The Case Satisfies The Requirements Of Rule 23 ........................................................10

       A.     Plaintiffs Satisfy the Rule 23(a) Prerequisites .............................................12

              1.     The Proposed Class is Sufficiently Numerous..................................12

              2.     The Claims Meet the Commonality Requirement ..............................12

              3.     Plaintiffs' Claims are Typical of the Claims of the Class....................15

              4.     Plaintiffs and Their Counsel Will Adequately Represent the Class .........16

              5.     The Proposed Class is Objectively Ascertainable ............................17

       B.     The Requirements of Rule 23(b)(3) are Satisfied .........................................18

              1.     Common Issues of Law or Fact Predominate ..................................18

              2.     Class Litigation is Superior to Other Methods of Adjudication ..............20

VI.    Conclusion ...........................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**CASES**

**Page(s)**

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)................................................................................................10

*Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds,*
    133 S.Ct. 1184 (2013)..................................................................... 10-11, 13, 19

*Baffin v. Ford Motor Co.,*
    458 F.3d 549 (6th Cir. 2006) ............................................................................15

*Ballard v. Equifax Check Servs., Inc.,*
    186 F.R.D. 589 (E.D. Cal. 1999) ......................................................................10

*Bateman v. American Multi-Cinema, Inc.,*
    623 F.3d 708 (9th Cir. 2010) ............................................................................22

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ............................................................................11

*California Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
    917 F.2d 1171 (9th Cir. 1990) ..........................................................................15

*Campbell v. Pricewaterhouse Coopers, LLP,*
    253 F.R.D. 586 (E.D. Cal. 2008) ......................................................................17

*Chavez v. Blue Sky National Bev. Co.,*
    268 F.R.D. 365 (N.D. Cal. 2010)................................................................12, 16

*Deposit Guaranty Nat'l Bank v. Roper,*
    445 U.S. 326 (1980).........................................................................................21

*Dikes v. Borough of Runnemede,*
    936 F. Supp. 235 (D.N.J. 1996) .........................................................................2

*Edwards v. First American Corporation,*
    289 F.R.D. 296 (C.D. Cal. 2012) ......................................................................10

*Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.,*
    2012 WL 1071281 (M.D. Tenn. March 29, 2012)............................................11

*Gartin v. S&M NuTec, LLC,*
    245 F.R.D. 429 (C.D. Cal. 2007) ......................................................................18

*Gonzales v. Arrow Fin. Servs. LLC,*
    489 F. Supp. 2d 1140 (C.D. Cal. 2000) ............................................................12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................ passim

*Harris v. comScore, Inc.*,
   2013 WL 1339262 (April 2, 2013) .............................................................6, 18, 20

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ............................................................................10

*In Re: Citric Acid Antitrust Litigation*,
   1996 WL 655791 (N.D. Cal. Oct. 2, 1996)............................................................12

*In re Corrugated Container Antitrust Litigation*,
   80 F.R.D. 244 (S.D. Tex. 1978)............................................................................11

*In re First Alliance Mortg .Co.*,
   471 F.3d 977 (9th Cir. 2006) ......................................................................10, 13

*In re Folding Carton Antitrust Litigation*,
   88 F.R.D. 211 (N.D. Ill. 1980)............................................................................11

*In re Netflix Privacy Litigation*,
   2012 WL 2598819 (N.D. Cal. July 5, 2012) (class certification reaffirmed in connection with
   final approval, at 2013 WL 1120801 (N.D. Cal. March 18, 2013)) ................................ passim

*In Re POM Wonderful LLC Marketing and Sales Practices Litigation*,
   2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ....................................................................21

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products
   Liability Litigation*,
   2012 WL 7802852 (C.D. Cal. Dec. 28, 2012) ....................................................................21

*In re Wireless Facilities, Inc.*,
   253 F.R.D. 607 (S.D. Cal. 2008) ............................................................................15

*Lervil v. Infight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978)) ............................................................................17

*Leyva v. Medline Industries Inc.*,
   716 F.3d 510 (9th Cir. 2013) ............................................................................21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) ............................................................................18

*Mazza v. Am. Honda Motor Co. Inc.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................18

*Menagerie Prods. v. Citysearch*,
   2009 WL 3770668 (C.D. Cal. 2009)............................................................................22

*Nelson v. Mead Johnson Nutrition Co.*,
  270 F.R.D. 689 (S.D. Fla. 2010)................................................................19

*Reynoso v. S. Cnty. Concepts*,
  2007 WL 4592119 (C.D. Cal. Oct. 15, 2007)..............................................12

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ....................................................................15

*Rowe v. E.I. Dupont De Nemours and Co.*,
  262 F.R.D. 451 (D.N.J. 2009) .....................................................................16

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) .....................................................................15

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985) .................................................................16

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999) .................................................................17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................................11

*Sullivan v. Kelly Services, Inc.*,
  268 F.R.D. 356 (N.D. Cal. 2010) ................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)..........................................................................10, 13

*Wiegele v. FedEx GroundPackage Sys.*,
  2008 U.S. Dist. LEXIS 10246 (S.D. Cal. Feb. 12, 2008) ............................11

*Wiener v. Dannon*,
  255 F.R.D. 658 (C.D. Cal. 2009) ...........................................................16, 21

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .......................................................................15

*Wolph v. Acer America Corp.*,
  474 F.R.D. 477 (N.D. Cal. 2011).................................................................17

*Zinser v. Accufix Research Institute, Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ...............................................................11, 20

*Zinser v. Accufix Research Institute, Inc.*,
  273 F.3d 1266 (9th Cir. 2001) .....................................................................11

STATUTES

18 U.S.C. § 2710...........................................................................................2, 13

18 U.S.C. § 2710(a)(3)..................................................................................................2

18 U.S.C. § 2710(a)(4)..................................................................................................2

18 U.S.C. § 2710(b)(2)(A)............................................................................................2

18 U.S.C. § 2710(b)(2)(C)............................................................................................2

18 U.S.C. § 2710(c)(1)..................................................................................................3

18 U.S.C. § 2710(c)(2)..................................................................................................3

18 U.S.C. § 2710(c)(2)(D)..........................................................................................10

Electronic Communications Privacy Act....................................................................20

Stored Communications Act.......................................................................................20

VPPA .................................................................................................................. passim

**OTHER AUTHORITIES**

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and
      Procedure*,
      § 1778 (3d ed. 2009) ........................................................................................19

Class Actions, *The Class Representative: The Problem of the Absent Plaintiffs*, 68 n. W.U.L....16

Fed. R. Civ. P. 23 ................................................................................................. 10-11

Fed. R. Civ. P. 23(a) ............................................................................................ passim

Fed. R. Civ. P. 23(a)(1)...............................................................................................12

FED. R. CIV. P. 23(a)(2)...........................................................................................12, 14

Fed. R. Civ. P. 23(a)(3)...............................................................................................15

Fed. R. Civ. P. 23(b)....................................................................................................11

Fed. R. Civ. P. 23(b)(3)......................................................................................... passim

Fed. R. Civ. P. 23(g)(1)...............................................................................................17

Fed. R. Civ. P. 30(b)(6)..................................................................................................1

S. Rep. No. 100-599, 100th Cong., 2nd Sess. 1988, U.S.C.C.A.N. 4342-8 ...................2

# I.   Introduction And Summary Of Argument

This case is about more than a technical violation of a statute; it is about code Hulu wrote and used purposely to disclose the identify its users and their video selections to third parties in violation of the Video Privacy Protection Act ("VPPA"). This is not a situation where Hulu attempted to get the permissions required by the statute; rather, for years, Hulu chose to make disclosures to third parties without giving notice (let alone getting consent). It is a compelling case of blatant statutory violations.

Hulu may try to deny the realities of VPPA's language and Hulu's own website code, but it cannot escape the simple fact that it broke the law, repeatedly. Hulu knew it identified its users and their video selections to third parties. In fact, this Memorandum was originally intended to rely upon the testing and testimony of plaintiffs' expert set forth in the Declaration of Craig E. Wills, Ph.D. However, the facts upon which plaintiffs rely has now been admitted by Hulu, either in the Rule 30(b)(6) deposition taken on August 20, 2013, Hulu's Response to Plaintiffs' First Requests for Admission, or Hulu's own evidence submitted in support of its motion for summary judgment. Thus, plaintiffs submit their Motion for Class Certification with the confidence that the facts upon which they rely—on the merits and for this motion—are supported not only by plaintiffs' expert, but also by Hulu, itself.

Plaintiffs seek certification of two classes:  For the first class, Hulu disclosed "information which identifies a person as having requested or obtained specific video materials or services" to comScore from March 4, 2011 through November 8, 2012 (the "comScore Disclosure Class"). For the second class, Hulu disclosed "information which identifies a person as having requested or obtained specific video materials or services" to Facebook from April 21, 2010 through June 7, 2012 (the "Facebook Disclosure Class").

As argued below, plaintiffs' Classes should each be certified because plaintiffs demonstrate numerosity, commonality, typicality, and adequacy, in satisfaction of the requirements of Rule 23(a). Plaintiffs further satisfy the requirements of Rule 23(b)(3) that: (i) questions of law or fact common to the members of the Classes predominate over any questions affecting only individual

members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## II. The Video Privacy Protection Act

Congress enacted the VPPA to protect the privacy of consumers' decisions about what videos they want to watch. The VPPA makes it illegal—subject to certain narrow exceptions—for a video service provider knowingly to disclose information that identifies a person as having requested or obtained specific video materials or services from the provider.

Hulu is a "video tape service provider" under the VPPA provision defining that term to apply to a business that delivers "prerecorded tapes or similar audio visual materials." *See* 18 U.S.C. § 2710(a)(4); Dkt. No. 68, 9:18-19 ("the court concludes that Congress used 'similar audio video materials' to ensure that VPPA's protections would retain their force even as technologies evolve").

The VPPA "protect[s] certain personal information of an individual who rents video materials from disclosure." *See Dikes v. Borough of Runnemede*, 936 F. Supp. 235, 238 (D.N.J. 1996), *quoting* S. Rep. 100-599, 2d Sess. at 16 (1988). Specifically, the VPPA prohibits a video tape service provider from knowingly disclosing to any person personally identifiable information concerning any consumer of such provider, except under certain narrow exceptions.[1] *See* 18 U.S.C. § 2710. The VPPA's broad definition of "personally identifiable information" states: "[p]ersonally identifiable information *includes*[2] information which identifies a person as having requested or obtained specific video materials or services." *Id.* § 2710(a)(3) (emphasis added).

As set forth below in plaintiffs' common questions of law and fact, the determinative questions in this case are whether Hulu identified class members to comScore and Facebook,

---

[1] The exceptions under section 18 U.S.C. §§ 2710(b)(2)(A) and (C) of the VPPA, for disclosures to the consumer or law enforcement, do not apply here.

[2] "Unlike the other definitions in this subsection, paragraph (a)(3) of the VPPA uses the word 'includes' *to establish a minimum, but not exclusive, definition of personally identifiable information*." S. Rep. No. 100-599, 100th Cong., 2nd Sess. 1988, U.S.C.C.A.N. 4342-8, 1988 WL 243503 at *12 (emphasis added).

respectively, as persons who had requested or obtained specific video materials from Hulu. As detailed below, these issues are common across the Classes and are well suited for class resolution.

The procedural basis for a VPPA civil action is provided in subsection (c). Section 2710(c)(1) provides a private federal right of action to "any person aggrieved by any act of a person in violation of this section." Under section 2710(c)(2), a federal court may award (A) actual damages but not less than liquidated damages of $2,500, (B) punitive damages, (C) reasonable attorneys' fees and litigation costs, and (D) preliminary and equitable relief as may be appropriate.

## III.   Facts Underlying Liability

### A.   The Hulu Website; Raw Ingredients of a VPPA Violation

#### 1.   How Hulu Built Profiles and Assigned Identifiers to Its Users

Since 2007, Hulu has operated www.hulu.com, a website that allows users to watch television programs, motion pictures, and other pre-recorded video content on their computers, and to do so when they wants (i.e., "on demand").  Declaration of Jeff Yang ("Yang Decl.") ¶ 2, attached as Ex. 1 to the Declaration of David C. Parisi hereto ("Parisi Decl.")[3] Users of Hulu that are registered with Hulu are referred to herein as "Registered Users" or "Users."

Hulu has a substantial viewership population and the total number of Registered Users is in the millions. Deposition of Richard M. Tom ("Tom Depo."),█████████ attached as Exhibit 7 to the Parisi Decl.; See Ex. 9 (February 2012 U.S. Online Video Rankings).  At the time of registration, Hulu required the completion of an account creation form with "first and last name, birthdate, gender, and their email address."  Ex. 1, Yang Decl., ¶¶6-7.  Upon registration, Hulu assigned a unique numeric identifier to each Registered User ("Hulu User ID"). Ex. 1, Yang Decl., ¶18.████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ From approximately March 2009 through May 31, 2013, Hulu created a profile web page for each Registered User on the Hulu website.  Declaration of Xinan Wu (Wu Decl.) ¶3, attached as Ex. 2 to Parisi Decl.  From

---

[3] Hulu offers its basic services for free.  Ex. 1, Yang Decl., ¶ 2. Hulu also offers a paid service (Hulu Plus) that gives users access to additional video content as well as the ability to view Hulu content on devices other than computers. *Id.*

Plaintiffs' Memorandum of Points and Authorities
in Support of Motion for Class Certification
3
Case No. 3:11-CV-03764-LB

March 12, 2009 to August 1, 2011, these profile pages were publicly available at URLs in which the name of each particular User's profile page was the User's Hulu User ID: http://www.hulu.com/profiles/u/14340379. On or about August 1, 2011, Hulu stopped the inclusion of each Hulu User IDs in the Users' profile page URLs.

Hulu ████████████ that included user account information such as full name, birthdate, and email address for each Registered User.  From March 12, 2009 through May 31, 2013, some of this account information was included by Hulu on Users' profile pages and was public, i.e., visible to third parties on the User's Hulu profile page. Hulu's Response to Requests for Admission ("Response to RFA") Nos. 6 and 7, attached as Ex. 8 to Parisi Decl.; Ex. 2, Wu Decl., ¶9. Hulu did not allow Registered Users to decline to share their first and last names on their public profile pages.  Ex. 8, Response to RFA Nos. 6 and 7; Ex. 2, Wu Decl., ¶10.

### 2.   How Hulu Coded Its Web Site

Each video available on Hulu is displayed on a "watch page" with information about particular content (movie, television episode, or video clip) that could be selected for viewing (the "Watch Page"). ████████████ Ex. 1, Yang Decl., ¶3. Each Watch Page is a web page on the Hulu website where a User actually watches video content. ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████

---

4 "URL," is an acronym for the uniform resource locator that is commonly knows as a web or Internet address.  Here, the URL provides a scheme (i.e, "http"), a colon and two slashes, a domain name (i.e., "www.hulu.com/"), and then the resource path for a particular Hulu web page (i.e., "watch/videoID_number/videotitle").

1    ███ wrote and deployed the code[5] for each of the Watch Pages. ██████████

2    ████████████████████████████████████ Tom Depo, ████████████████████████

3    ██████████████████████████████████████████████████████████████████

4    ██████████████████████████████████████████████████████████████████

5    ████████████████████████ *See* Tom Depo, █████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████████████████

8    ████████████████████

9    ██████████████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████████████

11   ████████████████████████████████ Wills Decl., ██████████████

12   **B.      Hulu Identified Registered Users and Their Video Selections to Third Parties**

13   During the Class Period. ████████████████████████████████████████

14   ██████████████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████ As plaintiffs will prove

17   at trial, comScore and Facebook were each provided sufficient information to identify a Registered

18   User and the video materials they requested or obtained.

19   As discussed in section I.A.2., these disclosures were triggered ████████████████

20   ████████████████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████████████████

24   ██████████████████████████.

---

[5] "Code" is used herein to refer to automated computer instructions (as opposed to manually entered instructions) and encompasses computer programs, "logic," or commands whether in source or executable form, and including instructions written in HTML, JavaScript, and ActionScript, whether hard-coded or dynamically generated through other logic.

### 1.  Hulu's Disclosures to comScore, Inc.

comScore collects data about the activities of consumers on the Internet, analyzes the data, and sells its analyses to its clients. *Harris v. comScore, Inc.*, 2013 WL 1339262, *1 (April 2, 2013). comScore is one of the largest collectors of information on the Internet. According to comScore's website, it captures 1.5 trillion interactions each month, which is equal to almost 40% of the total page views of the entire Internet. http://ir.comscore.com/releasedetail. cfm?ReleaseID=768538, last accessed August 26, 2013. comScore collects metrics using its Unified Digital Measurement (UDM) methodology on the websites of 90 percent of the top 100 U.S. media publishers.

The relationship between Hulu and comScore remains the subject of ongoing discovery. As of last week Hulu was ███████████████████████████████████████████ ████████████████████████Tom Depo.██████████████ What is known and relevant to this motion is that Hulu made repeated disclosures to comScore in violation of the VPPA. From March 4, 2011 through November 2012,[6] when a User watched a video on hulu.com, the following information was sent to comScore: Hulu User ID (which is linked to the User's Hulu profile page, see *supra*, at sec. III A. 1., Hulu computer GUID (global unique identifier), Ad ID, series/show name, and episode number. Ex. 8, Response to RFA No. 20; Ex. 1, Yang Decl. ¶ 17. In addition, ██████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████

For plaintiffs to prevail under VPPA, plaintiffs will need to prove that Hulu disclosed to comScore information that identified, within the meaning of VPPA, a Registered User as having requested or obtained particular video materials. *See supra* at II. Since Hulu admits that it identified each video selected for viewing by a Registered User, the only open question is whether the information provided to comScore was sufficient to identify a Registered User within the meaning of VPPA. Plaintiffs will prove at trial that the information sent to comScore was more

---

[6] Hulu stopped sending the Hulu User ID to comScore on November 8, 2012. Yang Decl. ¶ 20.

than sufficient for comScore to identify a Registered User and the video materials they requested or obtained.

Since ██████████████████████████████████████████████████ ████████████████████████████████ these questions of operative fact are common across the comScore Disclosure Class. It is worth mentioning that defendant cannot have it both ways. Defendant contends that common facts work to dispose of the claims in its Summary Judgment Motion, thus they should not be permitted to here contend that these same types of facts are not common for class certification purposes. *See*, e.g., Dkt 101 at 16:15-17.

### 2.    Hulu's Disclosures to Facebook via Code Placed on Each Watch Page

Facebook is the world's largest social media site and known around the world.  In addition to the information its members put in their profiles, Facebook collects information about its members from around the Internet.  This information collection serves several interests to Facebook including increasing the value of advertising rates on facebook.com. See Facebook Form 10-K filed Feb. 1, 2013, http://investor.fb.com/secfiling.cfm?filingID=1326801-13-3, last accessed August 26, 2013. The relationship between Hulu and Facebook remains the subject of ongoing discovery.  As of last week Hulu was █████████████████████████████████████████████ ███████████████████████ Tom Depo., ██████████████ What is known and relevant to this motion is that Hulu disclosed information to Facebook that was a violation of VPPA. From April 21, 2010 through June 7, 2012, the code tha ███████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████

The mechanism by which this disclosure happened is known. █████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████

1

2

3

4

5

6

7    In order for plaintiffs to prevail under VPPA, plaintiffs will need to prove that Hulu

8   provided information that identified, within the meaning of VPPA, a Registered User as having

9   requested or obtained particular video materials.  Plaintiffs will prove at trial that the Facebook

10  datr cookie and Watch Page URL was more than sufficient for Facebook to identify a Registered

11  User and the video materials they requested or obtained.

12   Since the same computer code that resides on each Hulu Watch Page was run on the

13  browsers of each and every Registered User, these questions of operative fact are common across

14  the Facebook Disclosure Class.

15  **IV.   Facts Which Support Class Certification**

16  **A.   The Representative Plaintiffs**

17   Plaintiff Zampella has been a Registered User since at least June 2011, and plaintiffs Torre,

18  Wymyczak and Garvey have been Registered Users of Hulu prior to the beginning of the class

19  period on March 4, 2011. Torre Decl., ¶ 4; Wymyczak Decl., ¶ 4; Garvey Decl., ¶ 4; and Zampella

20  Decl., ¶ 5. Each of the plaintiffs is currently a Hulu Registered User. Torre Decl., ¶ 5; Wymyczak

21  Decl., ¶ 5; Garvey Decl., ¶ 4; and Zampella Decl., ¶ 5.  All plaintiffs are also Facebook users who

22  have used Facebook on the same computer on which they have selected and viewed videos from

23  the Hulu website.  Torre Decl., ¶ 7; Wymyczak Decl., ¶ 7; Garvey Decl., ¶ 7; and Zampella Decl.,

24  ¶ 7.  Further, none of the proposed class representatives linked their Hulu account with their

25  Facebook account. Torre Decl., ¶ 7; Wymyczak Decl., ¶ 7; Garvey Decl., ¶ 7; and Zampella Decl.,

26  ¶ 7.

27

28

---

## B.       The Proposed Class Definitions

Plaintiffs seek certification of two overlapping classes of Hulu Registered Users[7]. First, plaintiffs seek certification of the following class under Federal Rule of Civil Procedure 23(b)(3):

> **comScore Disclosure Class**: All persons residing in the United States and its territories who, from March 4, 2011 through November 8, 2012, were registered users of hulu.com (including, but not limited to, paying subscribers, also known as Hulu Plus subscribers) and requested and/or obtained video materials and/or services on hulu.com during the Class Period. Excluded from the Class are (i) judges to whom this case was assigned and judicial staffs; and (ii) all current or former Hulu employees.

Plaintiffs also seek certification of the following class under Federal Rule of Civil Procedure 23(b)(3):

> **Facebook Disclosure Class**: All persons residing in the United States and its territories who, from April 21, 2010 through June 7, 2012, were registered users of hulu.com (including, but not limited to, paying subscribers, also known as Hulu Plus subscribers) while being members of Facebook and requested and/or obtained video materials and/or services on hulu.com during the Class Period. Excluded from the Class are (i) any person who participated in Facebook connect with Hulu[8]; (ii) judges to whom this case was assigned and judicial staffs; and (iii) all current or former Hulu employees.

The class definitions are precise, objective, and presently ascertainable. The definitions include objective characteristics that would permit consumers to identify themselves as members of the proposed classes. In addition, a nationwide class is appropriate because at issue here is a violation of a federal statute.

---

[7] The beginning and end dates of the class periods are based on information discovered to date, and further discovery may limit or expand the above-enumerated dates. Because Hulu's corporate witness lacked certain date-specific information, plaintiffs reserve the right to amend the class definitions as further information is learned. For example, at present both classes end on the date that plaintiffs currently believe Hulu ceased to provide identifying information in violation of VPPA. If it is discovered that identifying materials were shared after the enumerated dates, it may be appropriate to amend the class definition(s).

[8] Persons who participated in Facebook connect with Hulu are excluded from the class because they present different question of law and fact and do not create a cohesive class.

**V.    The Case Satisfies The Requirements Of Rule 23**

Consumer protection actions with relatively small individual claims, such as the statutory claims here, are particularly well-suited for class certification. *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *In re First Alliance Mortg .Co.*, 471 F.3d 977, 992 (9th Cir. 2006); *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged'"). In fact, VPPA cases in particular are well-suited for class certification. *See In re Netflix Privacy Litigation*, 2012 WL 2598819 (N.D. Cal. July 5, 2012) (provisionally certifying a Rule 23(b)(3) class asserting VPPA claims for settlement purposes) (class certification reaffirmed in connection with final approval, at 2013 WL 1120801 (N.D. Cal. March 18, 2013)). Further, any doubt as to the propriety of certification should be resolved in favor of certifying the class, subject to later revision, where, as here, denying class certification will almost certainly terminate the action and be detrimental to the class members.[9] *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964); *Edwards v. First American Corporation*, 289 F.R.D. 296 (C.D. Cal. 2012) (citing *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1154 (C.D. Cal. 2000) for the proposition that "'doubts regarding the propriety of class certification should be resolved in favor of certification.'").

Class certification presents a procedural issue and not a merits determination. Indeed, in *Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S.Ct. 1184 (2013), the Supreme Court recently discussed the role of merits determinations in connection with class certification proceedings, further clarifying that its prior opinion in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) should not be read to allow substantial consideration of the merits at the class certification stage. 133 S.Ct. at 1194-95. "Rule 23 grants courts no license to engage in free-ranging merits inquiries." *Id.* at 1194-95. "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23

---

[9] Pursuant to 18 U.S.C. § 2710(c)(2)(D), plaintiffs also seek equitable relief from the Court, including but not limited to, an order precluding Hulu from causing the disclosure of video titles and the Hulu User ID, whether hashed or not, to third parties.

prerequisites for class certification are satisfied." *Id.* at 1195. "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *Id.* (quoting Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U.S.C. App., p. 144).

The Court may consider evidence that goes to the requirements of Rule 23, but should not weigh competing evidence. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003). Indeed, when ruling on a motion for class certification, the court is "'bound to take the substantive allegations of the complaint as true.'" *Wiegele v. FedEx GroundPackage Sys.*, 2008 U.S. Dist. LEXIS 10246, at *8 (S.D. Cal. Feb. 12, 2008) (*quoting Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975)); *see also Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*, 2012 WL 1071281, at *33 (M.D. Tenn. March 29, 2012) (plaintiffs' burden on class certification "is not by a preponderance of the evidence, as that standard applies only to proving the existence of the class at the time of trial;" allegations of complaint taken as true at class certification stage). If the plaintiff offers a reasonable theory of the case supporting a classwide cause of action, that is sufficient. *See Blackie*, 524 F.2d at 901; *In re Folding Carton Antitrust Litigation*, 88 F.R.D. 211, 215 (N.D. Ill. 1980); *In re Corrugated Container Antitrust Litigation*, 80 F.R.D. 244 (S.D. Tex. 1978).

Once the requirements of Rule 23(a) are met, the plaintiff must also show that the lawsuit qualifies for class action status under one or more of the criteria found in Rule 23(b). *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), amended and superseded on denial of rehearing by *Zinser v. Accufix Research Institute, Inc.*, 273 F.3d 1266 (9th Cir. 2001). Rule 23(b) requires that the plaintiff establish that either: (1) there is a risk of inconsistent adjudication or adjudication of individual class members' claims would substantially impair non-party members' ability to protect their interests; (2) the defendant acted on grounds generally applicable to the class; or (3) common questions of law and fact predominate, and class resolution is superior to other available methods of adjudicating the claims. "In formulating this judgment, the Court may properly consider both the allegations of the class action complaint and

the supplemental evidentiary submissions of the parties." *In Re: Citric Acid Antitrust Litigation*, 1996 WL 655791, *2 (N.D. Cal. Oct. 2, 1996).

As detailed below, plaintiffs satisfy each of the prerequisites of Rule 23(a) and (b)(3).

### A.     Plaintiffs Satisfy the Rule 23(a) Prerequisites

Rule 23(a) enumerates four prerequisites for class certification, referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Each of these requirements is met here.

### 1.     The Proposed Class is Sufficiently Numerous

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. "While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Arizona Beverages USA, LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012).

The class easily meets the numerosity prerequisite. The class consists of millions of individuals, making joinder impracticable. Hulu admits that, for the Class Periods, the number of Registered Users in the United States exceeded one thousand. See Responses to RFA Nos. 1 and 3; ███████████████████ Accordingly, the numerosity requirement is readily satisfied. *See In re Netflix Privacy Litigation*, 2012 WL 2598819, at *3 (VPPA class of Netflix subscribers meets numerosity requirement); *Reynoso v. S. Cnty. Concepts*, 2007 WL 4592119, *2 (C.D. Cal. Oct. 15, 2007) ("sheer number of potential class members justifies" numerosity) and *Chavez v. Blue Sky National Bev. Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010) ("Although the parties have not identified the number of possible class members, the court infers from the allegation that Blue Sky sold over $20 million of product, or over 500,000 cases per year, that there are numerous purchasers who are potential members as to satisfy the numerosity requirement.")

### 2.     The Claims Meet the Commonality Requirement

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Rule 23(a)(2) has been construed permissively," and may be met by one common

issue of law or a common core of facts. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *see also First Alliance*, 471 F.3d at 990-91. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' "which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal–Mart Stores, Inc. v. Dukes*, –––– U.S. ––––, ––––, 131 S.Ct. 2541, 2551 (2011). The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Commonality is satisfied by "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019-20. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but , rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc.*, 131 S.Ct. at 2551.[10]

Here, the common questions can be answered by a determination of whether Hulu, as an online video provider, violates the VPPA, 18 U.S.C. § 2710, when, without a subscriber's prior written consent, it discloses to a third party information that identified, within the meaning of VPPA, a Registered User as having requested or obtained particular video materials. The common factual and legal questions presented in this case, which meet the commonality requirement of Rule 23(a) as well as the predominance requirement of Rule 23(b)(3) (discussed more fully below), are as follows:

**comScore Disclosure Class**

    1.    Whether information about each Class Member provided to comScore "identifies a person", under the VPPA;

---

[10]   However, with respect to the predominance of common questions, discussed more fully below, as the Supreme Court recently made clear in *Amgen*, 133 S.Ct. at 1191, "Rule 23(b)(3) requires a showing that ***questions*** common to the class predominate, not that those **questions** will be answered, on the merits, in favor of the class." (emphasis in original).

2.  Whether the video titles provided to comScore identify "specific video materials or services" under the VPPA;

3.  Whether Hulu obtained Class Members' "informed, written consent" under the VPPA to disclose their personally identifiable information to comScore, at the time Hulu made such disclosure;

4.  Whether, as a result of Hulu's conduct the Class is entitled to equitable relief and/or other relief, and if so the nature of such relief; and

5.  Whether, as a result of Hulu's conduct the Class is entitled to damages, including statutory and/or punitive damages.

**Facebook Disclosure Class**

1.  Whether the Facebook datr cookie provided to Facebook for each class member "identifies a person" to Facebook under the VPPA;

2.  Whether the URLs provided to Facebook identify "specific video materials or services" under the VPPA;

3.  Whether Hulu obtained Class Members' "informed, written consent" under the VPPA to disclose their personally identifiable information to Facebook, at the time Hulu made such disclosure;

4.  Whether, as a result of Hulu's conduct the Class is entitled to equitable relief and/or other relief, and if so the nature of such relief; and

5.  Whether, as a result of Hulu's conduct the Class is entitled to damages, including statutory and/or punitive damages.

**Defenses Raised By Hulu**

1.  Whether Hulu's disclosures were incident to Hulu's debt collection activities, order fulfillment, request processing, or transfer of ownership;

2.  Whether Hulu's disclosures were in Hulu's ordinary course of business;

.

A determination of these questions will resolve "in one stroke" the issues that are "central to the validity" of each Class Member's claims. *See In re Netflix Privacy Litigation*, 2012 WL 2598819, at *3 (Rule 23(a)(2) commonality and Rule 23(b)(3) predominance and superiority requirements met in VPPA case "because all claims for relief arise from Netflix's stated policy for and a uniform practice of retaining and disclosing the personally identifiable information and Entertainment Content Viewing Histories of its subscribers and former subscribers – affecting all those individuals in the same way. Such allegations show that plaintiffs and the proposed Settlement Class share common statutory claims under the VPPA, as well as various state law

claims, that likewise result in common and shared factual and legal questions."). *See also Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Accordingly, the claims of all Class Members "stem from the same source." *See Hanlon*, 150 F.3d at 1019-20. The commonality requirement is easily satisfied.

### 3.    Plaintiffs' Claims are Typical of the Claims of the Class

Rule 23(a)(3)'s typicality requirement is satisfied where the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In other words, typicality is established where the class was injured through an alleged common practice. *Id.*; *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990); *Baffin v. Ford Motor Co.*, 458 F.3d 549, 552-53 (6th Cir. 2006); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (focus is on the "defendants' conduct and plaintiff's legal theory"); *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 611 (S.D. Cal. 2008) (the proof plaintiff would need to establish its claims would also prove the claims of the class, satisfying typicality).

Typicality is met here as plaintiffs and the proposed classes assert claims which arise from the same course of conduct – Hulu's unauthorized disclosure of "personally identifiable information" within the meaning of the VPPA to third parties, without informed written consent.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████. See *supra*, at secs. III. A. and B. For purposes of the VPPA violations, Hulu simply does not treat Registered Users differently during the relevant class periods.

Further, for each putative class member to recover under the VPPA as alleged here, each must prove the same elements as plaintiffs. Additionally, the injuries suffered by plaintiffs and the class members are the same: the violation of their statutory right to maintain anonymity with regard to their video viewing choices. *See In re Netflix Privacy Litigation*, 2012 WL 2598819, at

\*3 (typicality requirement met where defendant allegedly violated the VPPA in the same manner for plaintiffs and all class members and where plaintiffs and all class members "suffered essentially identical damages flowing from that uniform conduct.").

In sum, the ultimate success of plaintiffs' claims will depend on proving an identical set of facts and supporting law as every other class member. As these issues "arise[] from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory," *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985), the plaintiffs are typical. *Chavez*, 268 F.R.D. at 378 (finding plaintiff's claim, that a mass market product label was misleading, arose from the same facts and legal theory as other class members and therefore was typical). Typicality is satisfied here.

### 4.    Plaintiffs and Their Counsel Will Adequately Represent the Class

For adequacy, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020; *see also Wiener v. Dannon*, 255 F.R.D. 658, 667 (C.D. Cal. 2009).[11]   The interests of plaintiffs and the members of the proposed classes are fully aligned in determining whether Hulu's unauthorized transmission of plaintiffs' information to third parties is prohibited. Each named plaintiff has worked with his/her counsel in preparing this matter for litigation. Decl. of Torre, ¶9, Decl. of Wymyczak, ¶9; Decl. of Garvey, ¶9; Decl. of Zampella, ¶9. Further, plaintiffs retained counsel with significant experience in prosecuting large consumer class actions, who should also be appointed Class Counsel.[12] Parisi Decl., Exhs. 10-12. Therefore, the adequacy

---

[11]   Notably, while plaintiffs generally bear the burden to establish the elements of class certification, at least arguably, "when it comes to adequacy, '[t]he party challenging representation bears the burden to prove that representation is not adequate.'" *Rowe v. E.I. Dupont De Nemours and Co.*, 262 F.R.D. 451, 456 (D.N.J. 2009) (citation omitted).

[12]   In fact, "the single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." Symposium on Class Actions, *The Class Representative: The Problem of the Absent Plaintiffs*, 68 N.W.U.L. Rev. 1133, 1136 (1974).

---

requirement is met here.[13] *See In re Netflix Privacy Litigation*, 2012 WL 2598819, at *3 (finding that the plaintiffs and their counsel are adequate representatives of a VPPA class, where "Plaintiffs' interests are representative of and consistent with the interests of the proposed Settlement Class – all stand to recover statutory damages under the VPPA for Netflix's alleged unlawful retention and disclosure of their personally identifiable information and Entertainment Content Viewing Histories" and where plaintiffs actively participated in the litigation).

### 5.    The Proposed Class is Objectively Ascertainable

Apart from the explicit requirements of Rule 23(a), some courts have held, at least in the context of class certification under Rule 23(b)(3), that a proposed class must also be "adequately defined and clearly ascertainable." *Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliot v. ITT Corp.,* 150 F.R.D. 569, 573-74) (N.D. Ill. 1992)); *see also* Manual for Complex Litigation, Fourth, § 21:222 at 270-71 (2011). "An adequate class definition specifies a distinct group of plaintiffs whose members [can] be identified with particularity." *Sullivan v. Kelly Services, Inc.*, 268 F.R.D. 356, 362 (N.D. Cal. 2010) (quotations omitted, citing *Campbell v. Pricewaterhouse Coopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008) and *Lervil v. Infight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). The specific identity of class members need not be known, as long as class membership can be determined "by reference to objective criteria." *Id.* "The class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular person is a class member." *Wolph v. Acer America Corp.*, 474 F.R.D. 477, 482 (N.D. Cal. 2011) (internal citation omitted).

Here, the proposed Classes meet this standard. All class members must be (1) Registered Users of Hulu, (2) have requested and/or obtained video services, (3) during the class periods. This is precise and objective. Moreover, in order to become a Registered User of Hulu, users must provide their "name, email address, birth date, gender and address." Yang Decl., ¶ 9 citing

---

[13] Rule 23(g)(1) also requires the Court to appoint class counsel. As stated in the Parisi Declaration, Plaintiffs request the Court appoint David C. Parisi, Scott A. Kamber, and Brian R. Strange as Class Counsel.

privacy policies dated November 17, 2010 and June 30, 2011, relevant portions of which are attached to the Parisi decl. at Exs. 3-6. Because Hulu possesses contact information, in the form of e-mail addresses, for all registered users (Yang Decl. ¶¶ 6-7; Response to RFA No. 54), Class Members are readily identifiable. See *Harris v. comScore, Inc.*, 2013 WL 1339262, *8 (N.D. Ill. April 2, 2013). Further, Class Members can also likely readily identify themselves from their own records. *Id.* at *9 (where "bulk of the class membership will likely be determined by comScore's records, [] evaluation of any additional plaintiffs claiming membership by affidavit [is] manageable," and if litigation reveals otherwise, the court can reconsider certification.) Accordingly, ascertainability poses no road block to certification here.

### B.   The Requirements of Rule 23(b)(3) are Satisfied

Class certification is also appropriate pursuant to Rule 23(b)(3). Under Rule 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162-63 (9th Cir. 2001).

### 1.   Common Issues of Law or Fact Predominate

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). In evaluating whether common issues predominate over individual issues, the class-wide issues should constitute a significant aspect of the case. The predominance "inquiry trains on legal or factual questions that qualify each class member's case as a genuine controversy." *Id.* at 623; *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. The requirement demands only predominance of common questions, not exclusivity or unanimity of them. Rule 23(b)(3); *see also Gartin v. S&M NuTec, LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) ("When one or more of the central issues in the action are common to the class

1    and can be said to predominate, [a class action] will be considered proper. . . even though other

2    matters will have to be tried separately."). "Rule 23(b)(3), however, does *not* require a plaintiff

3    seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to

4    classwide proof.'" *Amgen*, 133 S.Ct. at 1196 (emphasis in the original) (internal citations and

5    quotations omitted). "What the rule does require is that common questions "*predominate* over

6    any questions affecting only individual [class] members." *Id.* (emphasis in the original). Thus,

7    where, as here, "common questions present a significant aspect of the case and they can be

8    resolved for all members of the class in a single adjudication, there is clear justification for

9    handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at

10   122 (internal quotations omitted).

11        Here, plaintiffs and all Class Members were Registered Users of Hulu and suffered the

12   same unauthorized disclosure of their protected personal information. Indeed, each Class

13   Member was injured under the VPPA just by merely subscribing to Hulu and utilizing its

14   services. Accordingly, each Class Member proffers the same facts, same legal theory of liability,

15   and the same theory of recovery. A finding of Hulu's culpability for a single class member will

16   yield the same result for all within the Classes.

17        Indeed, whether Hulu's disclosure of information to third parties was impermissible is a

18   predominating class-wide issue that can be demonstrated or refuted with common evidence.

19   Hulu's transfer of information was automatic and systematic in that it occurred in the same way,

20   for all class members, *via* computer codes. See *supra*, sec. III. A. Common evidence will be

21   used to prove that Hulu's disclosures violated the VPPA. Where plaintiffs "may prove the

22   essential issues in [the] case with common proof, . . . class-wide issues predominate over

23   individualized issues." *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 696-97 (S.D. Fla.

24   2010); *accord* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice

25   and Procedure*, § 1778 (3d ed. 2009) ("[W]hen one or more of the central issues in the action are

26   common to the class and can be said to predominate, the action will be considered proper under

27   Rule 23(b)(3) even though other important matters will have to be tried separately."). Thus, in as

28

much as the claims against Hulu arise out of the same unlawful practices, are premised on the same legal theories for each class member, and can be demonstrated by common evidence, the predominance of common questions of law and fact is clear.

Hulu may contend that the question of whether each individual Class Member suffered damage, and the amount of the damage, precludes certification. But that argument has no applicability where the statutory scheme at issue provides for liquidated statutory damages. See *Harris v. comScore*, 2013 WL 1339262 at *10 (certifying class alleging violations of the Stored Communications Act and the Electronic Communications Privacy Act over objection that whether each plaintiff suffered damage because the statutes provide for statutory damages).

### 2.  Class Litigation is Superior to Other Methods of Adjudication

Rule 23(b)(3) sets forth four relevant factors for determining whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability of concentrating the litigation in the particular forum; and (iv) the likely difficulties in managing a class action. "'[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis.'" *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001).

The Rule 23(b)(3) "superiority" factors weigh heavily in favor of class certification here. Liability in this action will turn on whether Hulu's unauthorized disclosures violated the VPPA. Judicial efficiency weighs in favor of a class action. It is simply not economically feasible for the millions of Class Members to pursue their claims individually.  The service was free for some Class Members, and for others, it was under $10 per month.  The monetary damages proscribed by the VPPA (as well as the costs of the Hulu service) are insignificant when compared to the expense of litigation and the associated high cost of complicated technological expert testimony.

1  *Hanlon*, 150 F.3d at 1023; *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980);

2  *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products*

3  *Liability Litigation*, 2012 WL 7802852, at *4 (C.D. Cal. Dec. 28, 2012) ("Given the extreme

4  complexity of proof as to the alleged defect, and given the relatively low value of recovery per

5  Subject Vehicle in this action, the first and third [(b)(3) superiority] factors favor class

6  adjudication.

7          There is little incentive to generate the costly and time-consuming expert evidence

8  needed to assert the claims at issue here in an individual action."); *In Re POM Wonderful LLC*

9  *Marketing and Sales Practices Litigation*, 2012 WL 4490860, at *5 (C.D. Cal. Sept. 28, 2012)

10  (superiority requirement met where "[a]ny potential management difficulties are outweighed by

11  the efficiencies to be gained by litigating class claims, which will almost certainly require

12  detailed scientific and expert evidence, all at once."); *Dannon*, 255 F.R.D. at 672 ("[T]here is no

13  realistic alternative to a class action in this case, making a class action understandably the

14  superior method of adjudication."). *See also Leyva v. Medline Industries Inc.*, 716 F.3d 510, 515

15  (9th Cir. 2013) (superiority requirement met where individual monetary recovery relatively small

16  (less than $10,000 for representative plaintiff), such that there is no feasible alternative to a class

17  action). Such a high volume of litigation would similarly be overwhelming to the Court's

18  resources and enormously inefficient. *See In re Netflix Privacy Litigation*, 2012 WL 2598819, at

19  *3 (where common issues regarding defendant's violations of the VPPA predominate, "a class

20  action is superior to other available methods of adjudication because it allows an efficient

21  determination of these common issues without unnecessary duplication of litigation.").

22  Moreover, there is no other litigation on these claims pending, and the claims have already been

23  consolidated in this Court, such that it is desirable to concentrate the litigation here. *See In re*

24  *Toyota Motor Corp.*, 2012 WL 7802852, at *5 ("The second [(b)(3) superiority] factor favors

25  class adjudication because the litigation regarding the nationwide class claims have already been

26  concentrated in the present multidistrict litigation.").

27

28

Further, there are no manageability issues. There is no reason to believe that the prosecution of the claims of the Class Members in a single action will create more management problems than the alternative (*i.e.*, the prosecution of millions of separate lawsuits by each class member). Given the number and importance of the predominating common questions described above, the adjudication of class claims would be significantly less burdensome than if the matter was prosecuted individually. *See Menagerie Prods. v. Citysearch*, 2009 WL 3770668, at *19 (C.D. Cal. 2009) (*citing Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482, 494 (C.D. Cal. 2006)). Class treatment of plaintiffs' claims is simply the most efficient and just way to proceed.[14]

## VI.    Conclusion

For the reasons stated herein, Plaintiffs respectfully request that the Court certify the proposed Classes, appoint the named Plaintiffs as Class Representatives, and appoint their counsel as Class Counsel.

Date: August 26, 2013                    Respectfully submitted,


By:   s/Scott A. Kamber

Scott A. Kamber (*pro hac vice*)
skamber@kamberlaw.com
David A. Stampley (*pro hac vice*)
dstampley@kamberlaw.com
Grace E. Tersigni (*pro hac vice*)
gtersigni@kamberlaw.com
**KAMBERLAW, LLC**
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:    (212) 920-3072
Facsimile:    (212) 920-3081

Deborah Kravitz (SBN 275661)

---

[14] Hulu may contend that by granting class certification it will face apocalyptic damages vis a vis the liquidated damages provision of the VPPA. Any such assertion should be disregarded, and to do otherwise is improper. *See Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 721 (9th Cir. 2010) (holding that "the district court abused its discretion in considering the proportionality of the potential liability to the actual harm alleged in its Rule 23(b)(3) superiority analysis.")

dkravitz@kamberlaw.com
KAMBERLAW, LLP
141 North St.
Healdsburg, California 95448
Telephone: (707) 820-4247
Facsimile: (212) 202-6364

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
**PARISI & HAVENS LLP**
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:     (818) 990-1299
Facsimile:     (818) 501-7852


Brian R. Strange (SBN 103252)
lacounsel@earthlink.net
Gretchen Carpenter (SBN 180525)
**STRANGE & CARPENTER**
12100 Wilshire Blvd., Ste, 1900
Los Angeles, CA  90025
Telephone: (310) 207-5055
Facsimile:  (310) 826-3210

Counsel for Plaintiffs