1  ROBERT M. SCHWARTZ (S.B. #117166)
   rschwartz@omm.com
2  STEVEN M. DUNST (S.B. #281848)
   sdunst@omm.com
3  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, Seventh Floor
4  Los Angeles, California  90067-6035
   Telephone:     (310) 553-6700
5  Facsimile:     (310) 246-6779

6  KATHERINE M. ROBISON (S.B. #221556)
   krobison@omm.com
7  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
8  San Francisco, CA  94111-3823
   Telephone:     (415) 984-8700
9  Facsimile:     (415) 984-8701

10  Attorneys for Defendant Hulu, LLC

11                **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                 **SAN FRANCISCO DIVISION**

14

15                                          Case No. 4:11-cv-03764 LB

16  IN RE: HULU PRIVACY LITIGATION          **NOTICE OF MOTION AND MOTION BY
                                            DEFENDANT HULU, LLC FOR
17                                          SUMMARY JUDGMENT BASED ON
                                            LACK OF INJURY; SUPPORTING
18                                          MEMORANDUM OF POINTS AND
                                            AUTHORITIES**

19                                          Hearing Date:    December 19, 2013
                                            Time:            9:30 a.m.
20                                          Courtroom:       C
                                            Judge:           Hon. Laurel Beeler
21

22

23

24

25

26

27

28

1    TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD: Notice is hereby given that

2    Defendant Hulu, LLC ("Hulu") hereby moves the Court for summary judgment or, in the

3    alternative, partial summary judgment, to be heard on December 19, 2013, at 9:30 a.m., in

4    Courtroom C of the above-captioned court, located at 450 Golden Gate Ave., San Francisco, CA

5    94102.  This motion is brought pursuant to Federal Rule of Civil Procedure 56 on the grounds

6    that no genuine issue of fact exists on plaintiffs' sole claim for relief, for violation of the Video

7    Privacy Protection Act ("VPPA"), and that Hulu is entitled to judgment as a matter of law.

8    Hulu moves for summary judgment on the grounds that no named plaintiff sustained any

9    actual injury and that, as a result, whether that is considered an issue of standing or a prima facie

10   element of the claim for relief, Hulu is entitled to prevail.

11   This motion is based on this Notice of Motion and Motion, the Memorandum of Points

12   and Authorities filed herewith, the Declaration of Katherine M. Robison, and the exhibits thereto,

13   the argument of counsel, all other pleadings on file in this action, and any other matters properly

14   considered by the Court at the hearing on this motion.

15

16   Dated:  October 1, 2013                              ROBERT M. SCHWARTZ
                                                           KATHERINE M. ROBISON
17                                                         STEVEN M. DUNST
                                                           O'MELVENY & MYERS LLP
18
                                                           By: _/s/ Robert M. Schwartz_____
19                                                              Robert M. Schwartz
20                                                         Attorneys for Defendant Hulu, LLC

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2
**Page**

3    I.    INTRODUCTION ........................................................................................................... 1

4    II.   UNDISPUTED FACTS .................................................................................................. 2

5    III.  LEGAL STANDARD ..................................................................................................... 4

6    IV.   HULU IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS
            DO NOT SATISFY THE VPPA'S ACTUAL INJURY REQUIREMENT ...................... 5

7
            A.    The VPPA Does Not Award Damages, Including Liquidated Damages,
8                  Without Actual Injury. ............................................................................................ 5

9           B.    The VPPA's Actual Injury Requirement Cannot Be Satisfied By An
                  Alleged VPPA Violation Itself. ............................................................................. 9

10   V.    CONCLUSION ............................................................................................................ 10
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
**Page**

3   <u>CASES</u>

4   *Braunstein v. Ariz. Dep't of Transp.*,
5       683 F.3d 1177 (9th Cir. 2012)...........................................................................5

6   *Celotex Corp. v. Catrett*,
        477 U.S. 317 (1986)..........................................................................................4

7   *Comcast Corp. v. Behrend*,
        133 S. Ct. 1426 (2013).......................................................................................9
8
9   *Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*,
        514 U.S. 122 (1995)...........................................................................................5

10  *Doe v. Chao*,
        540 U.S. 614 (2004).............................................................................7, 8, 9, 10
11
12  *Golden W. Ref. Co. v. SunTrust Bank*,
        538 F.3d 1233 (9th Cir. 2008)............................................................................7

13  *Halaburda v. Bauer Publ'g Co.*,
14      No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013).....................7, 8

15  *Harris v. comScore*,
        __ F.R.D. __, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) .................................6

16  *Hydro Invs., Inc. v. FERC*,
        351 F.3d 1192 (D.C. Cir. 2003) .........................................................................5
17
18  *In re: Rail Freight Fuel Surcharge Antitrust Litig.*,
        725 F.3d 244 (D.C. Cir. 2013) ..........................................................................9

19  *Kehoe v. Fid. Fed. Bank & Trust*,
        421 F.3d 1209 (11th Cir. 2004)......................................................................6, 7
20
21  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
        475 U.S. 574 (1986)...........................................................................................4

22  *Pichler v. UNITE*,
        542 F.3d 380 (3d Cir. 2008)...............................................................................6
23
24  *Rebel Oil Co. v. Atl. Richfield Co.*,
        51 F.3d 1421 (9th Cir. 1995)..............................................................................4

25  *Sterk v. Best Buy Stores, L.P.*,
        No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ..........................7
26
27  *Sterk v. Redbox Automated Retail, LLC*,
        672 F.3d 535 (7th Cir. 2012)..............................................................................7

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Straus Commc'ns, Inc. v. FCC,*
    530 F.2d 1001 (D.C. Cir. 1976) ................................................................................................. 5

**STATUTES**

18 U.S.C. § 2510(11) ................................................................................................................... 6

18 U.S.C. § 2710(c) ..................................................................................................................... 5

18 U.S.C. §§ 2724(a) & (b)......................................................................................................... 6

5 U.S.C. § 552a(g)(4)(A) ............................................................................................................ 8

Mich. Comp. Laws § 445.1715.................................................................................................... 6

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (9th ed. 2009) ................................................................................... 5

**RULES**

Fed. R. Civ. P. 56(a)..................................................................................................................... 4

Fed. R. Civ. P. 56(e)..................................................................................................................... 4

HULU'S SUMMARY JUDGMENT
MOTION (NO INJURY)
NO. 4:11-CV-03764 LB

1      **I.      INTRODUCTION**

2            In 1988, Congress passed the Video Privacy Protection Act ("VPPA") to keep video

3      service providers from wrongfully disclosing to any person what videos their individual

4      customers were renting or buying.  The law was passed after a newspaper published a list of

5      videos that a Supreme Court nominee had rented, with the goal of embarrassing him and hurting

6      his confirmation prospects.  The VPPA was not adopted to impose multi-billion dollar liability on

7      the transmission of anonymous data where no one suffers any actual injury.

8            That, however, is all this case is about.  Plaintiffs' claim concerns: (1) comScore's receipt

9      of *anonymous* User IDs and the titles of videos those anonymous users sought to watch on

10     hulu.com, and (2) Facebook's alleged use of its "Like" button to capture data about Facebook

11     users' use of the hulu.com website.  Neither case theory has anything to do with the purpose of

12     the VPPA.  Hulu never conveyed to anyone a plaintiff's name *and* the title of any video he ever

13     watched on hulu.com.  Thus, there has not been (nor could there be) any violation of the VPPA,

14     as explained in Hulu's concurrent motion regarding comScore and Facebook's "Like" button.

15     But even if plaintiffs could show a violation, they must separately establish *actual injury*, even if

16     they confine themselves to the VPPA's award of liquidated damages.  Plaintiffs, however, have

17     assumed that a VPPA violation alone is sufficient to satisfy that actual injury requirement.

18           That is a fatal defect in plaintiffs' case, and the subject of this motion.  The VPPA

19     authorizes a civil action and an award of damages only to a "*person aggrieved*" by a wrongful

20     disclosure in violation of the statute.  Although Congress could have drafted the VPPA to award

21     damages for a mere violation of the statute (which it has done in drafting other privacy statutes),

22     the explicit language of *this* statute requires a showing of actual injury to award damages, even

23     liquidated damages.  By its plain language the statute unequivocally requires, as a threshold

24     matter, that a person be "aggrieved" and, only once that determination is made, is that person

25     entitled to an award of damages (but not less than the liquidated amount).  Unless the Court

26     disregards the term "person aggrieved," as a matter of law plaintiffs are wrong in claiming that a

27     violation of the statute can itself constitute the actual injury.  Indeed, the two courts that have

28     recently examined the issue have held that the VPPA requires the plaintiff to have sustained an

actual injury. The death knell to plaintiffs' VPPA claim is their failure to identify any injury in their interrogatory responses, beyond the fact of the alleged VPPA violation. Plaintiffs therefore are not entitled to any award of damages. And without a basis for damages, they have no claim. Accordingly, Hulu respectfully asks the Court to grant summary judgment in its favor.

## II. UNDISPUTED FACTS

Hulu operates the hulu.com website, which allows a user to watch television programs, motion pictures, and other videos, and to do so when the user wants ("on demand"), as opposed to only according to a broadcaster's schedule. Because this motion focuses on one discrete element of a VPPA claim—actual injury—and because the Court is familiar with Hulu's services, Hulu incorporates herein by this reference the background facts and supporting evidence set forth on pages 2 through 9 of its concurrently filed comScore/Facebook summary judgment brief.

As detailed below, noticeably absent from plaintiffs' pleadings and class motion is any allegation of cognizable injury (other than the VPPA violation itself) as a result of anything Hulu did. Plaintiffs' two VPPA disclosure theories, involving comScore and Facebook, do not claim a knowing disclosure of a person's name and the title of a video (collectively, "PII") by Hulu.

As to comScore, and as plaintiffs admit in their class certification brief, Hulu does not transmit the actual names of any plaintiff (or any other Hulu user) to comScore. (*See* Plaintiffs' Class Mot. at 6 (Dkt. 112) (identifying what is sent to comScore when a user watches a video on hulu.com).) That is because Hulu has "anonymized" the user data by assigning each registered Hulu user an anonymous, seven digit number (e.g., "2513746") ("User ID"). (*See* Yang Declaration in support of comScore/Facebook motion ("Yang Decl.") ¶ 17.) Hulu does not share its users' names, mailing addresses, email addresses, or other identifying information with any service provider that also receives data about what Hulu users watch; the only user information that a service provider receives is the anonymous User ID. (*Id.* ¶ 27.) Plaintiffs do not dispute the fact that Hulu passes only an anonymous seven digit number, and not a user's name or other PII. Rather, because all of the data is anonymous, plaintiffs' theory relies on the fact that, from March 12, 2009 to August 1, 2011, the URL for Hulu's profile pages included the anonymous User ID in the URL itself. Plaintiffs suppose that someone *could have* taken the anonymous User

ID and manipulated that data. (*See* Motion for Class Certification at 3-4 (Dkt. 112).) While such third party reverse engineering is not in any case a "knowing disclosure" *by Hulu*, it's telling that plaintiffs do not even allege that any person ever undertook steps to link a person's name with what they watched, much less that any plaintiff suffered any actual injury from that conduct.[1]

As to Facebook's "Like" button, plaintiffs' disclosure theory is even more attenuated. Plaintiffs claim that Facebook *may* be using cookies that Facebook's webserver stores on the computers of Facebook's users to gather data about the websites they visit. (*See* Hulu's comScore/Facebook brief at 6-9.) That information—whatever it is—is gathered from the user's web browser by Facebook; it is not gathered, let alone disclosed, by Hulu. (*Id.* at 8-9.) Regardless, because of how the Internet works, only Facebook knows what data its cookies contain. (*Id.* at 7.) As a result, neither plaintiffs nor Hulu know whether or not the data Facebook gathers from cookies it placed on users' computers includes the actual names of its users (or even an anonymous Facebook ID). And neither plaintiffs nor Hulu know whether Facebook uses its cookie information to find its users' actual names from some source on its system. (*Id.* at 8-9.)

Given the factual issues present in plaintiffs' claim, to confirm that no plaintiff suffered an actual injury, Hulu propounded interrogatories asking each plaintiff to describe the nature and amount of any damage or injury he claims to have suffered as a result of Hulu's alleged violation of the VPPA. Each plaintiff responded: "Plaintiff seeks statutory damages under the VPPA. Plaintiff suffered harm in that his privacy rights were violated," and three plaintiffs added "and because he paid for Hulu's premium services." (*See* Robison Decl. ¶¶ 4-8, Exs. A-E.)

Those responses do not describe an actual injury. Instead, each is just a legal argument that a disclosure under the VPPA is itself an injury that entitles a plaintiff to an award of liquidated damages. The lack of any actual injury in these answers is not the result of an oversight. Their answers are carefully worded to be consistent with plaintiffs' argument that no actual injury is necessary. Plaintiffs have no choice but to employ this strategy because they have

---

[1] As explained in the comScore/Facebook motion, this unalleged claim would fail because the conduct of a third party top reverse engineer someone's name and what they watched does not turn the anonymous number that Hulu provided into a knowing disclosure of PII by Hulu.

HULU'S SUMMARY JUDGMENT
MOTION (NO INJURY)
NO. 4:11-CV-03764 LB

1    not suffered any actual injury and are hoping instead to skirt their burden of proof by invoking the

2    statute's authorization of liquidated damages.  Plaintiffs' complaint contains no allegation of

3    actual injury and avers merely that "Plaintiffs and Class Members, as to each of them, are entitled

4    to $2,500 in liquidated damages per violation."  (Second Amended Complaint ¶ 57 (Dkt. 83).)

5    Plaintiffs repeat this in their class certification motion: "The injuries suffered by plaintiffs and the

6    class members are the same: the violation of their statutory right to maintain anonymity with

7    regard to their video viewing choices."  (*See*, *e.g*., Motion for Class Certification at 15 (Dkt.

8    112).)  To avoid any doubt, during the August 8 conference with this Court, plaintiffs confirmed

9    that the damages issue is a "very simple legal issue" of whether plaintiffs "need to show

10   damages."  (8/8/13 Transcript of CMC at 28:13-29:4 (Dkt. 110).)

11   **III.    LEGAL STANDARD**

12        "Summary judgment is appropriate when the pleadings, affidavits and other material

13   present no genuine issue of material fact and the moving party is entitled to judgment as a matter

14   of law."  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432 (9th Cir. 1995); *see also* Fed. R.

15   Civ. P. 56(a).  "If the moving party shows that there is an absence of evidence to support the

16   plaintiff's case, the nonmoving party bears the burden of producing evidence sufficient to sustain

17   a jury verdict on those issues for which it bears the burden at trial."  *Rebel Oil*, 51 F.3d at 1435.

18   The non-moving party can only create a "genuine" dispute on a material issue by adducing

19   admissible evidence on the issue which is sufficient for a reasonable jury to find for the non-

20   moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)

21   (citing Fed. R. Civ. P. 56(e)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

22        As explained below, the VPPA requires actual injury for damages, and plaintiffs cannot

23   satisfy the actual injury requirement by relying solely on an alleged violation of the statute.

24   Given the gaps and layers of speculation that comprise plaintiffs' comScore and Facebook

25   disclosure theories, it is not surprising that no plaintiff can articulate any actual injury flowing

26   from it.  Accordingly, Hulu is entitled to summary judgment.  *See Braunstein v. Ariz. Dep't of

27   Transp.*, 683 F.3d 1177, 1187 (9th Cir. 2012) (affirming grant of summary judgment where

28   plaintiff failed to present evidence of injury).

HULU'S SUMMARY JUDGMENT
MOTION (NO INJURY)
NO. 4:11-CV-03764 LB

IV.     **HULU IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS DO NOT SATISFY THE VPPA'S ACTUAL INJURY REQUIREMENT**

A.      **The VPPA Does Not Award Damages, Including Liquidated Damages, Without Actual Injury.**

Plaintiffs believe that, simply because the VPPA provides for an award of liquidated damages, they need not have sustained any actual injury to recover those liquidated damages. (*See* Motion for Class Certification at 20 (Dkt. 112) (claiming Hulu's damages argument "has no applicability where the statutory scheme provides for liquidated statutory damages.").) They can make that argument only if the Court reads a crucial term out of the VPPA: "person aggrieved."

Specifically, subsection (c) of the VPPA authorizes a civil action and an award of damages, but only to "any *person aggrieved* by any act of a person in violation of this section." 18 U.S.C. § 2710(c) (emphasis added).

A person "aggrieved" is one who is injured. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) ("aggrieved" means "having suffered loss or injury"; "injured"). Similarly, where a federal statute requires that a plaintiff be "aggrieved" to pursue a claim, courts routinely hold that it means that the plaintiff must show he has suffered an actual injury. *E.g.*, *Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 126-27 (1995) (Administrative Procedures Act's requirement that claimant be "aggrieved" requires litigant to show actual injury); *Straus Commc'ns, Inc. v. FCC*, 530 F.2d 1001, 1006 n.7 (D.C. Cir. 1976) (term "person who is aggrieved" as used in FCC Act means that the plaintiff must have sustained actual injury); *Hydro Invs., Inc. v. FERC*, 351 F.3d 1192, 1195 (D.C. Cir. 2003) (requirement under Federal Power Act that a party be "aggrieved" means that it must show actual injury). Thus, for an award of either actual damages or liquidated damages under the VPPA, the plaintiff must be a person aggrieved, i.e., have suffered an actual injury.

In contrast to the VPPA, other privacy statutes award liquidated damages whenever the statute has been violated, without requiring a showing of actual injury. For example:

- The Drivers Privacy Protection Act ("DPPA"), 18 U.S.C. section 2724 imposes liability on a person who obtains, discloses, or uses personal information from a motor

HULU'S SUMMARY JUDGMENT
MOTION (NO INJURY)
NO. 4:11-CV-03764 LB

1   vehicle record, and authorizes an award of "actual damages, but not less than

2   liquidated damages in the amount of $2,500." *See* 18 U.S.C. §§ 2724(a) & (b).[2]

3   • The Michigan Video Rental Privacy Act ("VRPA"), whose objective is similar to the

4   VPPA's, provides that "the customer ['identified in a record or other information that

5   is disclosed in violation of this act'] may bring a civil action against the person and

6   may recover . . . actual damages, including damages for emotional distress, or $5,000,

7   whichever is greater." *See* Mich. Comp. Laws § 445.1715.

8   On their face, neither of these statutes requires the plaintiff to have been "aggrieved" by a

9   disclosure to recover liquidated damages.  Nor does either statute use any other term to limit the

10  award to those actually injured.[3]  Unlike those two acts, the VPPA explicitly limits damages to a

11  "person aggrieved," which evidences the Congressional intent to limit the recovery of damages

12  under the VPPA to those who have sustained an actual injury as a result of a wrongful disclosure.

13  Congress could have worded the VPPA to provide monetary relief merely on a showing of

14  an improper disclosure, as it did in drafting the DPPA.  But it did not do so.  Instead, it required

15  that, to obtain an award of damages, the plaintiff be "aggrieved" by the disclosure.  This Court

16  must give full effect to that language, and to that difference between the VPPA and other privacy

17  statutes.  *See Golden W. Ref. Co. v. SunTrust Bank*, 538 F.3d 1233, 1238-39 (9th Cir. 2008)

18  ("[w]e must give effect to the language of a statute if it is plain and unambiguous" and avoid

19  interpretation rendering any part "superfluous and does not give effect to all of the words used").

---

20  [2] Two circuit courts elsewhere have considered whether the DPPA requires a showing of actual
21  injury, and have concluded that it does not.  *See Pichler v. UNITE*, 542 F.3d 380, 398 (3d Cir.
    2008) (distinguishing DPPA from other statutes and holding that DPPA does not require proof of
22  actual damages); *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209, 1216 (11th Cir. 2004)
    (accord).  Given the difference between the language of the DPPA and the VPPA, that conclusion
23  is to be expected.

24  [3] In their class brief, plaintiffs cite *Harris v. comScore*, __ F.R.D. __, 2013 WL 1339262, at *10
    (N.D. Ill. Apr. 2, 2013), but that case concerns the Electronic Communications Privacy Act and
25  its Stored Communications Act ("SCA"), which differ from the VPPA in providing a definition
    for "person aggrieved."  The VPPA does not do so.  Further, the SCA defines a "person
26  aggrieved" as one "who was a party to any intercepted wire, oral, or electronic communication or
    a person against whom the interception was directed," 18 U.S.C. § 2510(11), reflecting a
27  Congressional intent to omit any injury requirement, and to depart from how the term "aggrieved"
    is ordinarily understood and applied elsewhere.  Indeed, it is the very omission of such a
    definition from the VPPA that refutes plaintiffs' reading of the VPPA as dispensing with a
28  requirement of actual injury.

HULU'S SUMMARY JUDGMENT
MOTION (NO INJURY)
NO. 4:11-CV-03764 LB

As to the issue posed by this motion, one court noted in 2004 that, "[t]o date, no court has expressly addressed whether liquidated damages are recoverable under the VPPA without showing actual harm."  *See Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209, 1216 n.6 (11th Cir. 2004).  After this Court denied Hulu's motion to dismiss in August 2012, however, two courts have addressed the issue of whether the VPPA's requirement of "any person aggrieved by the disclosure" means that the plaintiff must show actual injury to recover any damages, and concluded that it does.

The first case is *Sterk v. Best Buy Stores, L.P.*, No. 11-C -894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012).  There, the plaintiff claimed that the defendant's disclosure of data violated the VPPA.  But the court found that the VPPA requires a plaintiff to be "'aggrieved,' meaning the individual has suffered an Article III injury-in-fact."  *Id*. at *5.  *Sterk* addressed the issue of injury in the context of standing.  But the court made clear that actual injury was a requirement for any recovery under the VPPA.  *See also Doe v. Chao*, 540 U.S. 614, 624-25 (2004) ("an individual subjected to an adverse effect has injury enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act").[4]

Similarly, in *Halaburda v. Bauer Publishing Co.*, No. 12-CV-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013), decided one year after this Court ruled on Hulu's motion to dismiss, the court noted that actual injury is an element of a VPPA claim.  The plaintiff sued under Michigan's video privacy statute, the VRPA.  Unlike the VPPA, Michigan's video privacy statute does not restrict the award of damages to persons "aggrieved" by the unlawful disclosure.  In ruling on a motion to dismiss, the district court wrote: "*Unlike the VPPA*, a close reading of the

---

[4] In *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012), a different case and court addressed an altogether different question, whether the VPPA's "retention" prohibition (under subsection (e)) provides a claim for damages, and concluded that it does not.  *See id*. at 538-39.  In dicta, the court noted that a claim under subsection (e) required proof of actual injury. *Id*. ("The injury inflicted by [retaining PII in violation of the statute] is enormously attenuated, and it would be no surprise if Congress had decided—as the placement of the damages section suggests—not to provide a damages remedy, let alone a damages remedy requiring no proof of injury (as plaintiff had alleged).")  The court did not reach or decide whether actual injury is required for a disclosure claim, under subsection (c).  Nor did the parties or the court address the "person aggrieved by the disclosure" language.  Thus, the case sheds no light on the issue here.

HULU'S SUMMARY JUDGMENT
MOTION (NO INJURY)
NO. 4:11-CV-03764 LB

1  VRPA reveals that it contains absolutely no language to require that a claimant suffer any *actual*

2  *injury apart from a violation of the statute . . . .*" *Id.* at *4 (emphasis added).

3  Furthermore, in interpreting the Privacy Act of 1974—which, similar to the VPPA,

4  permits recovery of "actual damages sustained by the individual as a result of the refusal or

5  failure, but in no case shall *a person entitled to recovery* receive less than the sum of $1,000,"

6  5 U.S.C. § 552a(g)(4)(A) (emphasis added)—the Supreme Court concluded that a plaintiff must

7  have sustained an actual injury to recover the liquidated amount. *Chao*, 540 U.S. at 620. Like

8  plaintiffs here, the plaintiff in *Chao* argued that, so long as a disclosure of information had been

9  made in violation of the statute, he was entitled to the liquidated damages award, even if he had

10  suffered no actual injury. The Supreme Court disagreed:

11  [Plaintiff] argues that subsection (g)(4)(A) entitles any plaintiff adversely affected
   by an intentional or willful violation to the $1,000 minimum on proof of nothing
12  more than a statutory violation . . . . The Government claims the minimum
   guarantee goes only to victims who prove some actual damages. We think the
13  Government has the better side of the argument.

14  . . . .

15  [Plaintiff]'s manner of reading "entitle[ment] to recovery" . . . is in tension with
   more than the text, however. It is at odds with the traditional understanding that
16  tort recovery requires not only wrongful act plus causation reaching to the
   plaintiff, but proof of some harm for which damages can reasonably be assessed.

17  *Id.* at 620-21.

18  The same analysis applies to the express language of the VPPA. Congress could have

19  provided an award of liquidated damages to anyone whose PII had been disclosed; but it limited

20  any award, including liquidated damages, to a person "aggrieved" by the disclosure, just as

21  Congress did in the Privacy Act. As the Supreme Court noted, that is not unusual:

22  [Plaintiff] suggests there is something peculiar in offering some guaranteed
   damages, as a form of presumed damages not requiring proof of amount, only to
23  those plaintiffs who can demonstrate actual damages. But this approach parallels
   another remedial scheme that the drafters of the Privacy Act would probably have
24  known about. At common law, certain defamation torts were redressed by general
   damages but only when a plaintiff first proved some "special harm," i.e., "harm of
25  a material and generally of a pecuniary nature." [citations.] Plaintiffs claiming
   such torts could recover presumed damages only if they could demonstrate some
26  actual, quantifiable pecuniary loss. Because the recovery of presumed damages in
   these cases was supplemental to compensation for specific harm, it was hardly
27  unprecedented for Congress to make a guaranteed minimum contingent upon some
   showing of actual damages, thereby avoiding giveaways to plaintiffs with nothing
28  more than "abstract injuries."

1     *Id.* at 625-26 (emphasis added).

2     **B.**      **The VPPA's Actual Injury Requirement Cannot Be Satisfied By An Alleged**

3             **VPPA Violation Itself.**

4       Throughout this case, plaintiffs have confirmed that they believe they have no burden to

5 allege or prove actual injury. As noted above, their operative complaint omits such an allegation.

6 It avers merely that "Plaintiffs and Class Members, as to each of them, are entitled to $2,500 in

7 liquidated damages per violation." (Second Amended Complaint ¶ 57 (Dkt. 83).)

8       Plaintiffs' class certification motion follows that path. Their motion must meet the

9 requirements of recent class certification case law holding that, at the certification stage, a

10 plaintiff must establish a viable class-wide damages model. *See Comcast Corp. v. Behrend*, 133

11 S. Ct. 1426, 1433-34 (2013) (district court may not certify Rule 23(b)(2) class absent proof that

12 damages and injury are amenable to class treatment); *In re: Rail Freight Fuel Surcharge Antitrust*

13 *Litig.*, 725 F.3d 244 (D.C. Cir. 2013) (*Comcast* establishes higher standard for class action,

14 requiring plaintiffs to establish not only class-wide proof of damages, but also injury). Plaintiffs'

15 asserted class-wide injury is no more than the VPPA violation itself: "The injuries suffered by

16 plaintiffs and the class members are the same: the violation of their statutory right to maintain

17 anonymity with regard to their video viewing choices." (*See*, *e.g.*, Motion for Class Certification

18 at 15 (Dkt. 112).) But if, as is the law, each plaintiff has to show actual injury from the alleged

19 disclosures at issue in this case, plaintiffs' class certification motion would fail under the *Comcast*

20 standard. Confirming this failure, plaintiffs conceded at the August 8 Case Management

21 Conference that the damages issue is confined to a "very simple legal issue" of whether the

22 plaintiffs need to show damage. (8/8/13 CMC Transcript at 28:13-29:4 (Dkt. 110).)

23       Plaintiffs have had to take these positions because their disclosure theories are unfounded

24 (as to the disclosure of anonymous user ID numbers) or theoretical (as to the possibility that some

25 comScore or Facebook employee manipulated non-identifying information), and because they

26 have no evidence of actual injury. There is thus no "person aggrieved" in this case.

27       Each plaintiff's interrogatory responses confirm that. Hulu asked each plaintiff to

28 describe the nature and amount of any injury they claim to have suffered as a result of Hulu's

HULU'S SUMMARY JUDGMENT
MOTION (NO INJURY)
NO. 4:11-CV-03764 LB

1   alleged violation of the VPPA.  Each plaintiff responded: "Plaintiff seeks statutory damages

2   under VPPA.  Plaintiff suffered harm in that his privacy rights were violated," and three plaintiffs

3   added "and because he paid for Hulu's premium services."  (*See* Robison Decl. ¶¶ 4-8, Exs. A-E.)

4          Those responses do not provide facts evidencing an actual injury.  Instead, each response

5   is no more than a legal argument that a disclosure under the VPPA is itself an injury that entitles

6   each plaintiff to a liquidated sum.  Allowing for recovery under such circumstances would

7   override the statute's express language and, contrary to the case law, eliminate the actual injury

8   requirement.  Moreover, contrary to the Supreme Court's reasoning in *Chao*, awarding liquidated

9   damages to plaintiffs here would mean that Congress adopted the VPPA to provide "giveaways"

10  to plaintiffs with nothing more than "abstract" injuries.  *Chao*, 540 U.S. at 626.

11  **V.      CONCLUSION**

12         In asking to proceed further in the face of those admissions, plaintiffs are asking the Court

13  to ignore the VPPA's limitation of any damage award "to a *person aggrieved* by an act in

14  violation of the statute," ignore how the VPPA differs from other privacy statutes with respect to

15  that language, ignore the decisions of two district courts that the VPPA requires proof of actual

16  injury, ignore the Supreme Court's analysis of comparable language in the Privacy Act that actual

17  injury is required even as to an award of liquidated damages, and ignore the policy behind the

18  VPPA, which is not served by a claim based only on the transfer of anonymous data.  In asking

19  the Court to turn its back on all of that, plaintiffs are simply asking too much.

20         For the foregoing reasons, the Court should grant summary judgment for Hulu.

21  Dated:      October 1, 2013                          Respectfully submitted,

22                                                        ROBERT M. SCHWARTZ
                                                          KATHERINE M. ROBISON
23                                                        STEVEN M. DUNST
                                                          O'MELVENY & MYERS LLP
24

25                                                        By: */s/ Robert M. Schwartz*
                                                              Robert M. Schwartz
26                                                        Attorneys for Defendant Hulu, LLC

27

28

HULU'S SUMMARY JUDGMENT
MOTION (NO INJURY)
NO. 4:11-CV-03764 LB