David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:     (818) 990-1299
Facsimile:     (818) 501-7852

Scott A. Kamber (pro hac vice)                    Brian R. Strange (SBN 103252)
skamber@kamberlaw.com                             lacounsel@earthlink.net
David A. Stampley(pro hac vice)                   Gretchen Carpenter (SBN 180525)
dstampley@kamberlaw.com                           gcarpenter@strangeandcarpenter.com
Grace E. Tersigni (pro hac vice)                  STRANGE & CARPENTER
gtersigni@kamberlaw.com                           1200 Wilshire Blvd., Ste. 1900
KAMBERLAW, LLC                                    Los Angeles, CA  90025
100 Wall Street, 23rd Floor                       Telephone: (310) 207-5055
New York, New York 10005                          Facsimile:  (310) 826-3210
Telephone:     (212) 920-3072
Facsimile:     (212) 202-6364

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re: Hulu Privacy Litigation | ) Case No. 3:11-CV-03764-LB |
| | ) |
| | ) **PLAINTIFFS' OPPOSITION TO HULU, LLC'S** |
| | ) **MOTION FOR SUMMARY JUDGMENT** |
| | ) **BASED ON ALLEGED "LACK OF INJURY"** |
| | ) |
| | ) Hearing Date:   February 6, 2014 |
| | ) Time:           9:30 a.m. |
| | ) Courtroom:      C |
| | ) Judge:          Hon. Laurel Beeler |
| | ) |
| | ) |

This Document has been Redacted

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.     SUMMARY JUDGMENT STANDARD ..........................................................................2

III.    THE DISCLOSURE OF AN ACTUAL NAME IS NOT REQUIRED FOR A
        VIOLATION OF THE VPPA ...........................................................................................3

        A.      The VPPA Defines "Personally Identifiable Information" Broadly......................3

        B.      There is No "Name" Requirement in the Definition of Personally
                Identifiable Information in the VPPA...................................................................4

        C.      The Hulu User ID is an Example of Personally Identifiable Information
                under the VPPA ...................................................................................................5

        D.      Hulu's Cases Do Not Support its Position............................................................6

IV.     HULU PRESENTS INCOMPLETE AND INACCURATE FACTS................................8

        A.      Hulu Ignores Material Facts and Fails to Provide Appropriate Evidentiary
                Support for the Facts on which it does Rely ........................................................8

        B.      The Hulu Website; Raw Ingredients of a VPPA Violation ...................................9

                1.      How Hulu Built Profiles and Assigned Identifiers to Its Registered
                        Users .......................................................................................................9

                2.      How Hulu Coded Its Web Site.................................................................11

                3.      Contrary to its Claims, Hulu Controls the Disclosures to Facebook
                        and comScore...........................................................................................11

        C.      Hulu's Disclosures to comScore and Facebook of User Video Choices
                were PII Under the VPPA Because the Disclosures included Information
                Identifying the Users...........................................................................................12

        D.      Hulu Identified Registered Users and Their Video Selections to comScore
                and Facebook .....................................................................................................13

        E.      The Facts Establish that Hulu Disclosed Personally Identifiable
                Information to comScore .....................................................................................13

        F.      The Facts Establish that Hulu Disclosed Personally Identifiable
                Information to Facebook......................................................................................14

        G.      The Facts Establish that Hulu's Disclosures to comScore and Facebook
                were Knowing.....................................................................................................15

                1.      Hulu Admits it Knowingly Disclosed Information that Identified
                        Specific Video Materials Obtained by Users ............................................15

2.    Hulu Makes the Misleading Claim that it Could Not Have Knowingly Disclosed Information Identifying Persons who Obtained Video Materials ......................................................................16

H.    Hulu's Disclosures Were Not Incident to the Ordinary Course of Hulu's Business .................................................................................................19

I.    The Facts Establish that Hulu's Registered Users Did Not Consent to any Disclosures .......................................................................................22

J.    Hulu's Disclosures Were of PII and Required No Reverse Engineering or Lookup Table to "Become" PII ..........................................................24

V.    CONCLUSION.................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Amazon.com LLC v. Lay*
   758 F. Supp. 2d 1154 (W.D. Wash 2010)....................................................................6

*Bamon Corp. v. City of Dayton*
   730 F. Supp. 80 (S.D. Ohio 1990) ............................................................................6

*Camfield v. City of Okla. City*
   248 F.3d 1214 (10th Cir. 2001) ................................................................................6

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986)..................................................................................................2

*Freedman v. America Online, Inc.*
   329 F. Supp. 2d 745 (E.D. Va. 2004) ..............................................................17, 18

*Gomez v. City of Fremont*
   730 F.Supp.2d 1056 (N.D. Cal. 2010) .....................................................................2

*Gonzalez v. Cent. Elec. Coop., Inc.*
   No. 08-6236-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009)...................................7

*Harris v. comScore, Inc.*
   292 F.R.D. 579 (N.D. Ill. 2013).......................................................................13, 19

*Lahr v. NTSB*
   453 F. Supp. 2d 1153 (C.D. Cal. 2006), *rev'd in part on other grounds*, 569 F.3d 964 ..........7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
   475 U.S. 574 (1986)..................................................................................................2

*Monex Deposit Co. v. Gilliam*
   680 F.Supp.2d 1148 (C.D. Cal. 2010) ......................................................................2

*Muskovich v. Crowell*
   No. 3–95–CV–20007, 1996 WL 707008 (S.D. Iowa Aug. 30, 1996) ..............17, 18

*Viacom Int'l Inc. v. YouTube Inc.*
   253 F.R.D. 256 (S.D.N.Y. 2008) .............................................................................7

*Zoslaw v. MCA Distributing Corp.*
   693 F2d 870 (9th Cir. 1982) ...................................................................................23

**FEDERAL STATUTES**

18 U.S.C. § 2710(a)(2)....................................................................................................19

18 U.S.C. § 2710(a)(3) ................................................................................3, 12, 13

18 U.S.C. § 2710(b)(1) ................................................................................3, 15, 16

18 U.S.C. § 2710(b)(2)(B) .................................................................................22

18 U.S.C. § 2710(b)(2)(E) .................................................................................19

Children's Online Privacy Protection Act .............................................................5

FOIA .......................................................................................................................7

**OTHER AUTHORITIES**

16 C.F.R. ................................................................................................................5

Fed. R. Civ. P. Rule 56 ........................................................................................23

Fed. R. Civ. P. 56(a) ..............................................................................................2

Fed. R. Civ. P. 56(c)(4) ..........................................................................................9

Local Rule 7–5(a) .................................................................................................23

Local Rule 56-2 ......................................................................................................8

S.Rep. No. 100-599 (1988), reprinted in 1988 U.S.C.C.A.N. 4342 .............3, 19

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Hulu seeks summary judgment, yet there is not a single allegation of the complaint that is contradicted by an undisputed material fact. Instead, Hulu attempts to rewrite the VPPA in order to argue that the very activity pled in the complaint should now be found to be benign.

Hulu does not dispute Plaintiffs' allegations about user information that was sent to comScore and Facebook. Hulu does not dispute that comScore and Facebook received the name of each video viewed. Rather, the gravamen of Hulu's motion is that it did not violate the VPPA because, under its tortured reading, the only way to identify an individual under the VPPA is by the disclosure of a name (or an address).

Notably, of the tens of thousands of documents produced, Hulu does not rely on a single one in support of its motion. Instead, Hulu relies on the declarations of two employees and a counsel of record in this case. However, on cross-examination, Hulu's employees exhibited dramatically incomplete (or complete lack of personal) knowledge of the subjects on which their testimony was offered, and provided a great deal of testimony that demonstrates the impropriety of summary judgment in favor of Hulu.[1]

At this pre-certification stage of the litigation, discovery remains open: there are documents to review; follow-up discovery to be taken; and Plaintiffs will need to complete their source code review (a potentially expensive and time consuming process). Yet, even at this juncture, sufficient evidence has been adduced to demonstrate not only that Hulu's summary judgment motion is without basis, but also that Plaintiffs' claims have merit.

Among substantial other evidence, including many of Hulu's own documents, in support of this Opposition, Plaintiffs submit the declaration of Joseph Calandrino, PhD. Dr. Calandrino concludes, based on undisputed material facts, that the information shared by Hulu with comScore and Facebook, in conjunction with the names of the videos watched by Hulu users during the Class Period, was sufficient to identify the individual consumers. Calandrino Decl.,

---

[1] Because Hulu's summary judgment motion precedes a ruling on class certification, Plaintiffs are unable to affirmatively move for summary judgment at this time. As a result, Plaintiffs reserve the right to move for summary judgment on these issues after class certification.

1    ¶¶30, 68-69, 79-81.

2           Hulu, in a vain attempt to avoid liability, asks this Court to add to VPPA a requirement

3    that identification of an individual means solely the disclosure of a name, in contravention of

4    VPPA's plain reading and legislative history. Plaintiffs respectfully request that this Court look to

5    Hulu's actions during the Class Periods, and reject its wholly unsupportable statutory

6    interpretation, never before held by any court.

7    **II.   SUMMARY JUDGMENT STANDARD**

8           Hulu, as the party moving for summary judgment, has the initial burden of identifying

9    portions of the pleadings, discovery, disclosures on file, and affidavits that demonstrate the

10   absence of a genuine issue of material fact. *Gomez v. City of Fremont*, 730 F.Supp.2d 1056, 1063

11   (N.D. Cal. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). As discussed below

12   (see *infra*, Section IV), Hulu has not met its burden of affirmatively showing that there are no

13   triable issues of fact, and the little evidence it has proffered is inadmissible (i.e., declarations

14   where the declarant lacks personal knowledge and is otherwise not competent to testify to matters

15   stated therein).

16          Summary judgment must be denied where the record contains a genuine disputed material

17   fact foreclosing judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts are those

18   necessary to the proof or defense of a claim, and are determined by reference to substantive law."

19   *Monex Deposit Co. v. Gilliam*, 680 F.Supp.2d 1148, 1154 (C.D. Cal. 2010). The underlying facts

20   are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus.*

21   *Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). If the moving party has met its initial

22   burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact

23   regarding an element essential to that party's case, and on which that party will bear the burden of

24   proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317(1986).

25          Hulu cannot meet its burden of showing the absence of any genuine issues by simply

26   ignoring material facts (and the law). The deposition testimony, expert declarations, and

27   documentary evidence provided by Plaintiffs create genuine issues of material fact on all of the

28   issues presented in Hulu's motion. For these reasons, Hulu is not entitled to summary judgment.

## III. THE DISCLOSURE OF AN ACTUAL NAME IS NOT REQUIRED FOR A VIOLATION OF THE VPPA

### A. The VPPA Defines "Personally Identifiable Information" Broadly

A material dispute in this case is whether the information Hulu disclosed to comScore and Hulu "identifies" a person within the meaning of VPPA. The VPPA makes a videotape service provider liable if it knowingly discloses, to another person, personally identifiable information concerning a consumer of its services. 18 U.S.C.A. § 2710(b)(1). As defined in the VPPA, 18 U.S.C.A. § 2710(a)(3):

> "[P]ersonally identifiable information" *includes* information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider (emphasis added).

Unlike the other definitions in this subsection, paragraph (a)(3) uses the word 'includes' "*to establish a minimum, but not exclusive, definition of personally identifiable information.*" S. Rep. No. 100-599 at *12 (emphasis added). "This definition makes clear that personally identifiable information is intended to be transaction-oriented." *Id.* "It is information that identifies a particular person as having engaged in a specific transaction with a video tape service provider." *Id.*[2]

In this case, information which identifies a particular Hulu user as having requested or obtained specific video materials is exactly what Hulu disclosed to comScore and Facebook. It is undisputed that Plaintiffs' video choices were disclosed. It is also undisputed that Hulu disclosed identifiers uniquely associated with the Plaintiffs.

"Because Hulu assigns a unique user ID to each registered user, any reference to that user ID uniquely identifies the corresponding registered user from among all Hulu registered users." Calandrino Decl., ¶21. "For example, a database containing a register user's viewing history linked to a specific Hulu user ID would unambiguously associate the single registered user with that activity." Calandrino Decl., ¶21. "By definition, a unique identifier assigned to an individual

---

[2] According to the VPPA legislators: "It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read . . . . In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, *it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch.* . . . I think that is wrong, I think that is Big Brother, and I think it is something we have to guard against." *Id.* at 6 (emphasis added).

distinguishes the individual precisely from within a larger population." Calandrino Decl., ¶28. "In other words, someone in possession of a unique identifier for an individual requires no further information to distinguish the individual from the rest of the population." Calandrino Decl., ¶28.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████ Deposition of Xinan Wu ("Wu Depo."), 72, Carpenter Decl. Ex. 2; Deposition of Jeffrey Yang ("Yang Depo."), 119-120, Carpenter Decl. Ex. 3; Calandrino Decl., ¶31. Thus, Hulu has violated VPPA by disclosing this information.

From March 4, 2011 through November 8, 2012, when a User watched video content on hulu.com, at least the following information was sent to comScore: Hulu User ID, Hulu computer GUID (global unique identifier), the series/show name, and episode number. Carpenter Decl., Ex. 8, Response to RFA No. 20; Ex. 1, Yang Decl. ¶16. With respect to Facebook, from April 21, 2010 through June 7, 2012, ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████ See Deposition of Richard Tom ("Tom Depo.") 141-144, Carpenter Decl., Ex. 7; Wills Decl., ¶¶42-46; Calandrino Dec., ¶¶59-81. ██████████████████████

█████████████████████████████████████████. Tom Depo., 190:23-191:1; 191:23-24, Carpenter Decl., Ex. 7.

### B. There is No "Name" Requirement in the Definition of Personally Identifiable Information in the VPPA

According to Hulu, the VPPA does not apply because "the information Hulu disclosed to comScore and Facebook did not include any plaintiff's actual name (or address) . . ." Dk. 125-3, p. 10:9-10. Under Hulu's unsupported definition of PII, unless an individual is identified by name, mailing address, or email address, the individual has not been identified. See Dk. 125-3, pp. 1, 5, and 7. Hulu further argues that since a numeric or alphanumeric identifier that designates a unique individual does not contain the individual's name, it is therefore "anonymous." See Dk. 125-3, pp. 3 and 5.

VPPA does not impose a name-and-address limitation nor does it exclude information that, though "anonymous" (i.e., without a name), does indeed identify an individual. If Congress meant its definition to apply only to name, address, and phone number, it could easily have said so. But the VPPA is much broader; it covers information that identifies an individual, whether the information does so on its face, as Hulu proposes, or through its use.[3]

Although VPPA does not impose a name requirement, it should be noted that the parties dispute whether Hulu disclosed its customers' names to comScore and Facebook. The following facts raise a genuine issue of material fact as to this issue: "Because Hulu provided a profile page for each registered user available at a URL of the form http://www.hulu.com/profiles/u/[userID] (where [userID] is the registered user's Hulu user ID) between March 4, 2011 and August 1, 2011, anyone aware of these pages and in possession of a Hulu user ID could visit the profile page for a registered user if aware of the format of these URLs." Calandrino Decl., ¶37. "Because profile pages contain the name and potentially other personal details provided for the registered user, an individual visiting a profile page with knowledge of the profile page URL's format would learn the provided name and possibly other details for the registered user linked to the corresponding Hulu user ID." Calandrino Decl., ¶38.

## C. The Hulu User ID is an Example of Personally Identifiable Information under the VPPA

As explained more fully below and in the declaration of Dr. Calandrino, Hulu's User ID is one example of information that identifies an individual through its use. Hulu admits as much:

---

[3]   The Federal Trade Commission's implementing rule for the Children's Online Privacy Protection Act adopts a similarly broad definition of personal information:

 [p]ersonal information means individually identifiable information about an individual collected online, including (a) A first and last name; (b) A home or other physical address including street name and name of a city or town; (c) An e-mail address or other online contact information, including but not limited to an instant messaging user identifier, or a screen name that reveals an individual's e-mail address; (d) A telephone number; (e) A Social Security number; (f) A persistent identifier, such as a customer number held in a cookie or a processor serial number, where such identifier is associated with individually identifiable information; or a combination of a last name or photograph of the individual with other information such that the combination permits physical or online contacting; or (g) Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition.

16 C.F.R. s. 312.

Hulu "refers to the user by a nameless number—a 'User ID'" Dk. 125-3, at 1:22-23. That is, the Hulu User ID does just what its name implies: it is what Hulu uses to refer to, or identify, a particular user. ███████████████████████████████████████████████████████

███████████████████████████████████████████████ Carpenter Decl., Ex. 4, Hulu RFA Response No. 8. It is the identifier Hulu uses to keep a historical record of what videos that individual selected.

In short, the Hulu User ID is an example of information that identifies an individual, not because of intrinsic properties that can be discerned by looking at the identifier in a vacuum, but because, in the real world to which the VPPA applies, Hulu is able it to use the Hulu User ID as a recognition device—to recognize or refer to the individual associated with that ID. Calandrino Decl., ¶23

Yet Hulu engages ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████ (See Carpenter Decl., Ex. 5, HULU_GAR177541. In some of these cases,

██████████████████████████████████████████████████████████████████████

████ See e.g., Carpenter Decl., Ex. 6, HULU_GAR093679; see also Carpenter Decl., Ex. 25, HULU_GAR194748 █████████████████████████████

### D.  Hulu's Cases Do Not Support its Position

Hulu cites numerous cases for the basic principle that, barring exceptional circumstances, a video service provider that discloses consumers' actual names and video rental histories to a third party without the consumer's consent is subject to liability under the VPPA. Dk. 125-3, pp. 10-11 (citing *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1159 (W.D. Wash 2010); *Bamon Corp. v. City of Dayton*, 730 F. Supp. 80, 91 (S.D. Ohio 1990); *Camfield v. City of Okla. City*, 248 F.3d 1214, 1220-21 (10th Cir. 2001)).

While Plaintiffs do not dispute this point, as far as it goes, those cases shed absolutely no light on the disputed issue here: whether actual names and addresses are the **only** types of identifying data that are covered by the VPPA. Indeed, Hulu has not provided a single case

supporting its position that persistent, unique identifiers disclosed by Hulu to third parties as claimed in this matter do not constitute personally identifiable information within the meaning of the VPPA.

Hulu's citation to *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 262 (S.D.N.Y. 2008) (Dk. 125-3, p. 11) is misplaced, given the admissions by the parties in that case. The *Viacom* decision had nothing to do with a right to obtain the identities of consumers. In that case, Viacom was moving to obtain from YouTube the number of times users viewed videos on YouTube. Viacom alleged that the videos were its property, which were being improperly shared on YouTube. In the context of that litigation, Viacom did not (as it was not in its interest to) dispute YouTube's assertion that "anonymous pseudonym[s]" with IP Addresses could not be used to identify individuals. With that record, the court ordered production of a log showing the number of times users viewed particular videos on YouTube. However, shortly after the decision, and in the wake of overwhelming public outcry about the possibility of Viacom using the log to locate identifying information about the viewers, Viacom and YouTube agreed that "the personally identifying information that YouTube collects from its users [, i.e., the anonymous pseudonyms] will be stripped from the data before it is transferred to Viacom." Carpenter Decl., Ex. 21. Based on the ultimate decision to withhold the anonymous pseudonyms as "personally identifying information," the *Viacom* opinion clearly supports *Plaintiffs'* contentions.

Similarly, *Lahr v. NTSB*, 453 F. Supp. 2d 1153, 1183 (C.D. Cal. 2006), *rev'd in part on other grounds*, 569 F.3d 964 (Dk. 125-3, p. 11), construing FOIA, simply held that the disclosure of witness identification numbers "alone" could not personally identify anyone. The *Lahr* court expressly acknowledged that numeric identifiers, such as social security numbers, are personal information protected by FOIA.

Finally, *Gonzalez v. Cent. Elec. Coop., Inc.* No. 08-6236-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009) (Dk. 125-3, p. 11) is not informative here. In *Gonzalez*, the court found that there was no VPPA violation because the defendant did not disclose the consumer's specific video rental records; it merely disclosed the fact that a particular individual purchased one of fifteen movies. *Id.* at *11. In contrast, here, the parties do not dispute the fact that Hulu disclosed to third

parties the specific videos requested and/or watched by registered Hulu users.

For these reasons, Hulu's cases do not support its position that disclosure of an actual name is required for a violation of the VPPA.

## IV.   HULU PRESENTS INCOMPLETE AND INACCURATE FACTS

### A.   Hulu Ignores Material Facts and Fails to Provide Appropriate Evidentiary Support for the Facts on which it does Rely

Hulu, as the moving party, has failed to meet its burden of presenting *admissible* evidence in support of purportedly "undisputed facts." See Judge Beelers' Standing Order dated July 29, 2011, Section E (Dk. 2-1) and Civil Local Rule 56-2. For support, Hulu relies almost entirely on the declarations of two employees, Jeff Yang, a software engineer, and Xinan Wu, a director of software development. Dk. 125-6 and 125-7. However, these employees lack personal knowledge of many of the "facts" contained in their declarations.

For instance, the facts in Mr. Yang's declaration are limited to his knowledge of Hulu's current practices and policies, evidenced by his use of the present tense in his declaration, even though the class periods and the comScore conduct at issue occurred between March 4, 2011 and November 8, 2012. *See generally* Yang Decl.; *cf.* Yang Depo. at pp. 74:24-75:10; 75:11-13; 76:10-13; 79:11-18; 80:6-19; 86:11-22; 88:9-90:21; 91:1-14; 93:8-94:4; 94:20-95:6; 99:14-100:6; and 120:21-121:4.

Another example is Mr. Yang's ███████████████████████████████████████████████████████████████████████████ (Dk. 125-3, pp. 4, 14-15). Mr. Yang conceded in deposition ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Id. at 109:10-111:21). Further, █████████████████████████████████████████████████████

Mr. Wu fares no better. Before signing his declarations, Mr. Wu did not review any of the

pleadings in this case nor did he review any of the 70,000 plus documents produced by Hulu in this litigation. Carpenter Decl., Ex. 2, Wu Depo. 26-28; 31. His review of Hulu's code was cursory in the sense that he mostly checked for dates. Wu Depo. 28:23-29:6. Most importantly, Wu lacks personal knowledge on facts pertaining to the Facebook "Like" button on Hulu watch pages. Wu Decl., ¶¶22-32. Wu stated in his declaratoin that if a Hulu user is also a registered Facebook user, and if the user clicks on the "Like" button and Facebook authenticates the sender as a Facebook user, Facebook's servers will record that the Facebook user "Likes" that video. Dk. 125-7, ¶22.

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████ Wu Depo. 105-106. ██████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

█████████████████████ Wu Depo. 107-113. Further, his declaration omits the following facts contained in his previous declaration submitted to this Court in July: "[i]f the user already logged into Facebook in the same web browser he or she was using for hulu.com, this Facebook login screen would be skipped." Compare Dk. 101-2, ¶18 with Dk. 125-7, ¶22. █████████████████

█████████████████████████████████████ Wu Depo. 103-104.

Wu further states that "[i]n connection with the Facebook "Like" button, Hulu does not send Facebook any information that identifies the Hulu user, such as a Hulu User ID, the Hulu user's first or last name, or the user's Facebook ID." Dk. 125-7, ¶30. ███████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████████

While shifting the burden onto Plaintiffs does not require that Hulu conclusively prove every facet of its defense, surely it must do more than set forth conclusory statements weakly substantiated by the testimony of witnesses who lack personal knowledge and who are otherwise not competent to testify on the facts critical to this case. See Fed.R.Civ.P. 56(c)(4).

**B.  The Hulu Website; Raw Ingredients of a VPPA Violation**

**1.  How Hulu Built Profiles and Assigned Identifiers to Its Registered Users**

The following facts, regarding how Hulu built profiles and assigned identifiers to registered

Hulu users (herein "Registered Users" or "Users") are not reasonably in dispute by the parties:

Since 2007, Hulu has operated www.hulu.com, a website that allows users to watch television programs, motion pictures, and other pre-recorded video content on their computers, and to do so when they want (i.e., "on demand"). Declaration of Jeff Yang ("Yang Decl."), Dk. 125-6, ¶2.[4]

In order to register for Hulu's services, Hulu required Users to complete an account creation form with "first and last name, birthdate, gender, and their email address." Yang Decl., ¶¶6-7. Upon registration, Hulu assigned a unique numeric identifier to each Registered User ("Hulu User ID"). Yang Decl., ¶17. ███████████████████████████████████████████████████████ ███████████████████████████████████████████. Ex. 7 to Carpenter Decl., Deposition of Richard M. Tom ("Tom Depo."), 37:5-38:10; Wu Depo. 72; Yang Depo. 119-120.

From approximately March 2009 through May 31, 2013, Hulu created a profile web page for each Registered User on the Hulu website. Wu Decl., ¶3, Dk. 125-7. From March 12, 2009 to August 1, 2011, these profile pages were publicly available at URLs in which the name of each particular User's profile page was the User's Hulu User ID: http://www.hulu.com/profiles/u/14340379. On or about August 1, 2011 (one month after this action was filed), Hulu stopped including each Hulu User's ID in the User's profile page URLs. Wu Decl., ¶4.

Hulu maintained a database that included user account information such as full name, birthdate, and email address for each Registered User. From March 12, 2009 through May 31, 2013, ███████████████████████████████████████████████████████ ███████████████████████████████████████████████ Hulu's Response to Requests for Admission ("Response to RFA") Nos. 6 and 7, attached as Ex. 4 to Carpenter Decl.; Wu Decl., ¶9. ███████████████████████████████████████████████████████ ███████████████████████████ Carpenter Decl., ¶6, Ex. 4, Response to RFA Nos. 6 and 7; Ex. 2, Wu

---

[4] Hulu offers its basic services for free. Yang Decl., ¶2. Hulu also offers a paid service (Hulu Plus) that gives Users access to additional video content as well as the ability to view Hulu content on devices other than computers. *Id.*

Decl., ¶10. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Carpenter Decl., ¶6,

Ex. 4, Response to RFA No. 7.

**2.  How Hulu Coded Its Web Site**

The following facts about Hulu's watch pages cannot be reasonably disputed. Each video available on Hulu is displayed on a "watch page" with information about particular content (movie, television episode, or video clip) that could be selected for viewing (the "Watch Page"). Tom Depo. 95:22-24, Ex. 7 to Carpenter Decl.; Yang Decl., ¶3. Each Watch Page is a web page on the Hulu website where a User actually watches video content. Tom Depo. 95:11-13. ████████████████

████████████████████████████████████████████████████████████████

██████████████████.[5] Tom Depo. 97:2-98:14. Prior to June 7, 2012, ████████████

████████████████████████████████████████████. *See Id.* ██████████████████

████████████████████████████████████████████████ *See* Tom

Depo. 97:2-98:14. Thus, until June 7, 2012, the URL for every Watch Page on Hulu identified the video displayed on that page by name.

**3.  Contrary to its Claims, Hulu Controls the Disclosures to Facebook and comScore.**

Hulu contends that it has no control over disclosures to Facebook and comScore, but these material facts are genuinely disputed, as evidenced by the facts highlighted below.

Hulu wrote and deployed the code[6] for each of the Watch Pages. ██████████████

███████████████████████████████ Carpenter Decl., Ex. 7, Tom Depo., 175:9-16; 108:23-109:8; & 187:1-19; Ex. 2, Wu Depo., 80-84. ██████████████████████████████████

---

[5] "URL," is an acronym for the uniform resource locator that is commonly known as a web or Internet address. Here, the URL provides a scheme (i.e., "http"), a colon and two slashes, a domain name (i.e., "www.hulu.com/"), and then the resource path for a particular Hulu web page (i.e., "watch/videoID_number/videotitle").

[6] "Code" is used herein to refer to automated computer instructions (as opposed to manually entered instructions) and encompasses computer programs, "logic," or commands whether in source or executable form, and including instructions written in HTML, JavaScript, and ActionScript, whether hard-coded or dynamically generated through other logic.

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████ *See* Tom

3  Depo., 112:19-113:5 ████████████████████████████████

4  ████████████████████████████████████████████████████

5  ███████████████████████████████████") And it was this

6  code, as explained below, which disclosed information to Facebook and comScore.

**C.  Hulu's Disclosures to comScore and Facebook of User Video Choices were PII Under the VPPA Because the Disclosures included Information Identifying the Users**

In the disclosures underlying each of the claims, Hulu included information that, in and of itself, identified the users. That is, Hulu's disclosures included information enabling comScore and Facebook to link the disclosed activity of each user to yet other information about the same user.

By disclosing the Hulu User ID to comScore, comScore could use the Hulu User ID to recognize the same user when the user did or viewed anything else on the Hulu website. Calandrino Decl., ¶¶30, 33-34, 47. ███████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████ Calandrino Decl. ¶¶35-47. Further, comScore assigned its own cookie ID to users. *See* p. 17, *supra* (comScore UID cookie identifier). This enabled comScore to link the identified user and video choice information to other information it already possessed or later acquired, across all of the websites visited by the user and where comScore collects data. Calandrino Decl. ¶¶48-56.

Likewise, Hulu's disclosure to Facebook of cookie identifiers set by Facebook's domain enabled Facebook to link information identifying the user and the user's video choices to other information about that particular user. Calandrino Decl. ¶¶57-81.

In all of these disclosures, the identification of individual persons included identification of the specific video selections made by the users. This means the disclosures were of personally identifiable information, as defined under the VPPA. *See* 18 U.S.C.A. § 2710(a)(3).

This is true regardless of whether the disclosure included a Hulu User ID or browser-cookie-based ID for Facebook or comScore, especially where consumers were predominantly the only users of their respective computers and browsers.  Calandrino Decl., ¶¶  49-56, 78-80.

### D.   Hulu Identified Registered Users and Their Video Selections to comScore and Facebook

During the Class Period, Hulu routinely and systematically disclosed to third parties, particularly comScore and Facebook, unique and persistent identifiers that identified a Registered User as having requested or obtained particular video materials. The identifiers in question were unique IDs, each associated with a particular video or an individual person. comScore and Facebook were each provided sufficient information to identify a Registered User and the video materials they requested or obtained. Calandrino Decl., ¶¶28-30, 35-37, 61-62, 67-68, and 81.

As discussed in section IV.B, *supra*, these disclosures were triggered when Users visited pages on Hulu's website to view particular video materials. Hulu named, organized, and coded these pages so that, when Users directed their browsers to display the web pages, the code Hulu included in the pages caused the Registered Users' browsers to transmit to third-party Internet servers information that identified the respective Registered User, and their video choice information. Wills Decl., ¶5 and 8.

### E.   The Facts Establish that Hulu Disclosed Personally Identifiable Information to comScore

comScore collects data about the activities of consumers on the Internet, analyzes the data, and sells its analyses to its clients. *Harris v. comScore, Inc.*, 292 F.R.D. 579, 581 (N.D. Ill. 2013). comScore is one of the largest collectors of information on the Internet. According to comScore's website, it captures 1.5 trillion interactions each month, which is equal to almost 40% of the total page views of the entire Internet. Carpenter Decl., Ex. 22. comScore collects metrics using its Unified Digital Measurement (UDM) methodology on the websites of 90 percent of the top 100 U.S. media publishers. *Id*. ███████████████████████████

Carpenter  Decl.,  Ex.  32,  HULU_GAR150320 ████████████████████████

████████████████████ ).

Hulu made repeated disclosures to comScore in violation of the VPPA. From March 4, 2011

through November 2012,[7] when Plaintiffs and other Users watched video content on hulu.com, the following information was sent to comScore: Hulu User ID (which is linked to the User's Hulu profile page, see *supra*, at sec. IV.B.1.), Hulu computer GUID (global unique identifier), Ad ID, series/show name, and episode number. Carpenter Decl., Ex. 4, Response to RFA No. 20; Yang Decl. ¶16. In addition. ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████ See Carpenter Decl., Ex. 7, Tom Depo., 160:15-161:25; Wills Decl., ¶36-37.

Since Hulu admits that it identified each video selected for viewing by a Registered User, the only open question is whether the information provided to comScore was sufficient to identify a Registered User within the meaning of the VPPA. As explained by Dr. Calandrino, the answer is a resounding Yes.

### F. The Facts Establish that Hulu Disclosed Personally Identifiable Information to Facebook

Facebook is the world's largest social media site and is known around the world. Carpenter Decl., Ex. 8. In addition to the information its members put in their profiles, Facebook collects information about its members from around the Internet. This information collection serves several interests to Facebook including increasing the value of advertising rates on facebook.com. *Id*. Hulu disclosed information to Facebook that both identified users and their video selections. See Calandrino Decl., ¶¶58059 and 61-62. From April 21, 2010 through June 7, 2012. ██████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ See Calandrino Decl., ¶¶67-81; Carpenter Decl., Ex. 7, Tom Depo., 141-144; Wills Decl., ¶42-46. ██████████████████ ████████████████████████████████████████████████████████████████ Carpenter Decl., Ex. 7, Tom Depo., 190:23-191:1; 191:23-24. And, as explained below, Hulu cannot reasonably dispute that it neither obtained nor sought its Users' consent for this disclosure.

---

[7] Hulu stopped sending the Hulu User ID to comScore on November 8, 2012. Yang Decl. ¶ 19.

1 ████████████████████████████████████████████████████

2 ████████████████████████████████. Carpenter Decl., Ex. 7, Tom Depo., 117:1-8.

3 Specifically, ███████████████████████████████████████████

4 ████████████████████████████████. Tom Depo., 108:23-109:8. ████████████

5 █████████████████████████Tom Depo., 195:24-196:1; 112:24-113:5. ████████

6 █████████████████████████████████████. Tom Depo. 195:16-18.

7 ████████████████████████████████████████████████████

8 ████████████████████. Tom Depo. 196:16-18; 192:19-22. ██████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ██████████████████████████████████████████ Calandrano

12 decl., ¶68.

### G. The Facts Establish that Hulu's Disclosures to comScore and Facebook were Knowing

#### 1. Hulu Admits it Knowingly Disclosed Information that Identified Specific Video Materials Obtained by Users

To be prohibited under the VPPA, a disclosure identifying a person as having obtained specific video materials must be made knowingly. 18 U.S.C.A. § 2710(b)(1). Hulu admits it knowingly identified to comScore[8] and Facebook the specific video materials Plaintiffs and Class Members selected. Dk. 125-3 at 6-7. Hulu even admits to one of the ways it disclosed video titles to comScore and Facebook—by including video titles in the URLs of the web pages ("watch pages") on which consumers accessed the video content on its site. *Id*. Because Hulu's watch pages include Hulu's code to send user data to comScore and, through the Like Button, to Facebook, users' video selections and identifiers were sent to those third parties with each video chosen. Dk. 125-3 at 4, 6.

---

[8] Without explanation, Hulu refers to Plaintiffs' comScore-related claims as a "sub-theory" and "fallback theory." Dk. 125-3 at 14-15. Plaintiffs note that, while their comScore and Facebook claims share some common questions of law and fact, the conduct related to comScore and Facebook implicates two, separate classes. *See* Plaintiffs' Motion for Class Certification (Dk. 112), Proposed Class Definitions at 9.

However, Hulu appears to dispute its responsibility for these disclosures, stating as a purportedly undisputed fact that the disclosure was simply a function of how the Internet works: "Sending the URL is part of the basic HTTP operation that occurs for content requests for any website on the Internet." Dk. 125-3 at 6-7. But it was Hulu, not the Internet, that chose to put video titles in the URLs of Hulu's watch pages and then chose to disclose those URLs to third parties. *Id.* Indeed, Hulu's entire argument on this point is misleading because despite the fact that on June 7, 2012 Hulu stopped including titles in the URL, it has experienced no disruption in content delivery.[9] Wu decl., ¶29. Given that Hulu is aware of the way the referer URLs are disclosed when a web page is coded to call the third party, Hulu's disclosures to third parties of video titles in the URLs of its watch pages were made knowingly. See *Id.* In fact, in Hulu's dealings with other third parties, Hulu has taken affirmative steps to limit disclosures of video titles in its watch page URLs.[10] URLs. Dk. 125-3 at 7.

**2. Hulu Makes the Misleading Claim that it Could Not Have Knowingly Disclosed Information Identifying Persons who Obtained Video Materials**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ *See* Carpenter Decl., Ex. 2, Wu Depo., 116:6-117:20. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ *See* Wu Depo., 79:12-23, 107:7-19, 109:7-15.

Hulu, however, claims it cannot see what is in third-party cookies and therefore it could not have known whether it was disclosing to third parties information that identified persons who

---

[10] For example, ████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████

obtained specific video materials. Dk. 125-3 at 5-7, 9, 14-15, 17. In its attempt to manufacture support for this claim, Hulu misapplies the general principle that *websites* cannot set or read each others' cookies (*see* Wu Decl. ¶21) and attempts to extrapolate it into the untenable claim that Hulu cannot see what is in third-party cookies.

In fact, Hulu does much more with third-party cookies than read them. Contrary to the general principle that one website cannot set or read another's cookies, Hulu does just that for some of its third-party vendors. ████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████ *See, e.g.*, Carpenter Decl., Ex. 10, HULU_GAR231508 (stating: ███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████"); *see also Id.,* Ex. 11, HULU_GAR093686 (████████

███████████████████████████).

████████████████████████████████████████████████████

██████████████████████████ *See, e.g.*, Carpenter Decl., Ex. 12, 13, 14, and 15 HULU_GAR007255, 219035, 219041, and 223002 (████████████████████████████████

███████████████████████████████████████████.).

In addition, Hulu asserts that it would have been impossible for Hulu to have known that identifying information was being transmitted to Facebook through a *datr* cookie because the example *datr* cookie provided by Plaintiffs is unintelligible, on its face. Dk. 125-3 at 17. This argument is nothing more than Hulu's attempt to buttress its claimed ignorance of third-party cookies by bootstrapping to its specious argument that the VPPA only applies in cases of disclosures that include plain-text names or addresses.

Hulu's cases construing the scienter requirement of the Stored Communications Act ("SCA") do not support Hulu's position. Dk. 125-3, p. 15 (citing *Freedman v. America Online, Inc.* 329 F. Supp. 2d 745, 748 (E.D. Va. 2004) and *Muskovich v. Crowell,* No. 3–95–CV–20007, 1996 WL 707008 (S.D. Iowa Aug. 30, 1996)).

In *Freedman* and *Muskovich*, the court primarily relied on the SCA's legislative history,

where the term knowingly was defined as follows: "the defendant was aware of the nature of the conduct, aware of or possessing a firm belief in the existence of the requisite circumstances and an awareness of or a firm belief about the substantial certainty of the result." *Freedman,* 329 F. Supp. 2d at 748; *Muskovich,*1996 WL 707008, at * 4. As Hulu acknowledges, this language appears nowhere in the statutory language of the VPPA, its legislative history, or case law interpreting the Act.

In any event, Hulu's disclosures to comScore and Facebook meet the high standard articulated in *Freedman* and *Muskovich*.  For example, in *Freedman*, the court found "no doubt" that the defendant had "knowingly divulged information" in violation of the SCA because the defendant "did not disclose the information inadvertently" and was "aware that by faxing the [allegedly confidential] subscriber information ... this information would certainly be disclosed." *Id*. at 749. That the AOL employee who faxed the information was unaware that the detectives to whom the information was disclosed did not obtain an executed warrant nor a court order directing the production of the records, was not relevant to the scienter analysis.

In *Muskovich*, an MCI employee harassed a customer whose phone number he retrieved from company records. 1996 WL 707088, at *1. The customer alleged that MCI had violated the SCA "by failing to implement adequate security procedures to prevent unauthorized access to the content of electronic information under its control." *Id*. at 3.

Although MCI could have known that its alleged failure to implement safeguards would increase the possibility that an employee would abuse its records in this manner, the court held that this did not amount to "knowingly divulg[ing]" information within the meaning of the statute. *Id*. at 5. An "[a]wareness of a 'possibility' does not rise to the level of awareness of a 'substantial certainty' required for liability under the [SCA]." *Id.*

Here, when Hulu coded its watch pages, it knew that this act would result in the disclosure of the data to third parties; this disclosure was neither inadvertent nor was it a mere possibility. Hulu had knowledge of the circumstances of disclosure.

In sum, Hulu's request for summary judgment based on the absolutely disputed fact that it "could not have known" what was being disclosed is deficient and should be denied: it is neither

supported by the law nor by Hulu itself with competent evidence, and is genuinely disputed by Plaintiffs.

### H. Hulu's Disclosures Were Not Incident to the Ordinary Course of Hulu's Business

The VPPA permits disclosures that are "incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). This was not, however, an invitation for businesses to disclose information to third parties. The Legislature made its intent clear – the term "ordinary course of business" is "narrowly defined" in the statute to mean "*only* debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2) (emphasis added). The Senate Report accompanying the VPPA when enacted noted that the "activities that constitute 'ordinary course of business' are *narrowly defined* so as to avoid the possibility that a subsequent interpretation would undercut the purpose of [VPPA], as occurred with the phrase 'routine use' in the 1974 Privacy Act") (emphasis added). S.Rep. No. 100-599 at 14 (1988), reprinted in 1988 U.S.C.C.A.N. 4342. The Senate Report explained that "order fulfillment" and "request processing" are the use, by a video tape service provider, of "mailing houses, warehouses, computer services, and similar companies for marketing to their customers." S.Rep. No. 100-599 at 14 (1988), reprinted in 1988 U.S.C.C.A.N. 4342.

Hulu attempts to cloud this glaring fact by including in the description of its "business operations" the need for "the assistance" of third parties to function. *See* Dk. 125-3, 3:11-25. Notably, Hulu does not support this position with specific evidence and does not actually state that it needs to provide data about individual users to *comScore* to be able to operate. While it may be the case that Hulu pays comScore for some services, the evidence clearly demonstrates that it does not need to provide such granular, individual data to comScore, nor does it utilize comScore for "debt collection activities, order fulfillment, request processing, and the transfer of ownership." *See* 18 U.S.C. § 2710(a)(2). Disclosure of individual data about Registered Users to third parties is not essential to the actual operation of Hulu's business, which is the delivery of video content.

This is demonstrated by the fact that, at times, ████████████████████████

1    ███████████████████████████████████ *See* Carpenter Decl.,

2    Ex. 31, HULU_GAR175560 ███████████████████████████

3    ████████████████ In fact, Hulu was aware, █████████████

4    ████████████████████████████████████████████

5    ███████████████ Carpenter Decl., Ex. 20, HULU_GAR178620. ██████

6    ████████████████████████████████████████████

7    ████████████████████████████████████████████

8    ██████████████ Carpenter Decl., Ex. 16, HULU_GAR144261(█████████

9    ████████████████████████████████████████████

10   ████████████

11   comScore does not perform order fulfillment or request processing services for Hulu.[11] The

12   services that comScore does perform are not in the ordinary course of *Hulu's* business as that term

13   is used in the VPPA. However, Hulu argues that the comScore reports are necessary to its business.

14   *See* Yang Decl., ¶4. Hulu, relying solely on Mr. Yang, contends that "[F]or comScore to provide

15   those metrics [to Hulu], Hulu transmits data to comScore through a comScore 'beacon' on the Hulu

16   watch page". Dk. 125-3, p. 4:12-13. █████████████████████████

17   ████████████ (Carpenter Decl., Ex. 3, Yang Depo., 102:24-103:4), █████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21   ████████████████████████████████████████████

22   ████████████████████████████████████████████

23   ─────────────────

24   [11] Hulu does not even attempt the same "course of business" argument with respect to information
     disclosed to Facebook. ████████████████████████████████████

25   ████████████████████████████████████████████

26   ████████████████████████████████████████████

27   ████████████████████████████████████████████

28   ████████████████████████████████████████████

1  ████████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████ With this record,

6  Hulu has not and cannot establish that it must transmit identifying information to comScore.[12]

7      Misleadingly, Hulu has portrayed comScore only as a provider of services *to* Hulu, from

8  whom it collects user data to provide reports back *to* Hulu. Dk. 125-3 at 4. ██████████████

9  ████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████

11 ██████████████████████████████ S*ee* Carpenter Decl., Ex 30, HULU_GAR131125 █

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ██████████████████████.) Regardless of whether Hulu needs to provide granular data for

17 any reports at all, it cannot possibly be in Hulu's ordinary course of business to permit comScore

18 to use and retain Hulu user data for purposes that have nothing at all to do with Hulu's business.

19 ████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████

21 ████████████████████████████ *See, e.g.*, Carpenter Decl., Ex. 1, HULU_GAR164819 at -

22 26████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████

26 [12] None of this should come as any surprise to Hulu, █████████████████

27 ████████████████████████████████████ Yang Depo., 103:17-19; 103:20-104:1; 104:2-

28 4.

1 ███████████████████████████████████████████████

2 █████████████████████████████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████s.

5 *See*, *e.g.*, Carpenter Decl., Ex. 32, HULU_GAR150320██████████████████

6 ███████████████████████████████████████████████

7 ██████████████████████████████

### I. The Facts Establish that Hulu's Registered Users Did Not Consent to any Disclosures

The VPPA relieves a party from liability for disclosures made with the "informed, written consent of the consumer given at the time the disclosure is sought." 18 U.S.C. § 2710(b)(2)(B). Hulu contends that, regarding disclosures of identifying information to Facebook, it is entitled to summary judgment under that exception. Dk. 125-3 pp. 10, 18-19.[13] However, as discussed below, Hulu's argument fails for two reasons. First, Hulu adduces no specific, admissible evidence to support its argument. Second, Plaintiffs' evidence shows that, in fact, Hulu did *not* have consent.

Plaintiffs have evidence that from April 21, 2010 through June 7, 2012[14], ████████████
████████████████████████████████████████████████
██████████████████████████████████ Calandrino Decl., ¶¶58-91.
████████████████████████████████████████████████
█████ Calandrino Decl., ¶¶58, 64, 65. Hulu attempts to pass this off as a matter between Plaintiffs and Facebook, claiming that the Like Button is under Facebook's control. Dk. 125-3 at 18. However, that assertion is factually incorrect. The disclosure to Facebook of which Plaintiffs complain is a disclosure by Hulu to Facebook. ██████████████████████████████
████████████████████████████████████████████████

---

[13] Regarding consent to disclosures to comScore, Hulu offers no facts or argument at all.

[14] After June 7, 2012, the URLs for Hulu watch pages no longer included the title of the program or episode. Wu Decl., ¶¶28-29.

1   page. Calandrino Decl., ¶59; Wills Decl., ¶43-45. It is at that point that Hulu's code transmits to

2   Facebook the user's identifier and an identifier for the specific video content on that page. Wills

3   Decl., ¶43.

4        Hulu admits that this operation is under its control. ("Within the code for Hulu's watch

5   pages is an instruction indicating where the Facebook button should be located on the page and

6   where from Facebook to obtain the code that loads and operates the button." Dk. 124-3 at 6,

7   citing Wu Decl., ¶ 25.) Hulu's factual assertions about Facebook's control of the operation of the

8   button (*Id.*; Dk. 125-3 at 18-19) relate only to Facebook's control after-the-fact, i.e. after the Like

9   Button has already been placed on the user's page by Hulu and after the user's information has

10  already been sent to Facebook. Thus, the Facebook-is-in-control evidence cited by Hulu is

11  inadmissible because it is simply irrelevant. It relates to events that occur *after* the disclosures at

12  issue here have already taken place and are therefore not probative of the material issue.

13  Calandrino Decl., ¶¶58-59. In addition, ███████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ███████████████. Carpenter Decl., Ex. 18 (HULU_GAR179345 at 46.)

16       Hulu next argues that statements appearing on Facebook's website somehow evidence or

17  constitute Plaintiffs' consent to the complained-of disclosures (Dk. 123-3 at 18-19), but Hulu

18  offers no admissible evidence to support this argument, either. *See Zoslaw v. MCA Distributing*

19  *Corp.*, 693 F2d 870, 883 (9th Cir. 1982) (documents in support of Rule 56 motion must be

20  "authenticated by affidavits or declarations of persons with personal knowledge"); ND CA Rule

21  7–5(a)—"evidentiary matters must be appropriately authenticated by affidavit or declaration".

22  Hulu's purported evidence consists of nothing more than unauthenticated, out-of-court statements

23  downloaded from Facebook's website, which are not even part of any agreement between

24  Facebook and its users, and of which there is no evidence any of the Plaintiffs even saw. These

25  are inadmissible hearsay and should not even be considered by the Court.

26       Even at face value, and even if these types of webpages formed a binding agreement

27  (which they do not), the Facebook pages offered by Hulu, with Hulu's unsupported interpretation,

28  evidence no written consent as required by the VPPA.

This fact is supported by Facebook itself. The evidence shows that Facebook disclaimed any responsibility for Hulu's compliance with the VPPA, including obtaining consents. █████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████ Carpenter Decl., Ex. 18 (HULU_GAR179345 at 47).

Facebook responded, ██████████████████████████████████████████

█████████ *Id*. at 46; *see also* Carpenter Decl., Ex. 21 HULU_GAR210902 at 03, █████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████

Thus, not only does Hulu fail to present competent evidence necessary to meet the VPPA consent exception, the foregoing is specific evidence that disputes Hulu's position.

### J. Hulu's Disclosures Were of PII and Required No Reverse Engineering or Lookup Table to "Become" PII

Hulu's reverse engineering and lookup table arguments are red herrings. Hulu is essentially arguing that the information it disclosed about the user could not have been linked to other information about the user.

Regarding Facebook and comScore cookies, the cookies *contained* identifiers the very purpose of which was to enable Facebook and comScore to recognize the users so Facebook and comScore could link Hulu's disclosures to other information about the users. No lookup tables or search tools were necessary; the lookup key was built into the disclosure itself. [15]

Regarding Hulu's claim that comScore would have to engage in reverse engineering to `use the Hulu User ID to access the user's profile: As explained above, for over two years Hulu made profiles pages public. Carpenter Decl., Ex. 4, Hulu Resp. to Plaintiffs' 1st RFAs 9-10; see Dk. 125-3 at 6. ████████████████████████████████████████████████

---

[15] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

1   ██████████████████████  Calandrino, ¶35; Carpenter Decl., Ex. 4., Hulu Resp. to

2   Plaintiffs' 1st RFA 11. [16] A look-up table would have been superfluous because the only "tool"

3   one would need was an internet connection and a web browser. See Wu Decl., ¶3.

4         Hulu's method of making Registered User profile pages available by simply typing the

5   User ID into the profile page URL browser is no different from a video store that maintains its

6   customer database by customer phone number. If the video store provided a list of its customers

7   to third party, but only provided the phone numbers and not the names, no one could question that

8   this would be a violation of the VPPA because the third party could simply consult a reverse

9   lookup directory to find the related names.

10        Hulu encrypted the User ID portion starting August 1, 2011, thus making this lookup

11  feature no longer available. See Wu decl., ¶4. As one Hulu employee stated, █████████

12  ████████████████████████████████████████████████████████

13  ███████████████. Carpenter Decl., Ex. 24 (HULU_GAR107532).

## V.   CONCLUSION

15        For the reasons stated herein, Plaintiffs respectfully request that the Court deny Hulu,

16  LLC's Motion for Summary Judgment.

17  Date: December 19, 2013                    Respectfully submitted,

19                                             By:  _s/David C. Parisi_____

20                                             Scott A. Kamber (*pro hac vice*)
                                               skamber@kamberlaw.com
21                                             David A. Stampley (*pro hac vice*)
                                               dstampley@kamberlaw.com
22                                             Grace E. Tersigni (*pro hac vice*)
                                               gtersigni@kamberlaw.com
23                                             **KAMBERLAW, LLC**
                                               100 Wall Street, 23rd Floor
24                                             New York, New York 10005
                                               Telephone:     (212) 920-3072
25                                             Facsimile:     (212) 920-3081
                                               Deborah Kravitz (SBN 275661)

27  [16] Even Mr. Yang concedes that all comScore had to do to learn the users' names based on the
     information given to it by Hulu was type in the User ID into the profile URL. Yang Decl., ¶24;
28  Carpenter Decl., Ex. 3, Yang Depo., 122:1-8.

dkravitz@kamberlaw.com
**KAMBERLAW, LLP**
141 North St.
Healdsburg, California 95448
Telephone: (707) 820-4247
Facsimile: (212) 202-6364
David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
**PARISI & HAVENS LLP**
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:    (818) 990-1299
Facsimile:    (818) 501-7852

Brian R. Strange (SBN 103252)
lacounsel@earthlink.net
Gretchen Carpenter (SBN 180525)
gcarpenter@strangeandcarpenter.com
**STRANGE & CARPENTER**
12100 Wilshire Blvd., Ste, 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210
Counsel for Plaintiffs