ROBERT M. SCHWARTZ (S.B. #117166)
rschwartz@omm.com
VICTOR JIH (S.B. #186515)
vjih@omm.com
STEVEN M. DUNST (S.B. #281848)
sdunst@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700

SIMON J. FRANKEL (SB# 171552)
sfrankel@cov.com
EMILY JOHNSON HENN (SB# 269482)
ehenn@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000

Attorneys for Defendant
HULU, LLC

[*Additional attorneys listed on signature page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| IN RE HULU PRIVACY LITIGATION | Case No. 3:11-CV-03764-LB<br><br>**REPLY IN SUPPORT OF HULU'S MOTION FOR SUMMARY JUDGMENT (RE: COMSCORE AND FACEBOOK "LIKE" BUTTON)**<br><br>Hearing Date: February 6, 2014<br>Time: 9:30 a.m.<br>Courtroom: C<br>Judge: Hon. Laurel Beeler<br><br>**REDACTED VERSION** |
|---|---|

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. THE FACTS MATERIAL TO THIS MOTION ARE NOT DISPUTED ........ 3
III. HULU DID NOT DISCLOSE ANY IDENTIFYING INFORMATION ........ 4
A. An Anonymized User Number Is Not PII ........ 4
B. Plaintiffs' Interpretation of PII is Contrary to the Case Law ........ 6
C. Plaintiffs' Interpretation of PII is Contrary to The Legislative History ........ 8
IV. NEITHER THE LAW NOR THE FACTS SUPPORT PLAINTIFFS' BACKUP THEORY ........ 9
V. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) ........ 11

*Ho by Ho v. San Francisco Unif. School Dist.*,
147 F.3d 854 (9th Cir. 1998) ........ 10

*Johnson v. Microsoft Corp.*,
2009 WL 1794400 (W.D. Wash. June 23, 2009) ........ 7

*Klimas v. Comcast*,
465 F.3d 271 (6th Cir. 2006) ........ 7

*Lahr v. NTSB*,
453 F. Supp. 2d 1153 (C.D. Cal. 2006), *rev'd in part on other grounds*, 569 F.3d 964 (9th Cir. 2009) ........ 7, 9

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 10

*Mollett v. Netflix, Inc.*,
2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) ........ 10

*Pruitt v. Comcast*,
100 F. App'x 713 (10th Cir. 2004) ........ 7, 9, 10

*Viacom Int'l Inc. v. YouTube Inc.*,
253 F.R.D. 256 (S.D.N.Y. 2008) ........ 6

**STATUTES**

18 U.S.C. § 2710(a)(3) ........ 4

**OTHER AUTHORITIES**

Hearing of the Senate Judiciary Committee, "Privacy, Technology and the Law,"
2012 WL 272225 (Jan. 31, 2012) ........ 2, 9

S. Rep. No. 100-599 (1988) ........ 2, 4, 8, 9

*The Bork Tapes Saga*,
http://www.theamericanporch.com/bork2.htm (last visited January 14, 2014) ........ 8

**RULES**

Fed. R. Civ. P. 56(d) ........ 11

## I. INTRODUCTION.

The key fact in this case—what Hulu disclosed about plaintiffs—is undisputed: Plaintiffs' opposition concedes that what Hulu disclosed to comScore, and what Facebook gathered from the cookies associated with its "Like" button, were anonymous *numbers*. Plaintiffs assert that that any such number by itself constitutes PII under the VPPA because it "identifies" one user from another, even though it does not disclose who that user is. Plaintiffs' opposition makes clear that their claim turns on whether an anonymous number is PII. That dispositive issue is a legal one that this Court can decide now, on summary judgment.

Plaintiffs' current case theory represents a remarkable retreat from where they began with this lawsuit. They initially accused Hulu of broadly disclosing its users' identities—"who" was watching "what." Later, plaintiffs narrowed the alleged recipients to just two: comScore and Facebook. Later still, plaintiffs narrowed the information itself to something that could have been used in combination with other information to identify Hulu's customers. And now, plaintiffs argue that Hulu released a mere *number* which, by itself, "identifies a person" under the VPPA.

Plaintiffs' latest strategy misconstrues the meaning of the word "identifies" in a way that strips it from all context and is without any judicial support. The numbers Hulu assigned to plaintiffs may be unique, but they convey nothing identifiable about them. Indeed, Hulu uses anonymous numbers to *hide* plaintiffs' identities and *protect* their privacy. The one court to address the issue squarely held that an anonymous number does not constitute PII under the VPPA. Plaintiffs cite no case holding otherwise. Plaintiffs' position is also contrary to the PII cases cited in Hulu's opening brief that reached the same conclusion under analogous statutes.[1]

Plaintiffs' unprecedented strategy is also at odds with the VPPA's legislative history. Congress' concern was not with information that identifies an *unknown* user as having engaged in a specific transaction with a video tape service provider. Rather, as quoted in plaintiffs' own brief, "Personally identifiable information is information that identifies a *particular* person as

---

[1] Plaintiffs' class certification reply brief makes clear that certification similarly depends on the Court holding that a user number is PII under the VPPA. If something more than the disclosure of a user number is required to "identify a person," plaintiffs have effectively conceded that their claim cannot be certified because it would depend on numerous individualized fact issues.

having engaged in a specific transaction with the video tape service provider." S. Rep. No. 100-599 at 12 (emphasis added, cited in Opp. at 3). Plaintiffs note that Congress sought to prevent others from knowing "what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television…." (Opp. at 3, n.2.) Those are names of real people, not anonymous numbers. There is no suggestion that Congress sought to prevent others from knowing what "User 50253776" watched. Indeed, in 2012, when privacy advocates asked Congress to extend the definition of PII under the VPPA to include account numbers, Congress declined. (*See* Hearing of the Senate Judiciary Committee, "Privacy, Technology and the Law," 2012 WL 272225 (Jan. 31, 2012).) To survive summary judgment, plaintiffs' opposition asks the Court to do what Congress would not, and turn the VPPA into something Congress never intended, far afield from the animating concern of protecting information that identifies an *actual* "person"—not a mere number.

Plaintiffs' VPPA claim requires the Court to conclude that an anonymous number is PII because, otherwise, plaintiffs are left with arguing that it was technically possible for comScore or Facebook to have used plaintiffs' anonymous user numbers to identify them. (Opp. at 12 (Hulu's "disclosures included information enabling comScore and Facebook to link … to yet other information about the same user.").) Plaintiffs go out of their way to subordinate that argument, however, [REDACTED] (*See* Calandrino Decl., ¶¶ 47 & 81; *see also* Wills Depo., Dkt. 142-7, at 3-6.) And even if it did, as a matter of law, such third party conduct does not constitute a VPPA violation by Hulu.

The non-expert discovery period closed on January 13. After having had more than a year to gather evidence to support their claim, plaintiffs have no evidence that, outside of Hulu, anyone knows who they are. Indeed, given that plaintiff Joseph Garvey registered using a fake name, until he filed this lawsuit not even Hulu knew who he was. As explained below, plaintiffs' VPPA claim is unsustainable as a matter of law and fact. Hulu is entitled to prevail.[2]

[2] There is no need to address plaintiffs' effort to create a factual dispute over the VPPA's "ordinary course of business" exception. Hulu did not move on the issue and plaintiffs cannot cross-move for summary judgment. (Opp. at 1, n.1.) And while Hulu disagrees with plaintiffs' analysis of the "consent" issue, because Hulu did not disclose PII, the issue is moot.

## II. THE FACTS MATERIAL TO THIS MOTION ARE NOT DISPUTED.

Plaintiffs concede that the facts concerning Hulu's use of "assigned identifiers"—the only facts material to this motion—are "not reasonably in dispute by the parties." (Opp. at 9-10.)

With respect to comScore, plaintiffs' claim is based on the allegation that Hulu disclosed to comScore each plaintiff's user number along with the titles of the videos each plaintiff watched. (*Id.* at 12.) Neither party disputes those facts. Plaintiffs do not dispute that the user number is an anonymous number (*e.g.*, 50253776) that conveys no information about the user, other than the order in which the user registered. (*Id.* at 10.) The user number *refers* to a user, without disclosing the *identity* of that person.

With respect to Facebook, plaintiffs' claim is based on the allegation that Facebook obtained the titles of the videos plaintiffs watched along with something called a *Facebook* "User ID" number stored in a computer's cookies. (*See* Opp. at 14.) Plaintiffs do not dispute the facts that dispose of that theory: (1) [redacted] (*see* Calandrino Decl., ¶¶ 58-59); (2) [redacted] (Wills Decl., ¶ 47); (3) [redacted] (Calandrino Decl. ¶ 66); (4) [redacted] (Wills Decl., ¶¶ 47, 48); and (5) plaintiffs have no evidence that Hulu knew what data Facebook was gathering from loading the "Like" button.

While the facts concerning the disclosures are not in genuine dispute, plaintiffs try to create the impression of factual disputes by attacking Hulu's declarants, Jeff Yang and Xinan Wu. (Opp. at 8-9.) Plaintiffs' attack is misguided. Plaintiffs do not dispute the foundation of Messrs. Yang's and Wu's declarations with respect to the facts that, as noted above, are material to this motion. Instead, plaintiffs quarrel with information that is collateral.

Plaintiffs claim that Mr. Yang does not know whether comScore aggregated user data or used individual-level data, or what reports comScore wrote. (*Id.* at 8.) But Mr. Yang did not testify on those issues, and they have nothing to do with whether the data Hulu disclosed to

comScore is PII. Plaintiffs also quarrel with the verb tense Mr. Yang used, implying that his testimony has no bearing on Hulu's past practices. (*Id.*) But the record is replete with evidence that [REDACTED] (*E.g.*, Wills Decl., ¶ 36.)

As to Mr. Wu, plaintiffs fault him for not reading the pleadings or the documents Hulu produced. (Opp. at 8-9.) Plaintiffs make no showing that his testimony required him to have done so. Plaintiffs separately assert that there are gaps in Mr. Wu's knowledge of Facebook's user "authentication" processes and log-in screens, but plaintiffs fail to explain why that matters to their claim or to Mr. Wu's testimony. It does not. His declaration concerns other topics, such as background information about Internet cookies (*see* Wu Decl., ¶¶ 13-21) and what happens when the "Like" button is loaded on a hulu.com watch page (*id*. at ¶¶ 22-25 & 31-32).

## III. HULU DID NOT DISCLOSE ANY IDENTIFYING INFORMATION.

### A. <u>An Anonymized User Number Is Not PII</u>.

The VPPA redresses a knowing disclosure by a video service provider of "personally identifiable information." Under the statute, "the term 'personally identifiable information' includes information which identifies *a person* as having requested or obtained specific video materials or services…." *See* 18 U.S.C. § 2710(a)(3) (emphasis added).

Plaintiffs do not dispute that the information comScore and Facebook received that purportedly "identified" plaintiffs consisted of a number. Plaintiffs argue that these *anonymous* numbers "identify" them as "a person" under the VPPA because the number is unique to a user. (Opp. at 3.)[3] Plaintiffs' reading of the VPPA is untenable.

Plaintiffs begin by attacking a position Hulu has not taken. Hulu has not argued that only a user's name constitutes personally identifiable information under the VPPA. (*Id*. at 1 & 4.) Hulu has argued, and the VPPA states, a violation requires disclosure of information that

---

[3] Plaintiffs argue that anonymous numbers are PII because the phrase "information which identifies a person" in the term's definition follows the word "includes." (Opp. at 3.) The use of the term "includes" does not mean that *any* information is identifying. No case has so held. In fact, the legislative history plaintiffs cite for that proposition says that the definition is intended to be "transaction-oriented" so that it "identifies a *particular* person as having engaged in a specific transaction with a video tape service provider." *Id.*, *citing* S. Rep. 100-599 at 12 (emphasis added). An anonymous number does not identify a particular person. Plaintiffs' interpretation of the definition of PII would remove any meaningful limit on the scope of the statute.

identifies "a person." Certainly, a name identifies a person, but that is no longer what plaintiffs' claim is about. The question for the Court is whether an anonymous number does so.

Plaintiffs' principal support comes from a computer consultant, who says that [redacted] (*See* Calandrino Decl., ¶ 21.) That is merely a linguistic argument, for which the witness has no qualifications, over the meaning of the term "identifies." As a matter of language and fact, a user number can "refer to" a user, and it can "differentiate" one user from another. But it does not "identify" a plaintiff because it conveys nothing at all about him. It does not tell the recipient any of the things that, as noted below, Congress sought to protect.[4]

Plaintiffs' characterization of these numbers as "unique" is true, but it carries no functional or legal significance. Each plaintiff's user number is "unique" in the sense that no two users are assigned the same number. But that is irrelevant from a legal standpoint. What matters for purposes of the VPPA is that plaintiffs' Hulu user numbers do not identify them as a particular person in any cognizable way. Plaintiffs do not dispute that the user number is proprietary to Hulu (*i.e.*, it is not akin to a driver's license number, or assigned and used by a third party for other purposes) and that it has no significance beyond the order in which a plaintiff registered. (*See* Opp. at 10.)

Plaintiffs' argument about Facebook is even further removed from a disclosure of information that identifies a person. The Facebook number (which Facebook captured from its own cookie and from its users' browsers) was also just a number. Hulu did not create it or see it. The number did not even refer to the user who watched a Hulu video. Rather, as plaintiffs' expert admits, [redacted] (Calandrino

---

[4] Plaintiffs also describe a "comScore UID cookie," which they claim [redacted] (*See* Opp. at 12 and Calandrino Decl. at ¶ 48.) Plaintiffs neglect to explain what user information that cookie contains, whether comScore did anything with it, and whether it enabled comScore to "identify" plaintiffs, other than by means of just one more anonymous number. For those reasons, plaintiffs fail to create an issue as to whether the comScore UID cookie contained or constituted PII. And, as with the Facebook cookies, because the information did not come from Hulu, it was not a disclosure by *Hulu*.

Decl., ¶ 66.) Thus, it may not even have referred to *plaintiffs*. And even if this number could identify a person (which it does not), to eliminate the possibility that Facebook obtained the user number of someone other than plaintiffs, plaintiffs needed to prove that no one else used those computers to access Facebook before plaintiffs used them to watch videos on hulu.com. Plaintiffs have offered no such evidence.[5]

**B. Plaintiffs' Interpretation of PII is Contrary to the Case Law.**

Plaintiffs acknowledge that, in the cases in which a VPPA violation has been found, the defendant had disclosed the name of the customer. (Opp. at 6.) Plaintiffs are unable to cite a single case in which a court found a violation of the VPPA (or any other privacy statute) based on the conclusion that a user number was PII. The most plaintiffs can do is assert that Hulu failed to cite a case in which a user number did *not* constitute PII. (*Id.* at 7.) But even that is not true.

In fact, the only on-point authority to address this issue under the VPPA supports Hulu's position. In *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008), the video service provider objected to the disclosure of user login IDs on the grounds that doing so would expose it to liability under the VPPA. The district court rejected the argument, noting that the login ID was an anonymous pseudonym that "cannot identify specific individuals." *Id.* at 262. That is the same issue here, because plaintiffs' VPPA claim is also based on anonymous data. Plaintiffs attempt to distinguish *Viacom* because, *after* the court decided the issue, the parties agreed on their own that the video service provider need not disclose the login IDs. (Opp. at 7 & Carpenter Decl., Ex. 21, Dkt. 161.) That makes no difference. Whatever occurred *after* the district court decided the issue (particularly something that did not involve the court (*see* Ex. 21)) could have had no bearing on the court's *prior* conclusion that, under the VPPA, an anonymous identifier is not PII. Plaintiffs offer no other basis to distinguish the case.

Outside of the VPPA, courts have consistently held that an anonymous number is not identifying. Plaintiffs ignored the cases cited in the opening brief holding that the term "PII"

---

[5] To support their expansion of the VPPA's definition of PII, plaintiffs cite a proposed FTC rule for implementing the Children's Online Privacy Protection Act. (Opp. at 5, n.3) The public safety issues that led to the passage of COPPA are not present here, and there is no indication that the specialized COPPA rules have any application outside of that statute.

under the Cable Act means data that "personally identifies" a specific individual, and that a user number or number assigned to the user's hardware does not qualify. (Mot. at 10, n.5 (citing cases and noting that the Cable Act is "analogous" to the VPPA).) Plaintiffs did address *Lahr v. NTSB*, 453 F. Supp. 2d 1153 (C.D. Cal. 2006), *rev'd in part on other grounds*, 569 F.3d 964 (9th Cir. 2009), where the district court concluded, in ruling on a FOIA request, that no privacy interests were implicated by the disclosure of witness numbers, given that such numbers are by definition anonymous and do not provide any personally identifiable information. *Id.* at 1183. Plaintiffs say that the issue there was whether the numbers "alone" identified anyone. (Opp. at 7.) But in terms of deciding whether a number is personally identifying, that is the same issue raised here. Oddly, plaintiffs point to the distinction *Lahr* drew between the type of single-purpose number at issue there (and here) and a Social Security number. (*Id.*) That distinction helps Hulu, not plaintiffs. Unlike the user numbers at issue here, which Hulu assigns to *hide* the identity of a person, a Social Security number is government-issued and used by every government body and millions of businesses to *verify* the identity of a person in such activities as the payment of wages and taxes, participation in banking and financial transactions, visiting a doctor, and almost every other aspect of modern life. The Hulu user number is arbitrary and has no more meaning to third parties than the number printed on a dry cleaning claim check. The number does not tell a third party who a customer is. It merely allows a dry cleaner—and only the dry cleaner—to know where to find the clothes and whose clothes they are.

Plaintiffs seek to attach significance to the fact that their user numbers remained the same for the life of their Hulu accounts, which they say made those numbers "persistent" identifiers. (Opp. at 6.) But the length of time a number is used does not transform it into PII. In *Klimas v. Comcast Cable Communications, Inc.*, 465 F.3d 271, 276 n.2 (6th Cir. 2006), the court found that a customer's static IP address (an address that remains the same for so long as a user maintains its account) is not PII because it does not "reveal 'a subscriber's name, address [or] social security number.'" Similarly, in *Pruitt v. Comcast Cable Holdings, LLC*, 100 F. App'x 713, 716 (10th Cir. 2004), a case cited in the opening brief that plaintiffs failed to address, the court found that a "static" number was not PII because, without more, it "provides nothing but a series of

numbers." *Id.*; *see also Johnson v. Microsoft Corp.*, 2009 WL 1794400, at *3-4 (W.D. Wash. June 23, 2009) (holding that static IP address does not constitute "personally identifiable information" under end user license agreement). Here, plaintiffs' Hulu user numbers were static, but they signified nothing other than the order in which plaintiffs registered.

**C. <u>Plaintiffs' Interpretation of PII is Contrary to The Legislative History.</u>**

Congress passed the VPPA in the wake of a newspaper's publication of the name of a person and the videos he had rented. The story was not about an anonymous customer of a video store, identified only by a number. It was about a "particular" person, identified by his name. Compare that article to the anonymous comScore beacon parameter values, which are constructed to be understood by a computer as part of automated processes, that plaintiffs have put at issue:



We Want You to Vote in City Paper's Best of Washington Readers' Poll [10]

City Paper

THE BORK Tapes

*Never mind his writings on Roe vs. Wade. The inner workings of Robert Bork's mind are revealed by the videos he rents.*

Downbeat by Law

BLACKOUT ON 15TH STREET

The *Post* finds NLRB charges against it unfit to print

LOOSE LIPS [4]

The Soul of a New Downtown



(*see The Bork Tapes Saga*, http://www.theamericanporch.com/bork2.htm (last visited January 14, 2014); Wills Decl. ¶ 39.)

As plaintiffs quote in their brief, in drafting the VPPA Congress intended PII to be "information that identifies a *particular* person as having engaged in a specific transaction with a video tape service provider." S. Rep. No. 100-599 at 12 (emphasis added). Plaintiffs further note that, "[a]ccording to the VPPA legislators: 'it is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read.'" (Opp. at 3, n.2.) Those are actual names. Congress did not pass the statute because it thought "it is nobody's business what

User 50253776 watches on television." In fact, Hulu's use of an anonymous number to refer to plaintiffs *protects* their privacy. Holding that an anonymous number is PII under the VPPA would punish Hulu for taking a common and sensible step of anonymizing and protecting plaintiffs' identities by referring to them with an otherwise meaningless user number. Congress did not intend to penalize that.

Indeed, in 2012, when Congress considered amendments to the VPPA, advocates of more stringent privacy rules asked Congress to extend the VPPA to user numbers. The Electronic Privacy Information Center proposed expanding the definition of PII to include "Internet Protocol (IP) addresses and account identifiers." (*See* Hearing of the Senate Judiciary Committee, "Privacy, Technology and the Law," 2012 WL 272225 (Jan. 31, 2012).) Congress declined to do so. In pursuing their VPPA claim on the basis of such data, plaintiffs are demanding that this Court amend the VPPA in a way that Congress considered but chose not to.

The stated purpose of the VPPA is to "preserve personal privacy." S. Rep. 100-599 (1988). It makes no sense to apply the VPPA in a context courts have uniformly found not to implicate personal privacy. *See, e.g.*, *Pruitt*, 100 F. App'x at 716 (holding no privacy interest in a "series of numbers"); *Lahr*, 453 F. Supp. 2d at 1183 (noting no "protectable privacy interest that would be implicated by the release of witness identification numbers"). It also makes no sense to stretch the VPPA to prohibit devices used to *protect* privacy. Plaintiffs' arguments twist the VPPA beyond any recognizable Congressional purpose.

## IV. NEITHER THE LAW NOR THE FACTS SUPPORT PLAINTIFFS' BACKUP THEORY.

Plaintiffs' backup theory is that, even if their anonymous user numbers do not by themselves constitute PII, Hulu violated the VPPA because comScore or Facebook could have used those anonymous numbers to figure out other information about plaintiffs, perhaps including their names. (*See* Opp. at 12.) Plaintiffs' opposition downplays that theory, for two key reasons.

First, and as noted in the opening brief, the VPPA does not impose liability on a video service provider for disclosing non-identifying information that a third party later manipulates. (*See* Mot. at 12-13.) The VPPA refers to "information which identifies a person," not

"information *which could be used by someone else* to identify a person." Thus, plaintiffs must show that the information *Hulu* disclosed was itself identifying in the first instance. Plaintiffs fail to address this legal principle or the VPPA case Hulu cited on this point, *Mollett v. Netflix, Inc.*, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012). Nor do plaintiffs address the cases cited in the opening brief that affirm that rule under other privacy statutes. (*Id.* at 13-14, *citing Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010 (N.D. Cal. 2012) and *Pruitt*, 100 F. App'x at 716-17).)

Second, plaintiffs have no evidence that comScore or Facebook ever used the information obtained from Hulu or its users' browsers to figure out the actual name or other identifying information of any plaintiff (or anyone else). Plaintiffs provide no evidence that comScore or Facebook ever tried to figure out what Joseph Garvey, Sandra Peralta, Paul Torre, Joshua Wymyczak, Evan Zampella—indeed, *anyone*—watched. Plaintiffs' evidence consists of no more than generalized statements by their experts. The most Mr. Calandrino can say is that [REDACTED] (*see* Calandrino Decl., ¶¶ 47 & 81)—not that this ever occurred, either as to any plaintiff or anyone else. Mr. Calandrino does not even establish that any identifying information was in fact disclosed for these plaintiffs. He simply [REDACTED] (*Id.* ¶ 63.) Plaintiffs' other expert, Craig Wills, has admitted that [REDACTED] (*See* Wills Depo., Dkt. 142-7, at 3-6.)[6] In fact, that would not have been possible as to plaintiff Joseph Garvey because he registered for Hulu using a fake name. (*See* Class Cert. Opp., Dkt. 142 at 7.) Plaintiffs' backup theory thus fails for lack of evidence.

---

[6] While Plaintiffs argue that this alleged technical ability creates a factual dispute over whether Hulu disclosed user names (Opp. at 5), they are wrong. Plaintiffs' opposition contains no evidence that Hulu disclosed their names (or anyone else's) and no evidence that comScore or Facebook ever even took the steps necessary to link a user number to a user name—much less, succeeded. *See Ho by Ho v. San Francisco Unif. School Dist.*, 147 F.3d 854, 866 (9th Cir. 1998) ("To survive summary judgment, the nonmoving party must produce evidence of sufficient caliber or quantity to allow a rational trier of fact to produce a verdict in its favor.… No genuine factual issue exists for trial where a nonmoving party rests on mere allegations or denials, or shows some metaphysical doubt.").

Plaintiffs cannot mask the lack of evidence about what comScore or Facebook may or may not have done with respect to the named plaintiffs by questioning the competence of Hulu's knowledge about those matters. Indeed, even if that were true, it would prove only that the information was not disclosed "knowingly" by Hulu. In any case, it is plaintiffs' burden, not Hulu's, to provide evidence to prove the prima facie elements of their VPPA claim based on what comScore or Facebook may or may not have done. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc) (holding that, where nonmoving party has burden of proof at trial, moving party need only point out an absence of evidence to support nonmoving party's case; non-moving party must then provide evidence on that issue). Plaintiffs have had more than a year to take discovery from Hulu and from third parties. Plaintiffs' opposition includes no Rule 56(d) affidavit stating that they have been unable to gather evidence to justify their opposition. Given plaintiffs' failure to offer evidence to meet their burden, Hulu is entitled to prevail.

**V. CONCLUSION**

Plaintiffs have no claim. Under the VPPA, an anonymous user ID is not personally identifiable information. No court has so held. The VPPA's legislative history reflects that Congress chose not to treat such anonymous information as within the statutory definition of PII. The mere speculative possibility that a third party could later manipulate this anonymous information and identify someone is not a VPPA violation. But even if it were in theory, plaintiffs have no evidence that this ever happened. For the foregoing reasons, Hulu respectfully requests that the Court grant Hulu's motion for summary judgment.

Dated: January 21, 2014.

Respectfully submitted,

ROBERT M. SCHWARTZ
VICTOR JIH
KATHERINE M. ROBISON
STEVEN M. DUNST
O'MELVENY & MYERS LLP

SIMON J. FRANKEL
EMILY JOHNSON HENN
COVINGTON & BURLING LLP

By: /s/*Robert M. Schwartz*
Robert M. Schwartz
Attorneys for Defendant Hulu, LLC