ROBERT M. SCHWARTZ (S.B. #117166)
rschwartz@omm.com
VICTOR JIH (S.B. #186515)
vjih@omm.com
STEVEN M. DUNST (S.B. #281848)
sdunst@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California  90067-6035
Telephone:    (310) 553-6700
Facsimile:     (310) 246-6779

SIMON J. FRANKEL (SB# 171552)
sfrankel@cov.com
EMILY JOHNSON HENN (SB# 269482)
ehenn@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone:  (415) 591-6000

Attorneys for Defendant
Hulu, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE HULU PRIVACY LITIGATION | Case No. 3:11-CV-03764-LB  **NOTICE OF MOTION AND MOTION BY DEFENDANT HULU, LLC FOR SUMMARY JUDGMENT RE: "KNOWINGLY"; MEMORANDUM OF POINTS AND AUTHORITIES**  Hearing Date:   December 18, 2014  Time:                9:30 a.m.  Courtroom:       C  Judge:               Hon. Laurel Beeler |

**TO THE CLERK OF THIS COURT AND TO PLAINTIFFS AND THEIR ATTORNEYS:**

PLEASE TAKE NOTICE THAT Defendant Hulu, LLC ("Hulu") hereby moves the Court for summary judgment to be heard on December 18, 2014, at 9:30 a.m., in Courtroom C of the above-captioned Court, at 450 Golden Gate Avenue, San Francisco, California 94102.  This motion is brought pursuant to Federal Rule of Civil Procedure 56 on the grounds that no genuine issue of fact exists on plaintiffs' sole claim for relief, for violation of the Video Privacy Protection Act ("VPPA"), and that Hulu is entitled to judgment as a matter of law.

Hulu is entitled to summary judgment because there is no evidence that Hulu "knowingly" disclosed personally identifiable information in violation of the VPPA.  More specifically, Hulu did not know: (1) that the Facebook c_user cookie contained the Facebook User ID, or (2) what Facebook did, if anything, with that data.  *See Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995).

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Steven M. Dunst and the exhibits thereto, the argument of counsel, all other pleadings and documents on file in this action, and any other matters properly considered by the Court at the hearing.

Dated:  August 26, 2014

ROBERT M. SCHWARTZ
VICTOR JIH
STEVEN M. DUNST
O'MELVENY & MYERS LLP

SIMON J. FRANKEL
EMILY JOHNSON HENN
COVINGTON & BURLING LLP

By:   */s/ Robert M. Schwartz*
         Robert M. Schwartz
Attorneys for Defendant Hulu, LLC

## I. INTRODUCTION

Only one claim remains in this case: plaintiffs' contention that Hulu violated the Video Privacy Protection Act of 1988 (the "VPPA") by adding Facebook's popular "Like" button to its video watch pages. According to plaintiffs, the mere loading of the "Like" button resulted in the transmissions of a Facebook User ID (which was contained in the Facebook c_user cookie) and the title of a video (which was embedded in a watch page URL).[1] Even assuming for this motion that these separate transmissions contained PII and, if combined together, could constitute "disclosures" by Hulu, Hulu is not liable under the VPPA because Hulu did not *knowingly* disclose any PII.[2]

As this Court previously explained, there can be no VPPA violation if either: (1) "Hulu did not know that it was transmitting both an identifier and the person's video watching information"; or (2) "Hulu never knew that Facebook might 'read' the videos and the Facebook ID cookies together in a manner akin to the disclosure of Judge Bork's videos." (Dkt. 194 at 23-24). As set forth below, there is no genuine issue of material fact with respect to (1) or (2). The evidence demonstrates that Hulu did not know that Facebook's c_user cookies were transmitting Facebook User IDs to Facebook or what Facebook did, if anything, with these transmissions. This lack of knowledge is fatal to plaintiff's VPPA claim.

Summary judgment is appropriate whenever there is no genuine issue of material fact. Here, plaintiffs can show a "genuine" issue on the knowledge question only by adducing "specific facts" proving that Hulu had actual knowledge that PII would be disclosed. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Because the burden of proof falls on plaintiffs, Hulu is not required to prove a *negative—i.e.,* that it did *not* "knowingly" disclose PII to Facebook. *See Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100,

---

[1] Plaintiffs' remaining theory of liability focuses on the loading of the "Like" button, not on what happens when a user clicks the "Like" button. The Court previously found that "[i]nformation transmitted as a necessary part of a user's decision to share his views about his videos with his friends on Facebook would not support a VPPA violation." (Dkt. 194 at 21:18-20.)

[2] As noted in Hulu's prior summary judgment motion, Hulu maintains that it did not disclose any of the data in Facebook's cookies and that the Facebook User ID does not "identif[y] a person" within the meaning of the VPPA. (Dkt. 125-3 at 16-17.)

1  111 (2d Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial."). Once Hulu "point[s] out through argument—the *absence* of evidence to support plaintiff's claim," the burden shifts to plaintiffs to establish actual knowledge. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (emphasis added).

Plaintiffs cannot satisfy that burden. In the three years since this case began, plaintiffs have not identified any evidence showing that Hulu had knowledge that: (1) Facebook's c_user cookie contained the Facebook User ID, or (2) what Facebook did, if anything, with any such data. Hulu has produced over 250,000 pages of documents, including communications with Facebook and internal Hulu documents about the "Like" button. (Dunst Decl. ¶ 2.) Plaintiffs have deposed Richard Tom, Hulu's Chief Technology Officer during the proposed class period (Tom Depo. (Dunst Decl. Ex. F) 22:18-23:9), and Xinan Wu, Hulu's current Director of Software Development and the company's most senior web developer, who directed the implementation of the Facebook "Like" button on Hulu's website. (*Id.* at 229:5-22.)

Nothing in this comprehensive record shows a knowing disclosure of PII by Hulu. In fact, the evidence shows the opposite: Hulu did not know that Facebook's cookies contained the Facebook User ID, or what Facebook did, if anything, with any such data. Indeed, there is no reason that Hulu would have known anything about cookies associated with the mere loading of Facebook's "Like" button. Hulu added the "Like" button to its watch pages to allow Hulu users to promote content they liked on Hulu by clicking the "Like" button. It was not done at the request of Facebook or as a result of any negotiations with Facebook. Plaintiffs' Facebook theory conflates: (1) *Hulu's* decision to add the Facebook "Like" button, with (2) *Facebook's* decision to create and place cookies on a user's browser that contained Facebook User IDs. But these were two completely independent decisions, made for two completely different purposes, by two completely separate companies. Given that Hulu lacked the requisite knowledge for VPPA liability, the Court should grant Hulu's motion for summary judgment.

## II.  BACKGROUND FACTS

Facebook introduced the "Like" button in April 2010. Within one week, more than

2

Hulu's Mot. For Summ. Jud.
Re: "Knowingly"
3:11-Cv-03764-Lb

1  50,000 websites had placed "Like" buttons on their webpages. (Dunst Declaration ("Dunst
2  Decl."), Ex. A).) Within one year, more than 2.5 million websites had added "Like" buttons and
3  that number continues to grow. (*Id.*, Ex. B.) Clicking the "Like" button allowed Hulu users to
4  "like" a movie or TV program they watched on Hulu, which promoted the Hulu service. (*Id.*, Ex.
5  D (October 1, 2013 Declaration of Xinan Wu ISO Hulu's Motion for Summary Judgment ("Wu
6  Decl."), ¶ 22.)) For Hulu, the "Like" button had no other purpose or benefit. (*Id.*)

7  Using the code that Facebook provided to any website that wanted to add the "Like"
8  button, Hulu added the button to its watch pages in August 2010. (Dunst Decl., Ex. C.) When a
9  user's web browser loads a hulu.com watch page, the only role Hulu plays is to indicate *where* the
10 "Like" button should be placed on the page and *where* (from Facebook) to get the code that loads
11 and operates the button. (Wu Decl. ¶ 25.) Facebook, not Hulu, controls that code. (*Id.*)

12 Furthermore, Facebook, not Hulu, controls all Facebook cookies. Cookies are small files
13 that each browser receives and stores on a user's computer when a user visits a webpage, unless
14 the user has configured the browser to block the cookies. (*Id.* ¶ 13.) When a user navigates to a
15 website using a particular browser, the browser may send cookies that are associated with that
16 domain to the website's server. (*Id.* ¶ 15.) Facebook, not Hulu, controls the creation, placement,
17 operation and contents of any Facebook cookies, including specifically the Facebook c_user
18 cookie. Hulu was not involved in the cookie's creation, had no knowledge of its content or its
19 function, did not decide whether it should persist after a user finished a Facebook session, and did
20 not know what, if anything, transmitted upon the mere loading of a "Like" button. (*Id.* ¶¶ 31-32.)

21 Separately, the user's browser sends other data to load the "Like" button. (*Id.*) That data
22 includes the watch page URL (the Internet address of the page from which the request issued).
23 (*Id.* ¶¶ 23, 26.) The URL was sent to Facebook so it knew where to send the data needed to load
24 the "Like" button. (*Id.* ¶¶ 16, 25.) Before June 7, 2012, the URL included, among other data, the
25 title of the requested video, which was a standard practice for video streaming sites. (*Id.* ¶ 28.)
26 The URL contained no data identifying the user. (*Id.* ¶ 30.)

27 As detailed below, the evidence establishes that Hulu did not know that the Facebook
28 c_user cookie contained the Facebook User ID or what Facebook did, if anything, with any such

1 data, including whether or not Facebook was making the deliberate effort to combine data in its
2 cookies with data in URLs for Hulu watch pages. (*See* Tom Depo. 130:10-14, 131:18-21,
3 283:15-17, 285:20-286:13)); Wu Depo. (Dunst Decl. Ex. G) 96:9-16, 97:22-98:7, 101:9-20,
4 102:4-15, 118:11-119:5).)

**III.    HULU IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' "LIKE" BUTTON THEORY**

**A.    The Legal Standard for "Knowingly"**

A video tape service provider violates the VPPA if it "knowingly discloses, to any person, personally identifiable information concerning any consumer." *See* 18 U.S.C. § 2710(b). "The term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Thus, a video service provider is liable under the VPPA only if it (1) "knowingly" disclosed information identifying a person to a third party, and (2) it knew that information it disclosed to the third party identified a particular individual as "having requested or obtained specific video materials or services."

In the one case to address the meaning of "knowingly" under the VPPA, *Mollett v. Netflix, Inc.*, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012), both parties agreed that the statute requires proof that a defendant had actual knowledge of the facts that constitute the violation, citing the similar criminal standard set forth in *Bryan v. United States*, 524 U.S. 184 (1998). (Dunst Decl., Ex. H at 14; Ex. I at 17.) *See also United States v. Elkins,* 683 F.3d 1039, 1050 (9th Cir. 2012) (applying *Bryan* definition of "knowingly"). For purposes of the VPPA, that requires actual knowledge that PII is being disclosed. In *Mollett*, plaintiffs alleged that third parties could access their Netflix devices and view a list of video titles they recently watched. As the district court explained, it is not enough that "Netflix knew that some of its subscribers accessed their devices in the presence of other people some of the time." 2012 WL 3731542 at *4. There is no VPPA violation unless "Netflix knew that people other than the Plaintiffs were present when it displayed PII on any individual occasion." *Id.* The court confirmed that this concept of "knowingly" is a more stringent standard than "willfulness" and does not encompass "recklessness." *Id.*.

4

Hulu's Mot. For Summ. Jud.
Re: "Knowingly"
3:11-Cv-03764-Lb

Although the text of the VPPA does not define "knowingly," the legislative history confirms that Congress modeled the VPPA on the provisions of the Electronic Communication Privacy Act ("ECPA"), which it had enacted just two years earlier. *See* 134 Cong. Rec. 31839 at 31840 (1988) (noting that VPPA "follows in the footsteps" and "is a logical and important extension" of ECPA); 134 Cong. Rec. 10259 at 10260 (1988) (the VPPA provides "a similar opportunity to establish privacy safeguards" as ECPA). Like the *Bryan* standard, the "knowingly" requirement under ECPA requires proof that a defendant is actually aware of all of the facts that give rise to the statutory violation. *See Freedman v. Am. Online Inc.*, 329 F. Supp. 2d 745, 748-49 (E.D. Va. 2004). Congress explained what it meant when it incorporated a "knowingly" requirement in enacting the ECPA:

> The term knowingly means that the defendant was aware of the nature of the conduct, aware of or possessing a firm belief in the existence of the requisite circumstances and an awareness of or a firm belief about the substantial certainty of the result.

*Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 702 (N.D. Ill. 2012) (explaining the knowledge requirement of Title II in ECPA, *quoting* H.R. Rep. No. 647 at 64 (1986)). Because Congress modeled the VPPA on ECPA, it follows that Congress intended "knowingly" to have the same meaning under both statutes—actual knowledge. *See* Cong. Rec. 21838 at 31840. Consistent with this standard, plaintiffs must prove that Hulu was aware of or had a firm belief about the substantial certainty that PII would be disclosed through the mere loading of a "Like" button. As the Court observed in its April 29 summary judgment ruling, there can be no "knowing" disclosure of PII unless there was a "consciousness of transmitting the private information. It does not mean merely transmitting the code." (Dkt. 194 at 23:11-13.) Thus, unless Hulu consciously disclosed information identifying a particular individual as "having requested or obtained specific video materials or services" from Hulu, it cannot be liable under the VPPA.

Accordingly, Hulu cannot be liable under the VPPA unless plaintiffs can establish that Hulu had actual knowledge (1) that Facebook's c_user cookie contained data—the Facebook User ID—that could conceivably identify an individual, and (2) of what Facebook did, if

1 anything, with that data, specifically whether or not Facebook combined it with video watch information it separately received from the watch page URL.

### B. There Is No Evidence That Hulu Knowingly Disclosed "PII"

As set out below, there is no evidence showing that Hulu "knowingly" disclosed PII. This is sufficient at the summary judgment stage to shift the evidentiary burden to plaintiffs to come forward with admissible evidence demonstrating Hulu's knowledge. *See Rebel Oil*, 51 F.3d at 1435. Plaintiffs cannot do so. Hulu gave plaintiffs all potentially relevant communications, including internal Hulu emails about the addition of the "Like" button, and none shows that Hulu "knowingly" disclosed PII to Facebook. Indeed, in its proposed Joint Statement of Facts, Hulu included facts regarding its lack of knowledge of the contents of Facebook's cookies or what Facebook actually did, if anything, with any data it separately received from the URL or its own c_user cookie. Plaintiffs were unwilling to include these facts in the joint statement, but offered no contrary evidence as to any of them. (Dunst Decl. ¶ 3.)[3]

#### 1. Hulu Did Not Know That Facebook's c_user Cookie Contained the Facebook User ID.

Plaintiffs' theory that Hulu disclosed PII in violation of the VPPA is based on the premise that the Facebook User ID was transmitted to Facebook in Facebook's c_user cookies. For such a disclosure to be *knowing*, Hulu had to have actually known that the Facebook c_user cookies contained the Facebook User ID. *See Freedman*, 329 F. Supp. 2d at 748-49 ("knowingly" means defendant must have been aware of the facts giving rise to the disclosure). There is no evidence in the record that Hulu had any such knowledge.

In fact, the evidence establishes that Hulu did not know the contents of any of the cookies that Facebook created and placed on a user's browser. Hulu's former CTO, Richard Tom, testified as Hulu's Rule 30(b)(6) witness that he was not aware of anyone at Hulu knowing the contents of *any* Facebook cookie. (Tom Depo. 130:10-14, 131:18-21, 283:15-17.) He further

---

[3] Though plaintiffs were unwilling to agree to Hulu's proposed Joint Statement of Facts, the Joint Statement the parties filed with Hulu's Summary Judgment Motion (re: comScore and Facebook "Like" Button) is relevant to this motion, particularly facts 18-25. (*See* Dkt. 178.)

testified that he was not aware of any communications with Facebook about the content or functions of any Facebook cookie. (*Id*. 285:20-286:13.) That is not surprising, since Hulu does not derive any benefit from those cookies. During his deposition, Mr. Tom repeatedly confirmed that Hulu had *no knowledge* of the content or function of any Facebook cookies:

- As to whether Hulu knew what cookies Facebook uses, Mr. Tom testified: "I am not aware of what cookies Facebook, you know, manages on their own. No, I do not know that." (*Id.* 130:10-14.)

- Mr. Tom testified that he was "not aware of any cookies that are actually being referenced" by Hulu through the "Like" button integration code. (*Id.* 131:18-21.)

- On whether Hulu knows anything about the content or function of Facebook cookies, Mr. Tom testified: "Not that I'm aware of, no." (*Id.* 283:15-17.)

Xinan Wu, Hulu's Director of Software Development, confirmed that he did not know that any Facebook cookies contained a user's Facebook User ID, or that the Facebook User ID was transmitted to Facebook through any Facebook cookie when a user visited a Hulu watch page containing a "Like" button. (Wu Depo. 96:9-16, 97:22-98:7, 101:9-20, 102:4-15.)

Because the alleged disclosure of the Facebook User ID is a necessary element of plaintiffs' VPPA claim, Hulu's lack of knowledge that the Facebook User ID was stored in the c_user cookie means that there cannot be a VPPA violation. *See Mollett*, 2012 WL 3731542, at *4; *Worix*, 857 F. Supp. 2d at 702. That fact alone is sufficient for the Court to grant this motion.

### 2. Hulu Also Did Not Know What Facebook Did, if Anything, With the Data it Received from the Watch Page URL or the Facebook c_user Cookie.

There is an additional, independent reason to grant summary judgment for Hulu. As explained above, plaintiffs' remaining theory of liability requires Hulu knowing that Facebook would make the deliberate effort to combine two separate pieces of data: the video title from Hulu's watch page URL and the Facebook User ID from the Facebook c_user cookie. Neither the watch page URL nor the Facebook c_user cookie by itself constitutes PII as defined by the VPPA. Hulu's watch page URL contains no user data at all, let alone identifying information; the URL is the same for every user who requests that same video. (*See* Wu Decl. ¶ 27-30.) And the Facebook c_user cookie does not contain any video watch information. Thus, even if Hulu knew

that the c_user cookie transmitted the Facebook User ID to Facebook—and the evidence shows that Hulu had no such knowledge—Hulu could not have "knowingly" disclosed PII to Facebook unless it knew that Facebook was combining the Facebook User ID with the video title embedded in Hulu's watch page URL.

But Hulu did *not* know what Facebook did, if anything, with the data it received from the watch page URL or from the Facebook c_user cookie. Hulu never discussed with Facebook the content or function of the c_user cookie, and Hulu never discussed with Facebook whether the mere loading of a "Like" button would allow Facebook to obtain information about Hulu's users. (Tom Depo. 285:20-286:13; Wu Depo. 118:11-119:5.) Plaintiffs had an opportunity to find evidence on Hulu's knowledge (if such evidence existed). Plaintiffs asked Hulu to prepare a Rule 30(b)(6) witness to testify on several topics including: the data "transmitted to or acquired by Facebook … when a Facebook API was on the hulu.com page accessed by the user," as well as, broadly, the types of information "related to or arising in the course of users' visits to Hulu.com that was transmitted or acquired by third parties." (Dunst. Decl. Ex. E) 30(B)(6) Topics Nos. 1 and 2.)) But as the deposition of Richard Tom (Hulu's 30(B)(6) witness designated on these topics) confirmed, there simply is no such evidence because Hulu had no such knowledge.

In opposing Hulu's prior summary judgment motion, plaintiffs submitted emails purporting to show that Hulu knew that Facebook was using cookies to collect PII. As the Court noted in the April 28 Order discussing these emails, if any of them showed that "Hulu and Facebook negotiated the exchange of cookies so that Facebook could track information (including watched videos) about its users on Hulu's platform when the Like button loaded, or [that] Hulu knew it was transmitting Facebook ID cookies and video watch pages, then there might be a VPPA violation." (Dkt. 194 at 26:5-8.) None of the emails cited by plaintiffs shows any such negotiation. In fact, none of the emails relates to the "Like" button, Facebook cookies, or even Facebook generally.[4]

---

[4] The emails relate either to cookies generally and/or to specific unrelated third parties—Nielsen, eHarmony, Google, and Invite Media. *See* Carpenter Decl. Ex. 1 (concerning data Nielsen receives from Hulu beacons); *id.* Ex. 5 (concerning data passed when Hulu fires beacons, not when any third party, let alone Facebook, creates and places cookies on users' browsers); *id.* Ex.

Despite the hundreds of thousands of pages of documents produced to plaintiffs, including (a) communications with Facebook and (b) internal communications regarding the "Like" button, there is no evidence showing a "negotiated exchange" between Hulu and Facebook because there were no such negotiations. Hulu's decision to add the "Like" button feature on its video watch pages was independent of anything Facebook did with Facebook cookies on Facebook's own domain. The "Like" button was not added for Facebook's benefit, nor was it done at Facebook's request. The fact that Facebook received these two separate and unconnected pieces of data, without Hulu knowing the contents of the data or whether Facebook might do anything with that data, simply does not put Hulu in the same position as a video store owner who purposefully hands a newspaper reporter a piece of paper containing the name of a Supreme Court nominee and the titles of 100 videos that he rented.

**IV.    CONCLUSION**

The VPPA does not impose liability against Hulu for the mere loading of the Facebook "Like" button. After three years of allowing plaintiffs to veer from one proposed VPPA theory to another, the time has come for the Court to bring this case to a close. Given that Hulu lacked the requisite knowledge for a VPPA violation, the Court should grant summary judgment for Hulu.

Dated: August 26, 2014            Respectfully submitted,

ROBERT M. SCHWARTZ
VICTOR JIH
STEVEN M. DUNST
O'MELVENY & MYERS LLP

SIMON J. FRANKEL
EMILY JOHNSON HENN
COVINGTON & BURLING LLP

By:    /s/ Robert M. Schwartz
           Robert M. Schwartz
Attorneys for Defendant Hulu, LLC

---

9 (concerning information passed to eHarmony); *id.* Ex. 10 (concerns use of cookies by vendors such as Google); *id.* Ex. 11 (concerning Invite Media's use of cookies).