# EXHIBIT I

1  FRANCIS M. GREGOREK (144785)
   gregorek@whafh.com
2  BETSY C. MANIFOLD (182450)
   manifold@whafh.com
3  RACHELE R. RICKERT (190634)
   rickert@whafh.com
4  PATRICK H. MORAN (270881)
   moran@whafh.com
5  WOLF HALDENSTEIN ADLER
     FREEMAN & HERZ LLP
6  750 B Street, Suite 2770
   San Diego, CA 92101
7  Telephone:    619/239-4599
   Facsimile:    619/234-4599
8

9  Attorneys for Plaintiffs

10 [Additional Counsel Appear on Signature Page]

11
                    UNITED STATES DISTRICT COURT
12
                 NORTHERN DISTRICT OF CALIFORNIA
13
                        SAN JOSE DIVISION
14

15 MEGHAN MOLLETT AND TRACY          )  Case No.  CV 11-1629 EJD-PSG
   HELLWIG, INDIVIDUALLY, ON         )
16 BEHALF OF THEMSELVES AND ALL      )  **PLAINTIFFS' MEMORANDUM OF**
   OTHERS SIMILARLY SITUATED,        )  **POINTS AND AUTHORITIES IN**
17                                    )  **OPPOSITION TO DEFENDANT'S**
                   Plaintiffs,        )  **MOTION TO DISMISS**
18                                    )
19 vs.                               )
                                     )  DATE:     October 28, 2011
20 NETFLIX, INC., a Delaware corporation, )  TIME:     9:00 a.m.
                                     )  CRTRM:    1
21                 Defendant(s).      )  JUDGE:    Hon. Edward J. Davila
                                     )
22 _____ )

23

24

25

26

27

28

TABLE OF CONTENTS

PAGE

I.      ISSUES TO BE DECIDED ..................................................................................... 1

II.     INTRODUCTION .................................................................................................. 1

III.    STATEMENT OF FACTS ..................................................................................... 3

IV.     ARGUMENT ......................................................................................................... 5

        A.      Legal Standard On A Motion To Dismiss ................................................. 5

        B.      The VPPA Applies To Netflix And Its Unlawful Conduct As Alleged
                In The Complaint ...................................................................................... 6

        C.      California Civil Code § 1799.3 Also Applies To Netflix And Its Unlawful
                Conduct As Alleged In The Complaint ..................................................... 7

        D.      Plaintiffs Have Adequately Alleged Unlawful Disclosures By Netflix.................... 8

        E.      Plaintiffs Sufficiently Allege That Netflix's Disclosure Of Their Personally
                Identifiable Information Was Knowing And Willful................................................. 13

V.      LEAVE TO AMEND SHOULD BE FREELY GRANTED ............................................... 14

VI.     CONCLUSION ................................................................................................. 15

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- i -

TABLE OF AUTHORITIES

PAGE

**CASES**

*Bryan v. United States*,
524 U.S. 184, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998)..............................................13

*Daniel v. Cantrell*,
375 F.3d 377 (6th Cir. 2004) ........................................................................................13

*Dirkes v. Borough of Runnemede*,
936 F. Supp. 235 (D.N.J. 1996) ..................................................................................3, 6

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ......................................................................................14

*Foman v. Davis*,
371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)....................................................14

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997) ..........................................................................................5

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ..........................................................................................5

*Reese v. BP Exploration (Alaska)*,
643 F.3d 681 (9th Cir. 2011) ..........................................................................................5

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)............................................13

*Shlahtichman v. 1-800 Contacts, Inc.*,
615 F.3d 794 (7th Cir. 2010) ..........................................................................................9

*Sterk v. Redbox Automated Retail, LLC*,
No. 11 C 1729, 2011 U.S. Dist. LEXIS 93548 (N.D. Ill. Aug. 19, 2011) .....................6

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..........................................................................................5

*Video Software Dealers Ass'n, Inc. v. City of Okla. City*,
No. CIV-97-1150-T, 1998 U.S. Dist. LEXIS 22095 (W.D. Okla. Dec. 18, 1998)........6

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- ii -

## STATUTES

15 U.S.C.
 § 1681c(g)(1) ........................................................................................9

18 U.S.C.
 § 2710 ...............................................................................................1
 § 2710(a)(3) ........................................................................................7
 § 2710(a)(4) ........................................................................................6
 § 2710(b)(1) ........................................................................................6
 § 2710(c)(l) .........................................................................................6
 § 2710(b)(2) ........................................................................................7
 § 2710(b)(2)(A) ....................................................................................7
 § 2710(c)(2)(A)-(D) ..............................................................................7

California Civil Code
 § 1799.3................................................................................*passim*
 § 1799.3(b) ..........................................................................................7
 § 1799.3(c) ..........................................................................................8
 § 1799.3(e) ..........................................................................................8

California Penal Code
 § 7(1) ..............................................................................................14

Fed. R. Civ. P.
 12(b)(6) ............................................................................................5
 12(g)(2) ............................................................................................6
 12(h)(2) ............................................................................................6
 12(h)(3) ............................................................................................6
 15(a)(2) ...........................................................................................14

## OTHER AUTHORITIES

Press Release, Netflix, Inc.
 *Netflix Announces Multiple Partners To Instantly Stream Movies And TV Episodes
 From Netflix To The TV* (January 7, 2010) ..................................................4

S. Rep. No. 100-599 (1988),
 *reprinted in* 1988 U.S.C.C.A.N. 4342-1 ..............................................3, 6

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- iii -

# I.   ISSUES TO BE DECIDED

**A.**   Does the Complaint[1] adequately allege Defendant Netflix, Inc.'s ("Netflix") violations of the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 (the "VPPA")?

**B.**   Does the Complaint adequately allege Defendant Netflix's violations of California Civil Code § 1799.3?

# II.   INTRODUCTION

Plaintiffs Meghan Mollett and Tracy Hellwig ("Plaintiffs") bring this action against Netflix for violations of federal and state privacy statutes, on behalf of themselves and all other similarly situated Netflix subscribers who "stream" Netflix video content over the Internet to their televisions or other viewing screens ("TVs") through a Netflix Ready Device (the "Class").[2] Plaintiffs allege in their Complaint that Netflix unlawfully disclosed, and continues to unlawfully disclose, Plaintiffs' and Class members' protected, personally-identifiable information to other persons in their households ***every time*** they use Netflix's Internet streaming service to watch a Netflix video on their TVs via a Netflix Ready Device.

This disclosed personal and private information includes: (1) a list of the video titles the subscriber has tagged for later viewing, which Netflix refers to as the "Instant Queue"; (2) a list of the video titles the subscriber has "Recently Watched" through the subscriber's Netflix Ready Device; (3) a list of video titles recommended by Netflix based upon the video titles the subscriber has recently viewed; and (4) a list of "Top Picks" for the subscriber which lists streaming video titles Netflix believes will interest the subscriber based upon Netflix's analysis of personal

---

[1]    Plaintiffs' Class Action Complaint For Violations of:  1. The Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.*; and 2. California Civil Code § 1799.3 is referred to herein as the "Complaint."

[2]    As described in the Complaint, Netflix Ready Devices are third-party devices that have been designed or modified in conjunction with Netflix to allow Netflix subscribers to view Netflix programming streamed through the Internet on their TVs.  ¶¶ 4, 28, 32.  A Netflix Ready Device is required in most instances to view Netflix videos streamed from the Internet because most TVs currently in existence are not Internet capable or Netflix ready.  Netflix Ready Devices are analogous to cable or satellite TV set top boxes that are needed to watch cable or satellite programming on a TV.  Netflix Ready Devices come in a variety of forms that include certain video game consoles, set top boxes, DVRs, DVD or Blue-ray players and certain Internet connected TVs.  ¶¶  4, 32.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

1    information Netflix has collected about the subscriber (collectively, "PII").  ¶¶ 38-43.[3]

2          By automatically displaying its subscribers' PII on their TVs, Netflix improperly discloses

3    the PII to everyone in the subscribers' household such as the subscribers' spouses, children,

4    parents, other family members, friends, guests, visitors, roommates, housemates, etc.  Netflix's

5    disclosure of its subscribers' PII is a violation of both the VPPA and California Civil Code

6    § 1799.3, which prohibit Netflix from "knowingly" (under the VPPA), or from "willfully" (under

7    California Civil Code § 1799.3) disclosing the rental or sales records and other personally-

8    identifiable information of its subscribers to any other person.

9          Netflix's attempt to shift liability for its unlawful disclosures to Plaintiffs and Class

10   members is unavailing for several reasons.  First, it is Netflix which deliberately and automatically

11   transmits and displays its subscribers' PII through what it knows is a non-secure medium, *i.e.*, its

12   subscribers' TVs.  Second, it is Netflix who automatically transmits and displays its subscribers'

13   PII without any request from its subscribers that Netflix do so.  Third, with the exception of the

14   "Instant Queue", Netflix fails to provide its subscribers, though it easily could do so, with any

15   means to modify, delete, lock, password-protect or hide its subscribers' PII.  Fourth, Netflix

16   markets its instant-watch, streaming video service as a social medium providing entertainment for

17   the entire household and guests.  Therefore, it is Netflix's deliberate transmission of a subscriber's

18   PII through a non-secure medium with no way for the subscriber to delete or otherwise hide their

19   PII that foreseeably allows others to access the subscribers' PII in violation of both the VPPA and

20   California Civil Code § 1799.3.

21         Netflix's response to Plaintiffs' allegations is, at bottom, that if Plaintiffs do not want

22   Netflix to disclose their PII to others they should keep their home entertainment centers under lock

23   and key or simply disconnect their Netflix Ready Devices and stop using the service that they

24   have paid for.  However, Netflix's customers should not have to compromise their ability to use a

25   service in the way it was intended to be used in order to prevent Netflix from unlawfully

26   disclosing their PII.  Congress' response to the invasion of Judge Robert H. Bork's privacy by the

27   _____

28   [3]     All paragraph references ("¶"), unless otherwise indicated, are to the Complaint.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

1   video rental store that disclosed his movie rental history to a reporter was not to advise people to

2   stop renting movies but the enactment of the VPPA, which, "[a]s established by its legislative

3   history, … enables consumers 'to maintain control over personal information divulged and

4   generated in exchange for receiving services from video tape service providers.'" *Dirkes v.*

5   *Borough of Runnemede*, 936 F. Supp. 235, 240 (D.N.J. 1996) (quoting S. Rep. No. 100-599, at 8

6   (1988)). Netflix's disclosures of Plaintiffs' and Class members' PII are violations of the express

7   language of and intent behind the VPPA and California Civil Code § 1799.3. *See Dirkes*, 936 F.

8   Supp. at 241 ("[R]emedial statutes should be construed broadly"). Defendant's Motion to Dismiss

9   should therefore be denied.

10  **III.    STATEMENT OF FACTS**

11          Netflix began in 1999 as an online DVD subscription rental service that mailed DVDs to

12  its subscribers along with postage pre-paid return envelopes for return of the DVDs to Netflix.

13  ¶ 15. All Netflix subscribers are required by Netflix to set up a password-protected online account

14  with Netflix, where the subscribers can set up a wish list, or queue, of the DVDs that the

15  subscribers request Netflix to send to them. ¶¶ 18-19. Netflix uses its subscribers' online

16  password-protected Netflix account to post a list of the DVD titles that the subscriber has

17  previously ordered for viewing. ¶¶ 20, 24. Due to the large selection of DVDs available for

18  rental, Netflix also uses its subscribers' password-protected online Internet accounts to provide its

19  subscribers with personalized recommendations of various DVD titles that Netflix compiles using

20  proprietary predictive software that analyzes the subscribers' Netflix viewing habits and/or other

21  personal information the subscribers provide to Netflix. ¶¶ 20-22. The information that is

22  exchanged between Netflix and its subscribers in their online Netflix accounts is secure because

23  the subscriber is required to enter a password to access his or her online Netflix account. ¶ 25.

24          In early 2007 Netflix announced that it was rolling out a new feature that would allow its

25  subscribers to watch Netflix on their personal computers. ¶ 26. By early 2008, Netflix announced

26  that it was developing a set-top box and other devices in conjunction with various electronics

27  manufacturers that would enable Netflix subscribers to instantly watch Netflix videos streamed

28  from the Internet onto their TVs. ¶ 28. It has been Netflix's stated goal since 2007 "to be

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- 3 -

1 ubiquitous on whatever device gets the Internet to the TV." ¶ 29 (quoting Press Release, Netflix,
2 Inc., *Netflix Announces Multiple Partners to Instantly Stream Movies and TV Episodes from*
3 *Netflix to the TV* (January 7, 2010)). The Netflix Ready Devices that subscribers are required to
4 use to watch Netflix Internet streaming videos on their TVs currently include video game console
5 systems such as Microsoft's Xbox 360, Nintendo's Wii and Sony's PlayStation 3, and certain
6 specially designed Blu-ray disc players, Internet-connected TVs, home theater systems, digital
7 video recorders, Internet video players and set top boxes. ¶¶ 1, 4, 28, 32. In order to use one of
8 these Netflix Ready Devices to watch Netflix streaming videos on their TVs, subscribers must
9 obtain a code from the device and provide that code to Netflix to activate the device. ¶ 33. Much
10 like a cable box, once the Netflix Ready Device is activated, anyone can use the Netflix Ready
11 Device to choose and watch Netflix streaming videos on their TV. *Id.* Netflix's streaming video
12 content can be searched using an on-screen search feature directly through the subscribers' TVs.
13 ¶ 35. Netflix also automatically displays various lists, or queues, of available streaming video
14 content directly on the subscribers' TVs, purportedly to assist Netflix viewers in choosing which
15 Netflix streaming selection to watch. ¶¶ 35-43, 45, 62.

16 For its streaming customers, Netflix implemented a queue feature similar to the one it
17 previously developed for recommending DVD titles to its DVD rental customers. ¶ 36. However,
18 and this difference from the DVD system is critical, Netflix began automatically displaying certain
19 of its streaming subscribers' personal and private information, which was previously limited to the
20 subscribers' secure DVD online Netflix accounts, directly on the subscribers' non-secure TVs.
21 ¶ 37. This personal and private information includes: (1) a list of the video titles the subscriber
22 has tagged for later viewing, which Netflix refers to as the "Instant Queue"; (2) a list of the video
23 titles the subscriber has most "Recently Watched" through the subscriber's Netflix Ready Device;
24 (3) a list of video titles recommended by Netflix based upon the video titles the subscriber has
25 recently viewed; and (4) a list of "Top Picks" for the subscriber which lists streaming videos
26 Netflix believes will interest the subscriber based upon Netflix's analysis of personal information
27 about the subscriber that Netflix has collected. ¶¶ 38-43. The only list or queue that the
28 subscriber has the ability to edit is the "Instant Queue." ¶ 38.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- 4 -

1      Netflix automatically displays its subscribers' PII on their TVs every time they use

2  Netflix's service to watch streaming videos, thereby allowing all household members or guests

3  with access to the subscribers' home entertainment system to view the subscribers' PII. ¶¶ 5-7,

4  37, 39-46, 62-64.

5      Netflix knew or should have known that its disclosure of its subscribers' PII to their TVs

6  are not limited to the subscribers themselves, but are also made to others in the subscribers'

7  household such as the subscribers' spouses, children, other relatives, household members, friends,

8  guests, roommates, housemates, etc. ¶ 64. This is especially true, as Netflix markets and sells its

9  streaming services as entertainment to be shared with friends and family. ¶¶ 65-66.

10     Netflix could have easily protected its subscribers' PII from disclosure to others by

11  providing its subscribers with the means to edit, delete, lock or hide the various lists or queues that

12  disclose its subscribers' PII, including a list of previously-watched videos, but it failed to do so.

13  ¶ 46.

14     Plaintiffs Meghan Mollett and Tracy Hellwig are Netflix subscribers who allege their PII

15  was disclosed and continues to be disclosed to others by the automatic display of their PII onto

16  their TVs by Netflix. ¶¶ 8-9.

17  **IV.    ARGUMENT**

18      **A.    Legal Standard On A Motion To Dismiss**

19      Motions to dismiss are disfavored and rarely granted. *Gilligan v. Jamco Dev. Corp.,* 108

20  F.3d 246, 249 (9th Cir. 1997). When considering a motion to dismiss for failure to state a claim

21  under Fed. R. Civ. P. 12(b)(6), the Court must "accept all well-pled allegations as true and

22  construe them in the light most favorable to [the plaintiff]." *Reese v. BP Exploration (Alaska)*,

23  643 F.3d 681, 690 (9th Cir. 2011); *see also Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir.

24  2002). In order for a defendant to prevail, it must establish "'*beyond doubt* that the plaintiff[s] can

25  prove no set of facts in support of the claims that would entitle [them] to relief.'" *Swartz v.*

26  *KPMG LLP*, 476 F.3d 756, 762-63 (9th Cir. 2007) (citation omitted, emphasis in original).

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

**B. The VPPA Applies To Netflix And Its Unlawful Conduct As Alleged In The Complaint**

The VPPA was enacted to protect and safeguard the personal privacy of video tape service providers' customers.[4] A "video tape service provider" is defined by the VPPA, in relevant part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials…" 18 U.S.C. § 2710(a)(4). Netflix is a "video tape service provider" under the VPPA because it is engaged in the rental and/or delivery of DVDs and Internet streamed videos to its subscribers throughout the United States.[5]

The VPPA provides that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person …" who "may bring a civil action in a United States district court." 18 U.S.C. § 2710(b)(1) & (c)(l). "Under the plain language of the Act … Plaintiffs can show that they are 'aggrieved' by showing a violation of the Act. No additional proof of harm is required." *Dirkes*, 936 F. Supp. at 239 n.4.

"Personally identifiable information," as defined by the VPPA, "includes information which identifies a person as having requested or obtained specific video materials or services from

---

[4]     *See Sterk v. Redbox Automated Retail, LLC*, No. 11 C 1729, 2011 U.S. Dist. LEXIS 93548, at *24-25 (N.D. Ill. Aug. 19, 2011) ("According to the Senate Report on the VPPA, the purpose of the statute is '[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials.'") (citing S. Rep. No. 100-599, at 1 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1); *Video Software Dealers Ass'n, Inc. v. City of Okla. City*, No. CIV-97-1150-T, 1998 U.S. Dist. LEXIS 22095, at *15 (W.D. Okla. Dec. 18, 1998) ("The primary concern of the Act is safeguarding the confidentiality of customers."); *Dirkes*, 936 F. Supp. at 240 ("As established by its legislative history, the Act enables consumers 'to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers.'") (citation omitted).

[5]     While Netflix does not dispute that it is a "video tape service provider" as defined by the VPPA for purposes of its present 12(b)(6) Motion to Dismiss, it purports to reserve the right to challenge Plaintiffs' allegation that it is a "video tape service provider" at some unidentified later stage of these proceedings. However, Netflix should be precluded from raising this issue in any successive 12(b)(6) motion. *See* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

a video tape service provider…" 18 U.S.C. § 2710(a)(3). The PII Netflix automatically displays on its subscribers' TVs each time they stream video content from the Internet, through their Netflix Ready Devices and onto their TVs is "personally identifiable information" under the VPPA because it includes lists of the "specific video materials" the subscribers have "requested or obtained" from Netflix and Netflix's list of recommended titles based upon the "specific video materials" its subscribers have "requested or obtained" from Netflix. ¶¶ 38-43.

While there are several exceptions to the VPPA's prohibition on the disclosure of personally identifiable information (*see* 18 U.S.C. § 2710(b)(2)), the only exception raised by Netflix in its Motion To Dismiss is the provision that allows a video tape service provider to disclose personally identifiable information directly to the consumer. *See* 18 U.S.C. § 2710(b)(2)(A). However, Netflix's automatic display of Plaintiffs' PII on their TVs every time Netflix's service is turned on to watch Internet streaming videos by the customer or otherwise is not only disclosure of Plaintiffs' PII to Plaintiffs but also to everyone in Plaintiffs' households and/or others.

The VPPA provides that the Court may award any aggrieved person under the act: "(A) actual damages but not less than liquidated damages in an amount of $2,500; (B) punitive damages; (C) reasonable attorneys' fees and other litigation costs reasonably incurred; and (D) such other preliminary and equitable relief as the court determines to be appropriate." 18 U.S.C. § 2710(c)(2)(A)-(D).

### C. California Civil Code § 1799.3 Also Applies To Netflix And Its Unlawful Conduct As Alleged In The Complaint

California Civil Code § 1799.3(a) provides: "No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual." Netflix does not dispute that none of the exemptions provided by California Civil Code § 1799.3(b) are relevant here. Because Netflix provides "video recording sales or rental services", Netflix is covered by the Act and its disclosure of its subscribers' PII to the other members of their households and their guests is a violation of California Civil Code § 1799.3.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- 7 -

Any "willful" violation of California Civil Code § 1799.3 is "subject to a civil penalty not to exceed five hundred dollars ($500) for each violation, which may be recovered in a civil action brought by the person who is the subject of the records." California Civil Code § 1799.3(c). This remedy is not an exclusive one "and does not affect any other relief or remedy provided by law." California Civil Code § 1799.3(e). Therefore, in addition to the relief provided by the VPPA, Plaintiffs and the other members of the Class are entitled to recover a civil penalty of $500 for each violation of the statute.

### D. Plaintiffs Have Adequately Alleged Unlawful Disclosures By Netflix

Netflix automatically displays its subscribers' PII on their TVs, where it is freely available for anyone in their households to view, whenever they use their Netflix streaming video service. ¶¶ 44, 63-64. Netflix correctly states that it is not liable under the VPPA and California Civil Code § 1799.3 for disclosures of PPI *made directly to its customers*. However, Netflix's disclosure is far broader. In direct contrast with the way it restricts disclosure of the PII of its DVD rental customers to their secure online accounts, Netflix automatically transmits its streaming subscribers' PII through Netflix Ready Devices to its subscribers' TVs, which are not secure and are generally readily visible to and accessible by everyone in the subscribers' households and others. ¶¶ 33, 37. Because Netflix provides no way for subscribers to protect their PII short of disconnecting the streaming video service that they paid for (¶¶ 44-46), Netflix's disclosure of Plaintiffs' PII to Plaintiffs' TVs constitutes disclosure to members of their households and others as well.

There is no reason for Netflix to automatically transmit and display its subscribers' PII on their TVs. To the extent Netflix needs to transmit PII to its subscribers, Netflix should do so through secure channels of communication, such as through its subscribers' password protected Internet accounts or via the email addresses that Netflix uses to communicate with its subscribers. However, instead of limiting the transmission of PII to other readily available and *secure* channels of communication, Netflix automatically transmits and displays various PII directly onto subscribers' TVs without their permission and without providing them with any way of deleting,

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- 8 -

1   editing, hiding or otherwise protecting their PII from disclosure to other members of their
2   households.

3          Netflix's argument that in order to protect their PII from disclosure to others, its
4   subscribers must never watch Netflix Internet streamed videos on their TVs with anyone else
5   present at any time is an unreasonable solution and contrary to the depiction in advertisements by
6   Netflix of its streaming services as a social medium.  *See* Defendant Netflix, Inc.'s Notice of
7   Motion And Motion To Dismiss Plaintiffs' Class Action Complaint ("Br." or "Motion to
8   Dismiss") at 7-8. Pursuant to the VPPA and California Civil Code § 1799.3, Netflix has a duty to
9   protect its customers' PII from unlawful disclosure to others, and ***Netflix's decision*** to use non-
10  secure means to transmit its subscribers' PII does not shift Netflix's duty to its subscribers.
11  Although Netflix could have given its subscribers the simple option of allowing the PII that
12  Netflix chooses to automatically display to be locked, edited, or deleted, Netflix has failed to do
13  so. ¶ 46. Instead, Netflix asserts that its subscribers should not watch Netflix in anyone else's
14  presence. While Plaintiffs do not dispute that under the VPPA Netflix may disclose a subscriber's
15  PII directly to the subscriber, Netflix must do so in a secure manner. Here, Netflix's automatic,
16  non-secure transmission and display of subscribers' PII on their TVs foreseeably results in
17  unlawful disclosure to those in subscribers' households and others.

18         Netflix's reliance on *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010), is
19  misplaced. Netflix cites *Shlahtichman* for the proposition that there is "no violation of privacy
20  statute even though 'there may be someone looking over the consumer's shoulder when he views
21  an email in a public place.'" Br. at 8. However, the *Shlahtichman* court considered whether the
22  word "print" as used in the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), which
23  prohibits a vendor from "electronically" "print[ing] more than the last 5 digits of the [credit] card
24  number or the expiration date upon any receipt provided to the cardholder at the point of the sale
25  or transaction," applied to an emailed receipt. *Shlahtichman*, 615 F.3d. at 795 (quoting 15 U.S.C.
26  § 1681c(g)(1)) (internal quotations omitted). The court determined that FACTA was meant to
27  apply only to receipts printed at the point of sale and dismissed the plaintiff's claims alleging that
28  the emailing of a receipt to the consumer containing the expiration date of the customers' credit

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

1  card violated of FACTA. The *Shlahtichman* case has nothing to do with the VPPA nor does it

2  concern any of the issues presented by Plaintiffs' Complaint or Defendant's Motion to Dismiss

3  and is therefore inapposite.

4       Netflix also mischaracterizes the distinction Plaintiffs make in their Complaint between PII

5  delivered to subscribers' televisions and PII delivered to subscribers' online Netflix accounts.

6  Liability does not turn on the type of viewing screen subscribers are using when their PII is

7  disclosed, as Netflix argues (Br. at 8), but rather on ***whether Netflix uses a secure method to***

8  ***transmit PII to its subscribers***. The manner in which Netflix chooses to transmit its subscribers'

9  PII is entirely up to Netflix. Plaintiffs do not challenge Netflix's transmittal of PII to their online

10  Netflix accounts because, as pointed out in the Complaint, each subscriber's online Netflix

11  account is ***password protected*** and therefore secure. ¶ 25. Netflix has provided no similar way for

12  subscribers to password protect their PII that Netflix automatically streams through Netflix Ready

13  Devices to subscribers' TVs. ¶¶ 7, 44-46. Netflix's liability is based on acts that are entirely

14  within Netflix's control. Although Netflix could have easily limited its transmission of PII to

15  secure channels, or provided Plaintiffs with the means to edit, delete, lock, hide or

16  password-protect the PII that Netflix displays on Plaintiffs' TVs, Netflix chose to do neither of

17  these.[6] *Id.*

18       Despite clear language in the VPPA prohibiting Netflix from knowingly disclosing a

19  customer's PII to ***any person***, Netflix unreasonably argues for an interpretation that precludes its

20  application to disclosures made to a Netflix customer in the customer's own home, even if the PII

21  is seen by others. Br. at 8. However, contrary to Netflix's assertion, the disclosures Netflix

22

---

23  [6]   Netflix's citation to *Shlahtichman* for the proposition that "it is implausible to think that
24  Congress would have premised a vendor's liability [under a privacy statute] on circumstances that
   were entirely beyond its control" (Br. at 8) is again misguided. Not only is *Shlahtichman*
25  inapposite because it concerned an entirely different statute, but as explained *supra*, Netflix's
   liability does not turn on which viewing screen subscribers are using when Netflix discloses their
26  PII. Rather, Netflix is liable here because it uses a non-secure method of disclosing the
   subscribers' PII such that disclosure to individuals other than the subscriber is not only foreseeable
27  but intended by Netflix to occur, as demonstrated by Netflix's marketing materials.

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

1  causes to take place in its subscribers' own homes are exactly one type of disclosure the VPPA

2  was enacted to prevent.  As Netflix points out, when the VPPA was enacted, one of Congress'

3  concerns was that people were making requests to video stores to obtain their spouses' movie

4  rental records in order to use them in divorce proceedings to demonstrate that those spouses were

5  unfit parents. Br. at 8. Here, however, parties to a child custody or divorce proceeding would not

6  need to obtain a court order, issue a subpoena or even request from Netflix the list of movies their

7  spouse has recently viewed because ***Netflix makes this information routinely and freely available***

8  ***to anyone with access to the subscriber's TV***. ¶¶ 7, 44-47. Therefore, despite its argument to the

9  contrary, this type of disclosure is one that the VPPA was enacted to address.

10        Netflix's argument that if Plaintiffs' PII was disclosed to anyone other than Plaintiffs, it

11  was because Plaintiffs allowed other members of their households to watch Netflix streaming

12  movies on their TVs and therefore authorized the disclosure of their PII ignores material facts

13  central to Plaintiffs' Complaint.  First, it is Netflix, not Plaintiffs, which controls whether

14  Plaintiffs' PII is automatically displayed on Plaintiffs' TVs when Plaintiffs turn on their Netflix

15  Ready Devices to watch a movie. ¶¶ 5-8, 37, 39-46, 62-64.  Second, Netflix markets its streaming

16  video service as a social medium and entertainment ***for the entire household and guests*** (¶¶ 65,

17  66), demonstrating its intent that individuals other than just the subscriber participate in viewing

18  its streaming videos.  Third, Netflix automatically displays its subscribers' PII on their TVs every

19  time they use Netflix's streaming video service without obtaining their subscribers' consent to do

20  so.  ¶¶ 7-9, 37, 45, 63. Finally, Netflix has failed to provide Plaintiffs with any means to prevent

21  the display of their PII on their TVs while using the streaming video service, such as by allowing

22  them to edit, hide, lock, or delete their PII.    ¶¶ 7, 44-46.  When all these facts are considered, it

23  cannot be concluded that Plaintiffs, as opposed to Netflix, are responsible for Netflix's unlawful

24  disclosure of PII to other members of Plaintiffs' households.  Plaintiffs simply subscribed to, paid

25  for, and used Netflix's streaming videos services in the manner Netflix intended.  It was Netflix,

26  on the other hand, who transmitted and displayed Plaintiffs' PII on Plaintiffs' TVs, disclosing it to

27  everyone in Plaintiffs' households without their request or consent.  Plaintiffs lack any reasonable

28  means to prevent the disclosure of their PII to others.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

1    While attempting to shift the blame to Plaintiffs for Netflix's unlawful disclosure, **_Netflix_**
2    **_concedes that the only way for subscribers to prevent the unauthorized disclosure of their PII is_**
3    **_to remove their Netflix Ready Devices from their accounts_**. Br. at 10. However, as noted in the
4    Complaint, a Netflix Ready Device is required in order for Plaintiffs to watch Netflix streaming
5    videos. ¶¶ 3, 4, 28, 32. Therefore, Netflix's solution for preventing the unauthorized disclosure of
6    subscribers' PII is really no solution at all because the removal of the device from the account
7    would preclude Plaintiffs from watching Netflix streaming videos on their TVs, **_the very service_**
8    **_Plaintiffs have paid Netflix to receive_**. Furthermore, deactivating and reactivating a Netflix Ready
9    Device every time the subscriber wanted to use the streaming service would be a cumbersome
10   process and is much more complicated than, for example, simply plugging and unplugging the
11   device from the wall. Activation requires obtaining a code from the device, using a computer to
12   access the user's account online, and entering the device code online. ¶ 33. Similarly, deactivating
13   the device requires accessing the subscriber's account online using a computer and removing the
14   device from the account. Netflix's "if-you-don't-like-it-don't-use-the-service-in-the-manner-we-
15   intended-and-you-paid-for" solution is not a reasonable one and does not relieve Netflix from its
16   responsibility to comply with privacy laws.

17   The Complaint alleges that Netflix could have easily provided Plaintiffs with the ability to
18   edit, hide, lock or delete their PII that Netflix automatically displays on Plaintiffs' TVs. ¶¶ 7,
19   44-46. These allegations were included to illustrate that Netflix could have easily designed a
20   streaming video interface that could have provided Plaintiffs with the option of protecting their
21   PII, just as they designed a system to protect the privacy of their DVD rental customers. Although
22   Netflix is not required to operate its video streaming service "in plaintiffs' preferred manner" (Br.
23   at 10), Netflix **_is_** required to handle its subscribers' PII responsibly and in compliance with all
24   applicable privacy laws such as the VPPA and applicable California law. In the context of its
25   streaming video service, this means that Netflix must either cease its unlawful disclosures, either
26   by not automatically displaying its subscribers' PII on their TVs, or by giving them the ability to
27   protect their PII from disclosure to others in some manner that does not require subscribers to
28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

altogether stop using the service they have paid for. [7]

### E. Plaintiffs Sufficiently Allege That Netflix's Disclosure Of Their Personally Identifiable Information Was Knowing And Willful

Contrary to Netflix's argument, the Complaint alleges sufficient facts that plausibly show that Netflix's disclosure of the Plaintiffs' PII to others was and continues to be "knowingly" made under the VPPA and "willfully made" under California Civil Code § 1799.3.

"[T]he term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998). The Complaint's allegations, which must be taken as true, allege facts sufficient to show that Netflix had knowledge of the facts that constitute the offense under the VPPA. Netflix markets and sells its streaming video service as a social medium to be enjoyed as entertainment for the entire household and in the company of others (¶¶ 65, 66), yet Netflix automatically displays Plaintiffs' protected PII on their TVs every time a Netflix streaming video is watched on their TV (¶¶ 5-8, 37, 39-46, 62-64), without providing Plaintiffs with the means to edit, hide, delete, or lock the PII to prevent disclosure to others (¶¶ 7, 44-46). Netflix's ostrich-like argument that it can't possibly know that any particular subscriber's PII is being disclosed to others is belied by their advertising of their services as social medium to be enjoyed in the company of others, is simply not plausible and is insufficient grounds for Netflix to escape liability. Simply stated, based on its own advertisements and other behavior, Netflix either knew or should have known that its own actions routinely result in the disclosure of its subscribers' PII to others.

Likewise, Netflix's argument that its violation of California Civil Code § 1799.3(c) were not willfully made fails for the same reasons. In the civil context, the term "willfully" covers not only knowing violations but reckless violations as well. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007) ("[W]here willfulness is a statutory

---

[7] *Daniel v. Cantrell*, 375 F.3d 377 (6th Cir. 2004), is inapposite. The court in *Daniel* held that only a video tape service provider, as defined by the VPPA, can be held liable under the act, and that, therefore, "the non-video store defendants" were not "proper parties." *Id.* at 384. Netflix does not dispute for purposes of its Motion to Dismiss that it is a "video tape service provider" under the VPPA. *See* note 5, *supra*.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well") (citations and internal quotation marks omitted). While California Civil Code § 1799.3 does not define the word "willfully," the California Penal Code defines willfully as follows:

> The word "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.

California Penal Code § 7(1). Here, the Complaint alleges that Netflix marketed and sold its Internet streaming video services as entertainment to be enjoyed in the company family and others (¶¶ 65, 66), that Netflix automatically displayed its subscribers' PII every time Netflix streaming videos were transmitted to the subscribers' TVs (¶¶ 5-8, 37, 39-46, 62-64), and that Netflix failed to provide its subscribers with any means to edit, lock, delete or hide that PII from others (¶¶ 7, 44-46). Each of the forgoing acts, which provide the general underlying factual basis of Netflix's violation of California Civil Code § 1799.3, were willful. Given the fact that Netflix marketed its video streaming services as a social medium, Netflix knew or should have known that displaying its subscribers' PII on their TVs would result in the disclosure of the PII to others.

## V. LEAVE TO AMEND SHOULD BE FREELY GRANTED

Plaintiffs respectfully request that Netflix's Motion to Dismiss be denied for the reasons set forth above, or, if granted, that Plaintiffs be granted leave to amend. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "leave shall be freely given when justice so requires." In the Ninth Circuit, "[t]his policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (reversing district court's denial of leave to amend) (citation omitted); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Plaintiffs should therefore be given an opportunity to correct any pleading defects that may be identified by the Court or to comport with any guidance that may be provided by the Court.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- 14 -

**VI.    CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request the Court deny Netflix's Motion to Dismiss.

DATED:  October 7, 2011

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT
PATRICK H. MORAN


_____/s/ Rachele R. Rickert_____
RACHELE R. RICKERT

750 B Street, Suite 2770
San Diego, California  92101
Telephone:  619/239-4599
Facsimile:  619/234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
moran@whafh.com

Attorneys for Plaintiffs

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC
MARY JANE FAIT
THEODORE BELL
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone:  312/984-0000
Facsimile:  312/984-0001
fait@whafh.com
tbell@whafh.com

Attorneys for Plaintiffs

NETFLIX:18478.OPP

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- 15 -

DECLARATION OF SERVICE

I, Maureen Longdo , the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interested in the within action; that declarant's business address is 750 B Street, Suite 2770, San Diego, California 92101.

2.     That on October 7, 2011, declarant served PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS via the CM/ECF System to the parties who are registered participants of the CM/ECF System.

3.     That there is regular communication between the parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of October 2011, at San Diego, California.


_____
MAUREEN LONGDO

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – CASE NO. CV 11-1629 EJD

- 16 -

NETFLIX, INC.
Service List – April 15, 2011
Page 1

| COUNSEL FOR PLAINTIFFS | COUNSEL FOR DEFENDANTS |
|---|---|
| Francis M. Gregorek | Keith E. Eggleton |
| Betsy C. Manifold | Rodney G. Strickland |
| Rachele R. Rickert | Dale Bish |
| Patrick H. Moran | Jessica L. Snorgrass |
| WOLF HALDENSTEIN ADLER | WILSON SONSINI GOODRICH |
|  FREEMAN & HERZ LLP |  & ROSATI, Professional Corporation |
| 750 B Street, Suite 2770 | 650 Page Mill Road |
| San Diego, CA  92101 | Palo Alto, CA 94304-1050 |
|          619/239-4599 |          650/493-9300 |
|          619/234-4599 (fax) |          650/565-5100 (fax) |
| gregorek@whafh.com | |
| manifold@whafh.com | |
| rickert@whafh.com | |
| moran@whafh.com | |

Mary Jane Fait
Theodore Bell
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC
55 West Monroe Street, Suite 1111
Chicago, Il  60603
          312/984-0000
          312/984-0001 (fax)
fait@whafh.com
tbell@whafh.com