September 22, 2014

**VIA ECF**

The Hon. Laurel Beeler, United States Magistrate Judge
United States District Court, Northern District of California
Courtroom C, 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *In re Hulu Privacy Litigation*, No. 3:11-cv-03764-LB
      **Combined Joint Discovery Letter Brief**

To The Hon. Laurel Beeler:

Plaintiffs and Defendant Hulu jointly submit this letter brief pursuant to this Court's July 14, 2014 scheduling order, ECF No. 226 at 4, on two disputes that share related issues and that the parties ask be presented in one hearing. The disputes relate to documents Plaintiffs allege are missing from Hulu's productions (Section I) and discovery Plaintiffs request to respond to Hulu's summary judgment motion (Section II)[1]. The parties exchanged meet-and-confer letters (*see* Exs. 1, 9, 18, 19) and held a telephonic conference. Some issues have been resolved or are being further investigated. As to remaining issues in dispute, the parties jointly request a hearing on September 24 (at 1:00 p.m.), 29 or 30, or October 1, if the Court is available.

The Court's July 14, 2014 scheduling order also addressed Plaintiffs' interest in further class certification discovery, ECF No. 226 at 4. The Court permitting, the parties have agreed to table issues related to class certification discovery pending the outcome of the Court's decision on their disputes over merits discovery and the completeness of Hulu's prior production. Given the expense and complexity of discovery related to the class certification issues, both parties believe it would be more efficient to address such discovery after the pending motion for summary judgment is heard.

## I.   DISPUTES REGARDING HULU'S PRIOR DOCUMENT PRODUCTIONS

### A.   Plaintiffs' Position

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," *United States v. Procter & Gamble,* 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958), and to narrow and clarify the issues in dispute, *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947).

_____

[1] Plaintiffs' access to source code and the resources required for access appear to be resolved and production can commence this month.

As late as September 2013, Hulu was responding to Plaintiffs' requests for production with its assurance that "Hulu has produced and will produce relevant non-privileged documents . . . [that] can be located based on a reasonably diligent search." (see, *e.g.*, Ex. 16 at p. 11.) In fact, as Hulu admits (Ex. 9, p. 2), it had stopped collecting any new documents after July 2013. As for over two million documents it told Plaintiffs had collected, it now appears Hulu only reviewed a subset that it created using limited-purpose ESI search criteria developed before the parties' ESI protocol talks broke down. In addition, it also appears Hulu has failed to preserve any log files at all. Meanwhile, Plaintiffs must respond to Hulu's pending, nine-page motion for summary judgment. That motion hinges on Hulu's assertion that there is no evidence to support a VPPA claim (much like Hulu's opposition to class certification, in which it cited none of its own documents). Especially in the face of Hulu's reliance on a supposed absence of documents, Plaintiffs are entitled to the documents they requested but that Hulu has failed to produce.

The June 23, 2014 case management conference ("CMC") was the first occasion the parties had to come before the court to address discovery issues regarding the extent to which discovery had closed and the state of production. In the wake of that CMC, the Court directed the parties to provide proposed discovery plans and attend another CMC. That occurred on July 10, at which Plaintiffs voiced their suspicions about the state of Hulu's production. Hulu represented it would produce any documents that are responsive to Plaintiffs' prior document requests that had not been produced, ECF No. 226 at 2, which is Hulu's duty under Rule 26(e)(2).

Hulu has continued to challenge Plaintiffs to expend the resources to guess at what is missing and, when Plaintiffs have done so, Hulu denies its obligation to have retained, searched for, or produced such documents in the first place. (Ex. 9, p. 1.) Willful ignorance is not a basis for summary judgment and in this instance may have resulted in statements being made that misled the Court and opposing counsel. Thus, Plaintiffs ask the Court to order production of the documents to which Plaintiffs are entitled, as set forth below. Plaintiffs have created a proposed order, Exhibit 17, which identifies the specific relief sought by Plaintiffs with respect to the prior document production.

## 1.    Hulu has not complied with Rule 34 and has left millions of documents unreviewed.

Hulu had a duty under Fed. R. Civ. P. 34 to reasonably and diligently search for and produce responsive documents on its own. See Fed. R. Civ. P. 34(b)(2)(E) (ESI falls within the scope of mandatory document production).

Last year, Hulu said it had collected 2.4 million potentially responsive documents. (Ex. 2.) The Court suggested the parties prioritize the document production, targeting documents relevant to a planned motion for summary judgment by Hulu and a motion for class certification by Plaintiffs. Hulu presented Plaintiffs with a number of search requests and hit results, and Plaintiffs identified their highest priority search requests to apply for production. After that, the

parties did not come to terms on an ESI discovery protocol.[2] Hulu never asked Plaintiffs or this Court to be relieved of its Rule 34 obligations.

In addition to the legal requirement—that Rule 34 governs in the absence of an agreed ESI protocol—Hulu's statements and conduct led Plaintiffs to believe Hulu was doing what the law required it to do:

  – In response to Plaintiffs' requests for production, Hulu gave written assurances that all responsive documents would be produced. (*See, e.g.*, Ex. 3, Hulu's response to Request No. 18, stating that Hulu has and will produce responsive documents.) *Cf. Hamilton v. RadioShack Corp.* No. C 11-00888 LB, 2012 WL 2327191 at *3 (N.D.Cal. June 18, 2012) (requesting party entitled to assurance of diligent search and reasonable inquiry); *Garcia v. Bana*, No. C 11-02047 LB, 2012 WL 2119157 *10 (N.D.Cal. June 9, 2012) (responses insufficient, where they failed to state diligent search and reasonable inquiry had been made in an effort to locate document). Plaintiffs were entitled to rely and did rely on those assurances.

  – Hulu continued to respond with written, Rule 34 assurances in its July and September 2013 responses to Plaintiffs' requests for production. (Exs. 15 and 16.)

  – Hulu was still making clawback requests for hundreds of documents as late as January 2014 (Ex. 4), which Plaintiffs reasonably took to indicate Hulu's continued Rule 34 review.

  – At the July 10, 2014 CMC, Hulu represented it would produce any documents that are responsive to Plaintiffs' prior document requests that had not been produced. ECF No. 226 at 2.

---

[2] When parties engage in discovery, they can review documents and produce what is relevant in its original format as kept in the ordinary course of business. Fed. R. Civ. Pro. 34(b)(2)(E). Alternatively, parties may agree on an ESI protocol where they agree on search terms and custodians in lieu of reviewing all documents. *William A. Gross Const. Associates, Inc. v. American Mfrs. Mut. Ins. Co.*, 256 F.R.D 134, 136 (S.D.N.Y. 2009)(while "key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process…"). Here, the parties discussed a possible ESI discovery protocol. The parties discussed possible custodians of documents, and Hulu eventually obtained documents from 17 custodians. (Ex. 7.) The last Plaintiffs heard, Hulu collected at least 2.4 million documents from these custodians, and the collection was not complete. (Ex. 2.) Plaintiffs wanted different search terms for different custodians (Ex. 5) and the parties disagreed over the prior retention of documents. (Ex. 6.) The discussions had broken down by June 2013 (Ex. 7), leaving discovery under the purview of Rule 34. *City of Colton v. American Promotional Events, Inc.*, 277 F.R.D 578, 581 (S.D.Cal. 2011) (finding that ESI should be produced consistent with the requirements of Fed. R. Civ. P. 34 unless the parties' ESI protocol agreement expressly disclaimed applicability of said requirements); *Quality Inv. Properties Santa Clara, LLC v. Serrano Elec., Inc.*, 2011 WL 1364005 at *2-3 (N.D.Cal. April 11, 2011) (in the absence of an agreed upon ESI protocol, Fed. R. Civ. P. 34 controls).

Based on the parties' communications since July 10, 2014, it now appears Hulu never updated or diligently reviewed its "corpus" of documents after July 2013, ignoring later document requests and leaving millions of documents unreviewed and many other documents unpreserved.

The numbers point to the same conclusion: In Hulu's August 25, 2014 letter, it asserts its belief that the 70,552 documents it has produced are its complete production. But 70,552 documents out of the 2.4-plus million documents in Hulu's corpus—less than three percent—is a small proportion that does not reflect the breadth of discovery. In addition, Hulu's production of 70,552 documents is tellingly close to the number of documents—72,765—that Hulu told Plaintiffs it had identified in May 2013.

## 2.    Plaintiffs are entitled to discovery that the Rules obligate Hulu to provide.

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." The rules require a party to timely supplement materially incomplete discovery responses. Fed. R. Civ. P. 26(e); *Knudsen v. San Francisco,* Case No. 12-cv-01994-JST, 2014 WL 295756 (N.D. Cal. Jan. 27, 2014). The court in *Knudsen* held that Rule 26(e) requires a party that has served initial disclosures or responded to discovery requests to supplement or correct its disclosures or responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.*; *Haggarty v. Wells Fargo Bank, N.A.*, Case No. 10-2416 CRB (JSC), 2012 WL 4113341 (N.D. Cal. Sept. 18, 2012). Further, the duty is not extinguished by the close of discovery. In a recent decision in this District, *Woods v. Google*, the court "definitively" stated that the Rule 26(e) duty to supplement incomplete responses extends past the discovery cutoff date. *Woods v. Google, Inc.*, No. C11-01263-EJD (HRL), 2014 WL 1321007, *4 (N.D.Cal. March 28, 2014) (citing Fed. R. Civ. P. 26(e) advisory comm. nn.; *F.T.C. v. AMG Services, Inc.*, No. 2:12-cv-00536-GMN-VCF, 2014 WL 317781, at *6 (D. Nev. Jan. 28, 2014); *Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011)).

As it now appears that Hulu has never reviewed many documents at all, it cannot possibly know if all of the documents relevant to Facebook-related claims were produced (or, for that matter, the comScore-related claims[3]). At the very least, a determination of Hulu's pending summary judgment motion requires that Hulu produce the documents that it told Plaintiffs and the Court had been or would be produced, and which it is legally obligated to produce.

---

[3] Hulu should be obligated to produce any comScore related documents that may have also been improperly withheld since they had an obligation to produce such documents prior to its motion for summary judgment and the granting thereof.  Plaintiffs are entitled such discovery to ensure that no documents that would have impacted the outcome of that motion were withheld.

**3.     The incompleteness of Hulu's production is evidenced by large categories of missing documents and Hulu's refusal to provide them.**

**a.     *Hulu did not even collect documents created after its original collection.***

Despite Hulu's earlier assertion that there was no end date for production of documents (Ex. 8), Hulu now claims that it does not have to produce any documents created after the date when Hulu decided to cut off custodial document collection (May through July 2013, depending on the custodian). Hulu makes this claim because, in August 2013, Plaintiffs moved to certify a class that ended in June 2012, Plaintiffs' first document requests were served in December 2012 and, therefore, Hulu is entitled to consider documents created after February 2013 irrelevant. (Ex. 9.)

Plaintiffs never agreed to such a cut-off date for document collection. In fact, when the parties were discussing a possible ESI discovery protocol, Hulu itself represented that "ESI created after March 4, 2010 will be preserved." (Ex. 8.) In addition, Plaintiffs have already pointed out to Hulu their belief that, in July 2013, after Hulu's unilateral cut-off collection date, Hulu significantly changed its implementation of the Facebook Like button. (Ex. 1.) Hulu cannot possibly claim that, after February 2013, no one discussed how the Like button had previously worked—especially when it was changed several months later. Hulu *cannot* make such a claim, because Hulu admits it has not even looked.

Plaintiffs have: (i) requested that Hulu timely supplement its discovery responses; (ii) asserted that Hulu is under a continuing duty to correct or complete all incorrect or incomplete responses; and (iii) instructed Hulu to produce all responsive documents created, generated, or modified from March 4, 2011 through the present as well as outside that period, for documents that contain information relating to the specified period. (See, e.g., RFP Set 1, Dec. 10, 2012, Ex. 10.) Hulu is obligated to fulfill its obligations.

**b.     *Hulu's sparse production of blocking-related documents is inexplicable and raises troubling issues as to Hulu's intention to comply with the Federal Rules.***

In Plaintiffs' August 7 letter to Hulu, Plaintiffs pointed to the four Hulu documents relating to Hulu development efforts to defeat user ad-blocking. (Ex 1, § 8.) Plaintiffs also pointed to the fact that they only received two documents relating to Ghostery, Adblock, or Adblock Plus relating to the user ad-blocking context. *Id.*

Despite this miniscule number of documents—including documents indicating Hulu engaged in development efforts to defeat blocking—the supposed ability of users to block transmissions to Facebook was one of Hulu's key defenses to certification.[4] See ECF No. 142 at 21-23. Plaintiffs asked for this type of documentation in discovery served in December 2012 and July 2013. (See Exs. 3, 10, 11, request numbers 5, 6, 18, 21, 23, 35, 37, 38, and 40.) Hulu,

---

[4] Although the parties wish to take up certification-specific discovery issues later, the lack of blocking-related documents is relevant here, as a symptom of Hulu's failure to comply with Rule 34.

however, counters that documents related to blocking were not covered by prior requests. While Plaintiffs did not use the simple word "blocking" in their requests, a review of their technically accurate requests show that Plaintiffs did indeed request such information and that the absence of documents is a category-specific example of Hulu's failure to fulfill its duties under Rule 34. Even in the absence of such a request, Hulu was independently obligated to produce all documents upon which it would rely in its defense. Simply put, Hulu's failure to produce the blocking-related documents should not be excused.

### c.    *Hulu failed to produce, collect or apparently even preserve its log files.*

Starting with Plaintiffs' First Set of Requests for Production on December 10, 2012, Plaintiffs have told Hulu that log files[5] were one example of an ESI format to consider in Hulu's obligation to construe ESI broadly. *See, e.g.*, Ex. 10, Plaintiffs' First Set of Requests to Defendant, Instructions ¶11 at 7. Log files would be among the types of documents that could be expected in response to a number of Plaintiffs' requests for production.[6] Hulu and its counsel would be expected to be aware of these types of documents and their locations. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, No. 5:10–cv–04809 EJD, 2014 WL 1266091 *1 (N.D.Cal. Mar. 26, 2014) (relating to claims against Google, who was represented by some of the very same lawyers who have appeared in this matter on behalf of Hulu, regarding disclosures of personal information via server logs); *Genesco, Inc. v. Visa, USA, Inc.*, No. 3:13–0202 2014 WL 935329 at *6 (M.D.Tenn. Mar. 10, 2014) (Visa, whose counsel again include counsel in this matter, sought information about the effect of server reboots on retention of log files).

Hulu, however, failed to produce any log files, contends they were never requested, and expressed doubt, during the meet-and-confer process, that they were ever collected or even

---

[5] Log data, that is, data from log files, is a record of or derived from a server's capture of the contents of data transmissions. These would include Hulu's records of transmissions, such as those from Hulu to Hulu users in which Hulu downloads it web pages with code that instructions a user's browser to perform certain functions, or from Hulu users to Hulu, in which Hulu uploads information about a user's Facebook login status and the contents of the user's Facebook cookies.

[6] *See, e.g.*, Ex. 3, 10 & 11, Plaintiffs Requests for Production Nos. 3-11, 15-17, 21, 23-24, 37-38, 40, and 49. These include a request for any and all responsive documents "relating to the acquisition by third parties of Plaintiffs' User Information, including but not limited *specific instances of acquisition and the particular User Information acquired*" and those "*sufficient to show the processes whereby information about Hulu users* (including but not limited to the title of the video the Hulu user was watching and the subscriber's Facebook profile ID) who were also Facebook users *was sent to Facebook* . . . ." (Request Nos. 15 and 18, emphasis added.) Regarding Request No. 15, Hulu responded on January 4, 2013 that it had yet to complete discovery, that it would produce responsive documents on a rolling basis, subject to objections and to the extent documents existed and could be located "after a reasonably diligent search." Regarding Request No. 18, Hulu assured Plaintiffs on June 5, 2013 that it had produced and "will produce" documents.

preserved.[7] Hulu also contends that, because log files were requested in Plaintiffs' sixth set of Document Requests served July 24, 2014, it means they were never requested originally. Given the fact that Plaintiffs instructed Hulu about the presence of log files, made requests that should have resulted in the production of log files, and yet received none, it should not be surprising to Hulu that Plaintiffs have made recent and more explicit requests for them. That does not relieve Hulu of Rule 34 duties.

**B.     Hulu's Position**

        Plaintiffs' accusations that Hulu did not diligently collect and search for documents are outrageous and unfounded.  Plaintiffs' statements that they "believe Hulu simply has failed to review over two million documents it told plaintiffs it had identified," and that Hulu "has failed to preserve material categories of documents" have no basis in reality:

- Hulu was diligent in its document collection, collecting documents from 24 custodians across a broad range of sources

- Hulu was diligent in its document search, using 37 agreed-upon search terms to cull over 500,000 documents that it reviewed

- Plaintiffs knew in June 2013—15 months ago—exactly how Hulu was collecting and searching documents, and never objected

- Hulu's production is not incomplete: plaintiffs' demand that Hulu supplements its collection is improper, and "blocking" documents and "log files" are non-issues

        Plaintiffs' accusations are all the more remarkable because, before plaintiffs included them in their portion of this letter brief (on September 17, 2014), *they had not raised them at any time* in the prior year-and-a-half during which this supposed "failure" had occurred.  They did not mention them before the January 2014 close of fact discovery, or in their written or oral statements to the Court in July about prior discovery, or in their August 7 letter to Hulu that laid out their position on "follow up" discovery, or during the two extensive telephone meet-and-confers that occurred on August 15 and September 11.  Plaintiffs have never raised problems with Hulu's document custodians, search terms, or collection efforts, all of which Hulu spelled out when the discovery occurred.  Plaintiffs' last minute allegations are not just baseless, they seek to delay the resolution of what remains of their case, re-litigate stale issues, and blow up the discovery cut-off date.  Hulu urges the Court to reject this improper and untenable effort.

     **1.     Hulu Was Diligent in its Document Collection and Search, and Plaintiffs Knew Precisely What Hulu Searched and Collected.**

        Hulu was diligent in its document collection and search.  And despite plaintiffs' spin, they cannot deny that they have known since June 2013—15 months ago—*exactly* the custodians

---

[7] Hulu originally represented to Plaintiffs in May 2013 (Ex. 12) that Hulu had sent document retention notices to hundreds of employees, a representation that Plaintiffs have relied upon.

from whom Hulu collected documents and *exactly* the search terms Hulu used to select documents for further review.  It is utterly false that "discussions had broken down by June 2013" and that plaintiffs were in the dark from then on about what Hulu was collecting, searching, or producing.

**First**, Hulu's collection efforts were thorough and diligent.  In all, Hulu collected documents from 24 custodians, including senior employees in technology, product management, software development, and advertising, and the senior employees involved in the "Like" button's implementation.  (Exs. 7, 20.)  Hulu collected custodial information from broad sources, including email, local storage, Hulu Wiki pages, Google Documents, Chat and HipChat (messaging services some of the custodians used to communicate with colleagues for work-related purposes), shared drives (some custodians stored documents on Hulu servers), and Dropbox (some custodians used Dropbox to access work-related documents remotely).  (Ex. 7.)

Since June 2013 plaintiffs have known the name of each custodian from whom Hulu collected documents.  Plaintiffs are wrong in saying that the parties only "discussed possible custodians of documents" and "the collection was not complete."  To create a false picture about what occurred, plaintiffs have cherry-picked the parties' emails.  But the full record is clear.  On May 17, 2013, Hulu wrote to plaintiffs to provide a list of 13 custodians and their job titles.  (Ex. 20.)  One week later plaintiffs proposed an additional 16 custodians.  (Ex. 21.)  Hulu investigated the proposed custodians to determine which ones might have had relevant information.  On June 10, Hulu told plaintiffs that it would agree to collect documents from eight of them, and that the other eight did not possess relevant documents.  (Ex. 22.)  Hulu also identified three *additional* custodians that plaintiffs had not requested, who might possess relevant information, and Hulu voluntarily added those custodians to its list.  Hulu memorialized this in a letter to plaintiffs on June 13, 2013, and included information on the sources of information from which it would collect.  (Ex. 7.)  In the ensuing 15 months, not just through the close of discovery but until plaintiffs' letter brief arrived two days ago, plaintiffs never objected in any way to the custodian list or sources collected.  Their attempt to do so now, and their criticism of Hulu for its enormous document collection and production effort and expense, is unseemly.

**Second**, Hulu used broad search terms that were reasonably calculated to cull responsive documents, including documents relating to Facebook.  The 37 search terms Hulu used include:

1. Facebook* NEAR20 (Like NEAR5 Button)
2. Facebook* NEAR20 Cookie
3. Facebook* NEAR20 Integration
4. User ID" NEAR10 disclose*
5. PII
6. personally NEAR10 identif*
7. user name
8. user info
9. personal info

(Ex. 20.)  Plaintiffs' current letter brief omits all of this information.

Using the key words as filters, and filtering out documents with technical issues that were unreviewable, Hulu ended up with 584,034 documents.  Hulu reviewed *all* of them.  Based on that review, Hulu produced 70,522 documents, containing 256,250 pages.

Hulu challenges plaintiffs to justify any additional discovery in connection with Hulu's pending summary judgment motion that was not already gathered through those search terms. Even now, it is unclear what plaintiffs mean when they say that Hulu ignored "later document requests and le[ft] millions of documents unreviewed and many other documents unpreserved." Hulu went beyond its legal obligations in collecting and searching for relevant documents.

Plaintiffs have known the *exact* search terms Hulu used to produce documents from the 24 custodians since June 2013.  Plaintiffs' contention that they only "identified their highest priority search requests" and never reached agreement on broad search terms is misleading, at best.  On May 17, 2013, Hulu gave plaintiffs a list of 37 search terms that Hulu planned to use to search the corpus of collected documents.  (Ex. 20.)  The search terms were broad and were reasonably calculated to cull documents related to Facebook, among other issues.

In that May 17, 2013 email Hulu also reminded plaintiffs of what they had agreed to do if they wanted Hulu to use other terms: "As discussed, plaintiffs will review the attached terms list and propose additional search terms by COD Monday (5/20)."  Hulu followed up on May 22 to ask "when can we expect a list of proposed additional search terms from plaintiffs."  (Ex. 12.) Despite two reminders, plaintiffs *never* proposed *a single* additional search term.  Instead, the parties filed a joint stipulation on July 1 in which the parties notified the Court of their agreement on certain discovery issues, including the search term issue:

> On June 14, 2013 plaintiffs provided Hulu with a list of twenty-four priority search terms within Hulu's original list of thirty-seven search terms provided to plaintiffs on May 17, 2013, which plaintiffs requested be prioritized related to their motion for class certification.

Dkt. 97 at 2.  In reliance on these representations and on plaintiffs' decision not to propose any additional search terms, Hulu searched the corpus of collected documents using those terms to target its review and production efforts.

This method of determining appropriate key words was the prototypical "cooperative and informed process" that courts encourage.  *See William A. Gross Const. Associates, Inc.*, 256 F.R.D at 136.  Plaintiffs consented to this list of search terms in that Case Management Statement, and never objected or stated that it somehow was incomplete.  Plaintiffs' current accusations against Hulu are thus wildly inappropriate.

### 2.     The Issues Plaintiffs Raise Do Not Evidence an Incomplete Production.

The bulk of plaintiffs' letter brief is simply empty rhetoric that Hulu "has not complied with Rule 34."  After three pages of such discourse, plaintiffs identify three issues that they claim show the incompleteness of Hulu's production.  Plaintiffs are wrong on each one.

*First*, plaintiffs demand that Hulu supplement its production with documents dated after February 2013. There is no basis for that demand. Hulu is under no obligation to collect documents created after its original collection. Plaintiffs' class period ended on June 6, 2012. In a lawsuit that concerns alleged disclosures of information under circumstances that ended in June 2012, documents that did not even exist until eight months later (after February 28, 2013) are not possibly relevant to any claim or defense in the case.

Plaintiffs now claim that Hulu had an obligation to collect and search millions of additional documents because Hulu cannot state definitively that "after February 2013, no one discussed how the Like button had previously work[ed]." But a demand that Hulu collect and search all post-February 2013 documents—just because there might exist the slimmest chance that a relevant document in that massive haystack theoretically could exist—is not "reasonably calculated to lead to the discovery of admissible evidence." *Surfvior Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005). In addition, the duty to supplement arises only "if the party learns that *in some material respect* the disclosure or response is *incomplete or incorrect*." FRCP 26(e)(1)(A) (emphasis added). That has not occurred here.

*Second*, plaintiffs allege that Hulu produced "few" documents relating to development efforts to defeat user ad blocking. But the law does not require some minimum number of documents to have been produced on a given topic before the production is deemed sufficient. And none of plaintiffs' RFPs served before the close of discovery even *requested* documents related to "blocking" issues. Nonetheless, plaintiffs now seek to engage in a game of "gotcha" by stating that "technically" some broad requests may have encompassed this information, even though plaintiffs never specifically requested them. To avoid the issue, however, Hulu will search for and produce relevant, non-privileged documents from the corpus of already-collected documents that mention "Ghostery," "Adblock," or "Adblock Plus."

*Third*, plaintiffs allege that Hulu "failed to produce, collect or apparently even preserve its log files." Plaintiffs seem to concede that they did not specifically request log files. That is because, to show that they requested log files, they cite only to "Instruction No. 11" in their Requests for Production, which mentions that ESI "is to be interpreted broadly" and that "Plaintiffs request that knowledgeable representatives of Defendant meet and confer with Plaintiffs concerning Defendant's production of responsive materials from likely sources of relevant ESI, which may include … log files." In a letter that accuses Hulu of failing to satisfy its discovery obligations, that is quite a stretch. Further, Hulu has no recollection of plaintiffs ever mentioning "log files" in any meet and confer—on ESI or otherwise.

Nonetheless, in response to this belated and new request for such documents, Hulu reviewed its practices to determine if log files relating to the Facebook "Like" button even exist. Plaintiffs are requesting information about Hulu users, which is indeed collected in certain situations and stored in a database, but not in log files. There are no log files responsive to plaintiffs' requests.

## II.   DISPUTES REGARDING PLAINTIFFS' REQUESTS FOR KNOWLEDGE DISCOVERY

Hulu filed its Motion for Summary Judgment re: "Knowingly" on August 26, 2014. ECF No. 230.  On September 7, 2014, Plaintiffs served their Seventh Set of Requests for Production of Documents and Things. (*See* Ex. 13.)  Hulu responded by letter on September 9, 2014. (*See* Ex. 14.)  Hulu objected to the discovery on numerous grounds. On September 11, 2014, the parties met and conferred by telephone, and Plaintiffs detailed the bases of their requests.

### A.   Plaintiffs' Position

In the Court's July 14, 2014 scheduling order, the Court acknowledged Plaintiffs' interest in further discovery related to Hulu's knowledge of disclosures to Facebook of PII as defined under the VPPA. The Court stated that "it might be best to wait and see Hulu's evidence in its renewed summary judgment motion" before the parties determined whether any additional discovery is appropriate. ECF No. 226 at 4-5. The Court further stated it would not preclude "reasonable discovery geared toward Hulu's knowledge" within two weeks. *Id.* at 5.

### 1.   Plaintiffs are entitled to Hulu documents that exist, that it has not produced, and that are responsive to Plaintiffs' tailored requests.

It is particularly important that Plaintiffs be permitted to conduct further discovery on knowledge where Hulu argues such unsubstantial grounds as the deposition testimony—effectively an evidentiary "null set"—and Plaintiffs bear the entire burden of proving the state of Hulu's knowledge. Simply put, just because Hulu recycled its evidence from prior summary judgment motions does not mean that Plaintiffs do not need additional evidence to disprove what is a wholly different thesis than the prior motions for summary judgment. Plaintiffs narrowly tailored their seventh set of RFPs, knowing that Hulu has routinely lodged overbreadth objections and withheld documents based on its unilateral determination of relevance. In the parties' meet-and-confer teleconference on September 11, 2014, Plaintiffs explained in detail the bases of their requests, which fall into these categories:

#### a.   *Documents showing that Hulu knows, accesses, and uses the contents of specific users' Facebook cookies*

Hulu, relying on new factual assertions it did not raise in its first summary judgment motion (*see* Section II.A.2, below), argues in its current summary judgment motion that it did not know what is in Facebook cookies and what information is transmitted to Facebook when a Like button is requested for a Hulu web page a user is viewing. Plaintiffs' Seventh Set of Requests for Production is targeted to documents showing the opposite—that Hulu did know what was in Facebook's cookies, Hulu accessed those cookies, Hulu retrieved users' Facebook IDs from those cookies, and used those IDs in other processes.

Further, the requested documents go to Hulu's knowledge of whether a user was logged in to Facebook, plus Hulu's knowledge that, any time Hulu caused the user's browser to contact Facebook, including to fetch the Like button, Facebook received information that identified the

user. This is because, as Hulu stated in its earlier summary judgment motion, whenever a user's browser contacts a webserver in a domain, "[t]he browser sends the webserver any cookies associated with the webserver's domain." ECF No. 125-3 at 13. In RFP Set 7 (*see* Ex. 13):

- In *Request No. 62*, Plaintiffs cited specific examples of code that appears to show Hulu's access to Facebook cookies and use of Facebook data to determine users' Facebook login statuses and obtain users' Facebook IDs. (*See, e.g., Request Nos. 62(a)-(c)*). Not only do these documents appear to contradict Hulu's disclaimers of knowledge of Facebook cookies and what is being transmitted to Facebook, they also prove that Hulu knows that Facebook is identifying each of those users, since user identification is required for Facebook to determine a user's login status.

- In addition, *Request No. 62* cites to documents showing that Hulu uses the user's browser as a storage intermediary between Hulu and Facebook such that, again, Hulu has knowledge of specific Facebook cookie values on specific users' browsers. These few documents give Plaintiffs reason to believe there are similar documents, addressing other, relevant time periods, that are highly probative. *Request Nos. 76-79 and 83* relate to similar subject-matter, as well as documents related to Facebook's ability to track a user throughout the user's Hulu session.

- *Request No. 63* relates to Xinan Wu's possession of such documents, in light of his statements about his knowledge of these matters, his role on Hulu's development team, and Hulu's reliance on his prior deposition testimony in support of its current motion.

- *Request No. 64* relates to Hulu's synchronization across user devices, again, involving coordination of user identifiers from Facebook.

- *Request No. 65* relates to similar issues, but specifically in the context of Hulu code that explicitly passes the user's Facebook ID and video selection to Facebook when the code causes the Like button to be requested from Facebook.

As noted in these requests, Plaintiffs did receive some documents, but these documents give Plaintiffs reason to believe unproduced documents relate to relevant time periods and Hulu processes, including transmission of data via requests for Facebook's Like button. Plaintiffs are entitled to examine these documents, particularly in the context of opposing Hulu's summary judgment motion related to knowledge.

        **b.**      ***Hulu and Facebook's customization of the Like button process and implementation in the context of video distribution.***

Although Hulu states in its motion that it uses the same code as any other website that implements the Like button, ECF No. 230 at 3, Plaintiffs' Request Nos. 66-75 and 80-82 are based on documents that appear to indicate Hulu's Like button implementation was not the same as other websites, that Hulu investigated other video-streaming websites' practices and was aware of issues relating to the transmission of video titles to Facebook.

        **c.**      ***Certain requests from Plaintiffs' Request for Production Set 6 incorporated into Set 7.***

Just as Plaintiffs cannot assume whether or when Hulu will fulfill unmet obligations to complete its production of documents responsive to Plaintiffs' 1st through 4th sets of requests for production, Plaintiffs reiterated certain requests from their 6th set, relating to class certification, that are also relevant to knowledge. These requests seek log files, described above.

> **2.    Plaintiffs are entitled to documents relating to the substance and accuracy of testimony on which Hulu based its knowledge-related assertions.**

Plaintiffs are entitled to discovery relating to the entirely new factual assertion on which Hulu bases its claimed lack of knowledge. Not a single fact Hulu marshals in support of its argument was cited in its prior summary judgment motion. In Hulu's prior motion, it argued it did not knowingly disclose any information to Facebook because Facebook's cookies are unintelligible, owned by Facebook and, "[a]s a result, Hulu cannot access that cookie or read the information stored in it." ECF No. 125-3 at 23. The Court stated that it could not dispose of a case "involving fact questions about knowledge on an undeveloped record with a half-page argument about knowledge" at the end of a brief primarily focused on other issues. Order Granting in Part and Denying in Part Hulu's Motion for Summary Judgment (Comscore And Facebook), ECF No. 194 at 26.

In Hulu's currently pending motion, those assertions are gone. Hulu now relies on its deponents' testimony to assert that it did not know what was in Facebook's cookies, whether they contained Facebook IDs, and whether those IDs were transmitted to Facebook when a user visited a Hulu web page that includes a request for a Facebook Like button. ECF No. 230 at 8-9. But Plaintiffs' Request No. 62, on its face, demonstrates Plaintiffs' good-faith basis to question the reliability of Hulu's deponents' testimony. In addition, the substance of Xinan Wu's testimony and his status as a fact witness, not a corporate designee, raises the issue of whether his testimony is even admissible on this issue. *In re Motor Fuel Temperature Sales Practices Litigation*, 2009 WL 5064441 (D. Kan., December 16, 2009), at 2 (refusing to allow a corporation to designate its 30(b)(1) witnesses' testimony as the corporation's 30(b)(6) testimony and recognizing a distinction between these types of deposition testimony) The mere fact that Hulu's deponents gave testimony does not make their testimony presumptively trustworthy or admissible. And regardless of how many documents Hulu has produced, it does not excuse Hulu's prior failure to produce relevant documents. The importance of ensuring fullsome discovery related to the subject-matter in dispute is underscored by Hulu's attempt, below, to again reframe this as a case about "the drawing of the 'Like' button on Hulu video watch page" *i.e.*, what Facebook *sends back* in response to a Like button request, when it is really a case about the Like button request *to* Facebook in the first place.

> **3.    Plaintiffs' requests are timely.**

From October 1, 2013, before the scheduled discovery cut-off, through June 17, 2014, when the Court ruled on Plaintiffs' motion for class certification, this case has been in motions practice, often with more than one motion pending before the Court. Given the timing of Hulu's production (*see, e.g.*, ECF No. 226 at 2, where the Court notes the timing of Hulu's rolling production); the fact that Hulu's prior production is incomplete, *see supra*, and Hulu continues to shift the burden to Plaintiffs to tell Hulu what it has missed (*see* Section I.A, above); evidence

Plaintiffs have uncovered in the course of reviewing Hulu documents; and the factual assertions in Hulu's renewed motion for summary judgment, the interests of justice support Plaintiffs' further knowledge discovery.

The new requests for production which relate to the "knowledge" issue are predicated upon the discussion at the last CMC that Plaintiffs should have an adequate opportunity to conduct discovery with regard to Hulu's motion for summary judgment:

> [T]he court is giving Hulu a second chance at establishing its lack of knowledge, the court will not preclude Plaintiffs from reasonable discovery geared toward Hulu's knowledge. Plaintiffs may make those requests within two weeks, and Hulu must respond two weeks thereafter (absent stipulation of the parties or further order of the court). (Dkt. 226, 5:2-5.)

Independent of this, Hulu had a continuing obligation to fulfill its initial discovery obligations, which are not extinguished by a discovery deadline it failed to meet. *Woods v. Google, Inc.*, No. C11-01263-EJD (HRL), 2014 WL 1321007, *4 (N.D.Cal. March 28, 2014). Plaintiffs argue that the application of this basic standard is warranted here given Hulu's discovery failures and continuing efforts to locate documents discussed in Section I.A, above, and the specificity and potentially dispositive relevance of the documents cited and requested in Plaintiffs' seventh set of requests.

## B.     Hulu's Position

Plaintiffs should not be permitted to serve these document requests.

***First***, nothing in Hulu's August 26, 2014 summary judgment motion raises new issues of law or fact.  Plaintiffs allege that Hulu's "knowingly" summary judgment motion is "a wholly different thesis than the prior motions for summary judgment," and that Hulu relies "on new factual assertions."  That is false.  Hulu's motion attached no new declarations or documents. Every supporting piece of evidence was previously filed in support of Hulu's October 1, 2013 summary judgment motion, which likewise raised the "knowingly" issue.  The same issues were raised in that motion.  *See* Dkt. 125-3 at 23 (Hulu's Summary Judgment Motion re: comScore and Facebook "Like" Button) ("Even If Facebook Gathered Identifying Data, Hulu Had No Knowledge of It And Could Not Have "Knowingly" Disclosed It"; "even if Facebook gathers [information through its "Like" button and cookies] such information through the presence of its "Like" button and cookies, Hulu had no knowledge of it.") ; Dkt. 178 ¶ 25 (Joint Statement of Undisputed Facts); Dkt. 125-7 ¶¶ 24-32 (Wu Declaration ISO Hulu's Motion).

Hulu filed that summary judgment motion on October 1, 2013, more than three months before the fact discovery cut-off.  That afforded plaintiffs sufficient time to take discovery on the "knowingly" issue and the evidence Hulu cited.  Plaintiffs have pointed to no new issues that justify *any* additional discovery, let alone these 28 document requests.  Plaintiffs point only to supposed issues with the substance of Xinan Wu's deposition testimony or other documents Hulu produced.  But by definition, all of that occurred before the fact discovery cut-off date.

*Second*, plaintiffs have *already* taken discovery on the Facebook "Like" button disclosure theory. On August 20, 2013, plaintiffs deposed Hulu's former Chief Technology Officer and Rule 30(b)(6) witness, Richard Tom, about the alleged transmission of user data to Facebook through the cookies associated with the Facebook "Like" button. Facebook and internal communications regarding the "Like" button. On December 4, 2013, plaintiffs deposed Hulu's Xinan Wu on, among other things, the same "Like" button cookie issues that are the subject of the discovery plaintiffs now propose to serve. Hulu has already produced documents on issues related to the "Like" button. Plaintiffs' proposed document requests even cite to some of them. In fact, Hulu has produced over 250,000 pages of documents in total, including communications with Facebook and internal communications regarding the "Like" button. Just because none of them creates an issue of fact on Hulu's "knowingly" motion does not mean plaintiffs are entitled to impose on Hulu another costly and burdensome fishing expedition.

Plaintiffs have already taken discovery on the specific categories they describe in their letter: documents showing what Hulu knew about the contents of Facebook cookies and documents relating to the implementation of the Facebook "Like" button. (*See* RFP 37, 40.) The third category, log files relating to Hulu, is addressed above.

*Third*, plaintiffs' discovery requests are overbroad and seek irrelevant information. The set is not narrowly tailored to whether Hulu "knowingly" disclosed personally identifiable information to Facebook in connection with the drawing of the "Like" button on Hulu video watch pages. Many of the requests are not even focused on the Facebook "Like" button generally, and instead seem to encompass Facebook Integration issues (which plaintiffs have already dropped from the case) or even communications between Hulu and Facebook. Requests Nos. 50-57, meanwhile, are copies of some of plaintiffs' proposed requests related to class certification, and do not seem to relate to the "knowingly" issue.

*Fourth*, plaintiffs have shown no "good cause" for reopening discovery. Fact discovery closed on January 13, 2014. Plaintiffs had over one year to obtain the discovery on the "knowingly" issue. A party requesting the reopening of discovery shows diligence only by demonstrating that that the specific discovery it seeks post-deadline involves new issues that it could not have sought before the discovery cut-off. *See iMedicor, Inc v. Access Pharmaceuticals, Inc.*, 290 F.R.D. 50, 52 (S.D.N.Y. 2013) ("[T]he good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline"); *U.S. ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995) (finding no "good cause" to re-open discovery because "it cannot be said that the need for the information sought could not have been foreseen" before discovery closed).

Issues specific to the "Like" button were part of the case long before discovery closed. Plaintiffs described the Facebook "Like" button disclosure theory to Hulu on August 6, 2013. On October 1, 2013, Hulu filed a motion for summary judgment that concerned plaintiffs' Facebook "Like" button disclosure theory and whether any alleged disclosure was made "knowingly." Plaintiffs had plenty of time before the January 13, 2014 discovery cut-off to conduct additional discovery on these issues, and could have served these new requests back then. Plaintiffs' failure to do so, coupled with the fact that Hulu's current summary judgment motion cites to no new evidence, eliminates any possibility of "good cause" to reopen discovery

on the Facebook "Like" button issue (or any other issue).  *See Yeoman v. Ikea U.S.A. W., Inc*., No. 11CV701-WQH BGS, 2013 WL 3467410, at *4-8 (S.D. Cal. July 10, 2013) (denying plaintiffs' motion to re-open fact discovery in part because "[t]he only stated basis for the delay [in requesting the discovery at issue] was a strategic decision by counsel not to spend the time and money pursuing this discovery while Plaintiffs focused on other aspects of the case.").

Plaintiffs do not even *attempt* to argue why they have "good cause" for reopening discovery here.  Instead, they simply state that the "law that should apply is the law governing a producing party's continuing obligation to fulfill its initial discovery obligations, which are not extinguished by a discovery deadline it has failed to meet."  A defendant's obligation to fulfill initial discovery obligations (which Hulu does not dispute exists) has nothing to do with whether a plaintiffs may serve wholly new discovery requests after a discovery cut-off date.  For that, the "good cause" standard applies, and plaintiffs have not met their burden here.

Nonetheless, Hulu has agreed to search for certain documents that relate to the Facebook "Like" button issues.  Specifically, as part of conducting "follow-up" on existing requests, Hulu committed to searching the unproduced, already-collected corpus of documents for documents related to Facebook developer documentation and correspondence and documentation related to Facebook code.  Any additional discovery, however, is unacceptable.

Pursuant to this Court's Standing Order ¶ C.6, each of the undersigned attests that s/he is a lead counsel in this matter who met and conferred telephonically regarding the matters raised in this combined, joint letter brief.

Respectfully submitted,

*/s/David C. Parisi*

David C. Parisi
PARISI & HAVENS LLP
One of the Attorneys for Plaintiffs

*/s/ Steven M. Dunst*

Steven M. Dunst
O'MELVENY & MYERS LLP
One of the Attorneys for Hulu, LLC