David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Scott A. Kamber (pro hac vice)
skamber@kamberlaw.com
David A. Stampley (pro hac vice)
dstampley@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

*Counsel for Plaintiffs*

Robert M. Schwartz (S.B. #117166)
rschwartz@omm.com
VICTOR JIH (S.B. #186515)
vjih@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

*Counsel for Defendant Hulu, LLC*

Additional Counsel on Signature Page

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE HULU PRIVACY LITIGATION | C 11-03764 LB<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

The parties submit this statement in anticipation of the Joint Case Management Conference scheduled for November 6, 2014 and based on the Court's order of October 27, 2014. (Dkt. 244)

# I. Parties' Statements

## A. Plaintiffs' Position

Plaintiffs believe the evidence will support the following facts that are critical to determining Hulu's knowledge of what user and video identifiers were transmitted to Facebook and to evaluating outstanding discovery issues brought before the Court at the case management conference:

1. **Before a user ever visits Hulu's Show or Watch page for a video, Hulu requests that Facebook determine whether the user is logged in to Facebook and, if so, to identify the user.**

2. **Hulu knows that Facebook identifies the user by examining the user's Facebook cookies sent with Hulu's identification request. Hulu knows this because Hulu, itself, obtains users' Facebook IDs from Facebook cookies. Hulu is also aware that every request it causes to be made to Facebook allows Facebook to re-identify the user.**

3. **Thus, Hulu knows that any user who is logged in to Facebook when visiting Hulu's Show or Watch page will be identified by Facebook when Hulu's code contacts Facebook to download the Like button.**

At least as early as the parties' September 11, 2014 meet-and-confer, Plaintiffs have explained the above to Hulu, in meet-and-confers, e-mails, and letters. Plaintiffs have been prepared to inspect Hulu's source code, but Hulu continued to assert it would only produce "source code used to render Hulu watch pages (including the "Like" button)." It was not until Monday, October 27, that Hulu even agreed that it will provide source code that addresses the above issues. Plaintiffs were then able to schedule their consultant to conduct the code inspection, now scheduled for November 12-14. Plaintiffs' analysis expert will not receive the produced code until the following week, under the terms of the Source Code Order. He must then analyze the code, document his findings, and provide them to Plaintiffs' counsel. In addition, Hulu now states that its responses to Plaintiffs' Seventh Set of Requests for Production will potentially yield over *120,000* documents, and that is without having even determined all necessary search queries.

**B. Hulu's Position**

In the three weeks since the parties were before the Court on October 9, 2014, Hulu has continued to: (a) produce the documents plaintiffs requested; (b) review additional documents; (c) add search terms at plaintiffs' request; (d) enlarge the scope of source code to be provided to plaintiffs; and (e) move quickly and thoroughly to resolve all open discovery issues and provide plaintiffs the information they claim to need to address Hulu's "not knowingly" summary judgment motion.[1]

At the October 9 CMC, the two "open" issues were plaintiffs' set of new document requests and their request for source code. On both, Hulu has given plaintiffs (or has committed to giving plaintiffs, within another week or so) everything they have asked for. But plaintiffs are again moving the goalposts. Every time Hulu gives plaintiffs exactly what they want, they ask for more. It is time to bring this to a close. Despite all of Hulu's concessions, agreements, and efforts, plaintiffs purport to raise additional concerns for the Court's attention. Hulu's requests to the Court at this time are: (1) deny plaintiffs' request for written responses to the RFPs—Hulu has done enough work to satisfy plaintiffs' constantly changing requests; and (2) set reasonable deadlines to complete summary judgment briefing for the motion Hulu filed on August 26, 2014.

## II. Discovery Status—Source Code Inspection

**A. Plaintiffs' Position**

Based on the following, Plaintiffs request that the Court permit the parties to contact the Court in the event of discovery disputes arising during Plaintiffs' review of Hulu's source code November 12-14, 2014.

1. After much negotiation, on October 14, 2014, the parties filed a proposed Stipulated Protective Order Concerning Confidential Source Code (Dkt. 242), which the Court entered on October 16 (Dkt. 243).

---

[1] In addition, on October 10, 2014 Hulu timely fulfilled its promise to produce documents pertaining to plaintiffs' "follow-up" discovery. This included documents concerning the implementation of the "Like" button, discussions with Facebook regarding the same, and Hulu downloads of information Facebook provided to developers. It also included correspondence and documentation related to Facebook code.

1      2. On Monday, October 27, 2014, after Plaintiffs had had a number of communications with
2  Hulu regarding the relevance of the allegations discussed in Section I, above, Hulu represented:
3  "[W]e are agreeing to produce the code for inspection that you requested." Hulu stated it would
4  provide source used to render the Show and Watch pages and "[a]ny source code files that
5  include any mention of Facebook."
6      3. Relying on this representation by Hulu, Plaintiffs and Hulu have now scheduled
7  Plaintiffs' inspection of source code to take place November 12-14 in Los Angeles. (Previously,
8  because Hulu had not committed to provide the necessary code, Plaintiffs had engaged, but then
9  lost, several consultants who had to take other engagements with earlier, firm dates.)
10     4. However, Plaintiffs have explained to Hulu today that it is possible that "Facebook" or
11 "fb" might not be mentioned in code that is part of the chain between Hulu's acquisition of a
12 user's Facebook ID and Hulu's transmission of the Facebook ID back to Facebook, along the
13 user's video selection.
14     5. In addition, because Hulu is not permitting inspection of its full code base, but only the
15 subset that Hulu considered responsive or relevant, it is possible Plaintiffs' consultant may reach
16 dead ends and request code Hulu has not provided.
17     6. Further, Plaintiffs believe Hulu's review of source code selected by Plaintiffs should be
18 limited to privilege and not relevance.
19     7. Further, Plaintiffs request that, in the interest of time and efficient review, Hulu
20 electronically produce the source code selected by Plaintiffs, as it has done for other Attorneys-
21 Eyes-Only documents.
22     8. Therefore, to facilitate a successful completion of Plaintiffs' inspection without the need
23 for further litigation or another inspection, Plaintiffs ask that the parties be permitted to contact
24 the Court to resolve disputes that may arise during inspection.
25 **B. Hulu's Position**
26     Initially, Hulu made available only the relevant code (code used to load the Facebook
27 "Like" button). But in the interest of resolving this discovery dispute, Hulu has agreed to
28 provide all of the source code that references "Facebook." Plaintiffs have agreed to inspect this

code on November 12–14. At this time, there are no source code-related issues for the Court to resolve. To the extent any disputes arise after plaintiffs inspect the source code, Hulu intends to work with plaintiffs to resolve those disputes. Hulu does not object to the Court permitting the parties to contact the Court in the event of discovery disputes arising during plaintiffs' review of Hulu's source code November 12–14, 2014, but hopes to resolve these issues without involving the Court.

### III. Discovery Status—Plaintiffs' Seventh Set of Requests for Production

**A. Plaintiffs' Position**

1. Hulu proposed certain search terms to identify documents responsive to Plaintiffs' Seventh Set of Document Requests.

2. Plaintiffs have conducted an initial review of Hulu's proposed search terms and provided extensive feedback to Hulu, including the observation that it did not appear the requests had been formulated with client input and the technical nature of responsive documents required that input.

3. However, based on Hulu's October 27 statement that it has not yet conferred with Hulu personnel regarding effective search terms on issues that are exclusively within the knowledge of those persons, Plaintiffs do not believe Hulu has yet proposed final search terms that Hulu could reasonably believe are effective in obtaining documents responsive to Plaintiffs' Seventh Set of Requests for Production. Below, Hulu now states that Hulu personnel have reviewed its October 27 search term proposal and have nothing to add, so Plaintiffs will provide Hulu their proposed revisions tomorrow.

4. In addition, Hulu has stated it does not believe RFP Nos. 50–52 and 55–57, requesting log files[2] of user interactions, are relevant to knowledge and are only potentially relevant to class certification and so refuses to produce the requested documents at this time.

---

[2] *See* Plaintiffs' Seventh Set of RFPs ¶B(4)(h): "'Log Data' is defined as a collection of Transaction-Level Data, including but not limited to: web server logs, web services logs, system logs, application logs and databases, log analysis output caches, and archives of such data.

5. Hulu has stated that it does not have log files but does have a "massive database" that has not been searched for responsive information.

6. Plaintiffs have explained that, while Hulu's code may show what would happen when executed, Hulu's statements about its database lead Plaintiffs to believe it may include information showing what *did* happen to Plaintiffs, and so is not redundant information.

7. The parties need to meet and confer to discuss and ESI protocol for Hulu search of this database.

8. To the extent Hulu claims not to have any log files, Plaintiffs believe this raises a preservation issue, which they reserve the right to address at a later time.

9. Lastly, Hulu has not provided a written response to each of Plaintiffs' requests in their Seventh Set of Requests for Production while, at the same time, based its summary judgment motion on the absence of documents and continuing to generally dispute the relevance of Plaintiffs' requests, especially as to RFP Nos. 50–52 and 55–57. Further, Hulu maintains that it will conduct a relevance review of documents produced other than source code. Particularly under these circumstances, Plaintiffs are entitled to and need request-specific responses to confirm Hulu's intended response or objection to Plaintiffs' requests.

**B. Hulu's Position**

Regarding **search terms**, Hulu personnel have confirmed that its list of search terms will capture all relevant information. Hulu does not believe there is any outstanding dispute on search terms.

With respect to Hulu's **user database**, there is no information contained in that database that would be relevant to Hulu's motion for summary judgment on knowledge. The database contains the users' video watch history and has highly sensitive and personal user information. Plaintiffs may simply be misunderstanding what Hulu's user database contains. Therefore, Hulu is willing to provide the information from this database for the named plaintiffs in this case. To the extent plaintiffs continue to argue that this database is relevant to Hulu's motion for summary judgment, Hulu will request that the Court intervene.

With respect to plaintiffs' request for **written responses to its RFPs**, that is nothing but a make-work project to drive up Hulu's costs and expend valuable time.  There is no need or justification for this.  This is informal discovery, after the discovery cut-off date, and Hulu has already given plaintiffs, in writing, the exact search criteria and told plaintiffs exactly what it will produce.

With respect to plaintiffs' claim that they will have to review **125,000 additional documents**, which will further delay their filing of an opposition brief, that is a baseless exaggeration and untrue.  Hulu anticipates producing less than 1,000 additional documents beyond the additional production it has already made of approximately 800 documents.  The many lawyers at the three plaintiffs' law firms can review these documents in a few days.

### IV. Scheduling Considerations

**A. Plaintiffs' Position**

1. Based on the scheduled source code inspection and the stipulated time for Hulu's review of code selected by Plaintiffs, Plaintiffs expect to receive source production November 19, 2014, at the earliest. Plaintiffs note that they have had multiple consultants available at various times before the currently scheduled inspection but had not received confirmation until this week that Hulu would produce what appears to be adequate information to inspect. The inspection itself will consist of selecting likely relevant source code in a compressed period of time, under observation by Hulu counsel; it will not include analysis of the source code selected. That analysis will be performed by an expert engaged by Plaintiffs.

2. Plaintiffs' analysis expert has stated that, within four business days of receiving the produced source code from Hulu (which Plaintiffs expect Hulu to provide by November 19), he can evaluate the volume and general content type of the source code produced and provide an estimate the time required for analysis and reporting which, at a minimum, will require ten working days. Thus, with the Thanksgiving holiday, Plaintiffs cannot reasonably expect to even have their expert's findings until, December 5, 2014, at the very earliest.

3. In addition, Hulu has so far produced almost 13,000 pages of documents within the last two weeks. Based on Hulu's representations of preliminary results of searches for documents

responsive to Plaintiffs' Seventh Set of Requests for Production, Plaintiffs anticipate a minimum of 5,000 more documents with "family" documents exceeding 123,000 (see Exhibit A provided by Hulu on Oct. 27 which indicates search results on Hulu's corpus locating this number of documents), which Hulu must initially review before producing and Plaintiffs must then review the documents for knowledge-related content. Hulu has made no representation of when it will complete this production, and Plaintiffs' prior experience with Hulu's production indicates it would not be reasonable to expect this production to be complete for at least some weeks.

4.  Plaintiffs will require reasonable time to review these documents and incorporate the expert's findings into their brief, and will devote the resources necessary to do so efficiently.

5.  Based on the above, assuming Plaintiffs have had a reasonable opportunity to review Hulu's substantial document production, Plaintiffs will be able to file their brief two weeks after the expert provides his declaration to Plaintiffs.

6.  Taking year-end/beginning holidays into account, Plaintiffs respectfully request January 15, 2015 for the filing of their summary judgment opposition, but with an intervening, telephone case management conference to confirm the parties' statuses.

**B.  Hulu's Position**

Hulu has moved as quickly as possible to search for, review, and produce relevant information in response to plaintiffs' requests.  Although Hulu is willing to give plaintiffs a reasonable amount of time to review these materials and prepare their opposition, Hulu does not believe that plaintiffs' request to delay their opposition to January 2015 is reasonable.

Plaintiffs told the Court at the October 9, 2014 CMC that, after they received Hulu's discovery, they would need *no more than a week or two* to prepare their summary judgment opposition.  Hulu's production will be complete by November 12, therefore Hulu proposes the following schedule, which provides plaintiffs with more than that amount of time:

Plaintiffs' Opposition:     December 1, 2014

Hulu's Reply:     December 22, 2014

Hearing:     January 15, 2015

Dated: October 31, 2014

By: s/Scott A. Kamber
Scott A. Kamber

Scott A. Kamber (pro hac vice)
skamber@kamberlaw.com
David A. Stampley (pro hac vice)
dstampley@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Deborah Kravitz (SBN 275661)
dkravitz@kamberlaw.com
KAMBERLAW LLP
141 North Street
Healdsburg, CA 95448
Telephone: (707) 820-4247
Facsimile: (212) 920-3081

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Brian R. Strange (Cal. Bar. No. 103252)
LACounsel@earthlink.net
Gretchen Carpenter (SBN 180525)
gcarpenter@strangeandcarpenter.com
STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210

Joseph A. Malley (pro hac vice)
malleylaw@gmail.com
LAW OFFICE OF JOSEPH A. MALLEY
1045 North Zang Blvd.
Dallas, Texas 75208
Telephone: (214) 943-6100
Facsimile: (310) 943-6170


By: s/Robert Schwartz

Robert Schwartz

ROBERT M. SCHWARTZ (S.B. #117166)
rschwartz@omm.com
VICTOR JIH (S.B. #186515)
vjih@omm.com
STEVEN M. DUNST (S.B. #281848)
sdunst@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
Telephone:(310) 553-6700
Facsimile: (310) 246-6779

SIMON J. FRANKEL (SB# 171552)
sfrankel@cov.com
EMILY JOHNSON HENN (SB# 269482)
ehenn@cov.com
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000

Attorneys for Defendant, Hulu, LLC

**ATTORNEY ATTESTATION**

Pursuant to General Order 45, I, David A. Stampley, hereby attest that concurrence in the filing of this document has been obtained from Robert Schwartz.

Dated: October 31, 2014                By:  s/David A. Stampley
                                            David A. Stampley