1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10                                San Francisco Division

11

12   JOSEPH GARVEY, et al.,                  Case No.  11-cv-03764-LB

                 Plaintiffs,

13
                                             ORDER ON PRIVILEGED
14       v.                                  DOCUMENTS

15   HULU, LLC,                              [ECF No. 273]

                 Defendant.
16

17                                    INTRODUCTION

18        This is a discovery dispute. The court finds this matter suitable for determination without a

19   hearing. *See* Civ. L.R. 7-1(b). The parties disagree over two documents that defendant Hulu, LLC

20   argues are partly covered by the attorney-client privilege. The parties disagree mainly over

21   whether those documents were kept sufficiently confidential. The court has reviewed the disputed

22   material *in camera* and holds both that the documents were kept confidential and that they

23   otherwise meet the criteria for the attorney-client privilege. The contested information is thus

24   exempt from discovery.

25                                     STATEMENT

26        This dispute involves information contained in two documents, or "tickets," generated by the

27   "JIRA" system that Hulu uses to track issues with and changes to its software code. (*See* ECF No.

28

United States District Court
Northern District of California

1    273 at 1.)[1] Hulu has produced both tickets under seal, but has redacted from them their allegedly

2    privileged segments.

3        A brief explanation of the JIRA system will aid this discussion. When a customer or employee

4    identifies a problem with the Hulu service, or when Hulu undertakes a project to change its

5    software code, a Hulu employee who has "administrative permissions" on JIRA will create a JIRA

6    "ticket" to address the pertinent issue. The person who creates a ticket is called the "Reporter."

7    The Reporter then assigns someone, the "Assignee," to oversee the work. The Reporter or

8    Assignee may "tag" other Hulu employees needed to resolve the problem; these additional

9    participants are "Watchers." Any of these people can "tag" other Hulu employees to ask questions

10   relevant to the issue that the ticket covers. A JIRA ticket thus serves both to manage a project and

11   to record that project's activity. (*See* ECF No. 273 at 3-4.)

12       The parties' current dispute centers on who can access JIRA and specific JIRA tickets.

13   According to Hulu: "Only the Reporter, Assignee, and Watchers . . . generally receive

14   notifications via email when the ticket is updated with a new activity." (*Id.* at 4.) This apparently

15   does not mean that only these people can *access* a ticket. Though the parties' submissions do not

16   nail this point down completely, it seems implicit in their arguments that any Hulu employee

17   authorized to access JIRA can, by purposeful or inadvertent search, find a given ticket and see the

18   communications and activity that it contains. Tickets, in other words, are not wholly restricted to

19   their direct participants. Only Hulu employees, however, can access JIRA. (*See id.* at 3 ("Hulu

20   employees can access the secure JIRA system using their corporate credentials . . . .").) Hulu says

21   that JIRA is "essential to managing [its] source code and website." (*Id.* at 6.)

22       This dispute involves information contained in two JIRA tickets. The first is titled "SR 4328."

23   The court calls this the "4328" ticket. This ticket involved "a bug that caused a deleted Facebook-

24   connected Hulu account to remain connected to Facebook." (*Id.* at 4.) Seven Hulu employees were

25   brought onto the ticket to work on fixing the bug. (*Id.*) "In the course of addressing the issue,"

26   Hulu writes, one of the participants, a software developer, "tagged Hulu in-house counsel Anne

27   _____

28   [1] Record citations are to material contained in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Bradley and, using the JIRA system, asked her for legal advice regarding the Facebook issue,

2    which Ms. Bradley provided." (*Id.*) The same developer also asked a Hulu vice president "a

3    question that would enable Ms. Bradley to advise on the legal issue," and the vice president

4    responded. (*Id.*) Hulu contends that the "sole purpose" of the exchange with Ms. Bradley was for

5    "securing legal advice." (*Id.*) Hulu redacted this material from the filed, sealed version of 4328.

6         The second ticket is titled "CORE 1130." The court will call this the "1130" ticket. Seven

7    Hulu employees were involved on the 1130 ticket "in either coding or overseeing [a] change" to

8    Hulu's code that would "remove the episode name from the watch page URLs on Hulu's website."

9    (*Id.*) "In the course of addressing the issue," a Hulu vice president "noted issues on which he

10   sought legal advice from Hulu's in-house counsel," and discussed "the implementation of what

11   Hulu's in-house counsel [had] told" him. (*Id.*) Hulu redacted this material from the filed, sealed

12   version of 1130.

13        The parties' central dispute is over whether Hulu kept these documents sufficiently

14   confidential to bring them within the attorney-client privilege. The technical issues addressed in

15   both tickets, Hulu argues, raised legal questions. The employees needed the legal advice so that

16   they could carry out their duties and fix the given technical issues; they thus turned to in-house

17   counsel for, and obtained, that legal advice. (*Id.* at 3-5.)

18        The plaintiffs argue (in sum) that confidentiality was destroyed by the fact that the JIRA

19   system is generally accessible to Hulu employees beyond those immediately participating in the

20   4328 and 1130 tickets. (*See id.* at 2.) The plaintiffs also believe that the redacted information may

21   contain underlying facts relevant to their contention that Hulu knew it was sending Facebook

22   information about the material that Hulu users were watching. (*Id.* at 1.) The plaintiffs rightly note

23   that the attorney-client privilege does not protect facts contained in otherwise protected

24   communications. (*Id.* at 3) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)).

25                                        **GOVERNING LAW**

26        The party asserting the attorney-client privilege has the burden of proving each requisite

27   element of the privilege. *E.g., United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). "The

28   attorney-client privilege protects confidential disclosures made by a client to an attorney in order

to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (citing *United States v. Chen,* 99 F.3d 1495, 1501 (9th Cir.1996)). This compact formulation contains the three most essential, and for this discussion most pertinent, parts of the privilege: the communication must be (1) with a lawyer (2) for the purpose of obtaining legal advice and (3) confidential. It is well established that "communications between corporate personnel and their in-house counsel made for the purpose of securing legal advice are protected by the privilege." *See, e.g., Chen*, 99 F.3d at 1502.

Communications within a corporation are often distributed in ways that draw additional rules from the privilege doctrine. The plaintiffs rightly note that a "need to know" standard generally governs whether the privilege shields communications that are disseminated to corporate employees. *E.g., Scholtisek v. Eldre Corp.*, 441 F. Supp. 2d 459, 463-64 (W.D.N.Y. 2006). The test is straightforward: "[D]id the recipient need to know the content of the communication in order to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication?" *Id.* (citing cases). "Only when the communications are relayed to those who do not need the information to carry out their work or make effective decisions on the part of the company is the privilege lost." *Id.* at 464 (quoting *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.,* 174 F.R.D. 609, 633 (M.D. Pa. 1997)). Furthermore, the privilege can "protect a communication between nonlegal employees in which the employees discuss or transmit legal advice given by counsel. Such communications obviously reveal privileged communications." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); *see United States v. Dish Network, L.L.C.*, 283 F.R.D. 420, 423 (C.D. Ill. 2012) ("The privilege also extends to communications about the privileged material between non-attorneys who are properly privy to the privileged information.").

## ANALYSIS

The court's *in camera* review of the redacted material confirms that the information, and its dissemination within Hulu, are both as Hulu describes them. The attorney-client privilege shields this information from discovery.

The character of the redacted content in both tickets falls within the privilege. The redactions

United States District Court
Northern District of California

United States District Court
Northern District of California

from both tickets are, or discuss, communications with a lawyer made to secure legal advice. Ticket 4328 has Hulu employees directly asking their in-house attorney for, and receiving, legal advice concerning the task that they were working on. Hulu correctly writes that the "sole purpose" of the redacted material in 4328 was to secure legal advice. That is the dead center of what the attorney-client privilege covers.

Ticket 1130 does not directly involve a lawyer. It does have Hulu employees "discussing" or "transmitting" legal advice that Hulu's in-house counsel had already provided. *See Chevron Texaco*, 241 F. Supp. 2d at 1077. The people working on the 1130 issue used this information to "carry out their work" and make "informed," "effective decisions" about the task at hand. *See Scholtisek*, 441 F. Supp. 2d at 464; *F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 147-48 (D.C. Cir. 2002) (holding that privilege covered material disseminated to employees who needed it for their work). This may indeed be said of the legal advice involved in both the 4328 and 1130 tickets. In both cases the redacted material therefore falls under the coverage of the attorney-client privilege.

In neither case was the contested information disseminated too widely to maintain confidentiality. The JIRA system is not public. Only Hulu employees may access it. Both tickets, moreover, involved only those employees who were working on the given issues and who, again, sought or discussed the legal advice they needed to effectively address the problems before them. Confidentiality is not destroyed by the possibility that other Hulu employees, not directly participating in the 4328 and 1130 tickets, could have accessed those documents over the JIRA system. *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 142 (D. Del. 1982) ("[T]hat some unauthorized personnel may purposely or inadvertently read a privileged document does not render that document nonconfidential."). Material need not be "kept under lock and key to remain confidential" for purposes of the attorney-client privilege. *See Dish Network,* 283 F.R.D. at 425. "The privileged communications were properly limited to employees who reasonably needed the information to perform their duties for the corporation." *Id.* The material was kept sufficiently confidential and is privileged.

Finally, no part of the redacted material contains facts suggesting that Hulu knew what user information (if any) was being transmitted to Facebook. The only facts remotely of this sort, in

1   either ticket, are conveyed in the respective documents' headlines. That information was not

2   redacted from either sealed ticket so the plaintiffs have it.

3                                              **CONCLUSION**

4       The court holds that the material that Hulu has redacted from the sealed exhibits to the parties'

5   joint discovery letter (ECF No. 273) is exempt from discovery under the attorney-client privilege.

6       This disposes of ECF No. 273.

7   **IT IS SO ORDERED**.

8   Dated: January 21, 2015

9

10                                                      _____
                                                        Laurel Beeler
11                                                      United States Magistrate Judge

United States District Court
Northern District of California