David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
Telephone:      (818) 990-1299
Facsimile:      (818) 501-7852

Scott A. Kamber (pro hac vice)                Brian R. Strange (SBN 103252)
skamber@kamberlaw.com                         lacounsel@earthlink.net
David A. Stampley (pro hac vice)              Gretchen Carpenter (SBN 180525)
dstampley@kamberlaw.com                       gcarpenter@strangeandcarpenter.com
KAMBERLAW, LLC                                STRANGE & CARPENTER
100 Wall Street, 23rd Floor                   1200 Wilshire Blvd., Ste. 1900
New York, New York 10005                      Los Angeles, CA  90025
Telephone:      (212) 920-3072                Telephone: (310) 207-5055
Facsimile:      (212) 202-6364                Facsimile:  (310) 826-3210

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

In Re: Hulu Privacy Litigation

) Case No. 3:11-CV-03764-LB
)
) **PLAINTIFFS' OPPOSITION TO HULU, LLC'S**
) **MOTION FOR SUMMARY JUDGMENT RE:**
) **KNOWLEDGE**
)
) Hearing Date:   February 26, 2015
) Time:           9:30 a.m.
) Courtroom:      C
) Judge:          Hon. Laurel Beeler
)
)

# REDACTED

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.  DEFENDANT MISSTATES THE APPLICABLE LEGAL STANDARD, BUT
AGREES THAT SUMMARY JUDGMENT MAY NOT BE GRANTED IF
PLAINTIFFS SHOW THAT HULU HAD ACTUAL KNOWLEDGE THAT PII
WOULD BE DISCLOSED TO FACEBOOK........................................................................3

III.  FACTUAL AND PROCEDURAL BACKGROUND.........................................................5

    A.  The Court's April 28, 2014 Order (Ecf. 194) Provides Substantial Law of
The Case Relevant To Consideration of This Motion ..............................................6

    B.  Plaintiffs' Expert's Analysis Unambiguously Concludes That Hulu Had
Actual Knowledge, And Supports That Conclusion With Dozens of
Documents As Well As An Extensive Analysis of the Hulu Source Code ............8

    C.  The Efforts By Hulu To Obfuscate the Facts and Mislead The Court And
Plaintiffs Regarding Hulu's Knowledge Was Laid Bare By The
Documents Hulu Produced Long After "All Potentially Relevant"
Documents Had Supposedly Been Produced........................................................10

IV.  HULU IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE
PLAINTIFFS HAVE ADDUCED SUFFICIENT EVIDENCE OF A GENUINE
ISSUE OF MATERIAL FACT AS TO WHETHER HULU HAD THE
REQUISITE KNOWLEDGE TO BE HELD LIABLE FOR CIVIL DAMAGES
UNDER THE VPPA............................................................................................................12

    A.  The Legal Standard For "Knowingly" Under VPPA...........................................12

        1.  The Legal Standard For "Knowingly" Was Determined By The
Court In Its April 28, 2014 Order (Ecf. 194), And Hulu Provides
No Basis For Revisiting It........................................................................12

        2.  If The Court Revisits Its Formulation of The Standard For
Knowledge Under The VPPA, It Should Only Require Plaintiffs to
Show A Voluntary and Knowing Disclosure, Rather Than Hulu's
"Actual Knowledge" Argument Regarding Facebook's Use Of The
Data ...........................................................................................................13

        3.  This Court Should Again Reject Hulu's Argument That
Knowledge Under The VPPA Requires That Plaintiffs Present
Evidence That Hulu Also "Knew" What Facebook Ultimately Did
With The PII That Hulu Knowingly Disclosed .........................................15

    B.  Hulu's Level Of Knowledge Exceeded That Required Under The Legal
Standard Previously Enunciated By This Court, As Well As Any Legal
Standard For "Knowingly" That Could Reasonably Be Adopted ........................16

1. ████████████████████████████████ .............16

    (a) ████████████████████████
    ████████████████ ....................................16

    (b) ███████████████████████████ 18

2. ████████████████████████████████ 19

    (a) ████████████████████████████ 19

    (b)    The Hulu Privacy Policy ......................................................21

3.    Hulu has still not rebutted the documents that created a genuine issue of material fact last time .................................................21

C.    Hulu Does Not Challenge That It Had "Knowledge" Of Its VPPA Violations After Plaintiffs Filed Suit ................................................22

V.    CONCLUSION................................................................................23

## <u>**TABLE OF AUTHORITIES**</u>

CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................3

*Best v. Berard*,
   837 F. Supp. 2d 933 (N.D. Ill. 2011) ................................................14

*Bryan v. United States*,
   524 U.S. 184 (1998).............................................................................13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................................3-4

*Cent. Nat'l Life Ins. Co. v. Fid. & Deposit Co. of Md.*,
   626 F.2d 537 (7th Cir. 1980) ...............................................................4

*Devereaux v. Abbey*,
   263 F.3d 1070 (9th Cir. 2001) .............................................................4

*Gallo v. Prudential Residential Servs. Ltd. P'ship*,
   22 F.3d 1219 (2d Cir. 1994).................................................................3

*Gordon v. Softech Int'l, Inc.*,
   726 F.3d 42 (2d Cir. 2013)................................................................14

*Jones v. United States*,
   898 F. Supp. 1360 (D. Neb. 1995).....................................................14

*Kelly v. Mun. Court of Marion Cnty.*,
   852 F. Supp. 724 (S.D. Ind. 1994) ......................................................4

*Los Angeles Airways, Inc. v. David*,
   687 F.2d 321 (9th Cir. 1982) ...............................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).............................................................................3

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
   210 F.3d 1099 (9th Cir. 2000) .............................................................4

*O'Shea v. Epson Am., Inc.*,
   No. CV 09-8063 PSG, 2011 WL 3299936 (C.D. Cal. July 29, 2011).....................3

*Peacock v. Duval*,
   694 F.2d 644 (9th Cir. 1982) ...............................................................4

*Senne v. Vill. of Palatine, Ill.*,
   695 F.3d 597 (7th Cir. 2012) ......................................................13, 15

*Soriano v. Countrywide Home Loans, Inc.,*
  No. 09–CV–02415–LHK, 2011 WL 1362077 (N.D. Cal. Apr.11, 2011) ................................3

*Sterk v. Redbox Automated Retail, LLC,*
  770 F.3d 618 (7th Cir. 2014) ........................................................................ 14-15

*United States v. Jewell,*
  532 F.2d 697 (9th Cir. 1976) ..............................................................................15

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
  865 F.2d 1539 (9th Cir. 1988) .............................................................................22

STATUTES

18 U.S.C. § 2710(a)(3)..........................................................................................1

18 U.S.C. § 2710(b) ............................................................................................12

18 U.S.C. § 2724 .......................................................................................... 13-15

OTHER AUTHORITIES

FED. R. CIV. P. 56(a) ............................................................................................3

FED. R. CIV. P. 56(e) ............................................................................................4

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

In moving for summary judgment, Hulu embraces ignorance by *ignoring* this Court's April 28, 2014 Order (Ecf. 194), including its findings and holdings on the standard for knowledge, *ignoring* the millions of documents in its possession, *ignoring* its discovery obligations, and, most significantly, *ignoring* the facts that satisfy any conceivable standard for knowledge under the VPPA, establishing that Hulu knew that it disclosed PII to Facebook.

Hulu seeks to dispose of this litigation and its statutory liability to its members in less than nine pages of argument and nine documents (four of which are the same declaration and testimony excerpts presented in two prior motions, two of which are briefs in a VPPA case that seem to be of no relevance here, and three of which are publicly available documents that Hulu's outside counsel pulled from the internet).  Of the 17.8 million potentially relevant documents in Hulu's possession, not one is used in support of its motion.  And not one is used to rebut the five documents that defeated Hulu's last motion for summary judgment on this same issue.[1]

Here, summary judgment must be denied because Plaintiffs have identified genuine issues of material fact regarding whether Hulu knew that it was transmitting PII (information that "identifies a person as having requested or obtained specific video materials or services," 18 U.S.C. § 2710(a)(3)) to Facebook.  This is the formulation of knowledge under the VPPA that was previously adopted by this Court.  Ecf. 194 at 24:22-24.[2]  The facts that create the genuine issue of material fact are summarized in sections III.B. and IV.B. and are detailed in the accompanying over 25 page  report of Plaintiffs' Expert, Golden G. Richard, III, PhD ("Richard Decl."), and 45  exhibits[3].  The evidence adduced by Professor Richard can be divided into three

---

[1] In the wake of the loss of its first motion for summary judgment on the issue of knowledge, it is surprising that Hulu not only fails to rebut any of the documents that defeated its first attempt, but it also fails to even acknowledge that this Court adopted certain standards and made findings of fact that directly contradict the arguments Hulu has resurrected.

[2] All citations to individual pages of a document refer to the ECF page number.

[3] While Hulu has had its 17.8 million documents identified since June 2013, Plaintiffs have only been given the bulk of the documents needed to defend this motion within the last month, with over a thousand arriving in the past ten days.  As a result of the untimely production by Defendant Hulu, Plaintiffs reserve the right to supplement the evidentiary materials submitted herewith.

general areas that each independently demonstrates Hulu's knowledge:

- In 2010 and 2011, Hulu had direct evidence that ███████████████
  ████████████████████ Richard Decl., ¶¶ 22-42.

- Hulu told ██████████████████████████████████████████
  ██████████ *Id.* at ¶¶ 43-54.

- Hulu knew ██████████████████████████████████ *Id.* at
  ¶¶ 55-70.

The strength of the evidence now gathered regarding Hulu's knowledge seriously undermines the credibility of Hulu's repeated representations throughout this litigation that it had no knowledge that PII was disclosed to Facebook and that it had completed its production of all "potentially relevant" documents.  In light of the fact that most of the documents relied upon herein by Plaintiffs were only obtained from Hulu after months of argument and hearings before this Court, and almost a year after the close of discovery (and almost 1.5 years after Hulu represented that it had substantially completed its production in advance of scheduled depositions), it is hard to see Hulu's efforts in this litigations as anything but a deliberate effort to obfuscate the facts and mislead the Court and Plaintiffs.  This seems especially so given this Court's discussion of HULU_GAR164819, in which in an internal Hulu email exchange one author wrote, "Hulu made the judgment to accept the risk of passing identifying data 'so long as it is not passing unique, identifying information, which sounds like you might be doing here....'" Ecf. 194 at 25:19-21, quoting HULU_GAR164819 at 164825, attached to the Parisi Decl. as Exh. 3.

Hulu had knowledge of what it shared, it sought legal advice regarding the implication of the disclosure, and it consciously assumed the risks of sharing information with third parties, including Facebook.  Hulu should not be permitted to escape the consequences of its statutory violations on the motion for summary judgment presently before the Court.

1

2

**II.   DEFENDANT MISSTATES THE APPLICABLE LEGAL STANDARD, BUT AGREES THAT SUMMARY JUDGMENT MAY NOT BE GRANTED IF PLAINTIFFS SHOW THAT HULU HAD ACTUAL KNOWLEDGE THAT PII WOULD BE DISCLOSED TO FACEBOOK**

3

4

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall only grant

5

summary judgment "if the movant shows that there is no genuine dispute as to any material fact

6

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v.*

7

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those that may affect the

8

outcome of the case.  Ecf. 194 at 9 (*citing Anderson*, 477 U.S. at 248).  A dispute about a

9

material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

10

the non-moving party.  *Id.*  In ruling on a motion for summary judgment, "a court must resolve

11

all ambiguities and draw all reasonable inferences against the moving party."  *Matsushita Elec.*

12

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Soriano v. Countrywide Home*

13

*Loans, Inc.,* No. 09–CV–02415–LHK, 2011 WL 1362077, at *7 (N.D. Cal. Apr.11, 2011)

14

("[T]he district court does not assess credibility or weigh the evidence, but simply determines

15

whether there is a genuine factual issue for trial."); *Anderson*, 477 U.S. at 255 ("the evidence of

16

the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor");

17

*Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("The trial

18

court's task at the summary judgment motion stage of the litigation is carefully limited to

19

discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its

20

duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.").

21

The movant has the burden of demonstrating the absence of a genuine issue of fact for

22

trial, *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWx), 2011 WL 3299936, at *2 (C.D.

23

Cal. July 29, 2011) (citation omitted), and must identify the portions of the record demonstrating

24

this absence.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* Ecf. 194 at 9:15-17 (The

25

moving party has the initial burden of "identifying those portions of the pleadings, depositions,

26

answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable

27

issue of material fact.").

28

Here, the basis for Hulu's motion for summary judgment is not a refutation of an essential element of Plaintiffs' claims but, rather, the argument that Plaintiffs do not have sufficient evidence to carry their burden of persuasion at trial. If Hulu meets its burden of demonstrating the insufficiency of evidence, then the burden shifts to Plaintiffs, who must go beyond the pleadings and submit admissible evidence supporting their claims and showing a genuine issue for trial. *See* Ecf. 194 at 9; Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). If Plaintiffs do not produce evidence to show a genuine issue of material fact, then Hulu is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

Cases in which the underlying issue is one of motivation, intent, or some other subjective fact, such as knowledge, are particularly inappropriate for determination by summary judgment unless it is perfectly clear that there is no genuine issue of material fact. *See, e.g.*, *Peacock v. Duval*, 694 F.2d 644, 646 (9th Cir. 1982) (noting "courts have traditionally held that summary judgment is inappropriate when questions of motive predominate in the inquiry…"); *Los Angeles Airways, Inc. v. David*, 687 F.2d 321, 326 (9th Cir. 1982) (holding that "because intent is a highly subjective question, it is inappropriate to decide the issue of intent on a motion for summary judgment."); *Cent. Nat'l Life Ins. Co. v. Fid. & Deposit Co. of Md.*, 626 F.2d 537, 540 (7th Cir. 1980) (summary judgment should not be granted where it is not "perfectly clear" that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts); *Kelly v. Mun. Court of Marion Cnty.*, 852 F. Supp. 724, 736 (S.D. Ind. 1994) (motive or intent is a question of fact that the court is unable to resolve when passing on a motion for summary judgment).

Hulu misstates the standard by arguing that once it points out that there is an absence of evidence to support Plaintiffs' claims, "the burden shifts to plaintiffs to establish actual knowledge." *Compare* Ecf. 230 at 4:2-4:5 *with* Ecf. 194 at 9:28-10:2. However, merely asserting there is a lack of evidence is not enough to shift the burden on the current record. *See*

Ecf. 194 at 26 (denying Hulu's prior summary judgment motion because, *inter alia*, "the record shows fact issues about Hulu's knowledge").[4]  But, if Hulu is found to have met its burden by demonstrating that Plaintiffs do not have a sufficient quantum of evidence to carry their burden at trial, then Plaintiffs must present evidence in opposition that shows a genuine issue of material fact for trial.  *See* Ecf. 194 at 9:19-9:21; 9:25-9:28.  Thus, in order to prevail, Plaintiffs need not establish Hulu's actual knowledge but, rather, must merely present sufficient facts to establish a genuine issue of material fact as to knowledge.  *See* Ecf. 194 at 9:28-10:2.

While the parties differ as to the formulation of the standard of proof, Hulu agrees that Plaintiffs can satisfy their burden and defeat its motion for summary judgment if they present "'specific facts' that Hulu had actual knowledge that PII would be disclosed (to Facebook)." Ecf. 230 at 3:19-3:20.  As demonstrated herein and in the accompanying exhibits, Plaintiffs have substantial evidence of Hulu's actual knowledge that it transmitted PII to Facebook.  By Hulu's own admission, the presentation of such facts by Plaintiffs necessarily defeats Hulu's motion for summary judgment.

## III.   FACTUAL AND PROCEDURAL BACKGROUND

Notwithstanding Hulu's less than forthcoming behaviors during the discovery process, and its long standing effort to obfuscate and mislead this Court and Plaintiffs regarding the true nature of the facts, Plaintiffs can now demonstrate sufficient evidence regarding Hulu's knowledge under the VPPA to create a genuine issue of material fact for trial.[5]  In demonstrating these facts in the appropriate context, Plaintiffs first set forth the law of the case regarding

---

[4] Here, Hulu again moves for summary judgment on knowledge without the support of any of Hulu's own documents.  Instead, Hulu relies on the same declarations and adds several publicly available documents regarding Facebook development, most of which have not even been authenticated to show they were in place during the relevant time period.

[5] Prior to class certification, Plaintiffs may not cross-move or otherwise seek summary judgment without potentially jeopardizing the class claims.  Plaintiffs' argument herein, that the adduced facts are sufficient to create a genuine issue of material fact for trial, is in no way intended to concede that Plaintiffs believe that Hulu could defeat a summary judgment motion by Plaintiffs.

---

evidence and knowledge on a motion for summary judgment.[6]

**A.   The Court's April 28, 2014 Order (Ecf. 194) Provides Substantial Law of The Case Relevant To Consideration of This Motion**

The Court formulated the standard for knowledge under the VPPA as follows:

> If Hulu did not know that it was transmitting both an identifier and the person's video watching information, then there is no violation of the VPPA. By contrast, if it did know what it was transmitting, then (depending on the facts) there might be a VPPA violation.

Ecf. 194 at 23:22-24.  It seemed that the gravamen of the Court's analysis was set forth as follows:

> Hulu may not have been able to read Facebook's cookies, but if it knew what they contained and knew that it was transmitting PII – that is, information that "identifies a person as having requested or obtained specific video materials or services," 18 U.S.C. § 2710(a)(3) – then Hulu is liable under the VPPA.

*Id*. at 24:22-24.

In denying Hulu's motion for summary judgment on the Facebook claims, the Court made numerous findings regarding Hulu's implementation of the Facebook Like Button. Specifically, the Court found that the "lu and the c_user cookies – sent with the datr cookie at the same time the watch page loaded with the video name – together reveal information about what the Hulu user watched and who the Hulu user is on Facebook", and that this was a "Hulu-initiated transmission." Ecf. 194, 20:11-14.  Thus, the link between user and video was more obvious than it was for the comScore-based claims because the transmission to Facebook included both the video name and the Facebook user cookie.  *Id*. at 22:13-15.  The "Hulu-Facebook interaction here was a Hulu-prompted request from the Hulu user's browser to Facebook to load the Like Button [] that occurred before Facebook sent any data or instructions or cookies." Ecf. 194, 20:24-21:3.

---

[6] It should be noted that Hulu's opening brief managed to only include three selective cites, encompassing approximately 10 lines, of the Court's 27 page April 2014 summary judgment Order.  *See* Ecf. 230 at 3, 7 and 10.

Hulu did not just send an "anonymous ID" to Facebook, but "information that identifies the Hulu user's actual identity to Facebook." Ecf. 194, 21:5-6. While the record showed that it was straightforward to develop a web page that did not communicate information to Facebook, the Facebook user cookies were sent because Hulu chose to include the Like Button on watch pages which in turn sent information to Facebook about the user. *Id*. at 21:11-12. Further, relying on Dr. Calandrino, the Court explained that the "Facebook ID cookies [] were transmitted with the watch page and the embedded video name . . . [and this was a] transmission of the Hulu user's actual identity on Facebook and the video that the Facebook user was watching." *Id*. at 21:13-16, *citing* Dr. Calandrino, ¶¶ 67-69. This transmission of the Facebook cookies was all done without the need for a user to make any decision about sharing information about video viewing. *See id*. at 21:17-18.

In finding that Hulu did not carry its burden regarding its "knowledge" argument, the Court concluded that "arguing that transmitting cookies is just the normal way that webpages and the Like Button load is not enough to negate knowledge or show the absence of evidence about knowledge." *Id*. at 25-27 (citing *Celotex*, 477 U.S. at 325). In addition, the Court found that there were further specific "fact issues" about Hulu's knowledge[7]:

- Emails "about cookie placement establish that Hulu knew that vendors can place cookies on the user's computer." Ecf. 194, 25:9-10, citing HULU_GAR164819 (and see HULU_GAR231508), attached to the Parisi Decl. as Exhs. 1 and 2.

- "Emails also show Hulu knew that cookies with identifying information were sent, Hulu's awareness that vendors could collect data and use it for other purposes to build a profile or 'identify a user in the real world,' and Hulu's recognition of the VPPA implications." Ecf. 194, 25:10-14, citing HULU_GAR164819, HULU_GAR 177541, and HULU_GAR019274, attached to the Parisi Decl. as Exhs. 3, 4 and 5.

---

[7] It should be noted that Hulu's renewed motion only mentions these several facts dismissively to create a straw man, by using the Court's observation, about how a negotiated exchange of cookies could show a VPPA violation, to conclude that, "None of the emails cited by plaintiffs shows any such negotiation. In fact, none of the emails relates to the 'Like' button, Facebook cookies, or even Facebook generally." Ecf. 230 at 10:23-25. Yet, Hulu did not use any of its 17.8 million documents to offer any basis for why the Court's above-quoted findings were incorrect.

- Hulu internal emails also state that "we can't rule out the possibility that someone might object to these practices for these or other reasons. But I said that Hulu has made the judgment that it would accept the legal risk given the business benefits of these analytics." Ecf. 194 at 25:15-19, citing HULU_GAR164819 at 164822, attached to the Parisi Decl. as Exh. 3.

- The Court also quoted an email which stated that "Hulu made the judgment to accept the risk of passing identifying data 'so long as it is not passing unique, identifying information, which sounds like you might be doing here. . . .'" Ecf. 194 at 25:19-21, quoting HULU_GAR164819 at 164825, attached to the Parisi Decl. as Exh. 3.

The Court concluded:

> the cookies are transmitted when the watch page with the video name loads, and the point of the transmission is to load the Like button. The process of loading the Like button was not the decision of the Facebook/Hulu user, and instead, Hulu wrote the code that transmitted identifying information without the user's permission.

Ecf. 194, 26:2-5.[8] With this, the Court found that the "record shows fact issues about Hulu's knowledge" and denied Hulu's initial motion for summary judgment. *Id.* at 26:8-9.

### B.   Plaintiffs' Expert's Analysis Unambiguously Concludes That Hulu Had Actual Knowledge, And Supports That Conclusion With Dozens of Documents As Well As An Extensive Analysis of the Hulu Source Code

Plaintiffs retained Golden G. Richard, III, PhD, a professor and founder of a digital forensics firm, with a specialized background in computer science that makes him ideal to opine on the question of knowledge based on a thorough analysis of the documents and source code produced by Hulu. *See* Richard Decl.,[9] at ¶¶ 1-2. Professor Richard was asked to state his expert opinion as to whether Hulu knew it disclosed to Facebook the identities and specific video materials requested or obtained by Hulu visitors who were registered Facebook users. *Id.* at 3.

---

[8] Before concluding, the Court shared another hypothetical set of facts that would show a VPPA violation, "[i]f Hulu and Facebook negotiated the exchange of cookies so that Facebook could track information (including watched videos)" or "if Hulu knew that it was transmitting Facebook ID cookies and video watch pages." Ecf. 194 at 26:5-8.

[9] As a matter of convention and for the convenience of the Court, all references to the Richard Declaration will be by paragraph number, and the citation to the paragraph is intended to include by reference all exhibits cited in that paragraph.

1       After extensive analysis, Professor Richard stated that it is his opinion that "Hulu knew

2 ███████████████████████████████████████████████

3 ████████████████████████" *Id.* at ¶ 20. Further, he opined that "██████

4 ████████████████████████████████████

5 ██████████████████████████" *Id.* Professor Richard further states –

6     • "Hulu knew that, ████████████████████████████████ *Id.* at ¶ 20.

7

8     • From 2010 to the present, ████████████████████████████

9 ████████████████████████████████████ *Id.* at ¶

10     17.

11     • When testing its own web pages, ███████████████████████

12 ████████████████████████████████████████

13 ████████████████████████" *Id.* at ¶ 42.

14     • Hulu's knowledge is demonstrated by ██████████████████████

15 ████████████████████████████████████

16 ██████████████████████████████

17 ████████████████ *Id.*

18     • In addition, Hulu knew ████████████████████████████

19 ████████████████████████████████████ *Id.* at ¶ 18.

20

21     • Hulu also learned that ██████████████████████████████

22 ████████████████████████████████████████

23 ████████████████████" *Id.*

24     • The expert's findings are not limited to ███████████████████

25 ████████████████████████████████████████

26 ████████████████" *Id.* at ¶21.

A more thorough presentation and application of Professor Richard's analysis to the legal

27 questions may be found below at section IV.B.

28

---

1    Finally, the expert's findings are not limited to "█████████████████

2    █████" *Id*. at ¶ 21. "████████████████████████████████████████████

3    ████████" *Id*. (emphasis added).

**C.    The Efforts By Hulu To Obfuscate the Facts and Mislead The Court And Plaintiffs Regarding Hulu's Knowledge Was Laid Bare By The Documents Hulu Produced Long After "All Potentially Relevant" Documents Had Supposedly Been Produced**

Hulu's brief in support of its Motion for Summary Judgment is replete with misrepresentations and misleading statements.  Chief among these is the claim that "Hulu gave plaintiffs all potentially relevant communications, including internal Hulu emails…and none shows that Hulu 'knowingly' disclosed PII to Facebook."  Ecf. 230 *at* 6:7-11.[10]  This statement is plainly contradicted by the fact that Hulu did not disclose it had disregarded, without prior review, approximately 17.2 million documents as irrelevant until after it had filed its Motion for Summary Judgment.[11]  *See* Joint Letter Brief, Ecf. 255 at p. 2-4 and 8 (In the beginning of the letter brief, Plaintiffs understood there were 2.4 million total documents, but while drafting the letter they learned that actually 17.8 million documents had been collected but only 584,000 had been searched as document requests were served).  Notably, many of the documents Hulu unilaterally disregarded are highly relevant to showing that Hulu did, in fact, knowingly disclose PII to Facebook.  For example, an email exchange between Hulu employees discussing ████

████████████████████████████████████████████████████

---

[10]  Hulu repeatedly underscored the number of pages and documents it had produced in an attempt to give the appearance that all the pertinent documents and information had already been provided.  *See* Ecf. 230, at 2:9 ("Hulu has produced over 250,000 pages of documents"); 2:15 ("Nothing in this comprehensive record…"); 8:9-10 ("Plaintiffs had an opportunity to find evidence on Hulu's knowledge…"); 9:1 ("Despite the hundreds of thousands of pages of documents produced…").  It is telling that Hulu never made mention of the much larger number of documents it had failed to even search for relevant information.

[11]  Hulu also produced 1,015 documents on January 13 and an additional 200 documents on January 16, which Plaintiffs have not yet been able to fully analyze to determine their relevance to the issues in this motion.  Hulu also produced on January 16 a privilege log identifying over 2,500 documents which were either redacted or completely withheld purportedly due to the attorney-client and/or work product privileges, though Plaintiffs have not yet determined if a challenge to any of these is necessary.

1    produced only in October of 2014, almost two months after Hulu had filed its Motion.[12]  *See*

2    HULU_GAR257757, Exh. 3 to the Richard Decl.  Indeed, Plaintiffs' expert relies on no less than

3    fifteen documents produced by Hulu *after it filed its Motion*, including documents discussing

4    cookie implementation and code showing that the Like Button was to load with photos of each

5    Hulu user's Facebook friends.  *See e.g.*, Richard Decl., ¶¶ 29 and 42.

6          Hulu also misleads this Court when it asserts that none of the information gathered to

7    date shows Hulu knowingly disclosed PII to Facebook.  In addition to the email exchange

8    discussed above, which demonstrates *that* Hulu knew ████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████████████████   Richard Decl., ¶¶ 38-40.  Recently produced

11   documents include ████████████████████████████.  *Id*. at ¶¶

12   39.1 to 39.3. ████████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████.  *Id*. at ¶ 42.

16         Hulu's repeated assertions that Tom's deposition testimony belies Plaintiffs' claims are

17   also deceptive and misleading.  Ecf. 230 at 8:22-9:9.  Hulu, for example, makes much of the fact

18   that Tom stated he was "not aware of any cookies that are actually being referenced by Hulu

19   through the 'Like' button integration code."  Ecf. 230 at 8:23-25.  This testimony is misleading.

20   Tom also testified with respect to Facebook that "there is a relationship in terms of having them

21   be a partner and performing integration," and he further explained that due to their relationship,

22   "instead of wading through documentation, [you] talk to another developer."  Tom Depo., Ecf.

23   230-7, p. 285:3-19. ████████████████████████████████████████

24   ████████████████████████████████████████████████████

────────────────────────────

25   ────────────────────

[12]  Benefitting from its failure to produce all relevant documents and information, Hulu

26   claimed that "[n]one of the emails cited by plaintiffs…relates to the 'Like' button, Facebook
     cookies, or even Facebook generally."  Ecf. 230, 8:23-25.  However, ██████████████

27   ████████████████████████████████████████████████████████

28   ████████████████████████

Hulu's production of documents.  Parisi Decl., ¶4.  Documents produced by Hulu indicate that it

███████████████████████████████████████████████████

████████████████████."  Parisi Decl., Ex. 6 HULU_GAR920983.  Hulu also relies on

Tom's testimony that he had no knowledge of communications between Hulu and Facebook

employees regarding the content or function of cookies.  Ecf. 230 at 9:5-6.[13]

Hulu also ignores the hard truth that, had the requested and relevant documents been

timely produced pursuant to the Rules of Federal Procedure, Plaintiffs would have had the

opportunity to impeach Mr. Tom and Mr. Wu with the multitude of documents that have now

been produced, that contradict Hulu's oft-repeated misstatement that it had no knowledge that its

disclosures to Facebook were PII.

**IV.    HULU IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS HAVE ADDUCED SUFFICIENT EVIDENCE OF A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER HULU HAD THE REQUISITE KNOWLEDGE TO BE HELD LIABLE FOR CIVIL DAMAGES UNDER THE VPPA**

**A.    The Legal Standard For "Knowingly" Under VPPA**

**1.    The Legal Standard For "Knowingly" Was Determined By The Court In Its April 28, 2014 Order (Ecf. 194), And Hulu Provides No Basis For Revisiting It.**

The VPPA makes a video tape service provider like Hulu liable for damages if it

"knowingly discloses, to any person, personally identifiable information concerning any

consumer of such provider . . . ."  18 U.S.C. § 2710(b).  As this Court held:

> If Hulu did not know that it was transmitting both an identifier and
> the person's video watching information, then there is no violation
> of the VPPA.  By contrast, if it did know what it was transmitting,
> then (depending on the facts) there might be a VPPA violation.

Ecf. 194 at 23:22-24.  The Court then set forth its formulation for knowledge as an element of

liability under the VPPA:

> Hulu may not have been able to read Facebook's cookies, but if it
> knew what they contained and knew that it was transmitting PII –

---

[13] Hulu conveniently fails to note that Tom also testified he was not privy to all conversations between Hulu and Facebook, and that he expected there to be a lot of exchanges between integration partners such as Hulu and Facebook.  Ecf. 230-7 at 16:3-25.

that is, information that "identifies a person as having requested or obtained specific video materials or services," 18 U.S.C. § 2710(a)(3) – then Hulu is liable under the VPPA.

*Id*. at 24:22-24.  This provides further context to the Court's observation that, "it may be dispositive [that there was no VPPA violation] if Facebook could not auto-authenticate a user when the Like Button loaded."  *Id*. at 24:9.

In its motion, Hulu spends a full page (over 11% of its brief) seeking to reformulate its prior analysis on the legislative history of the VPPA and what knowledge is required to satisfy the VPPA with no acknowledgement that this Court has already made contrary findings on the VPPA's requirement of a "knowing" disclosure to "any person." *Compare* Ecf. 230 at 7:1-8:2 *to* Ecf. 194 at 22:23-23:24.  "The emphasis is on disclosure, not comprehension by the receiving party." *Id*. at 22-23, citing S. Rep. 100-599, at *12.  As the Court explained by analogy, "if a video store knowingly hands a list of Judge Bork's rented videos to a Washington Post reporter, it arguably violates the VPPA even if the reporter does not look at the list."  *Id*. at 23:2-3.  "Hulu's transmission of the Facebook user cookies needs to be the equivalent of knowingly identifying a specific person as 'having requested or obtained specific video materials or services.'"  *Id*. at 23:19-21, citing 18 U.S.C. § 2710(a)(3).

> **2.**     **If The Court Revisits Its Formulation of The Standard For Knowledge Under The VPPA, It Should Only Require Plaintiffs to Show A Voluntary and Knowing Disclosure, Rather Than Hulu's "Actual Knowledge" Argument Regarding Facebook's Use Of The Data**

Hulu does not contest that, in other analogous circumstances, "knowingly" is interpreted to require mere proof of knowledge of the facts that constitute the offense. *Bryan v. United States*, 524 U.S. 184, 192–93 (1998); (Hulu Mot. at 4).  Hulu "knowingly" provided personally identifying information to a third party in violation of the VPPA if it made a "[v]oluntary action" to provide such information. *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 603 (7th Cir. 2012) (en banc) ("Voluntary action, not knowledge of illegality or potential consequences," is sufficient to constitute a "knowing" violation);[14] *see also Gordon v. Softech Int'l, Inc.*, 726 F.3d

---

[14] The *Senne* court interpreted the "knowingly" standard under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2724, which has substantially similar language and largely parallels the language of the VPPA.  Courts interpreting the VPPA often refer to cases

42, 54 (2d Cir. 2013) (explaining that the adverb "knowingly" as used in the DPPA—a statute substantially similar to the VPPA—"is not inconsistent with the notion that some duty of care exists" and that "[c]ase law is replete with situations where knowledge contemplates what a party 'knew or should have known'").

Thus, it is not necessary for Plaintiffs to prove that Hulu "had actual knowledge . . . that Facebook's c_user cookie contained data . . . that could conceivably identify an individual, and... what Facebook did, if anything, with that data," as Hulu argues. Ecf. 230 at 5–6. To be sure, actual knowledge is not a requirement under the plain language of the VPPA. *See Best v. Berard*, 837 F. Supp. 2d 933, 942 (N.D. Ill. 2011) (finding an act is made "knowingly" where the offending party takes "a deliberate act constituting disclosure" and does not require "knowledge that the disclosure was legally forbidden"). "Indeed, the common and ordinary meaning of the word 'knowingly' is merely that the actor must be aware of what he or she is doing and does not act because of some mistake or accident." *Jones v. United States*, 898 F. Supp. 1360, 1376 n.16 (D. Neb. 1995), *rev'd on other grounds*, 97 F.3d 1121 (8th Cir. 1996). The VPPA clearly does not require *actual knowledge* as Hulu urges this Court to find. Hulu invites this Court to adopt a standard not set forth in the statutory language and contrary to the express dictates for statutory construction. This Court should decline Hulu's invitation.

Plaintiffs need only demonstrate that Hulu voluntarily provided user-specific information and videos watched to a third party; there is no requirement that Plaintiffs allege—much less prove that Hulu knew—what that third party might do with that information. And, as detailed below, Hulu did know it was disclosing PII to Facebook, and Plaintiffs have ample evidence of Hulu's knowledge. Indeed, even a "mere technical violation" of the VPPA is actionable. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014). Hulu does not dispute that its (1) placement of the Like Button, Facebook cookies (including the c_user cookie), and its routine requests for Facebook to determine users' logged-in status; and (2)

---

interpreting the DPPA, and visa-versa, due to their substantially similar statutory language and legislative purposes.

subsequent transfer of PII data to Facebook, were voluntary.  Accordingly, Hulu's Motion for

Summary Judgment should be denied.

### 3. This Court Should Again Reject Hulu's Argument That Knowledge Under The VPPA Requires That Plaintiffs Present Evidence That Hulu Also "Knew" What Facebook Ultimately Did With The PII That Hulu Knowingly Disclosed

In direct contradiction to this Court's factual findings (and holding) in its April 28, 2014

Order, Hulu argues that Plaintiffs must demonstrate that "Hulu [knew] that Facebook would

make the deliberate effort to combine two separate pieces of data: the video title from Hulu's

watch page URL and the Facebook User ID from the Facebook c_user cookie."  Ecf. 230 at

9:22-24.  However, as explained above, this Court has previously held that unlike the Comscore

facts, the data transmitted to Facebook was not "two separate pieces of data."  *See* Ecf. 194 at

22:13-14 (the link between user and video was more obvious than it was for the Comscore-based

claims because the transmission to Facebook included both the video name and the Facebook

user cookie).  Further, in formulating the standard for knowledge in its prior Order, the Court

expressly rejected adopting this formulation.  Ecf. 194 at 22:23-23:3.  *See also* Ecf. at 23:2-3 ("if

a video store knowingly hands a list of Judge Bork's rented videos to a Washington Post

reporter, it arguably violates the VPPA even if the reporter does not look at the list").

Hulu's argument is nearly identical to the argument put forth by the defendant in *Senne,*

*supra,* 695 F.3d at 603.  In *Senne*, the defendant argued that, in order for its disclosure of PII to a

third party to be made "knowingly," as required by the statute, the police officer making the

disclosure must have "know[n] that anyone other than [plaintiff] would view it."  *Id.*  The

Seventh Circuit found this argument unpersuasive for two reasons: "First, it rests on the

Village's erroneous notion that, in order for a disclosure to occur, there must be an identified

recipient.  Second, it fundamentally misunderstands the term 'knowingly.'  Voluntary action, not

knowledge of illegality or potential consequences, is sufficient to satisfy the mens rea element of

the DPPA."  *Id.*  Just as in *Senne*, Plaintiffs here need not even identify the third party recipient

of the PII (although Plaintiffs have done so), let alone put forth evidence showing that Hulu

knew what that third party recipient would do with the PII it unlawfully provided.  *See United*

*States v. Jewell*, 532 F.2d 697, 698–704 (9th Cir. 1976) (en banc) (finding that, in a criminal case, jury instruction that defendant could be found in "knowing" violation of law if he was deliberately ignorant of the circumstances was proper, even under the heightened beyond a reasonable doubt standard).[15]

**B.**  **Hulu's Level Of Knowledge Exceeded That Required Under The Legal Standard Previously Enunciated By This Court, As Well As Any Legal Standard For "Knowingly" That Could Reasonably Be Adopted**

    **1.**  **Through Hulu's own code development and testing efforts, Hulu saw first-hand that it was sending users' identifiers to Facebook**

The evidence shows that ███████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████ *Id.* at ¶¶ 30-31.

    **(a)**  **Hulu knew from the beginning that the Like Button identified users to Facebook—and Hulu explicitly instructed Facebook to do just that**

When Hulu first implemented the Like Button on its web pages, ██████████████
█████████████████████████████████████████████████
Richard Decl., ¶¶ 23-25.  In fact, █████████████████████████ *Id.* at ¶ 28. Here is how it worked:

- ██████████████████████████████████████████████
  ████████████████████████████████████████████
  █████████████████████████

  █ ████████████████████████████████████████████
  ████████████████████████████████████████
  █ ██████████████████████████████████████████████
  ██████████████████████████████████████████

---

[15] In *Jewell*, the defendant could be found in "knowing" violation of the law where he was deliberately ignorant of the circumstances under a beyond a reasonable doubt standard.  If a criminal jury is authorized to treat deliberate ignorance of the circumstances as evidence of "knowledge" under a beyond a reasonable doubt standard, surely Plaintiffs' evidence of Hulu's *actual* knowledge is sufficient under the far less stringent preponderance of the evidence standard.



As Professor Richard explains,

Hulu's documents show not only that

This is a critical finding by Plaintiffs' expert, and completely contradicts Hulu's factual assertions in its Motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



[17] As this Court knows from prior motion practice, "session captures" are "recordings of actual data transmissions between a browser and Web pages on Hulu's Web site."  Ecf. 211, 10:15.

Plaintiffs' Opposition to Motion for Summary
Judgment Re: Knowledge                     18                    Case No. 3:11-CV-03764-LB





████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

**(b)      The Hulu Privacy Policy**

Hulu's Privacy Policy also demonstrates Hulu's knowledge that personal identifiers were transferred to Facebook.  In Hulu's Privacy Policy, Hulu stated that Facebook "may" be able to identify logged-in users.  Richard Decl., ¶¶ 49-50.  Hulu included the statement in a section about connecting with Facebook.  The statement is Hulu's public admission that logged-in users, regardless of their connection status, may be recognized by Facebook.  Although Hulu placed this statement within a privacy policy section about Hulu-Facebook connected users, the statement and its context show that it is not limited to connected users.

> • *In addition, if you visit Hulu.com while logged into one of these services, the third-party service provider may be able to identify you and to associate the technical information provided by your web browser with other information the service already has about you.*

*Id*. at ¶¶ 49 and 50.  Each of the above-described sections standing alone would suffice to demonstrate Hulu's knowledge; taken together they leave no ambiguity whatsoever.

**3.      Hulu has still not rebutted the documents that created a genuine issue of material fact last time**

Last time around this Court cited and quoted from exhibits – the Court found that these documents raised further "fact issues" about Hulu's knowledge.  For instance, emails "about cookie placement establish that Hulu knew that vendors can place cookies on the user's computer."  Ecf.  194, 25:9-10 citing HULU_GAR164819 (and see HULU_GAR231508), Parisi Decl. as Exhs. 1 and 2.  The Court also noted that "[e]mails also show Hulu knew that cookies with identifying information were sent, Hulu's awareness that vendors could collect data and use it for other purposes to build a profile or 'identify a user in the real world,' and Hulu's recognition of the VPPA implications.  Ecf. 194, 25:10-14 citing HULU_GAR164819, HULU_GAR 177541, and HULU_GAR019274, Parisi Decl., Exhs. 3, 4 and 5.  The Court also

relied on Hulu internal emails that state "we can't rule out the possibility that someone might object to these practices for these or other reasons.  But I said that Hulu has made the judgment that it would accept the legal risk given the business benefits of these analytics."  Ecf. 194 at 25:15-19 citing HULU_GAR164819 at 164822, Parisi Decl., Exh. 3.  Finally, the Court quoted an email which stated that "Hulu made the judgment to accept the risk of passing identifying data 'so long as it is not passing unique, identifying information, which sounds like you might be doing here. . . .' "  *Id*. at 25:19-21, quoting HULU_GAR164819 at 164825, Parisi Decl., Exh. 3.

Hulu summarily dismisses these documents as too general or not specific to Facebook. Ecf. 230 at 10:23-25.  However, courts have noted that summary judgment should not be granted in fact-intensive inquiries involving questions of "knowledge" because there will seldom be direct evidence of knowledge in the form of an admission, and other types of direct and circumstantial evidence come into play.  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1547 (9th Cir. 1988) ("The inferences that can be drawn from all of this direct and circumstantial evidence, taken together, are of sufficient 'quantum and quality' to create a genuine issue of material fact . . . . [While there may be no specific admission of wrongdoing, that] evidence is seldom available.  [D]isputed fact here will be proven, if it can be, by other direct and circumstantial evidence." (internal citations omitted)).  Hulu's internal documents, which it dismisses with no analysis, provide at least circumstantial evidence that Hulu knew that it was transmitting personally identifying information.  *See infra*, Section II, at 4.

### C.   Hulu Does Not Challenge That It Had "Knowledge" Of Its VPPA Violations After Plaintiffs Filed Suit

Even if Hulu's argument that it had no "knowledge" of its VPPA violations was correct as to particular point in time (and it plainly is not), notably, Hulu's motion does not cover the entire proposed class period, thereby precluding summary judgment of the entire claim.  Hulu cannot legitimately argue that it did not have "knowledge" of its VPPA violations after Plaintiffs filed suit nearly three years ago.  As Plaintiffs' proposed class definition encompasses the time period from March 4, 2011 until the present day, even if this Court is inclined to grant Hulu's motion for summary judgment, it cannot grant summary judgment as to any claims raised after

1    Plaintiffs' initial complaint in this matter was filed.

2    **V.     CONCLUSION**

3          Hulu once again attempts to escape liability for its actions which are in clear disregard of

4    its users' privacy and the dictates of the VPPA.  Hulu voluntarily implemented the Facebook

5    Like Button on its website through its own code, as it acknowledges, and it knew it was releasing

6    protected PII to Facebook when it did so.  Despite its feigned ignorance, the facts are clear: Hulu

7    knowingly released PII to a third party in violation of the VPPA.  The Court should permit the

8    finder of fact to weigh this evidence and make the ultimate determination on the fact-intensive

9    issue of "knowledge."

10   Date: January 22, 2015                    Respectfully submitted,

11

12                                             By:    /s/Scott A. Kamber_____

13                                             Scott A. Kamber (*pro hac vice*)
                                               skamber@kamberlaw.com
14                                             David A. Stampley (*pro hac vice*)
                                               dstampley@kamberlaw.com
15                                             **KAMBERLAW, LLC**
                                               100 Wall Street, 23rd Floor
16                                             New York, New York 10005
                                               Telephone: (212) 920-3072
17                                             Facsimile: (212) 920-3081

18                                             Deborah Kravitz (SBN 275661)
                                               dkravitz@kamberlaw.com
19                                             **KAMBERLAW, LLP**
                                               401 Center Street, Suite 111
20                                             Healdsburg, California 95448
                                               Telephone: (707) 820-4247
21                                             Facsimile: (212) 202-6364

22

23                                             David C. Parisi (SBN 162248)
                                               dcparisi@parisihavens.com
24                                             Suzanne Havens Beckman (SBN 188814)
                                               shavens@parisihavens.com
25                                             **PARISI & HAVENS LLP**
                                               212 Marine Street, Suite 100
26                                             Santa Monica, California 90405
                                               Telephone: (818) 990-1299
27                                             Facsimile: (818) 501-7852

28                                             Brian R. Strange (SBN 103252)

1

lacounsel@earthlink.net
Gretchen Carpenter (SBN 180525)
gcarpenter@strangeandcarpenter.com
**STRANGE & CARPENTER**
12100 Wilshire Blvd., Ste, 1900
Los Angeles, CA  90025
Telephone: (310) 207-5055
Facsimile:  (310) 826-3210

Counsel for Plaintiffs

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28