| | |
|---|---|
| 1 | ROBERT M. SCHWARTZ (S.B. #117166) |
| | rschwartz@omm.com |
| 2 | VICTOR JIH (S.B. #186515) |
| | vjih@omm.com |
| 3 | AMY R. LUCAS (S.B. #264034) |
| | alucas@omm.com |
| 4 | O'MELVENY & MYERS LLP |
| | 1999 Avenue of the Stars, 7th Floor |
| 5 | Los Angeles, CA 90067-6035 |
| | Telephone: (310) 553-6700 |
| 6 | |
| 7 | SIMON J. FRANKEL (SB# 171552) |
| | sfrankel@cov.com |
| 8 | EMILY JOHNSON HENN (SB# 269482) |
| | ehenn@cov.com |
| 9 | COVINGTON & BURLING LLP |
| | One Front Street |
| 10 | San Francisco, CA 94111 |
| | Telephone: (415) 591-6000 |
| 11 | Attorneys for Defendant |
| | HULU, LLC |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE HULU PRIVACY LITIGATION | Case No. 3:11-CV-03764-LB <br><br> **REPLY IN SUPPORT OF HULU'S MOTION FOR SUMMARY JUDGMENT RE: "KNOWINGLY"** <br><br> Hearing Date: February 26, 2015 <br> Time: 9:30 a.m. <br> Courtroom: C <br> Judge: Hon. Laurel Beeler |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. PLAINTIFFS MISSTATE THE APPLICABLE LEGAL STANDARDS ......................... 3

    A. Plaintiffs Misstate the Summary Judgment Standard. .............................................. 3

    B. Plaintiffs Misstate the VPPA's Knowledge Standard. ............................................. 4

III. PLAINTIFFS CANNOT MEET THE COURT'S FIRST ELEMENT OF KNOWLEDGE BECAUSE THEY CANNOT SHOW THAT HULU KNEW THE CONTENTS OF THE SPECIFIC FACEBOOK COOKIE TRANSMISSION FROM THE MERE LOADING OF THE LIKE BUTTON ............................................... 6

    A. An Expert Cannot Opine on Knowledge To Defeat Summary Judgment. .............. 6

    B. None of Plaintiffs' Evidence Shows that Hulu Knew Merely Loading the Like Button Would Transmit Facebook's c_user Cookie Containing the Facebook ID with Video Information to Facebook. ............................................... 7

        1. Previously Submitted Evidence. .................................................................. 7

        2. The *Show_Faces* Attribute. ......................................................................... 8

        3. Network Session Captures. ........................................................................ 11

        4. Services Offered by the Nielsen Company. .............................................. 12

        5. Privacy Policy. ........................................................................................... 13

        6. The Complaint............................................................................................ 13

IV. PLAINTIFFS CANNOT MEET THE COURT'S SECOND ELEMENT OF KNOWLEDGE BECAUSE THEY CANNOT SHOW THAT HULU KNEW WHAT FACEBOOK MIGHT DO WITH ANY FACEBOOK ID AND VIDEO WATCH INFORMATION. ....................................................................................... 14

V. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Clouthier v. County of Contra Costa*,
591 F.3d 1232 (9th Cir. 2010) .................................................................................. 6

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) .................................................................................. 4

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) .................................................................................. 3

*Elwakin v. Target Media Partners Operations Co.*,
901 F. Supp. 2d 730 (E.D. Cal. 2012) ...................................................................... 9

*Fairbank v. Wunderman Cato Johnson*,
212 F.3d 528 (9th Cir. 2000) .................................................................................... 3

*Frederick S. Wyle Professional Corp. v. Texaco, Inc.*,
764 F.2d 604 (9th Cir. 1985) .................................................................................... 3

*Freedman v. America Online, Inc.*,
329 F. Supp. 2d 745 (E.D. Va. 2004) ....................................................................... 4

*Gorlick Distribution Centers, LLC v. Car Sound Exhaust System, Inc.*,
723 F.3d 1019 (9th Cir. 2013) .................................................................................. 3

*Guidroz-Brault v. Missouri Pacific R.R. Co.*,
254 F.3d 825 (9th Cir. 2001) .................................................................................. 11

*In re C. R. Bard, Inc.*,
948 F. Supp. 2d 589 (S.D. W. Va. 2013) ................................................................. 6

*In re Rezulin Products Liability Litigation*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ...................................................................... 6

*McGlinchy v. Shell Chemical Co.*,
845 F.2d 802 (9th Cir. 1988) .................................................................................... 7

*Mollett v. Netflix, Inc.*,
2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) ......................................................... 4

*MySpace, Inc. v. Wallace*,
498 F. Supp. 2d 1293 (C.D. Cal. 2007) .................................................................. 13

| | |
|---|---|
| | **TABLE OF AUTHORITIES** |
| | (continued) |
| | **Page(s)** |

*Ollier v. Sweetwater Union High School District*,
   768 F.3d 843 (9th Cir. 2014) ............................................................................................... 6

*Orr v. Bank of America, NT & SA*,
   285 F.3d 764 (9th Cir. 2002) ............................................................................................... 9

*Ortiz v. Lopez*,
   688 F. Supp. 2d 1072 (E.D. Cal. 2010) ............................................................................. 14

*Powell v. Tosh*,
   942 F. Supp. 2d 678 (W.D. Ky. 2013) ................................................................................. 6

*Resolution Trust Corp. v. Rowe*,
   1993 WL 183512 (N.D. Cal. Feb. 5, 1993) ......................................................................... 3

*Reynolds v. County of San Diego*,
   84 F.3d 1162 (9th Cir. 1996) ............................................................................................... 6

*Senne v. Village of Palatine, Ill.*,
   695 F.3d 597 (7th Cir. 2012) (en banc) ........................................................................... 4, 5

*Triton Energy Corp. v. Square D Co.*,
   68 F.3d 1216 (9th Cir. 1995) ............................................................................................... 9

*United Steelworkers of America v. Phelps Dodge Corp.*,
   865 F.2d 1539 (9th Cir. 1989) (en banc) ............................................................................. 3

*Western Parcel Express v. United Parcel Service of America, Inc.*,
   65 F. Supp. 2d 1052 (N.D. Cal 1998) ................................................................................. 7

*Worix v. MedAssets, Inc.*,
   857 F. Supp. 2d 699 (N.D. Ill. 2012) ................................................................................... 4

**RULES**

Fed. R. Civ. P. 56 .................................................................................................................. *passim*

Fed. R. Evid. 702 .................................................................................................................. *passim*

Fed. R. Evid. 901 ........................................................................................................... 9, 11, 14

Fed. R. Evid. 1001 ........................................................................................................................ 9

Fed. R. Evid. 1002 ........................................................................................................................ 9

Fed. R. Evid. 1003 ........................................................................................................................ 9

# I. INTRODUCTION

Plaintiffs' Opposition seeks to bury the Court in expert declarations and a mound of exhibits that have nothing to do with plaintiffs' remaining claim or the showing of knowledge they must make to forestall summary judgment. As Hulu demonstrated in its opening brief, Hulu is entitled to summary judgment on plaintiffs' only remaining claim because plaintiffs have no evidence that Hulu knowingly disclosed PII to Facebook by placing Like buttons on watch pages.

To defeat Hulu's motion, this Court's April 28, 2014 Order required plaintiffs to present evidence showing two separate and independent elements of knowledge: (1) that Hulu knew that, by adding a Like button to its watch pages, the user's browser would send to Facebook the Facebook c_user cookie containing the Facebook ID with the user's video URL; and (2) that Hulu knew Facebook might "read" the Facebook ID cookie and the video URL together in a manner akin to the disclosure of Judge Bork's video preferences that were the impetus for the VPPA. *See* MSJ Order, Dkt. 194 ("MSJ Order"), at 23-24. Plaintiffs' Opposition presents no evidence showing that Hulu had such knowledge on either element.

On the first element, there is no evidence that Hulu knew that the loading of a Like button would transmit a Facebook ID with video watch information. Plaintiffs' Opposition rests on the declaration of Golden Richard, who opines that Hulu had the requisite knowledge. But hiring an expert to state a desired conclusion does not make it so. Hulu's actual knowledge is not even a proper subject for expert testimony, nor is Richard's opinion sufficient. At most, he says what Hulu *should have* known. But the VPPA requires evidence that Hulu *actually* knew that a Like button would transmit a Facebook ID with watch information, not an opinion that Hulu "should have" known or speculation about what it "must have" known.

The remainder of plaintiffs' Opposition rests on cobbled-together bits of irrelevant evidence. For the Court's convenience, Hulu attaches a demonstrative chart for use at the hearing. As the chart shows, some of plaintiffs' evidence does not pertain to Facebook at all, little relates to the Like button, only five documents mention the c_user cookie (three of which were created by plaintiffs for the litigation), and the few directly concerning the watch page are not even argued in the Opposition. There is no evidence that ties Facebook, the Like button, the

1  c_user cookie, and the watch pages together, all of which are necessary to prove the requisite
2  knowledge. There is no evidence Hulu knew loading the Like button would transmit the contents
3  of the Facebook c_user cookie with watch information. Indeed, there is no evidence that Hulu
4  even knew what the Facebook c_user cookie was, what information it contained, or that the string
5  of numbers it transmitted was a Facebook ID.

On the second—and independently required—element of knowledge, plaintiffs submitted no evidence at all. That alone justifies granting Hulu's motion. Plaintiffs failed to present anything showing that Hulu knew Facebook might "read" the Facebook ID cookie and the video URL together. The most they muster is an attorney's argument that more than 4,000 documents in Hulu's production mention a Facebook employee. But it is telling that, of those 4,000 documents, plaintiffs submit—in support of their argument on the first element—only a single email chain that includes an email from that employee. That email does not even concern the Like button, much less the watch page, video information, the c_user cookie, or what data might be disclosed with loading the Like button. Plaintiffs justify their failure of proof by arguing that they do not need to show anything regarding Hulu's knowledge of whether Facebook might "read" the Facebook cookie and the video URL together. This is contrary to the Court's Order, and an independent reason to grant summary judgment.

After filing this motion last August, Hulu has produced—using plaintiffs' search terms—65,000 additional documents purportedly relevant to the issue of knowledge. Hulu has also given plaintiffs access to all Facebook-related source code in its site code base and produced 50,000 lines of that code. Yet plaintiffs have not come up with any documents showing knowledge, and their brief does not cite any of the source code plaintiffs claimed would prove Hulu's knowledge. Despite plaintiffs' heated rhetoric and false accusations of deception, Hulu has hidden nothing. Hulu did not know that loading the Like button transmitted the Facebook c_user cookie and watch page URL to Facebook. Hulu also did not know Facebook might read any cookie and URL information together. Hulu respectfully requests that the Court bring this case to an end and grant summary judgment in its favor on plaintiffs' remaining VPPA claim.

## II. PLAINTIFFS MISSTATE THE APPLICABLE LEGAL STANDARDS

### A. Plaintiffs Misstate the Summary Judgment Standard.

Plaintiffs begin their brief by overstating Hulu's burden. They argue that "merely asserting there is a lack of evidence" does not shift the burden of proof to them. Opp. at 4-5. That is not the law. Hulu "may shift the burden of producing evidence to the nonmoving plaintiff merely by 'showing'—that is, pointing out through argument—the absence of evidence to support plaintiff's claim." *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This Court never held otherwise. MSJ Order at 9 (noting same and quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)). Regardless, Hulu filed direct evidence from its former CTO, Richard Tom, and its Director of Software Development, Xinan Wu, that Hulu did not know that any Facebook cookies contained a Facebook ID, or that the Facebook ID was transmitted to Facebook when a user visited a Hulu watch page containing a Like button. Mot. at 6-7; Dunst Decl. Exs. F, G; *see also id.* Ex. D at ¶¶ 31-32. That showing alone shifted the burden to plaintiffs. *See, e.g.*, *Resolution Trust Corp. v. Rowe*, 1993 WL 183512, at *5 (N.D. Cal. Feb. 8, 1993) (declarations and deposition testimony denying knowledge shifted burden).

Plaintiffs then understate their own burden by arguing that summary judgment in cases involving knowledge is "particularly inappropriate." Opp. at 4. But there is no rule against summary judgment in cases involving knowledge. *See, e.g.*, *Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 611-12 (9th Cir. 1985) (rejecting argument that "[w]hen extent of knowledge is the issue, there can be no summary judgment"); *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1022-24 (9th Cir. 2013) (applying traditional standard).

When, as here, a plaintiff presents only circumstantial (rather than direct) evidence and relies solely on drawing inferences of knowledge, "the inferences arising therefrom must be sufficient to sustain a verdict." *Resolution Trust*, 1993 WL 183512, at *1. Plaintiffs' evidence does not come close to meeting that standard. Indeed, if ruling for the plaintiffs requires drawing inferences that are unreasonable, irrational, or impermissible under the substantive law, summary judgment must be granted. *See, e.g.*, *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc).

**B. Plaintiffs Misstate the VPPA's Knowledge Standard.**

Tacitly recognizing that they cannot meet the knowledge standard this Court set, plaintiffs spend much of the Opposition re-arguing that standard and accusing Hulu of distorting the Court's prior rulings. It is plaintiffs, however, who misread the Court's MSJ Order.

First, the Court held that plaintiffs must show that Hulu actually knew that, by loading a Like button on a watch page, the user's browser would send Facebook a Facebook ID and video watch information. Plaintiffs nevertheless insist that "actual knowledge is not a requirement under the plain language of the VPPA," and they "need only demonstrate that Hulu voluntarily provided user-specific information and videos watched." Opp. at 14. That is wrong. The statute uses the word "knowingly," not "voluntarily." The fact that Hulu voluntarily placed the Like button on its watch pages does not mean that Hulu knew a user's browser would send to Facebook both the Facebook ID and video watch information. *See* MSJ Order at 21, 23.

The Court could not have been clearer that "'knowingly' means consciousness of transmitting the private information. It does not mean merely transmitting the code." *Id*. at 23; *see also* 5/8/14 Hr'g Tr. at 37:4-6 ("I was specific about knowledge … I made it knowledge of the disclosure as opposed to knowledge of the act."). This is supported not only by the VPPA's plain language but also by the only case that discusses the VPPA's "knowingly" requirement, *Mollett v. Netflix, Inc.*, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012). This is also consistent with cases explaining the "knowingly" requirement under ECPA, which was the model for the VPPA. *See Freedman v. Am. Online, Inc.*, 329 F. Supp. 2d 745, 746-49 (E.D. Va. 2004); *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 702 (N.D. Ill. 2012). Plaintiffs do not rebut any of this authority.

Plaintiffs' reliance on *Senne v. Village of Palatine, Ill.*, 695 F.3d 597 (7th Cir. 2012) (en banc), is misplaced. Opp. at 13, 15. *Senne* did not hold that that mere voluntary action suffices. It was uncontested that the officer knew the parking ticket contained PII and that putting it on the windshield would make it visible to passersby. Nothing in *Senne*, however, suggests that an officer could be liable for voluntarily putting a piece of paper on a windshield if that officer did not know what was on the paper. Similarly, this Court held that plaintiffs must prove Hulu knew the nature of any transmission that would result from loading the Like button on watch pages.

MSJ Order at 23. If "Hulu did not know it was transmitting *both* an identifier *and* the person's video watching information, then there is no violation of the VPPA."[1] *Id*. (emphasis added).

On the second element of knowledge, plaintiffs argue that they need not make any showing as to what Hulu knew Facebook did with the data transmitted to it. Opp. at 13-15. But this Court held that a showing that Hulu knew the Like button transmission contained the Facebook ID and watch URL was only one-half of the showing required to establish a knowing VPPA disclosure: Even if Hulu "*did* know what it was transmitting, then (depending on the facts), there *might* be a VPPA violation." MSJ Order at 23:23-24 (emphasis added).

The question, of course, is what *additional* facts are necessary to establish a VPPA violation. Plaintiffs claim that the Court said nothing more is necessary. They point to the first portion of the Court's discussion of *Senne* and Judge Bork's video rentals, and mischaracterize it as the Court's holding. Opp. at 13:11-13 (citing MSJ Order at 23:2-3); *id*. at 15:13-16 (citing MSJ Order at 22:23-23:3; *Senne*). But that discussion was not the Court's holding.

The Court distinguished *Senne* and Judge Bork's case of "obvious PII" from this case, which involves non-obvious PII: "Still, disclosure of information on traffic tickets in public view or providing a list of videos is different than transmission of cookies tied to a watch page." MSJ Order at 23:4-5. The "first disclosures [in *Senne* and Judge Bork's case] transmit obvious PII. The second [disclosure here] transmits cookies with identifying information that is the equivalent of a name only to someone who has the ability to read it." *Id*. at 23:5-7. The obviousness is key to VPPA liability. Because the disclosures here are non-obvious, the Court held that even if Hulu "did know what it was transmitting," *id.* at 23:23-24, "if Hulu never knew that Facebook might 'read' the videos and the Facebook ID cookies together in a manner akin to the disclosure of Judge Bork's videos, then there is no VPPA violation." *Id.* at 24:4-6. The Court was clear that there are two independent required elements of knowledge here. As explained below, plaintiffs cannot satisfy either element.

---

[1] Attacking a straw man, plaintiffs also say that they need not show that Hulu had knowledge that "the disclosure was legally forbidden." Opp. at 14. Hulu is not suggesting that plaintiffs must prove that Hulu knew that any transmission would violate the law.

1  **III. PLAINTIFFS CANNOT MEET THE COURT'S FIRST ELEMENT OF KNOWLEDGE BECAUSE THEY CANNOT SHOW THAT HULU KNEW THE CONTENTS OF THE SPECIFIC FACEBOOK COOKIE TRANSMISSION FROM THE MERE LOADING OF THE LIKE BUTTON**

**A. An Expert Cannot Opine on Knowledge To Defeat Summary Judgment.**

Plaintiffs cannot prove actual knowledge by hiring an expert to say Hulu had that knowledge. *See* Opp. at 8; Richard Decl. ¶ 3. First, Golden Richard's personal opinions of what he thinks Hulu knew are not the proper subject of expert testimony. "[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702, and speculative testimony is inherently unreliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (citation omitted). An expert's personal opinion as to a party's state of mind amounts to speculation and "is insufficient to raise genuine issues of fact and defeat summary judgment." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1252 (9th Cir. 2010) (expert's opinion that municipality's training "appear[ed] to be purposefully indifferent" inadmissible at summary judgment). Such opinions are speculative because "a party's state of mind . . . is not within the knowledge of any expert." *Powell v. Tosh*, 942 F. Supp. 2d 678, 703-04 (W.D. Ky. 2013) (expert opinion that defendants acted "knowingly" amounted to "impermissible speculation"); *see also Reynolds v. County of San Diego*, 84 F.3d 1162, 1169 (9th Cir. 1996) (expert's opinions as to why plaintiff acted "nothing more than speculation and fail to raise an issue of fact"), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997).

Experts drawing their own inferences about a party's underlying state of mind are not helpful and improperly "assume the role of advocates." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004) (expert opinions on "states of mind of corporations" improper); *see In re C. R. Bard, Inc.*, 948 F. Supp. 2d 589, 620 (S.D. W. Va. 2013) (excluding expert opinion on "knowledge, motive, or intent based on corporate documents," since they "are not properly the subject of expert testimony because these are lay matters"). All of Richard's opinions as to what he thinks Hulu knew, (Richard Decl. ¶¶ 3, 17-22, 28-39, 41-52, 54-66, 68-69), are not the proper subject of expert testimony and should be stricken.

Second, even if Richard's personal opinions on Hulu's knowledge were proper, his conclusions are not supported by sufficient facts. "[A]ssertions in expert declarations do not automatically create genuine issues of fact." *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 65 F. Supp. 2d 1052, 1060 (N.D. Cal 1998). Rather, at summary judgment, expert opinions must be sufficiently supported with specific facts. *See, e.g.*, *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806 (9th Cir. 1988); *see also* Fed. R. Civ. P. 56(c)(4). If "expert opinions are not supported by sufficient facts, or when the indisputable record contradicts or otherwise renders the opinions unreasonable, they cannot be relied upon." *W. Parcel*, 65 F. Supp. 2d at 1060. Richard's "expert opinion" uses deficient evidence, addressed below, to argue that Hulu knew that the c_user cookie was transmitting the Facebook ID with the show title.

### B. None of Plaintiffs' Evidence Shows that Hulu Knew Merely Loading the Like Button Would Transmit Facebook's c_user Cookie Containing the Facebook ID with Video Information to Facebook.

There is no evidence suggesting that Hulu knew the mere loading of the Like button transmitted a Facebook ID with video watch information to Facebook. The Opposition relies on six types of evidence, much of which does not even concern the Like button, the c_user cookie, or watch pages. Plaintiffs attempt to manufacture disputed issues of fact by arguing Hulu's knowledge of the general existence of cookies or that Facebook could identify logged-in users in *other contexts* (such as Facebook Connect). That is not sufficient to establish knowledge for the remaining c_user claim.

#### 1. Previously Submitted Evidence.

Plaintiffs start by arguing that the Court has already held, based on the previously submitted evidence, that there is a genuine issue of material fact on Hulu's knowledge. Opp. at 1 & n.1, 5, 21-22. Plaintiffs point to that same evidence and argue that it is "circumstantial evidence that Hulu knew that it was transmitting personally identifying information." *Id*. at 22. Plaintiffs misstate the Court's prior order and the prior evidence.

The Court previously denied summary judgment because it could not rule "on an undeveloped record with a half-page argument about knowledge at the end of a brief that is mostly directed to Hulu's main argument that the alphanumeric strings here are not unique

HULU'S REPLY ISO "KNOWINGLY" MSJ
CASE NO. 3:11-CV-03764-LB

identifiers." MSJ Order at 26; *see also id.* at 24. That has now been addressed. The Court did not rule that the previously submitted evidence was sufficient to defeat summary judgment on knowledge. If it had, it would not have invited Hulu to make this motion.

As explained in Hulu's opening brief, plaintiffs' prior evidence says nothing about what Hulu knew would be transmitted with the Like button. It does not even concern Facebook. It pertains to cookies in general or to unrelated third parties. Mot. at 8 & n.4. For example, the fact that "Hulu knew that vendors can place cookies on the user's computer," Opp. at 21, does not mean Hulu knew that Facebook had placed a c_user cookie on user's computers that would transmit the Facebook ID with watch information to Facebook when the Like button loaded. Similarly, plaintiffs quote an email exchange stating that "Hulu made the judgment to accept the risk of passing identifying data." Opp. at 2. That exchange concerned Nielsen and ComScore, which is not part of the remaining VPPA claim. Parisi Ex. 3. An exchange regarding other vendors and different transmissions—that have nothing to do with Facebook, the Like button, what cookies like the Facebook c_user cookie that Facebook placed, or watch pages—in no way supports the inference that Hulu knew loading the Like button would transmit a Facebook ID with watch information. If anything, the evidence suggests that, if Hulu was aware that a third party had even the potential to obtain PII, Hulu addressed the situation. If Hulu had known about any potential transmissions of PII with the Like button, plaintiffs would have found similar emails pertaining to Facebook. No such emails exist, because Hulu did not know.

### 2. The *Show_Faces* Attribute.

Plaintiffs' expert claims that, because Hulu implemented *show_faces=true*, it should have been obvious to Hulu that Facebook had some way to identify the user (so that Facebook could place photos of the user's friends under the Like button). Richard Decl. ¶ 28.2; Opp. at 17. Plaintiffs' argument rests on a misrepresentation of the facts, requires the Court to infer evidence that is not there, distorts the legal standard for VPPA's knowledge requirements, and assumes Hulu engaged in the testing that plaintiffs' expert was hired to conduct. At its core, accepting plaintiffs' argument would mean imposing potential VPPA liability on a mere showing of what Hulu *should have* known, without any showing of what Hulu *actually* knew.

As a threshold matter, the *show_faces* argument is irrelevant because it concerns Hulu's Japan website. Plaintiffs cite several emails that purport to show Hulu setting *show_faces=true*, without laying any foundation for what they are. Opp. at 17; Richard Decl. ¶ 29; Exs. 6-8. The references to "site-tf" throughout Exhibits 6, 7, and 8, however, are Hulu's nomenclature for its Japanese website, which plaintiffs would have known had they laid a proper foundation.[2] Hulu did ***not*** set the *show_faces* attribute to *true* when it added the Like button to the watch pages used by plaintiffs. If Hulu had ever implemented *show_faces=true* here, it would have shown up in Hulu's source code. Plaintiffs knew this, so they demanded to review that code, and Hulu complied. Yet plaintiffs cannot cite a single line of that code to support their assertion that Hulu implemented the Like button with *show_faces=true*. Opp. at 17. The few lines of source code plaintiffs submit at Exhibit 43 confirm that Hulu implemented the Like button here with *show_faces* set to ***false***.

That said, it does not matter whether Hulu set *show_faces* to false or true. With regard to what happens when *show_faces* is set to false, there is no evidence that any Facebook ID is transmitted, much less that Hulu knew about it. Although plaintiff's expert argues otherwise, he never tested what happens when *show_faces=false*. Opp. at 17; Richard Decl. ¶¶ 26-28; Ex. 9.[3] And Hulu had no reason to perform that test either. Conversely, even if Hulu had set *show_faces=true*, that does not mean Hulu knew that doing so would transmit Facebook's c_user cookie containing the Facebook ID with the user's video URL to Facebook. The most plaintiffs can say is that Hulu knew that the *show_faces* attribute, if set to true, could enable Facebook to show a user's friends. Implicit in this argument is that Hulu must have known that Facebook had

---

[2] Hulu objects to Exhibits 6-8. Documents lacking proper foundation cannot be considered at summary judgment. *See, e.g.*, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (collecting cases). The Parisi Declaration's statement, ¶ 3, that a "document was produced by the opposing party in discovery is not conclusive as to its authenticity." *Elwakin v. Target Media Partners Op. Co.*, 901 F. Supp. 2d 730, 742 (E.D. Cal. 2012). The problem is not that plaintiffs failed to show Exs. 6-8 are Hulu's emails; it is that plaintiffs failed to show that they actually reflect the source code Hulu implemented here. FRE 901. Moreover, the source code itself, which plaintiffs have inspected, is the best evidence of the content of that code. FRE 1001-1003. Richard's opinions, ¶ 28-33, are also improper. FRE 702; FRCP 56(c)(4).

[3] Richard's *show_faces* opinions are improper for this reason as well. FRE 702; FRCP 56(c)(4); *see, e.g.*, *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995) (failure to test circuit precluded opinion on its functionality).

some way to identify the user. Even if that is correct, however, plaintiffs' expert concedes Facebook has *many* ways to identify users.[4] Richard Decl. ¶ 19. Of all those ways, identification by Facebook via the Facebook c_user cookie containing the Facebook ID is the only one that has been shown to also include the transmission of a user's watch page URL when the Like button loads. MSJ Order at 20:9-14, 21:13-17 (*only* lu and c_user cookies "were transmitted with the watch page and the embedded video name"); 5/8/14 Hr'g Tr. at 10:20-12:13 (abandoning lu cookie theory). Thus, plaintiffs have to show Hulu knew Facebook would use what turns out was the Facebook ID in the Facebook c_user cookie as *the* way to identify a user and show the user's friends. They have no such evidence.

Recognizing this absence of evidence, plaintiffs argue that "[i]t was not necessary for Hulu to know *how* Facebook could identify users (for example, whether Facebook used cookies, DOM storage, Adobe Flash Local Stored Objects, browser fingerprinting, or any other identification mechanism)." Richard Decl. ¶ 19; Opp. at 18. But knowledge of how Facebook actually identified its users is critical under the VPPA. Plaintiffs have to show Hulu knew those users would be identified in a way that would involve the transmission of the Facebook ID tied to their video watch information. MSJ Order at 20:7-10. Again, that *only* way is via Facebook's c_user cookie. Plaintiffs' concession that they cannot make this showing is fatal.

Ultimately, plaintiffs' focus on the operation of the *show_faces* attribute is immaterial, because there is no evidence that Hulu actually knew *anything* that Richard concludes. Richard reached his conclusions about *show_faces* only after reviewing Facebook's documentation, (Richard Decl. ¶¶ 23-25.2), setting up a web page and testing the operation of the Like button with *show_faces=true*, (*id.* ¶ 26), and studying the results with the Chrome Developer mode view of network traffic. *Id.* He states that his conclusions "should be obvious," (*id.* ¶ 28), that Hulu

---

[4] The specific way matters. For example, giving the *Washington Post* a copy of Judge Bork's video store membership card discloses only that Judge Bork visits that video store, and would not violate the VPPA; Judge Bork's identity must have been disclosed in a particular way that ties him to the particular videos he rented, *e.g.*, a printed list with Judge Bork's name and recently rented videos. Showing that Hulu knew Facebook had ways to identify logged-in users who visit Hulu is not enough. Plaintiffs must show that Hulu knew that the particular way Facebook identified those users would tie their identity to specific watch information.

1  "had to know that Facebook had to identify the user," (*id.* ¶ 31), and that Hulu "had to know that,
2  in its code, it supplied no additional user identifiers." *Id.*  But there is no evidence that Hulu ever
3  conducted any of these tests or reached the same conclusions.[5]  Without any evidence that Hulu
4  even thought about the technology underlying *show_faces*—much less that Hulu extensively
5  tested it and examined the results—accepting plaintiffs' argument would permit potential liability
6  on a showing that Hulu *should have known* what Richard knows.  But the question under the
7  VPPA is not what Hulu "should have" known (had it run the tests plaintiffs' expert did).  The
8  question is what Hulu *actually* knew.

### 3.  Network Session Captures.

The network session captures do not show any knowledge by Hulu that loading the Like button would transmit a Facebook ID with video watch information.  Plaintiffs argue that, "[t]hrough its own internal testing and session captures, Hulu knew that Facebook maintained one or more cookies that identified logged-in Facebook users."  Opp. at 18.  In addition, plaintiffs claim that "Hulu worked hand-in-hand with Facebook," gave "Facebook access to Hulu's test environment," and thus "Hulu knew the *c_user* cookie contained the user's Facebook ID, and Hulu knew that the *c_user* cookie was sent in requests to Facebook by Hulu with respect to logged-in users."  *Id.* at 19.  But once again, plaintiffs misstate the evidence.

First, the evidence of network session captures is irrelevant because these exhibits (Richard Exs. 11-18) concern Hulu's Facebook Connect service and the testing of login attempts to Facebook through Facebook Connect.[6]  The Court has already ruled that Facebook Connect is not at issue.  *See* MSJ Order at 21; Dkt. 211 at 30.

---

[5] Richard's conclusions are improper for this reason as well.  FRE 702; FRCP 56(c)(4); *see, e.g.*, *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 830-32 (9th Cir. 2001).  The one email plaintiffs cite is Richard Ex. 3, but plaintiffs failed to properly authenticate it.  FRE 901.  In any event, the email does not show any similar testing or actual implementation of *show_faces*.

[6] Plaintiffs' reliance on these exhibits is improper since they never laid any foundation for what they are.  That said, the documents themselves show that they are irrelevant.  Exhibit 15 shows what traffic results from "Host:www.facebook.com" with no referer, *i.e.*, no information about what URL is sending the request to Facebook.  Exhibit 16 shows what traffic results from "Host:www.facebook.com" when a user browses from "Referer: http://www.facebook.com/."  Exhibit 17 also shows what traffic results from "Host:www.facebook.com" when a user browses from "Referer: http://www.facebook.com."  The only exception is Ex. 14, but that is a network session of traffic from Comcast's Fancast.com, not Hulu's website.  Exhibits 11-12, and 14-18 are improperly authenticated and should be stricken.  FRE 901.

1    Second, the evidence does not show that Hulu "knew the c_user cookie contained the
2    user's Facebook ID." Opp. at 18. The most plaintiffs can say about the Facebook Connect
3    network session captures in Exhibits 15 through 17 is that two of the captures included the value
4    "c_user=554311224" among a trove of numbers, symbols, and letters. There is no evidence that
5    Hulu noticed that captured data, knew what c_user referred to, or knew the significance of
6    "554311224" (which, it turns out, is a Facebook ID). Indeed, to determine the significance of
7    554311224, plaintiffs' expert had to go to a service at *http://graph.facebook.com/*, enter the
8    c_user value, and navigate to another URL. Richard Decl. ¶ 40. On its face, there is no reason
9    anyone would (or that Hulu did) recognize that "55431124" signifies a Facebook ID, any more
10   than someone looking at "sct=1310035465" or "act=1310035934494" on Exhibit 16 would know
11   what the "sct" or "act" numbers signify.
12       Third, nothing suggests that Hulu knew the c_user cookie would be transmitted to
13   Facebook on the loading of the Like button. If anything, these documents suggest the c_user
14   cookie is *not* always transmitted to Facebook. The c_user value does not even appear in Exhibit
15   17 or Exhibit 12 (the Facebook Connect email plaintiffs cite as evidence of Hulu working "hand-
16   in-hand" with Facebook). These confirm that Hulu would have no reason to know the c_user
17   cookie contained the Facebook ID or that it would be transmitted when the Like button loaded.

18            4.      Services Offered by the Nielsen Company.

19       The evidence concerning the Nielsen program does not show any knowledge that the Like
20   button transmitted the Facebook ID with watch information. Plaintiffs argue that "Hulu's
21   interactions with Nielsen Company unambiguously show that Hulu knew that personal identifiers
22   were being transmitted." Opp. at 19. Plaintiffs cite a 2012 Nielsen program and paper pertaining
23   to "services to help measure the effectiveness of Hulu's ad delivery." *Id*. Plaintiffs claim that
24   Nielsen told Hulu (and Hulu repeated to Amex) that "the ads being measured would cause
25   requests to be routed to Facebook through users' browsers, so Facebook could use its 'logged-in
26   cookie' to identify users and provide demographic information about them." *Id*. at 19-20.
27       At most, this evidence shows that Nielsen told Hulu (and Hulu told Amex) that Facebook
28   had a "logged-in cookie" *related to Nielsen pixel tags* that Hulu could embed in its ads. Exs. 19-

23. It does not show that anyone told Hulu (or that Hulu knew) how this "logged in cookie" worked, that it contained the Facebook ID, or that it also meant the Facebook ID would be transmitted with watch information from the mere loading of a Like button.[7] There is no mention at all in any of these documents of the Like button, the c_user cookie, or the Facebook ID. Hulu did not know from the Nielsen ad program that Facebook had a "logged-in cookie" related to loading the Like button that would disclose the Facebook ID with watch information.

        5.        <u>Privacy Policy</u>.

Lacking any direct or even circumstantial evidence of Hulu's knowledge, plaintiffs grasp for Hulu's privacy policies to try to impute knowledge. None of the policies mentions the Like button or what may or may not be transmitted with the loading of the Like button. It is a gross overreach, and certainly not any evidence for plaintiffs to argue that a general statement about Facebook identifying logged-in users (which would apply to FB Connect) indicates Hulu knew that, by loading the Like button, it was transmitting the Facebook ID through c_user cookies or that any Facebook ID would be transmitted and associated with video watch information.

        6.        <u>The Complaint</u>.

Finally, plaintiffs make the throwaway argument that Hulu's motion somehow does not cover the entire class period (not true), which plaintiffs now purport to change from April 21, 2010 through June 7, 2012 to March 4, 2011 through the present. Opp. at 22. Plaintiffs appear to argue that, even if Hulu had no earlier knowledge giving rise to their Facebook c_user cookie claim, Hulu acquired that knowledge when plaintiffs filed this action.

Plaintiffs cannot rely on the complaint to impute knowledge to Hulu. None of plaintiffs' complaints mentions the watch pages, the Like button, or even Facebook's cookies. Dkts. 1, 13, 37, 83. Simply suing Hulu for a VPPA violation does not mean Hulu knew the c_user cookie transmitted a Facebook ID with video watch information when a Like button loaded. In fact,

---

[7] In addition to offering improper testimony on Hulu's knowledge, Richard's analysis of the Nielsen white paper and Hulu's privacy policies, *infra*, is inadmissible, ¶¶ 43-54, because he has no experience implementing such programs or writing or interpreting privacy policies, ¶¶ 2-3, Ex. 1, and is therefore not qualified as an expert on these topics. FRE 702; *e.g.*, *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1299 (C.D. Cal. 2007) (excluding engineer expert's "opinions on advertising issues, consumer perceptions, and social networking sites such as MySpace.com, areas in which he has no apparent qualifications").

1  plaintiffs did not unveil the "Like button cookie theory" until August 2013, *see* Dkt. 105, well
2  after Hulu removed video titles from its watch pages on June 7, 2012.[8]  MSJ Order at 4, 7, 8.

### IV. PLAINTIFFS CANNOT MEET THE COURT'S SECOND ELEMENT OF KNOWLEDGE BECAUSE THEY CANNOT SHOW THAT HULU KNEW WHAT FACEBOOK MIGHT DO WITH ANY FACEBOOK ID AND VIDEO WATCH INFORMATION

There is no need to wade through plaintiff's collection of irrelevant "evidence" (*show_faces*, network session captures, Nielsen services, etc.), because even if any of it proved Hulu knew the loading of the Like button would result in the transmission of a Facebook ID with video watch information (which it did not), that alone is not sufficient for VPPA liability. Independent of the first element of knowledge, this Court held that plaintiffs must produce evidence that Hulu knew Facebook might read the Facebook ID with the watch page URL. Given the non-obvious nature of the PII here, such evidence is critical. There is an obvious disclosure of PII when a video store clerk knows he is handing a reporter a list of Judge Bork's video rentals. As this Court observed, a string of random numbers in a cookie and a URL are not the same as a name and video rental list. MSJ Order at 23. Hulu could not have known that, upon loading the Like button, any transmission of the Facebook c_user cookie containing a random string of numbers (that turned out to be the Facebook ID) was tantamount to disclosing PII unless Hulu knew that Facebook might read that string of numbers and URL together in a manner akin to the disclosure of Judge Bork's video preferences. *Id.* at 23-24. Hulu did not know what, if anything, Facebook might do with any data it received from the loading of a Like button.

Despite the Court clearly establishing the legal necessity of the second element of knowledge for plaintiffs to defeat this motion, plaintiffs spend almost the entirety of their Opposition on the first element of the Court's knowledge test. Plaintiffs excuse their failure of

---

[8] Throughout this litigation, plaintiffs have consistently shifted their theory of liability. Plaintiffs are barred from introducing new theories in their opposition, at the hearing, or thereafter, because doing so would be highly prejudicial. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). This rule is based on principles of fair notice and provides finality to discovery, which has long closed. *Ortiz v. Lopez*, 688 F. Supp. 2d 1072, 1082 (E.D. Cal. 2010). To the extent the Court is inclined to consider them, Hulu objects to Exs. 27 and 39-42 and 45-46 as improperly authenticated, FRE 901, and the associated opinions, ¶¶59-69, as unsupported, FRE 702; FRCP 56(c)(4).

proof by arguing that there is no second element. Opp. at 13-15. This is contrary to the Court's Order, and an independent reason to grant summary judgment.

Indeed, plaintiffs offer no evidence of what Facebook did with the Like button transmissions or Hulu's knowledge of what Facebook might do. The only thing plaintiffs' attorneys can claim is over 4,000 documents in Hulu's production prove that Hulu communicated with a Facebook employee "who focused on video space for Facebook and who regularly communicated with Hulu regarding the Like button." Opp. at 11-12. Of these 4,000 documents, plaintiffs attach one exchange with an email from that employee, and only then in support of their argument regarding the first element of the Court's knowledge test. Richard Ex. 12; Opp. at 19. But even that exchange does not involve the Like button at all, much less the watch page, video watch information, or the Facebook c_user cookie. And neither that nor anything else shows "Hulu and Facebook negotiated the exchange of cookies so that Facebook could track information (including watched videos)." MSJ Order at 26:5-8. This is because no such "negotiation" ever occurred, and Hulu never knew what Facebook might track. *See* Mot. at 8-9.

## V. CONCLUSION

For nearly four years, plaintiffs have continually changed their claim to try to preserve this lawsuit. Initially plaintiffs claimed that VPPA disclosures were occurring through Kissmetrics and respawning cookies. Then it was ComScore, then Facebook lu and datr cookies, and now supposedly through the Like button and the c_user cookie. Plaintiffs take emails and documents out of context to create the misimpression that there is "evidence" about Hulu's knowledge. Plaintiffs have no evidence to support their case. It is time to end the gamesmanship. Hulu respectfully requests that the Court grant Hulu's motion for summary judgment.

Dated: February 12, 2015　　　　　　　　Respectfully submitted,

O'MELVENY & MYERS LLP
COVINGTON & BURLING LLP

By: ___/s/ *Robert M. Schwartz*___
　　　　Robert M. Schwartz
Attorneys for Defendant Hulu, LLC

# CHART OF EXHIBITS

| Exhibit | What the Exhibit Concerns ||||  Description |
|---|---|---|---|---|---|
| | **FB** | **Like** | **c_user** | **US Watch** | |
| Parisi-1 | | | | | Email re: Nielsen/ComScore. |
| Parisi-2 | | | | | Email re: Cookies generally and Google Analytics. |
| Parisi-3 | | | | | Email re: Nielsen/ComScore. |
| Parisi-4 | | | | | Email re: DSP vendors. |
| Parisi-5 | | | | | Email re: Convertro tags for eHarmony. |
| Parisi-6 | ✓ | ✓ | | | Email re: general discussion of Like button. |
| Richard-2 | ✓ | ✓ | | | Facebook documentation for Like button. |
| Richard-3 | ✓ | ✓ | | ✓ | Email re: Like button location on mock Show Page. |
| Richard-4 | ✓ | ✓ | | | Facebook documentation for Like button. |
| Richard-5 | ✓ | ✓ | | | Plaintiffs' test page created for this litigation. |
| Richard-6 | ✓ | ✓ | | | Email re: Like button source code for Hulu Japan website. |
| Richard-7 | ✓ | ✓ | | | Email re: Like button source code for Hulu Japan website. |
| Richard-8 | ✓ | ✓ | | | Email re: Like button source code for Hulu Japan website. |
| Richard-9 | ✓ | ✓ | ✓ | | Chrome view of plaintiff's test page created for litigation. |
| Richard-11 | ✓ | | | | Email re: Social and Facebook Connect QA. |
| Richard-12 | ✓ | | | | Email re: Facebook Connect login issues. |
| Richard-13 | ✓ | | | | JIRA ticket re: Facebook Connect disconnect issues. |
| Richard-14 | ✓ | ✓ | | | Network session of traffic from Comcast's Fancast.com. |
| Richard-15 | ✓ | | ✓ | | Facebook Connect debugging with c_user in traffic stream. |
| Richard-16 | ✓ | | ✓ | | Facebook Connect debugging with c_user in traffic stream. |
| Richard-17 | ✓ | | | | Facebook Connect debugging. |
| Richard-18 | ✓ | | | | Email re: Launch of Facebook Connect on Hulu. |
| Richard-19 | ✓ | | | | Email re: Nielsen Ad Tag program MSA. |
| Richard-20 | ✓ | | | | Nielsen Online Campaign Ratings White Paper. |
| Richard-21 | ✓ | | | | Email re: Nielsen measurement of ad effectiveness, states "no campaign specific information is passed to Facebook, and no [PII] from Facebook is passed to publishers." |
| Richard-22 | ✓ | | | | Email re: Nielsen Online Campaign Ratings w/ ability to obtain Facebook aggregated demographic information. |
| Richard-23 | ✓ | | | | Email re: scaling factor of Nielsen ad measurements. |
| Richard-24 | ✓ | | | | Hulu Privacy Policy which mentions Facebook. |
| Richard-25 | ✓ | | | ✓ | Hulu Privacy Policy which mentions Facebook. |
| Richard-27 | ✓ | | ✓ | | Plaintiffs' test page created for this litigation. |
| Richard-28 | | | | | Sample Hulu Show Page. |
| Richard-36 | ✓ | | | | Facebook documentation for FB.getLoginStatus. |
| Richard-37 | ✓ | | | | Facebook documentation for FB.getLoginStatus. |
| Richard-40 | ✓ | | ✓ | | Plaintiffs' test page created for this litigation re: FB.getLoginStatus. |
| Richard-41 | ✓ | | | | Hulu source code excerpt re: FB.getLoginStatus. |
| Richard-42 | ✓ | | | ✓ | Hulu Watch Page source code excerpt re: FB.getLoginStatus |
| Richard-43 | ✓ | ✓ | | ✓ | Hulu source code for Watch Page Like button with *show_faces=false*. |
| Richard-45 | ✓ | | | ✓ | Hulu Watch Page source code excerpt re: FB.getLoginStatus. |
| Richard-46 | ✓ | | | ✓ | Hulu Watch Page source code excerpt re: FB.getLoginStatus. |

*Note:* Richard Ex. 1 is his CV. Exs. 10 and 26 simply attach deposition testimony. Exs. 29-35 are articles that are not about Hulu. Plaintiffs' expert concedes that there is no probative evidence as to "Hulu's knowledge of these reports about Facebook." Richard Decl. at ¶ 64, n.6. Plaintiffs omitted Exs. 38 and 44. Ex. 39 is not cited at all.